IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LTD., MAGNOLIA TITLE FLORIDA, LLC, THE PEABODY BULLDOG LLC, AND JOHN MAGNESS *Plaintiffs* | § § § § § § § § § § | |
| V. | § § | CIVIL ACTION NO.:4:24-cv-02767 |
| TYRELL L. GARTH, PHILLIP H. CLAYTON, DEBBIE MERRITT A/K/A DEBORAH MERRITT, MATTHEW D. HILL, CHARLES BURNS, P. GARRETT CLAYTON, SCOTT M. REEVES, ARIANE E. YOUNG, TINGLEMERRITT, LLP, STARREX TITLE FLORIDA, LLC, LAURIE COOPER, MARKETSTREET CAPITAL PARTNERS AR, LLC AND BRIAN A. BREWER *Defendants.* | § § § § § § § § § § § § § § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT LAURIE COOPER'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(2)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDING.................................................2

III.   STATEMENT OF ISSUES ..........................................................................................3

IV.    STANDARD OF REVIEW ..........................................................................................3

V.     SUMMARY OF THE ARGUMENT ........................................................................3

VI.    FACTUAL BACKGROUND .......................................................................................4

       A. Cooper's Role and Connections to Texas .......................................................4

       B. Cooper's Access to and Use of Texas-Based Proprietary Information ......................5

       C. Misappropriation of Trade Secrets and Confidential Information ...............................5

       D. Harm to Texas-Based Business Interests .......................................................6

VII.   ARGUMENT AND AUTHORITIES...........................................................................7

       A. Legal Standard for Personal Jurisdiction....................................................... 7

       B. This Court Has Specific Jurisdiction Over Cooper ....................................... 8
          1.   Cooper Has Sufficient Minimum Contacts with Texas................................... 8
          2.   Plaintiffs' Claims Arise Out of Cooper's Forum-Related Contacts.............. 9
          3.   Exercise of Jurisdiction Over Cooper Is Fair and Reasonable ................... 10

       C. Cooper's Alleged Lack of Physical Presence in Texas Is Not Dispositive ............... 11

       D. The "Effects Test" Further Supports Personal Jurisdiction....................... 12

       E. Conspiracy Theory of Jurisdiction............................................................. 12

       F. Cooper's Rule 12(b)(6) and 9(b) Arguments Are Not Plead at All and are Premature
          ................................................................................................................. 14

       G. Alternatively, Plaintiffs Respectfully Request Leave to Amend ............................... 14

VIII.  CONCLUSION.......................................................................................................... 15

## **Cases**

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) ....................................... 3

*Bullion v. Gillespie*, 895 F.2d 213, 215-16 (5th Cir. 1990) ......................................................... 8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ............................................... 10, 11

*Calder v. Jones*, 465 U.S. 783, 788-90 (1984) ................................................................... 9, 12

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012) ....................................... 13

*Companhia Brasileira Carbureto de Calicio v Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (Kavanaugh, J.) ................................................................................. 13

*Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996) ............................... 3

*Freuler v. Parker*, 803 F. Supp. 2d 630, 635 (S.D. Tex. 2011) .................................................. 14

*Great Plains Trust Co v. Morgan Stanley Dean Witter Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ................. 14

*Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999) ...................................................... 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) ...................... 8

*In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ................ 13

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ......................................................... 8

*J&M Assoc., Inc. v. Romero*, 488 F. App'x 373, 376 (11th Cir. 2012) ...................................... 13

*KPFF Inv., Inc. v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust Litig.)*, 61 F.4th 242, 270 (2d Cir. 2023) ................................................................................................ 13

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) ......................................................... 7

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) .......................................................... 11

*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) ............................................. 13

*Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) ................................................ 12

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) ...................................... 3

*Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013) ............................................... 13

*O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342-43 (Tex. 1966) .................................................. 10

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. (Schwab II)*, 22 F.4th 103, 110 (2d Cir. 2021), cert denied, 142 S. Ct. 2852 (2022) ................................................................... 13

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) ................................................... 8

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)................................. 14

