**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LTD., MAGNOLIA  TITLE FLORIDA, LLC, THE PEABODY, BULLDOG LLC, AND JOHN MAGNESS | § § § § § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO.:4:24-cv-2767 |
| v. | § | |
| | § | |
| TYRELL L. GARTH, PHILLIP H. CLAYTON, DEBBIE MERRITT A/K/A DEBORAH MERRITT, MATTHEW D. HILL, CHARLES BURNS, P. GARRETT CLAYTON, SCOTT M. REEVES, ARIANE E. YOUNG, TINGLEMERRITT, LLP, STARREX TITLE FLORIDA, LLC, LAURIE COOPER, MARKETSTREET CAPITAL PARTNERS, LLC, MARKETSTREET CAPITAL | § § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANT LAURIE COOPER'S REPLY TO
PLAINTIFF'S RESPONSE TO HER MOTION
DISMISS**

Subject to her Motion to Strike Declaration [DOC15], Defendant Laurie Cooper

("Cooper") files her Reply to Plaintiff's Response to Defendant's Motion to Dismiss [DOC

7] pursuant to Federal Rule of Civil Procedure 12(b)(2).

1

I.  INTRODUCTION ............................................................................................1

II.  STATEMENT OF ISSUES ...........................................................................1

III.  STANDARD OF REVIEW ..........................................................................1

IV.  SUMMARY OF THE ARGUMENT ...........................................................2

V.  ARGUMENTS AND AUTHORITIES ........................................................2

  A.  As A Threshold Issue, Portions of Plaintiffs' Evidence, A Declaration by Britt

    Naponic, Is Insufficient to Support Plaintiffs' Jurisdiction Claims ...............................2

  B.  Coopers Alleged Minimum Contacts Are Insufficient to Establish Jurisdiction ............4

  C.  A Server being Physically Located in Texas is Insufficient to Establish Jurisdiction ...8

  D.  Customer Data and Use and Access of a Computer Program Are Not Trade Secrets .10

  E.  A Bare Allegation of Conspiracy Cannot Confer Jurisdiction .....................................11

  F.  Plaintiffs' Did Not Prove That Florida and Arkansas Entities Had Effects In Texas ....13

  G.  Hauling Cooper From Florida into a Texas Court Is Not Fair or Reasonable .............15

    a.  Burdens on the Defendant .....................................................................16

    b.  Texas Interest ........................................................................................16

    c.  Plaintiffs' Interests ................................................................................17

    d.  Efficient resolution ...............................................................................17

    e.  Social policies .......................................................................................18

VI.  CONCLUSION ............................................................................................18

**Cases**

*360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. A-13-CA-942-SS, 2014 U.S. Dist. LEXIS 68567, at *10, 2014 WL2092496 (W.D. Tex. 2014)...............................................8

*360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. A-13-CA-942-SS, 2014 U.S. Dist. LEXIS 68567, at *2, 2014 WL2092496 (W.D. Tex. 2014)...................................................9

*99869 Can., Inc. v. Glob. Sec. Networks, Inc.*, No. H-16-2788, 2016 U.S. Dist. LEXIS 159088, 2016 WL 6820394 (S.D. Tex. 2016) ...........................................................8

*All Star Enter. Inc. v. Buchanan*, 298 S.W.3d 404 (Tex. App.—Houston [14th Dist.] 2009, no pet.)...............................................................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................15

*BGDG Enter., LLC v. Barley & Swine*, No. A-13-CA-719-SS, 2014 U.S. Dist. LEXIS 199599, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014).........................................11

*BHL Boresight, Inc. v. Geo-Steering Sols. Inc.*, 2017 U.S. Dist. LEXIS 98057, *11-12 (S.D.Tx. 2017)...........................................................................................................15

*Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) ...............................................5

*Bonner v. Triple-S Mgmt. Corp.*, 661 F. App'x 820 (5th Cir. 2016). ..........................4

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) .....................................18

*Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482 (1984) ...........................................16

*Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 1486-87 (1984) .........................17

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ...........................................................................................................................11

*Casey v. State Farm Lloyds,* Civil Action No. 3:21-CV-346-L, 2022 U.S. Dist. LEXIS 153835, at *11-12, 2022 WL 3702024 (N.D. Tex. 2022) ...............................................5

*Chang v. Virgin Mobile* USA, LLC, No. 07-1767, 2009 U.S. Dist. LEXIS 3051, 2009 WL 111570, at *3 (N.D. Tex. Jan. 16, 2009)..........................................................................11