*Textor v. Bd. of Regents*, 711 F.2d 1387, 1392-93 (7th Cir. 1983) .............................................................. 13

*Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) ........................................................... 13

*Walden v. Fiore*, 571 U.S. 277, 285 (2014) ......................................................................................... 8, 11

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)................................. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LTD., MAGNOLIA TITLE FLORIDA, LLC, THE PEABODY BULLDOG LLC, AND JOHN MAGNESS<br>*Plaintiffs* | § § § § § § § § § § | |
| V. | § § | CIVIL ACTION NO.:4:24-cv-02767 |
| TYRELL L. GARTH, PHILLIP H. CLAYTON, DEBBIE MERRITT A/K/A DEBORAH MERRITT, MATTHEW D. HILL, CHARLES BURNS, P. GARRETT CLAYTON, SCOTT M. REEVES, ARIANE E. YOUNG, TINGLEMERRITT, LLP, STARREX TITLE FLORIDA, LLC, LAURIE COOPER, MARKETSTREET CAPITAL PARTNERS AR, LLC AND BRIAN A. BREWER<br>*Defendants.* | § § § § § § § § § § § § § § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT LAURIE COOPER'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(2)

NOW COME Plaintiffs Coast to Coast Title, LLC, Sol City Title, LLC, Magnolia Title Florida, LLC, Magnolia Title Arkansas, Ltd., The Peabody Bulldog, LLC, and John Magness (collectively, "Plaintiffs"), and file this Response in Opposition to Defendant Laurie Cooper's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) (containing no briefing or presentation of arguments under Rules 12(b)(6) and 9(b)), and would respectfully show the Court as follows:

## I.   INTRODUCTION

Defendant Laurie Cooper ("Cooper") seeks to escape accountability for her deliberate and tortious actions that have caused substantial harm to Plaintiffs' business interests in Texas. Despite

Cooper's attempts to characterize her contacts with Texas as minimal, the evidence demonstrates that she purposefully directed her activities toward Texas, causing injury to Texas residents and businesses. This Court has personal jurisdiction over Cooper because her conduct satisfies both the Texas long-arm statute and federal due process requirements.

Cooper's continuous and systematic contacts with Texas, her misappropriation of trade secrets stored on Texas-based servers, and her subsequent employment with a Texas-based competitor demonstrate a clear connection to the forum state. The Declaration of Britt Naponic, General Counsel for the Magnolia Entities, provides compelling evidence of Cooper's extensive Texas contacts and the harm caused to Texas-based business interests. As such, this Court should deny Cooper's motion to dismiss for lack of personal jurisdiction.

## II.  NATURE AND STAGE OF THE PROCEEDING

This case arises from the alleged misappropriation of trade secrets and breach of fiduciary duties by Defendant Laurie Cooper, former President of Magnolia Title Florida, LLC and Magnolia Title Arkansas, Ltd. Plaintiffs filed their Original Petition on June 3, 2024, in the District Court of Harris County, Texas. The case was subsequently removed to this Court on July 25, 2024. Defendant Cooper filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) on August 1, 2024.  It appears to be erroneously titled as also including a Motion to Dismiss under Rules 12(b)(6) and 9(b) because it includes absolutely no arguments under those rules.  The parties agreed to extend the deadline for Plaintiffs to file a response to Cooper's Motion to Dismiss to September 20, 2024, and so informed the Court.  The present Response addresses Cooper's Motion to Dismiss.

## III.   STATEMENT OF ISSUES

The Court must determine whether this Court has personal jurisdiction over Defendant Laurie Cooper.  In the event that the Court determines that personal jurisdiction should not be exercised over Defendant Laurie Cooper, the Court can determine that it will allow Plaintiffs leave to replead.