*Crummer Co. v. Du Pont*, 223 F.2d 238, 244-45 (5th Cir. 1955) .................................14

*Cushman & Wakefield U.S., Inc. v. Sharestates Invs., LLC*, No. 14-22-00155-CV, 2023 Tex. App. LEXIS 5525, at *28 (Tex. App.—Houston [14th Dist.] July 27, 2023, no pet. h.) ...........................................................................................................................9

*Downhole Tech. LLC v. Silver Creek Servs.*, No. H-17-0020, 2017 U.S. Dist. LEXIS 70056, at *6 (S.D. Tex. 2017)..................................................................................................8

*Fmc Techs. v. Murphy*, 679 S.W.3d 788, 815 (Tex. App.—Houston [1st Dist.] 2023, pet. denied)............................................................................................................................12

*Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) ...........................4

*Future World Elecs., LLC v. Results HQ, LLC*, No. CV 17-17982, 2018 U.S. Dist. LEXIS

88979, 2018 WL 2416682, at *3 (E.D. La. May 29, 2018 ................................. 11

*GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260 (5th Cir. 2018) ..................................... 11

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223
(Tex. 1991) ............................................................................................................ 20

*Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979) .......................................... 20

*Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003) ..................................... 12

*Hartman v. Walker*, No. 1:13-CV-355, 2015 U.S. Dist. LEXIS 125027 at *79, 2015 WL
5470261 (E.D. Tex. 2015) ..................................................................................... 14

*J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 605 (Tex. App.—Houston [1st Dist.]
2000, no pet.) ........................................................................................................ 20

*James v. Valvoline, Inc.*, 159 F. Supp. 2d 544, 548-549 (S.D. Tex. 2001) ....................... 18

*Johnston v Multidata System International Corp*, 523 F3d 602, 609 (5th Cir 2008) ............. 6

*KPFF Inv., Inc. v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust Litig.)*, 61 F.4th
242, 270 (2d Cir. 2023) ......................................................................................... 13

*McFadin v Gerber*, 587 F3d 753, 759 (5th Cir 2009) ............................................................. 7

*McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) ................................................................. 7

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) ....................... 8

*Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) ......................................... 6

*Panda Brandywine Corp v Potomac Electric Power Co*, 253 F3d 865, 869 (5th Cir 2001) .. 6

*Papasan* v. *Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ............... 15

*Proof Analytics Ams. Inc. v. Netsmartz LLC*, 2024 U.S. Dist. LEXIS 176794, *7 (S.D.Tx.
2024) ..................................................................................................................... 15

*Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010) .......... 12

*Rio De Janeiro of the Federative Republic of Braz. v. Philip Morris, Inc.*, 143 S.W.3d 497
(Tex. App.—Beaumont 2004, pet. denied) ............................................................... 19

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) ......................... 4

*Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244,
101 L. Ed. 2d 22 (1988) ......................................................................................... 19

*Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964) ..... 19

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-94, 100 S. Ct. 559, 564-66,
62 L. Ed. 2d 490 (1980) ......................................................................................... 18

*Wright v. C.R. Bard, Inc.*, No. 3:19-CV-2176-S, 2021 U.S. Dist. LEXIS 100659, at *3
(N.D. Tex. 2021) .................................................................................................... 20

## I.    INTRODUCTION

1.    Plaintiffs are trying to drag Cooper, who is a Florida resident, and former employee who worked exclusively in Florida and Arkansas, into Texas because, (i) the parent company's letterhead had a Texas address, (ii)  Florida and Arkansas customer data was stored on a server allegedly located in Texas, (iii) Cooper talked on the telephone and exchanged emails about Florida and Arkansas business with the parent company employees and officers in Texas, and (iv) after the Plaintiffs lost their state licenses in Florida, Arkansas, and Texas, thus ceased being able to do business, Cooper found other employment in Florida with a different company that happened to be based in Texas.

## II.    STATEMENT OF ISSUES

2.    The Court must determine whether it has personal jurisdiction over Defendant Laurie Cooper. In the event that the Court determines that personal jurisdiction should not be exercised over Defendant Laurie Cooper, the Court should also determine that the plaintiff's pleadings contain incurable defects and deny Plaintiffs leave to replead.

## III.    STANDARD OF REVIEW

3.    Plaintiff agrees that the Court's determination of personal jurisdiction over Cooper is reviewed de novo. *Bonner v. Triple-S Mgmt. Corp.*, 661 F. App'x 820 (5th Cir. 2016).