## IV.   STANDARD OF REVIEW

**Personal Jurisdiction:** The Court's determination of personal jurisdiction over Cooper is reviewed de novo. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). The plaintiff bears the burden of establishing jurisdiction, but need only present prima facie evidence supporting jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

## V.   SUMMARY OF THE ARGUMENT

Plaintiffs argue that this Court has personal jurisdiction over Cooper because she has sufficient minimum contacts with Texas that are directly related to the claims at issue. Cooper's continuous and systematic interactions with Texas-based management, her regular use of Texas-based servers to access and manipulate proprietary information, and her subsequent employment with a Texas-based competitor demonstrate purposeful availment of the privilege of conducting activities in Texas.  Plaintiffs assert that Cooper's arguments under Rule 12(b) and Rule 9(b) are premature because the Court must first determine personal jurisdiction before addressing the merits of Plaintiffs' claims.  Moreover, Cooper does not present, assert, or brief any arguments under Rule 12(b) and Rule 9(b); thus, to the extent Cooper makes any such arguments, they should be denied.

## VI.   FACTUAL BACKGROUND

**A. Cooper's Role and Connections to Texas**

Laurie Cooper joined Magnolia Title Florida, LLC and Magnolia Title Arkansas, Ltd. (collectively, "Magnolias Florida and Arkansas") at the time of their inception in late 2021. (Naponic Decl. ¶ 5). She had previously worked for John Magness, the Manager of the Magnolia Entities, at Stewart Title and brought some employees from Arkansas and Florida with her to form a core group for the new entities. (*Id.*).

As President of Magnolias Florida and Arkansas, Cooper had extensive and continuous connections with Texas:

a. Cooper had regular contact with Qualia and management personnel in Texas. All management personnel, including Britt Naponic, John Magness, and other executives and top-level employees of the Magnolia Entities, were based in Texas. (*See* the Declaration of Britt Naponic with attached Exhibits A-E, hereinafter **"Naponic Decl."** ¶ 9).

b. Cooper participated in frequent conference calls, especially when working on Qualia reports and the Draycott analysis. She had constant contact and communication with the Magnolia Entities' corporate management and executives in Texas. (*Id.*).

c. Cooper was in frequent communication with Texas-based personnel, including Anelle Sena and Janna Nutt, Controllers in Texas. She was always on phone calls with the Presidents of the Texas Magnolia entities and spoke with John Magness several times a day. (Naponic Decl. ¶ 12).

d. Cooper frequently worked with Patricia Rissanen, the President of Texas Operations, to find opportunities to work together and allocate business expenses amongst the Magnolia Entities. (*Id.*).

e. Cooper participated in numerous conference calls and virtual meetings with Texas-based employees and representatives of the Magnolia Entities, often involving discussions of confidential business strategies and proprietary information stored on the Texas-based Qualia servers. (Naponic Decl. ¶ 14).

f. Cooper made decisions to hire employees and sent out offers she signed as Division President of Magnolia Title, using letterhead with a Houston, Texas address. (Naponic Decl. ¶¶ 16-17, referring to attached Exhibits A-B).

**B. Cooper's Access to and Use of Texas-Based Proprietary Information**

Throughout her employment with Magnolias Florida and Arkansas, Cooper had extensive access to and made use of proprietary information stored on Texas-based servers:

a.  The Magnolia Entities utilize Qualia Core, a digital real estate closing platform developed and hosted by Qualia Labs, Inc., to manage their essential business operations and store proprietary information. Qualia Labs, Inc.'s Texas office is located in Austin, Texas, physically hosting the Magnolia Entities' data in Texas. (Naponic Decl. ¶ 4).

b.  Cooper had access to the Magnolia Entities' proprietary business information, trade secrets, and confidential data stored on the Qualia servers in Austin, Texas. This included customer lists, financial data, transaction histories, transactions in progress, banking information, business performance and accounting data, and closing procedures. (Naponic Decl. ¶ 6).

c.  Cooper regularly accessed and utilized the proprietary information stored on the Texas-based Qualia servers to perform her job duties. Her access to these servers was continuous and systematic, occurring on a daily basis from the start of her employment until her resignation on or about February 2, 2024. (Naponic Decl. ¶¶ 10-11).

d.  During calls and meetings, Cooper frequently referenced her access to, and use of, the Texas-based Qualia platform and the proprietary information stored therein, highlighting the importance of this Texas-based resource to her daily operations as President of Magnolias Florida and Arkansas. (Naponic Decl. ¶ 15).

g.  Cooper "while still employed by and owing fiduciary duties to plaintiffs Magnolia Title Arkansas, Ltd. and Magnolia Title Florida, LLC, misappropriated their trade secrets, intellectual property, customer data, and other proprietary information that was hosted on computer systems in Texas and belonged to Texas entities." (*See* Plaintiffs' Original Petition, ¶ 32 [DKT 1]).