4.    The Fifth Circuit requires the Plaintiffs to meet their burdens by *prima facie* evidence. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). The court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion.  *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331,

1

336 (5th Cir. 2020).

## IV.    SUMMARY OF THE ARGUMENT

5.    The Court does not have personal jurisdiction over Cooper because Plaintiff's conclusory statements and bare assertions, in its live pleading and its response, fail to carry the burden to show that, (i) Cooper had sufficient continuous and systematic contacts with Texas that would render Cooper "essentially at home" in the state, (ii) Cooper purposefully availed herself of any benefits or protections in Texas, (iii) Cooper conspired with other defendants, or (iv) Plaintiffs in Texas were harmed by any actions of Cooper.

## V.    ARGUMENTS AND AUTHORITIES

A.    As A Threshold Issue, Portions of Plaintiffs' Evidence, A Declaration by Britt Naponic, Is Insufficient to Support Plaintiffs' Jurisdiction Claims

6.    The law is well settled in the Fifth Circuit that a declaration claiming to be on personal knowledge cannot assert knowledge on "information and belief." "Personal knowledge" means that the declarant or affiant "must have had an opportunity to observe, and must have actually observed the fact." Fed. R. Evid. 602. "A statement is not within a declarant's personal knowledge if the statement is based on information and belief." *Casey v. State Farm Lloyds,* Civil Action No. 3:21-CV-346-L, 2022 U.S. Dist. LEXIS 153835, at *11-12, 2022 WL 3702024 (N.D. Tex. 2022). *See Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003).

7.    Naponic's declaration [DOC 7-1], which is identical to paragraphs in Plaintiff's Response [DOC 7] is allegedly based on personal knowledge. Naponic Decl.. [DOC 7-1] at ¶1. Yet, multiple times Naponic states that his conclusory assertion is based, "on information

2

and belief." Naponic Decl [DOC 7-1] at ¶¶ 8, 18, 21, 24, and 26(x2). Accordingly, the statements in these paragraphs should be disregarded by the Court.

8. Naponic is not identified as testifying as a corporate representative. Yet his declaration contains numerous instances of hearsay. In paragraph 9, Naponic refers to conversations between Cooper, Qualia, John Magness, Magnolia executives (excluding Naponic) Magnolia Entities corporate management and others. Paragraph 12 is similar – alleging conversations with Anelle Sena, Janna Nutt and John Magness. Magness is also mentioned in Paragraph 13. Paragraph 14 includes alleged conversations about business strategy and information.

9. Hearsay appears again in paragraphs 19 when Naponics claims he became "aware" of data transfer. In the last sentence of Paragraph 19, someone or something allegedly confirmed information he recites. In Paragraph 20 where Naponic refers to an investigation he undertook, which would certainly involve documents or people. Naponic then opines that Cooper "facilitated" a mass resignation of out-of-state employees but does not say he witnessed it. He claims that Cooper "caused them to achieve" uninterrupted access to data for the benefit of another; and, Naponic does not say he witnessed any such actions.

10. In Paragraph 25, Naponic allegedly "discovered evidence" of data transfer and the remainder of the paragraph refers to the alleged discovery and an "ongoing" investigation. Paragraph 26 similarly refers to a 'discovery' related to alleged use of data.

11. Given the hearsay, reliance on investigation, and use of "information and belief" – Naponic clearly does not have personal knowledge of Cooper's alleged actions. Instead,

3

he is relying on hearsay from others, mostly unnamed, and hearsay from documents unknown to report opinions he formed.

12.    The lack of personal knowledge demonstrated in Naponic's Declaration contradicts Naponic's assertion on Paragraph 1 that he has personal knowledge of the facts in the Declaration. Accordingly, Naponic's declaration is not sufficient to prove up Plaintiffs' prima facie case for personal jurisdiction.

B.    Coopers Alleged Minimum Contacts Are Insufficient to Establish Jurisdiction

13.    The plaintiffs have the burden to make a prima facie showing that personal jurisdiction is proper, which requires the plaintiff show that Cooper purposefully availed herself of the benefits and protections of Texas by establishing minimum contacts with Texas. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). The reviewing court must accept uncontroverted allegations as true. *Johnston v Multidata System International Corp*, 523 F3d 602, 609 (5th Cir 2008). However, the district court is not required to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp v Potomac Electric Power Co*, 253 F3d 865, 869 (5th Cir 2001).

14.    The parties agree that in order to establish specific jurisdiction the plaintiffs must show the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising that jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *McFadin v Gerber*, 587 F3d 753, 759 (5th Cir 2009). The parties also agree that the Fifth Circuit courts apply a three-prong test in deciding whether specific jurisdiction exists, considering, (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed

4

itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009).