**C. Misappropriation of Trade Secrets and Confidential Information**

The evidence suggests that Cooper engaged in the misappropriation of trade secrets and confidential information stored on Texas-based servers.  In February 2024, Britt Naponic became aware that Cooper had facilitated the unauthorized transfer of the Magnolia Entities' proprietary data from the Texas-based Qualia servers to systems or a deployment belonging to MarketStreet Capital Partners, LP and MarketStreet Capital Partners AR, LP (collectively, "MarketStreet").

MarketStreet Capital Partners, LP is a Texas limited partnership. (Naponic Decl. ¶ 19).

Cooper continued to access the Qualia platform immediately after her resignation on February 2, 2024. Upon facilitating the mass resignation of numerous Magnolia employees, she caused them to achieve uninterrupted access to the Qualia platform containing confidential and proprietary data for her benefit and the benefit of her new employer, MarketStreet. (Naponic Decl. ¶ 20).

On information and belief, Cooper, along with MarketStreet, appear to be accessing the same deployment or a mirror image of the Magnolia Entities' deployment of Qualia containing proprietary information. (Naponic Decl. ¶ 21).

After Cooper's resignation, evidence was discovered that she had directed the unauthorized transfer of a large amount of proprietary information from the Texas-based Qualia servers to a Qualia deployment used by MarketStreet. This included confidential business and client information, including highly valuable customer lists and examination information. (Naponic Decl. ¶ 25).

Cooper continued to use Magnolia Entities' misappropriated trade secrets and confidential information to compete directly with the Magnolia Entities. Specifically, MarketStreet offered competitive services using Magnolia's proprietary procedures and targeted Magnolia's clients using confidential information. (Naponic Decl. ¶ 26).

**D. Harm to Texas-Based Business Interests**

Cooper's actions have caused significant harm to Texas-based business interests. First, the misappropriation of trade secrets and confidential information has caused significant harm to the Magnolia Entities. In conjunction with other actions taken against the Magnolias by other parties, the businesses were irreparably harmed and forced to wind down in accordance with insurance

regulations and state law. (Naponic Decl. ¶ 27).

Second, Cooper committed at least some of these acts while employed by MarketStreet Capital Partners, LP, a Texas-based limited partnership. Cooper is still an employee of MarketStreet and has been since her resignation as President in February 2024. (Naponic Decl. ¶ 28).

Third, given Cooper's use of Texas-based letterhead for official company business, her frequent communications with Texas-based management, her access to and use of Texas-based servers containing proprietary information, and her subsequent employment with a Texas-based competitor, it is clear that Cooper's actions were substantially connected to the state of Texas and caused harm to Texas-based business interests. (Naponic Decl. ¶ 29).

In light of these facts, it is evident that Cooper has substantial connections to Texas, and her actions have directly impacted Texas-based businesses and interests. As such, this Court has personal jurisdiction over Cooper, and her motion to dismiss should be denied.

## VII.   ARGUMENT AND AUTHORITIES

### A. Legal Standard for Personal Jurisdiction

Federal courts apply a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant. First, the court must determine whether the forum state's long-arm statute confers personal jurisdiction. Second, if the long-arm statute applies, the court must determine whether the exercise of jurisdiction comports with due process. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

Texas's long-arm statute extends to the limits of federal due process. Therefore, the two-step inquiry collapses into one federal due process analysis. *Bullion v. Gillespie*, 895 F.2d 213,

215-16 (5th Cir. 1990). To satisfy due process, the plaintiff must demonstrate that (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## B. This Court Has Specific Jurisdiction Over Cooper