15.    The parties diverge on application of the prongs of the test. As to the first prong - minimum contacts - Plaintiffs concede that Cooper was not physically in Texas by arguing her physical presence isn't necessary to establish personal jurisdiction. Doc 7 at 8 line 15. Plaintiffs assert that Coopers activities conducted in Florida and Arkansas were directed towards Texas because, (i) Cooper used emails and telephone calls to conduct routine business with employees and management personnel at the parent company located in Texas, and (ii) accessed and utilized the computer applications, including Qualia[1] in the routine course of her duties. *Id.* at 8 line 19 – 9 line 25. Plaintiffs then cite a case to try and recharacterize what they described as routine business contacts to be intentional conduct calculated to cause injury in the forum state. *Id.* at 9:26-29.

16.    The law does not support these claims and Plaintiffs misapply the first prong of the test. To establish minimum contacts, a defendant must have purposefully availed itself of the privilege of conducting activities *inside* Texas and enjoyed the benefits and protections of Texas laws. *99869 Can., Inc. v. Glob. Sec. Networks, Inc*., No. H-16-2788, 2016 U.S. Dist. LEXIS 159088, 2016 WL 6820394 (S.D. Tex. 2016) (emphasis added). A defendant's activities must justify a conclusion that the defendant could reasonably

---

[1] According to Naponic's Declaration, Qualia is a subscription based third party real estate closing platform to which Plaintiffs subscribed and which has offices in Austin, Texas.

anticipate being hauled into a Texas court. *Id.* For an employee who lives and works outside of Texas, employment "by a company with its principal place of business in Texas is not sufficient to establish the requisite minimum contacts with Texas." *Downhole Tech. LLC v. Silver Creek Servs.*, No. H-17-0020, 2017 U.S. Dist. LEXIS 70056, at *6 (S.D. Tex. 2017).

17.   Merely contracting with a Texas company does not establish minimum contacts or necessarily constitute "purposeful availment" for jurisdictional purposes. The "exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."*360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. A-13-CA-942-SS, 2014 U.S. Dist. LEXIS 68567, at *10, 2014 WL2092496 (W.D. Tex. 2014) *citing Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

18.   Numerous telephone contacts and emails, even over a span of years, do not establish minimum contacts and an out-of-state defendant's incidental contacts and communications with Texans made in the course of carrying out or facilitating an out-of-state contract does not equate to minimum contacts. *Id.*; *see also Cushman & Wakefield U.S., Inc. v. Sharestates Invs., LLC*, No. 14-22-00155-CV, 2023 Tex. App. LEXIS 5525, at *28 (Tex. App.—Houston [14th Dist.] July 27, 2023, no pet. h.).

19.   The *360 Mortg. Grp.*, is clear authority given its similarity to the instant case.  360 Mortgage ("360") sued its former employee, Glenn, and her new employer, Stonegate, alleging the two conspired to steal alleged trade secret information from 360 and use that information to take 360's customers. While Glenn worked for 360, it was a national mortgage lender headquartered in Texas. But Glen worked exclusively in North Carolina

and her job responsibilities included collection, entry, management, and use of data that was stored on Texas servers. Glenn subsequently went to work for a competing company, Stonegate, which was located in and headquartered in Ohio. 360 alleged when Glenn left 360 and joined Stonegate Glenn impermissibly took an alleged "trade secret" list of North Carolina brokers (including contact information and possibly other details, such as loan officers who work with each broker), and used those contacts to siphon business away from 360 in North Carolina. *360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. A-13-CA-942-SS, 2014 U.S. Dist. LEXIS 68567, at *2, 2014 WL2092496 (W.D. Tex. 2014).

20.   In *360*, the Fifth Circuit summarized the defendant's contacts with Texas as the defendant having traveled to Texas twice, routinely communicating with Texas based 360 employees, accessing Texas based servers in her daily work, particularly to access the brokers list that 360 alleged was misappropriated, and defendant's employment agreement containing a Texas choice of law clause. *Id.* at LEXIS *7.  The Court held that these contacts were not sufficient to confer either general or specific jurisdiction over Glenn. *Id.* at LEXIS *8.