Specific jurisdiction exists when a defendant's contacts with the forum state arise from or relate to the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The Fifth Circuit applies a three-prong test to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

### 1.  Cooper Has Sufficient Minimum Contacts with Texas

Cooper's contacts with Texas are sufficient to establish minimum contacts. The Supreme Court has held that a defendant's physical presence in the forum state is not necessary to establish personal jurisdiction if the defendant's out-of-state conduct is purposefully directed at residents of the forum state. *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Here, Cooper purposefully directed her activities toward Texas in numerous ways:

a.  Cooper had continuous connections with Qualia and management personnel in Texas. All management personnel, including Britt Naponic, John Magness, and other executives and top-level employees of the Magnolia Entities, were based in Texas. (Naponic Decl. ¶ 9).

b.  Cooper participated in frequent conference calls, especially when working on Qualia reports and the Draycott analysis. She had constant contact and communication with the Magnolia Entities' corporate management and executives in Texas. (Naponic Decl. ¶ 9).

c. Throughout her employment, Cooper regularly accessed and utilized proprietary information stored on Texas-based Qualia servers to perform her job duties. (Naponic Decl. ¶ 10).

d. Cooper's access to the Texas-based servers was continuous and systematic, occurring on a daily basis from the start of her employment until her resignation. (Naponic Decl. ¶ 11).

e. Cooper was in frequent communication with Texas-based personnel, including Anelle Sena and Janna Nutt, Controllers in Texas. She was always on phone calls with the Presidents of the Texas Magnolia entities and spoke with John Magness several times a day. (Naponic Decl. ¶ 12).

f. Cooper frequently worked with Patricia Rissanen, the President of Texas Operations, to find opportunities to work together and allocate business expenses amongst the Magnolia Entities. (Naponic Decl. ¶ 12).

g. Cooper participated in numerous conference calls and virtual meetings with Texas-based employees and representatives of the Magnolia Entities, often involving discussions of confidential business strategies and proprietary information stored on the Texas-based Qualia servers. (Naponic Decl. ¶ 14).

h. Cooper made decisions to hire employees and sent out offers she signed as Division President of Magnolia Title, using letterhead with a Houston, Texas address. (Naponic Decl. ¶¶ 16-17).

These actions demonstrate that Cooper purposefully availed herself of the privilege of conducting activities in Texas, thus satisfying the minimum contacts requirement. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984) (finding personal jurisdiction where defendants' intentional conduct was calculated to cause injury in the forum state).

## 2. Plaintiffs' Claims Arise Out of Cooper's Forum-Related Contacts

Plaintiffs' claims for misappropriation of trade secrets, breach of fiduciary duty, and tortious interference directly arise from Cooper's Texas-related activities. The unauthorized access and transfer of trade secrets stored on Texas-based servers form the basis of Plaintiffs'

causes of action. Specifically:

a. Cooper facilitated the unauthorized transfer of the Magnolia Entities' proprietary data from the Texas-based Qualia servers to systems or a deployment belonging to MarketStreet, a Texas-based company. (Naponic Decl. ¶ 19).

b. Cooper continued to access the Qualia platform immediately after her resignation, causing former Magnolia employees to achieve uninterrupted access to the Qualia platform containing confidential and proprietary data for her benefit and the benefit of her new employer, MarketStreet. (Naponic Decl. ¶ 20).

c. Cooper and MarketStreet appear to be accessing the same deployment or a mirror image of the Magnolia Entities' deployment of Qualia containing proprietary information. (Naponic Decl. ¶ 21).

d. Cooper directed the unauthorized transfer of a large amount of proprietary information from the Texas-based Qualia servers to a Qualia deployment used by MarketStreet. (Naponic Decl. ¶ 25).

e. Cooper used Magnolia Entities' misappropriated trade secrets and confidential information to compete directly with the Magnolia Entities, offering competitive services using proprietary procedures and targeting clients using confidential information. (Naponic Decl. ¶ 26).