21.   More specifically as to jurisdiction not being conferred, the court found that alleged facts, strikingly similar to the Plaintiffs in this case, were not even relevant:

> "This conclusion is bolstered by the generally irrelevant nature of 360 Mortgage's location in and operation in Texas to the claims asserted in this case. Glenn is accused of misappropriating a list of North Carolina  [*12] mortgage brokers and using those contacts to funnel business in North Carolina away from 360 Mortgage and to Stonegate. While the effects of Glenn's alleged misconduct will in some strict sense be "felt" by 360 Mortgage in Texas, the wrongful conduct and the injury are centered in North Carolina."

*Id.* at LEXIS *11

22.    Here, Plaintiff's own laundry list of Cooper's contacts with Texas are of such low probative value that the same are not relevant.

23.    Likewise, there was no purposeful availment by Cooper to benefit from or receive protection under Texas law. Cooper did not direct her activities in the performance of her duties as a title insurance broker towards any Texas residents or entities; Cooper's activities were strictly limited to the states in which she had licensure to conduct business, namely Florida and Arkansas. At no time did Cooper work with, use, or conduct any title insurance transactions with a Texas resident on a Texas property. Thus, under the law, Texas has no jurisdiction over Cooper.

C.    A Server being Physically Located in Texas is Insufficient to Establish Jurisdiction

24.    Plaintiffs repeatedly decry that because the Qualia servers are allegedly located in Texas, it confers jurisdiction over Cooper. Doc 7 at 9:1-7, 19-21, 10:1-3, 10-11, 12:16, 17.

25.    The courts have repeatedly rejected the argument that a server's physical location is relevant to specific jurisdiction. See *Future World Elecs., LLC v. Results HQ, LLC*, No. CV 17-17982, 2018 U.S. Dist. LEXIS 88979, 2018 WL 2416682, at *3 (E.D. La. May 29, 2018) ("[A] plaintiff may not 'rely on the fortuitous location' of a server to establish personal jurisdiction over a defendant who accessed that server.") (quoting *Chang v. Virgin Mobile USA, LLC*, No. 07-1767, 2009 U.S. Dist. LEXIS 3051, 2009 WL 111570, at *3 (N.D. Tex. Jan. 16, 2009)); *BGDG Enter., LLC v. Barley & Swine*, No. A-13-CA-719-SS, 2014 U.S.

Dist. LEXIS 199599, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014) (noting that "courts have rejected the physical location of servers as a basis for personal jurisdiction").

26. The Fifth Circuit case *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260 (5th Cir. 2018) on point. In *GreatFence* ("AGF")*,* the court rejected the argument that the district court had specific personal jurisdiction over AGF because AGF maintained a relationship with HostGator, a Texas web-hosting company. The court cited a Fourth Circuit holding in finding that it is unreasonable to expect that a defendant should have foreseen being haled into at Texas court by merely utilizing servers owned by a Texas based company and that "the level of contact created by the connection between an out-of-state defendant and a web server located within a forum" is "de minimis." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).

27. Here, Plaintiffs do not assert or attempt to prove that Cooper knew where the servers were located. Instead, they seem to claim that Texas acquires jurisdiction whenever anyone, presumably anywhere in the world, accesses a server in Texas. This would be true even if the person using the server did not know where it was located.

28. Plaintiffs did not offer any evidence that Cooper availed herself of any transactions, customers, data, or actions related to conducting title insurance business in Texas. The law establishes that Cooper's alleged acts of entering and accessing Florida and Arkansas data related to Florida and Arkansas customers and Florida and Arkansas transactions on a server that happens to be located in Texas does not give Texas courts jurisdiction so as to haul Cooper into a Texas court.

29. Thus, Plaintiffs have provided only threadbare proof on an issue upon which they

bear a more substantial prima facie burden of proof.

D.   Customer Data and Use and Access of a Computer Program Are Not Trade Secrets

30.   For information to qualify as a trade secret, it must not be "generally known to, and not be readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." Tex. Civ. Prac. & Rem. Code § 134A.002. "If the evidence supports a finding that the alleged trade secret is readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information, it does not qualify for protection as a trade secret." *Fmc Techs. v. Murphy*, 679 S.W.3d 788, 815 (Tex. App.—Houston [1st Dist.] 2023, pet. denied)(internal quotations omitted). Texas courts use three factors to determine whether a customer list is a trade secret: (1) the steps an employer has taken to maintain the confidentiality of the customer list; (2) whether a departing employee acknowledges that the customer list is confidential; and (3) whether the content of the list is readily ascertainable *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F. Supp. 2d 598 (S.D. Tex. 2010), *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003).