Therefore, there is a clear nexus between Cooper's contacts with Texas and the claims asserted in this lawsuit. *See O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342-43 (Tex. 1966) (finding personal jurisdiction where the cause of action arose from defendant's purposeful acts performed in Texas).

### 3. Exercise of Jurisdiction Over Cooper Is Fair and Reasonable

Once minimum contacts are established, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Courts consider five factors in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several

states in furthering fundamental substantive social policies. *Id.* at 477.  Here, these factors weigh

in favor of exercising jurisdiction over Cooper:

a. <u>Burden on the defendant</u>: While Cooper may face some inconvenience in litigating in Texas, modern communication and transportation methods mitigate this burden. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).  Also, her employer, MarketStreet Capital Partners, LP, is a Texas-based company and a Texas limited partnership (Naponic Decl. ¶¶ 15, 19).

b. <u>Texas's interest</u>: Texas has a strong interest in adjudicating disputes involving the misappropriation of trade secrets stored on servers located within its borders and protecting its residents from economic harm. The Magnolia Entities' proprietary information was stored on Texas-based servers via Qualia's Austin, TX office, and the harm caused by its misappropriation directly affects Texas-based business interests. (Naponic Decl. ¶¶ 4, 25-27).

c. <u>Plaintiffs' interest</u>: Plaintiffs, including Texas residents and entities, have a significant interest in obtaining relief in their home forum. The Magnolia Entities' management and operations were largely based in Texas. (Naponic Decl. ¶¶ 9, 12).

d. <u>Efficient resolution</u>: Litigating this case in Texas, where much of the evidence and witnesses are located, promotes judicial efficiency. The majority of management personnel and key witnesses are based in Texas. (Naponic Decl. ¶ 9).

e. <u>Social policies</u>: Exercising jurisdiction furthers the shared interest in protecting intellectual property rights and deterring unfair competition. Texas has a particular interest in protecting its businesses from the misappropriation of trade secrets stored within the state. (Naponic Decl. ¶¶ 7-8).

Given these factors, the exercise of personal jurisdiction over Cooper is fair and reasonable.

## C. Cooper's Alleged Lack of Physical Presence in Texas Is Not Dispositive

Cooper's argument that she lacks sufficient contacts with Texas because she does not live,

work, or own property in the state is unavailing. The Supreme Court has repeatedly held that

physical presence in the forum state is not required to establish personal jurisdiction. *See Burger*

*King*, 471 U.S. at 476; *Walden*, 571 U.S. at 285.

In the modern era of electronic commerce and communication, courts have recognized

that defendants can establish minimum contacts with a forum state through their virtual presence

and online activities. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (adopted by the Fifth Circuit in *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)). Cooper's regular access to and misuse of information stored on Texas-based servers is sufficient to establish minimum contacts, regardless of her physical location. (Naponic Decl. ¶¶ 10-11, 19-21, 25).

**D. The "Effects Test" Further Supports Personal Jurisdiction**

The "effects test" established in *Calder v. Jones* provides additional support for exercising personal jurisdiction over Cooper. Under this test, a court may exercise personal jurisdiction over a nonresident defendant whose intentional, and allegedly tortious, actions were expressly aimed at the forum state and caused harm that the defendant knew was likely to be suffered in the forum state. *Calder*, 465 U.S. at 788-90.

Here, Cooper's intentional misappropriation of trade secrets stored on Texas-based servers and her use of that information to compete with Texas-based businesses satisfy the Calder effects test. Cooper knew or should have known that her actions would cause harm to Plaintiffs in Texas, the state where their proprietary information was stored and where significant business operations were conducted. (Naponic Decl. ¶¶ 25-27, 29).

**E. Conspiracy Theory of Jurisdiction**

Plaintiffs' allegations of conspiracy provide an additional basis for exercising personal jurisdiction over Cooper.