31.   Here, Plaintiffs repeatedly use the buzzwords "proprietary" and "confidential" but fail to identify exactly what they are blanketing with these allegations, except to say it includes "customer lists and examination information." Further, Plaintiffs make no assertions that they took steps to maintain confidentiality of the purported lists, are silent as to any acknowledgment by Cooper, and disregard the fact that the names and addresses of people who purchase homes, which would reasonably include title insurance,  are readily available through a simple public records search. Accordingly, claims that Cooper

misappropriated trade secrets as a basis to allege Texas has jurisdiction over Cooper are baseless.

E.    A Bare Allegation of Conspiracy Cannot Confer Jurisdiction

32.    As shown above, the only acts or actions which Plaintiffs allege Cooper undertook provide no basis for the exercise of Texas jurisdiction.  Plaintiffs believe that they can side-step the burden of proof by arguing even if Cooper were not otherwise subject to Texas jurisdiction, jurisdiction rises under a conspiracy theory.  Plaintiffs cite *KPFF Inv., Inc. v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust Litig.)*, 61 F.4th 242, 270 (2d Cir. 2023).

33.    Yet, the allegations for conspiracy are too threadbare to serve as a prima facie claim for personal jurisdiction.  Plaintiffs allege, in conclusory fashion, "that Cooper conspired with other defendants, including Texas residents, to misappropriate trade secrets and engage in unfair competition," rely upon conclusory or hearsay statements in Naponic's declaration and in conclusory allegations made in Plaintiffs' petition.  Response [DOC 7] at 13 line 19.    The conclusory allegation in the Response does not improve on the bare, conclusory allegations aimed at "All Defendants" that Plaintiffs' Response cites to in their original petition." [DKT 1] at ¶¶ 437-440 Moreover, Plaintiffs petition failed to provide prima facie proof that Cooper conspired with anyone, as Plaintiffs claim that "All Defendants" were involved in all of the acts complained about. [DKT 1] at ¶440. In pleading a conspiracy, a general allegation of conspiracy without a statement of the facts constituting the conspiracy, its object and accomplishment, is but an allegation of a legal conclusion which is insufficient to constitute a cause of action. *Crummer Co. v. Du Pont*, 223 F.2d 238,

244-45 (5th Cir. 1955). In *Hartman v. Walker*, the court said the plaintiff must state with greater clarity how each actor is involved in the conspiracy, indicating that simply alleging that "all the Defendants" engaged in a conspiracy is insufficient. *Hartman v. Walker*, No. 1:13-CV-355, 2015 U.S. Dist. LEXIS 125027 at *79, 2015 WL 5470261 (E.D. Tex. 2015).

34.   Plaintiffs only evidence is a declaration of Britt Naponic. Nearly the entire contents of Naponic's declaration are pasted word for word into section VI of Plaintiff's Response under the heading "Factual Background" and Yet, Plaintiffs still fail to adequately identify with whom Cooper allegedly conspired, to what ends, when the alleged events took place, and what acts are to be attributed to which of "all defendants". Furthermore, Plaintiffs repeatedly assert specific allegations against just one or more specifically identified defendants, but then without specificity allege that "All Defendants" conspired to do all every one of the alleged acts, i.e. Plaintiffs allege, "Garth, Merritt, and Starrex conspired to create and forge false promissory notes…." Petition [DOC 1] at ¶59. Initially, even under Fed. R. Civ. P. 12(b)(6) a federal court is not "bound to accept as true a legal conclusion couched as a factual allegation" *Papasan* v. *Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

35.   Plaintiff's proof even fails a *Twombly/Iqbal* standard for plausibility.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief."  (citation omitted).

36.   Accordingly, their Response contains "simply conclusory assertions, which are properly disregarded in the absence of supporting evidence submitted to avert dismissal

under Rule 12(b)(2)." *Proof Analytics Ams. Inc. v. Netsmartz LLC*, 2024 U.S. Dist. LEXIS 176794, *7 (S.D.Tx. 2024); *accord BHL Boresight, Inc. v. Geo-Steering Sols. Inc.*, 2017 U.S. Dist. LEXIS 98057, *11-12 (S.D.Tx. 2017) (conclusory statements are not relevant to establishing jurisdiction in response to a Rule 12(b)(2).