Seven federal circuit courts have explicitly addressed whether personal jurisdiction can arise from a defendant's involvement in a conspiracy with foreseeable connections to the forum. The Second, Fourth, Sixth, Seventh, Ninth, Tenth, and District of Columbia Circuits have all

ruled that such involvement can indeed establish personal jurisdiction. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. (Schwab II)*, 22 F.4th 103, 110 (2d Cir. 2021), cert denied, 142 S. Ct. 2852 (2022); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012); *Textor v. Bd. of Regents*, 711 F.2d 1387, 1392-93 (7th Cir. 1983); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013); *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007); *Companhia Brasileira Carbureto de Calicio v Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (Kavanaugh, J.); *accord J&M Assoc., Inc. v. Romero*, 488 F. App'x 373, 376 (11th Cir. 2012).

In *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999), the Fifth Circuit explained that it was not improper for a court to determine personal jurisdiction based on a party's participation in a conspiracy. *Id.* at 625, 631.

The Second Circuit has set forth a commonly accepted test to determine whether the minimum contacts of one co-conspirator can be imputed to another: "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *KPFF Inv., Inc. v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust Litig.)*, 61 F.4th 242, 270 (2d Cir. 2023).

Plaintiffs have alleged that Cooper conspired with other defendants, including Texas residents, to misappropriate trade secrets and engage in unfair competition. (*See* Plaintiffs' Original Petition, ¶¶ 437-440 [DKT 1]). These allegations, supported by the Declaration of Britt Naponic, are sufficient at this stage to support the exercise of personal jurisdiction over Cooper based on the conspiracy theory. (Naponic Decl. ¶¶ 19-21, 25-26, 28).

In conclusion, the Court should deny Cooper's motion to dismiss for lack of personal jurisdiction. The evidence presented, particularly through the Declaration of Britt Naponic, demonstrates that Cooper has sufficient minimum contacts with Texas, that Plaintiffs' claims arise from these contacts, and that the exercise of jurisdiction over Cooper is fair and reasonable.

**F. Cooper's Rule 12(b)(6) and 9(b) Arguments Are Not Plead at All and are Premature**

Cooper's motion to dismiss appears to be incorrectly titled in the heading and is, in fact, only a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). Cooper presents no grounds or argument under Rules 12(b)(6) and 9(b). Further, if Cooper nevertheless argues that she has made such arguments, they are premature and should be denied without prejudice. The Court must first determine whether it has personal jurisdiction over Cooper before addressing the merits of Plaintiffs' claims. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (noting that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the case and the parties).

If the Court determines it has personal jurisdiction over Cooper, Plaintiffs respectfully request the opportunity to respond to any Rule 12(b)(6) or 9(b) arguments in a separate briefing.

**G. Alternatively, Plaintiffs Respectfully Request Leave to Amend**

In the event the Court finds that Plaintiffs' allegations for any of their claims are deficient, Plaintiffs request leave of Court to amend their Complaint to provide additional specificity. "When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice." *Freuler v. Parker*, 803 F. Supp. 2d 630, 635 (S.D. Tex. 2011) (citing *Great Plains Trust Co v. Morgan Stanley Dean Witter Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("District courts

often afford plaintiffs at least one opportunity to cure pleading deficiencies  before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.")). There has been no undue delay, bad faith, or dilatory motive on Plaintiffs' part, and amendment would not be futile or prejudice Defendants at this early stage of the proceedings.

Defendants will not be prejudiced as the case is in its early stages. The parties have not yet conducted their initial Rule 26(f) conference, which should take place 14 days before the Initial Pretrial and Scheduling Conference, set for October 11, 2024. Further, the parties have not begun discovery. Defendants have not established that any amendment would be futile as a matter of law. Therefore, if the Court finds Plaintiffs' allegations for its claims are deficient, Plaintiffs request leave of Court to add more specificity to their allegations.

## VIII.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court deny Defendant Laurie Cooper's Motion to Dismiss in its entirety. Plaintiffs have established a prima facie case for personal jurisdiction over Cooper based on her purposeful contacts with Texas and the relatedness of those contacts to the claims at issue. In the alternative, if the Court finds any deficiencies in Plaintiffs' pleadings, Plaintiffs respectfully request leave to amend their Complaint to address any such deficiencies.