F.   Plaintiffs' Did Not Prove That Florida and Arkansas Entities Had Effects In Texas

37.   Plaintiffs' Petition [DOC 1] and Plaintiffs' Response [DOC 7], the latter which includes and relies on a Declaration of Britt Naponic [DOC 7-1], identifies certain plaintiffs as four distinctly separate entities, formed at four separate times; "Sol City Title,, LLC (formed prior to October 2020), Coast to Coast Title, LLC (December 9, 2020), Magnolia Title Florida, LLC (September 27, 2021), and Magnolia Title Arkansas, Ltd. (October 20, 2021)." Naponic [DOC7-1] at ¶2. Then, confusingly, but as a smokescreen to an end, Plaintiffs and Naponic try to lump them together under a single moniker, "The Magnolias," to create the illusion they are not separate, but connected to the extent that what happens in the Florida LLC or Arkansas LLC must be viewed as targeting some LLC in Texas, thus creating jurisdiction in a Texas court.

38.   Florida and Arkansas were separate entities, located in, licensed, and working exclusively within their respective states. [DOC1] at 19; [DOC7] at 4 line 8. Plaintiffs fail to identify or show that any of the individual Texas entities were receiving profits or payments from the activities in Florida or Arkansas or would receive profits from the allegedly taken information. By their own admission, the Florida and Arkansas entities that Cooper worked for were unable to conduct business because they lost their underwriter sometime before January 16, 2024. Plaintiffs' Petition [DOC 1], Exhibit B at ¶218.

13

39.   Here, as previously shown, the Florida and Arkansas entities were formed and operated as totally separate entities. Plaintiffs do not allege that either one failed to follow the applicable formalities, or any combining of separate corporate property. Nor do Plaintiffs provide any assertions as to the amount of financial interest, or ownership and control that would suffice to show the Florida and Arkansas entities were combined with one or more Texas entities. Plaintiffs also do not allege that the Florida and Arkansas property or leases belonged to any other entity, or that a Texas entity used the Florida or Arkansas companies for personal purposes. Under Cooper's management the *only* connections to Texas were that the server(s) were allegedly located there and some unspecified Texas entity was the parent company with which Cooper communicated on routine administrative matters.

40.   The above showings related to the separate nature of the entities and Cooper's incidental contacts with Texas and the Texas entities also negates Plaintiffs' effort to assert that their version of the facts in this case are sufficient to establish jurisdiction using the "effects test" as laid out in *Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482 (1984). In *Calder*, California was found to have jurisdiction in a libel case over the Florida based newspaper known as the National Enquirer, which is probably most renowned for its ubiquitous presence at supermarket checkout lines and ongoing encounters with alleged space aliens. That case is totally distinguished from the instant case. The allegedly libelous story impugned the professionalism of an entertainer whose television career was centered in California, who was a California resident, was drawn from California sources, and the harm, in terms both of emotional distress and the injury to her professional reputation, was suffered in California. The court held that California was the focal point both of the story and of the

14

harm suffered. Thus, jurisdiction was proper in California based on the "effects" of their Florida conduct in California. *Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 1486-87 (1984).  Here, as discussed above, Cooper's contacts were routine and related strictly to the business being conducted in Florida and Arkansas. Plaintiffs have failed to provide any support to show Cooper knowingly and intentionally took action against a Texas entity by engaging directly in actions in Texas or that a specific entity in Texas was harmed or to what extent. Therefore, jurisdiction fails under this unsupported assertion by the Plaintiffs.

G.   Hauling Cooper From Florida into a Texas Court Is Not Fair or Reasonable

41.   The parties agree on the law as it pertains to the factors the court considers in determining whether the exercise of jurisdiction would be fair and reasonable, after first finding that the Plaintiffs' burden to show sufficient minimum contact is met, said factor being; (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

42.   However, as the controlling threshold issue discussed herein establishes, the Plaintiffs cannot show that Cooper's contacts with Texas are sufficient to establish jurisdiction, thus eliminating the need to evaluate whether the exercise of jurisdiction would be fair and reasonable. Even if Cooper's contacts were sufficient, evaluation of the relevant factors makes a compelling argument sufficient to find that it would not be fair or reasonable for a Texas court to impose jurisdiction over Cooper for the reasons as follows:

15

a.  Burdens on the Defendant

43.   Plaintiffs asserts that this Court should overlook the difficulty and inconvenience to Cooper of litigating in Texas because, (i) "modern communication and transportation methods mitigate this burden" and (ii) the parent company Cooper works for is based in Texas. Both reasons are unavailing.  Whether assertion of personal jurisdiction is fair and substantially just turns in part upon the burden or inconvenience distant litigation imposes upon the defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-94, 100 S. Ct. 559, 564-66, 62 L. Ed. 2d 490 (1980).

44.   Further, the relative burdens on both the defendant and plaintiff should be considered. *See James v. Valvoline, Inc.*, 159 F. Supp. 2d 544, 548-549 (S.D. Tex. 2001). Unlike the Plaintiff in *James*, who was a tetraplegic, allegedly as the result of the defendants actions,  Plaintiffs in this case are not burdened to travel or litigate in Florida where the events actually occurred and the witnesses are located. Here, Cooper as an individual is at a severe disadvantage with respect to both resources and time. The cost of travel, accommodations, meals, etc., in addition to lost time from her job would impose a harsh burden upon her and her family.

b.  Texas Interest

45.   Texas has little interest in litigating claims against out of state defendants, particularly when Plaintiffs fail to identify what alleged Texas entity has suffered harm, or what the harm was and it is clear that the out of state entity was separate and apart from the Plaintiffs' alleged Texas entity. This dispute involves a Florida employee and a Florida company, and the underlying activities occurred in Florida. Texas courts have found that

16

when the tortious conduct and damages occur outside Texas and do not concern Texas law or property, Texas has little interest in adjudicating the dispute. *Rio De Janeiro of the Federative Republic of Braz. v. Philip Morris, Inc.,* 143 S.W.3d 497 (Tex. App.—Beaumont 2004, pet. denied); *All Star Enter. Inc. v. Buchanan*, 298 S.W.3d 404 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

c.   Plaintiffs' Interests

46.   The plaintiff's interest in obtaining convenient and effective relief does not favor Texas. While the Plaintiff may find it convenient to litigate in its home state, this convenience does not outweigh the significant burden on the Florida defendant. The decision to transfer requires an "'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964).

d.   Efficient resolution

47.   Texas courts have held "a Texas corporation with its principal place of business in Texas, can obtain the most convenient and efficient relief in Texas." *J.D. Fields & Co. v. W.H. Streit, Inc*., 21 S.W.3d 599, 605 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Here, the principal place of business of the entities Cooper was in charge of was in Florida and Arkansas. Accordingly, considering that fact along with the fact that all of the first hand witnesses to Coopers alleged actions in Florida are in Florida, along with the records and documents evidencing her actions, it follows that Florida, not Texas is where the most efficient resolution can be achieved.

e. Social policies

48.   The shared interest of the several states in furthering fundamental substantive social policies does not strongly support Texas jurisdiction when the case involves nonresident defendants and the alleged tort or dispute has minimal or no connection to Texas. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223 (Tex. 1991). Just as in Florida, in the context of tort cases, Texas applies four factors to determine which state has the "most significant relationship to the occurrence and the parties." *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979). These factors are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Wright v. C.R. Bard, Inc.*, No. 3:19-CV-2176-S, 2021 U.S. Dist. LEXIS 100659, at *3 (N.D. Tex. 2021). In this case, all of the factors weigh heavily to Florida having the most significant relationship and interest in adjudication this matter. The alleged injury, Cooper's alleged acts, Cooper's domicile and the place of incorporation and place of the business activities where the relationship of the parties is centered are all in Florida. For all of the reasons above stated, it would be unfair and substantially unjust to drag Cooper into Texas.

## VI.   CONCLUSION

49.   As shown herein, Plaintiff's have failed to show a basis upon which either general or specific jurisdiction arises in Texas over Cooper. Cooper's incidental contacts were wholly insufficient to render Cooper "essentially at home" in the state. Cooper had no contacts, nor took any actions to purposefully avail herself of any benefits or protections in

Texas. Plaintiffs fail to show with sufficient detail and specificity that Cooper conspired with any other defendants for any purpose. Plaintiffs also fail to show that any entity in Texas was harmed by any actions of Cooper. None of Plaintiffs' assertions, alone or taken together, are sufficient for due process concerns related to personal jurisdiction. Thus, Cooper prays that the Court dismiss the claims against her for lack of personal jurisdiction.

Dated: October 14, 2024

Respectfully submitted,

By:___/s/Steven C. Earl_____
Steven C. Earl
State Bar No. 24002028
Fed. Bar No. 21893
"Attorney in Charge"
James E. Graham
State Bar No. 24102973
Fed. Bar No. 3860768
128 Vision Park Blvd. Suite 140
Shenandoah, Texas 77384
Telephone: (281) 419-6200
Telecopier: (281) 419-0250

## CERTIFICATE OF SERVICE

I hereby certify that, on October 14, 2024, the foregoing was served on counsel for all parties of record to this litigation via the Court's CM/ECF system.

*/s/     Steven C. Earl*
Steven C Earl