**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, et al., | § | |
| | § | |
| Plaintiffs | § | Civil Action No. 4:24-cv-02767 |
| | § | |
| v. | § | |
| | § | |
| TYRRELL L. GARTH, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

---

**DEFENDANTS TYRRELL L. GARTH AND PHILLIP H. CLAYTON'S
MOTION TO DISMISS PURSUANT TO RULES 12(b)(6) AND 9(b)**

---

**BECK REDDEN LLP**

Fields Alexander – *Attorney in Charge*
State Bar No. 00783528
Federal Bar No. 16427
falexander@beckredden.com
Amy Parker Beeson – *of Counsel*
State Bar No. 24051156
Federal Bar No. 626178
abeeson@beckredden.com
Kaitie Sorenson – *of Counsel*
State Bar No. 24128633
Federal Bar No. 3859186
ksorenson@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANTS
TYRRELL L. GARTH AND PHILLIP H.
CLAYTON**

2696632

TABLE OF CONTENTS

PAGE

Table of Contents ............................................................................................................. i

Table of Authorities ...................................................................................................... iii

Nature and Stage of the Proceeding ............................................................................. 1

Request for Oral Argument ............................................................................................ 1

Summary of the Argument ............................................................................................. 2

Issues to be Ruled on and Standards of Review .......................................................... 3

Argument & Authorities ................................................................................................. 4

I.      Cause of Action No. 6. The Magnolia Companies Fail to State a Claim Against
        Garth for Fraud Based on Common Law Forgery. ............................................. 4

II.     Cause of Action No. 7. The Magnolia Companies Fail to State a Claim for Tortious
        Interference Against Garth or Clayton. ............................................................... 7

        A.      The Magnolia Companies fail to identify any contract with which Garth or
                Clayton purportedly interfered. ............................................................... 7

        B.      The Magnolia Companies fail to allege sufficient facts to plausibly infer
                that Garth or Clayton disseminated any "forged" promissory notes. .... 8

III.    Cause of Action No. 15. The Magnolia Companies Fail to State a Civil Conspiracy
        Claim Against Garth or Clayton. ........................................................................ 9

IV.     Cause of Action No. 16. Magness Fails to Plead a Fraudulent Inducement Claim
        Against Garth or Clayton. ................................................................................. 11

        A.      Magness fails to state a fraudulent inducement claim based on any alleged
                misrepresentation related to Starrex's proposed acquisition of the Magnolia
                Companies ............................................................................................. 12

                1.      Magness fails to identify a contract between himself and Garth or
                        Clayton. ..................................................................................... 12

                2.      Magness fails to state a claim under the remaining requirements for
                        a fraudulent inducement claim. ................................................. 13

        B.      Magness is contractually barred from asserting a fraudulent inducement
                claim related to the TPB Note. ............................................................... 17

i

V.      Cause of Action No. 17. TPB Fails to Plead a Fraudulent Inducement Claim or a
        DTPA Cause of Action against Garth..............................................................................19

        A.      TPB is contractually barred from asserting a fraudulent inducement claim
                related to the BSpoke Settlement Agreement or the TPB Note........................... 20

        B.      TPB fails to allege fraud with sufficient particularity under Rule 9(b). ............... 23

        C.      TPB fails to allege the required elements under the DTPA................................. 23

Conclusion .................................................................................................................................. 25

TABLE OF AUTHORITIES

CASES                                                                        PAGE(S)

*Adams Offshore Ltd. v. OSA Intern., LLC*,
   No. CIV.A. H-09-0465, 2011 WL 4625371 (S.D. Tex. Sept. 30, 2011) ................................10

*Aguocha v. Newrez LLC*,
   No. 14-20-00797-CV, 2022 WL 678290 (Tex. App.—Houston [14th Dist.]
   Mar. 8, 2022, no pet.)..............................................................................................24

*Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*,
   114 F.4th 382 (5th Cir. 2024) ...............................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................3, 10

*Bank of El Paso v. T.O. Stanley Boot Co., Inc.*,
   809 S.W.2d 279 (Tex. App.—El Paso 1991), *rev'd in part on other grounds*,
   847 S.W.2d 218 (Tex. 1992)...............................................................................25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................3, 15, 23

*Bernal v. Foster*,
   No. 3:19-CV-01321-X, 2020 WL 6082900 (N.D. Tex. Oct. 15, 2020) ...................................5

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*,
   313 F.3d 899 (5th Cir. 2002) .............................................................................24

*Burleson State Bank v. Plunkett*,
   27 S.W.3d 605 (Tex. App.—Waco 2000, pet. denied).........................................................25

*Carrier v. U.S. Bank, N.A.*,
   No. CIV.A. H-14-1347, 2014 WL 2807253 (S.D. Tex. June 20, 2014)............................14, 16

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
   394 F.3d 285 (5th Cir. 2004) .....................................................................6, 18, 21

*ClaimHub, Inc. v. Universal Risk Ins. Services, Inc.*,
   No. H-10-2841, 2011 WL 13247456 (S.D. Tex. July 25, 2011) ...........................................10

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
   525 S.W.3d 671 (Tex. 2017).................................................................................7

*Fif Eng'g, LLC v. Pac. Employers Ins. Co.*,
   No. CV H-24-665, 2024 WL 3448016 (S.D. Tex. July 17, 2024).........................................24

iii

*Fix v. Flagstar Bank, FSB,*
    242 S.W.3d 147 (Tex. App.—Fort Worth 2007, pet. denied) ................................24

*Forest Oil Corp. v. McAllen,*
    268 S.W.3d 51 (Tex. 2008).................................................................................21

*Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.,*
    612 F.3d 800 (5th Cir. 2010) ..............................................................................5

*Greater Ward African Methodist Episcopal Church v. Nationwide Mut.*
    *Fire Ins. Co.,*
    No. CV H-12-3472, 2013 WL 12137780 (S.D. Tex. Feb. 27, 2013) ....................15

*Haase v. Glazner,*
    62 S.W.3d 795 (Tex. 2001).................................................................................12

*Int'l Bus. Machines Corp. v. Lufkin Indus., LLC,*
    573 S.W.3d 224 (Tex. 2019)...........................................................................12, 21

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,*
    341 S.W.3d 323 (Tex. 2011).................................................................................4

*Jacuzzi, Inc. v. Franklin Elec. Co., Inc.,*
    No. CIV.A. 3:07-CV-1090, 2008 WL 190319 (N.D. Tex. Jan. 22, 2008) ............23

*Kafi, Inc. v. Sand Canyon Corp.,*
    No. 3:20-cv-00354, 2022 WL 3084480 (S.D. Tex. Aug. 3, 2022)..........................4

*In re Katrina Canal Breaches Litig.,*
    495 F.3d 191 (5th Cir. 2007) ..............................................................................18

*Kincaid v. Cummins Engine Co.,*
    No. 05-04-01803-CV, 2005 WL 1744959 (Tex. App.--Dallas July 26, 2005,
    no pet.) ............................................................................................................25

*Lake v. Cravens,*
    488 S.W.3d 867 (Tex. App.—Fort Worth 2016, no pet.)......................................16

*Lawrence v. Fed. Home Loan Mortg. Corp.,*
    808 F.3d 670 (5th Cir. 2015) ................................................................................4

*Marion v. U.S. Life Ins. Co. in N.Y.,*
    No. 4:23-cv-00149, 2024 WL 278912 (S.D. Tex. Jan. 2, 2024)..........................5, 6

*McDonald Oilfield Operations, LLC v. 3B Inspection, LLC,*
    582 S.W.3d 732 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ...........................7

iv

*Melder v. Morris,*
   27 F.3d 1097 (5th Cir. 1994) ........................................................................14

*Morgan Stanley & Co., Inc. v. Tex. Oil Co.,*
   958 S.W.2d 178 (Tex. 1997)............................................................................8

*Pace v. Cirrus Design Corp.,*
   93 F.4th 879 (5th Cir. 2024) ...........................................................4, 5, 7, 13, 14

*PCS Software, Inc. v. Dispatch Services, Inc.,*
   No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024)...................16, 17

*Pechon v. La. Dep't of Health & Hosps.,*
   368 F. App'x 606 (5th Cir. 2010) ....................................................................6

*Precision Motors, Inc. v. English,*
   517 S.W.2d 371 (Tex. App.–Beaumont 1974, no writ).......................................16

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.,*
   553 F.3d 869 (5th Cir. 2008) ...........................................................................4

*Reed v. Bank of Am., N.A.,*
   No. CV H-15-2005, 2016 WL 3058303 (S.D. Tex. May 31, 2016).........................5

*Riverside Nat'l Bank v. Lewis,*
   603 S.W.2d 169 (Tex. 1980)...........................................................................25

*Robinson v. Midland Cnty.,*
   80 F.4th 704 (5th Cir. 2023) ............................................................................8

*Schlumberger Tech. Corp. v. Swanson,*
   959 S.W.2d 171 (Tex. 1997)...........................................................................18

*Southland Secs. Corp. v. INSpire Ins. Sols., Inc.,*
   365 F.3d 353 (5th Cir. 2004) ..........................................................................14

*Spoljaric v. Percival Tours, Inc.,*
   708 S.W.2d 432 (Tex. 1986)......................................................................15, 16

*Stabilis Fund II LLC v. Compass Bank,*
   No. 3:18-CV-0283-B, 2018 WL 3768343 (N.D. Tex. Aug. 9, 2018)...............22, 23

*Stated v. GE Money Bank, FSB,*
   No. H-12-3406, 2014 WL 11697161 (S.D. Tex. May 13, 2014).............................5

*Taylor v. Ditech Fin., LLC,*
   No. CV H-16-2465, 2017 WL 2362493 (S.D. Tex. May 31, 2017 .........................24

v

*Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ................................................................3

*Tracy v. Chubb Lloyds Ins. Co. of Tex.*,
    2012 WL 2477706 (W.D. Tex. 2012).....................................................24

*Transcor Astra Group S.A. v. Petrobras Am. Inc.*,
    650 S.W.3d 462 (Tex. 2022), *reh'g denied* (Sept. 2, 2022)....................21

*Turner v. Pavlicek*,
    No. CIV.A. H-10-00749, 2011 WL 4458757 (S.D. Tex. Sept. 22, 2011 ...............................17

*Verastique v. City of Dallas*,
    106 F.4th 427 (5th Cir. 2024) ................................................................6

*Vertex Servs., LLC v. Oceanwide Hous., Inc.*,
    583 S.W.3d 841 (Tex. App.—Houston [1st Dist.] 2019, no pet.) .....................9, 10

*Villarreal v. Willacy Cnty. Sheriff's Dept.*,
    No. 1:24-cv-57, 2024 WL 3873751 (S.D. Tex. Jul. 19, 2024) ...................1

*Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*,
    No. CIV.H-04-2220, 2007 WL 1256612 (S.D. Tex. Apr. 30, 2007)................18, 19

**Statutes**

Tex. Bus. & Com. Code § 17.45(1)–(2) .......................................................24

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................3, 14

Fed. R. Civ. P. 12(b)(6)............................................................................2, 3, 13

vi

## NATURE AND STAGE OF THE PROCEEDING

This lawsuit arises from a complex series of transactions pursued in the hopes of establishing a national title agency footprint. That vision slowly disintegrated over the course of several years, culminating in this lawsuit. Plaintiffs filed this lawsuit in Harris County District Court on June 3, 2024, and multiple Defendants removed to this Court thereafter. Plaintiffs have alleged a bevy of seventeen claims against all or some of the fourteen Defendants named in this action, including a variety of negligence, fraud, breach of contract, and breach of fiduciary duty causes of action. Plaintiffs assert five causes of action against Defendant Tyrell L. Garth: (1) fraud based on common law forgery, (2) tortious interference, (3) conspiracy, (4) fraudulent inducement, and (5) violations of the DTPA. Plaintiffs allege merely three of those claims against Defendant Philip H. Clayton: tortious interference, conspiracy, and fraudulent inducement. This motion to dismiss focuses on the claims lodged against Garth and Clayton.[1]

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.5A and Section 16(b) of Judge Rosenthal's Court Procedures, Defendants Garth and Clayton request the opportunity to be heard on this motion to dismiss based on (1) the complexity of the case and (2) the Court's preference in granting oral hearings where doing so will allow young lawyers who contributed significantly to the motion to gain substantive speaking opportunities.

---

[1] This motion is timely based on the agreement of the parties for Clayton to answer or otherwise appear no later than October 31, 2024. Garth filed a general denial in state court prior to this case's removal to federal court. This motion is nevertheless timely with respect to Garth. A defendant does not waive his right to file motions to dismiss post-removal by filing answers in state court pre-removal. *Villarreal v. Willacy Cnty. Sheriff's Dept.*, No. 1:24-cv-57, 2024 WL 3873751, at *3 n.2 (S.D. Tex. Jul. 19, 2024). Further, under Rule 12(h)(2), a party may also move to dismiss for failure to state a claim under Rule 12(c) or at trial. *Id.* To the extent a court considers a Rule 12(b)(6) motion to be untimely, it may construe the motion as one for judgment on the pleadings under Rule 12(c), which is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Id.*

## SUMMARY OF THE ARGUMENT

Plaintiffs' allegations against Garth and Clayton fall far short of the standard required to plead claims sounding in fraud under Rule 9(b) and to otherwise survive a Rule 12(b)(6) motion to dismiss. As a preliminary matter, Plaintiffs' Original Petition almost entirely fails to mention Clayton or attribute any conduct to him whatsoever. The Petition fares little better in alleging sufficient facts as to Garth. For the reasons explained below, Plaintiffs' claims against Garth and Clayton should all be dismissed:

*Cause of Action No. 6: Fraud Based on Common Law Forgery*. The Magnolia Companies'[2] common law forgery claim against Garth fails to allege he engaged in any specific conduct related to the alleged forgery and fails to plausibly allege that a forgery even occurred. The allegations fall short of not only what is required by Rule 12(b)(6), but also the specificity required for claims sounding in fraud under Rule 9(b).

*Cause of Action No. 7: Tortious Interference*. The Magnolia Companies' tortious interference claim against Garth and Clayton similarly fails to allege either Garth or Clayton interfered with any specific contract between the parties and thus fails to state a claim upon which relief can be granted.

*Cause of Action No. 15: Conspiracy*. The Magnolia Companies' conspiracy claim against Garth and Clayton fails to allege Garth or Clayton participated in any underlying tort giving rise to the alleged civil conspiracy and thus fails to state a claim upon which relief can be granted.

*Cause of Action No. 16: Fraudulent Inducement*. Magness's fraudulent inducement claim against Garth and Clayton (1) fails to identify any contract Garth or Clayton allegedly induced him

---

[2] Unless otherwise stated, defined terms herein shall have the meanings ascribed to them in Plaintiffs' Original Petition.

to enter, (2) fails to allege any actionable misrepresentation, and (3) fails to plead with the particularity required for alleging fraud under Rule 9(b).

*Cause of Action No. 17: Fraudulent Inducement/DTPA*. TPB's fraudulent inducement and DTPA hybrid claim against Garth fails on both accounts. The fraudulent inducement claim is barred under binding contractual disclaimer of reliance provisions. The DTPA claim fails for a number of reasons, including TPB's failure to even allege it is a consumer of goods or services. Both claims fail for TPB's failure to plead with the specificity required under Rule 9(b).

### ISSUES TO BE RULED ON AND STANDARDS OF REVIEW

The issues to be ruled on are (1) whether Plaintiffs have pleaded their fraud claims with particularity under Rule 9(b) and (2) whether Plaintiffs have stated claims upon which relief can be granted under Rule 12(b)(6) for any claim asserted against Defendants Garth and Clayton.

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

Moreover, to plead claims for fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Rule 9(b)'s heightened pleading standard is applied "with 'bite' and 'without apology'" in order to "stand[] as

a gatekeeper to discovery" and "weed out meritless fraud claims sooner than later." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 891 (5th Cir. 2024).

**ARGUMENT & AUTHORITIES**

**I.**   **Cause of Action No. 6. The Magnolia Companies Fail to State a Claim Against Garth for Fraud Based on Common Law Forgery.**

The Magnolia Companies assert a claim of fraud based on common law forgery against Garth, among other Defendants. The Magnolia Companies fail to allege sufficient facts to plead a fraud claim based on common law forgery as to Garth under Rule 9(b) and 12(b)(6), and the claim should be dismissed.

Forgery is not a cognizable, stand-alone civil claim under Texas law. *Kafi, Inc. v. Sand Canyon Corp.*, No. 3:20-cv-00354, 2022 WL 3084480, at *10 (S.D. Tex. Aug. 3, 2022). In order to assert a civil claim based on an alleged forgery, a plaintiff must therefore plausibly allege the elements necessary to assert fraud:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).

Rule 9(b) requires claims sounding in fraud to be "stated with particularity." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872 (5th Cir. 2008). Because forgery is a type of fraud, Rule 9(b)'s heightened pleading standard applies. *Kafi, Inc.*, 2022 WL 3084480, at *3. Thus, to survive a motion to dismiss, a plaintiff asserting fraud based on a forgery must state the "who, what, when, where, and how of the fraud." *Pace*, 93 F.4th at 890.

4

The Magnolia Companies' fraud claim relies on the unsubstantiated allegation that Garth participated in forging Magness's signature on four promissory notes issued by each of the Magnolia Companies in favor of Starrex Insurance Services, Inc.[3] The Magnolia Companies provide detailed allegations of Garth's involvement in *drafting* the notes in question. *See* Pet. ¶¶ 91-99, 102 ("Garth sends Merritt the four draft notes, copying Magness"), 103 ("each promissory note drafted by Garth"). The Magnolia Companies fail, however, to plausibly allege that Garth had any involvement in the purported forgery. The Magnolia Companies rest their forgery claim against Garth on the bare allegation that the "draft promissory notes [were] later forged by Garth, Merritt, and Starrex using a photo of the signature of John Magness simply inserted into the draft PDFs." Pet. ¶ 106.

This unadorned, conclusory allegation is insufficient to state a claim for forgery. *Reed v. Bank of Am., N.A.*, No. CV H-15-2005, 2016 WL 3058303, at *3 (S.D. Tex. May 31, 2016); *see also Stated v. GE Money Bank, FSB*, No. H-12-3406, 2014 WL 11697161, at *6 (S.D. Tex. May 13, 2014) (involving similar, conclusory allegations of forgery); *Bernal v. Foster*, No. 3:19-CV-01321-X, 2020 WL 6082900, at *4 (N.D. Tex. Oct. 15, 2020) (same). The allegation fails to "separately identify the roles of individual defendants," nor does it explain how Garth was in any way involved in the purported forgery. *See Pace*, 93 F.4th at 891. The allegation also fails to plausibly allege that Magness's "signature was 'forged' with an intent to deceive, as [would be] required to state a valid claim for common law forgery." *Staten*, 2014 WL 11697161, at *6 (citing *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 806 (5th Cir. 2010)); *cf. Marion v. U.S. Life Ins. Co. in N.Y.*, No. 4:23-cv-00149, 2024 WL 278912, at *(S.D. Tex. Jan. 2, 2024)

---

[3] The promissory notes are the subject of a pending state court action between Starrex and the Magnolia Companies. Cause No. 2023-85306, *Starrex Int'l Ltd., et al. v. Coast to Coast Title, LLC, et al.*, in the 11th District Court of Harris County, Texas.

(wherein the plaintiff alleged the forger had altered his address and phone number to ensure he would not discover the forgery until it was too late). Magness himself is copied on virtually all of the communications the Magnolia Companies quote in their Petition regarding the notes—including the April 18, 2023 email Garth sent to Merritt and Magness attaching drafts of all four notes. Pet. ¶ 102.

The existence of the notes was not concealed from Magness either. Less than two weeks after the notes were purportedly "forged," Magness executed four Security Agreements along with a Letter of Intent pertaining to Starrex's proposed acquisition of the Magnolia Companies—all of which reference the notes that the Magnolia Companies now claim were forged. Pet. ¶¶ 115-19. The four Security Agreements, copies of which are attached hereto as Exhibits A through D, all explicitly state that they are being entered into "**as security for promissory notes issued by [the Magnolia Companies]**."[4] Exs. A – D. As Plaintiffs concede, Magness signed each of those documents "in wet ink" as he claims he "would have done with any important document." Pet. ¶ 117. Further, the Letter of Intent, a copy of which is attached hereto as Exhibit E, reflects the fact that the stock consideration for the proposed transaction "[had] been reduced by the aggregate expected **amount of promissory notes that will be outstanding at the Closing . . . of the Proposed Transaction in the aggregate amount of US\$4 million (the "Magnolias Debt"), which notes were recently issued by the Magnolias to Starrex Insurance Holdings, Inc.**"[5] Ex. E at 1. Magness signed the Letter of Intent no fewer than four times—also in wet ink. *Id.* at 9. The

---

[4] The Petition repeatedly references the Security Agreements, and the Court may therefore rely on them in deciding this motion to dismiss. *Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Verastique v. City of Dallas*, 106 F.4th 427, 430 n.1 (5th Cir. 2024) ("We 'must consider . . . documents incorporated into the complaint by reference.'").
[5] For the same reasons, the Court may consider the Letter of Intent.

Magnolia Companies' claim that Magness was somehow deceived and ignorant of the notes' existence is implausible.

The Magnolia Companies are nevertheless asking this Court to speculate not only that the notes were forged, but that Garth was connected to the alleged forgery. Plainly, that does not pass Rule 9(b) or 12(b)(6) muster. *Pace*, 93 F.4th at 892 ("If only speculation connects a defendant to any misrepresentations, that is not a plausible claim."). By failing to adequately plead common law forgery, the Magnolia Companies fail to state a claim for fraud. Garth's motion to dismiss the Magnolia Companies' claim of fraud based on common law forgery should be granted.

## II.     Cause of Action No. 7. The Magnolia Companies Fail to State a Claim for Tortious Interference Against Garth or Clayton.

The Magnolia Companies' tortious interference claim against Garth and Clayton relies on (1) their theory that Garth and Clayton interfered with certain, unspecified contracts and (2) their theory that Garth and Clayton allegedly disseminated "forged" promissory notes to the Magnolia Companies' underwriters. Both proffered theories fail.

### A.     The Magnolia Companies fail to identify any contract with which Garth or Clayton purportedly interfered.

To properly state a claim for tortious interference with a contract, a plaintiff must show: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

The Magnolia Companies' claim fails at the outset as it does not identify a single contract with which Garth or Clayton purportedly interfered. *See* Pet. ¶ 200; *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 751 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The Magnolia Companies' vague allegations with respect to "software license

7

agreements" and "IT resources" do not identify any specific contracts, and by their own admission, they are contracts with which *Merritt* and *Starrex Technical Services* allegedly interfered. *See* Pet. ¶¶ 200–12. Indeed, that section of the petition *never once* mentions Clayton and only refers to Garth *once* in the context of a years-old exchange in which he merely emphasized the importance of management support services. *See* Pet. ¶¶ 200–12. Nor do the Magnolia Companies *ever allege* that either Garth or Clayton was involved in the Magnolia Companies' wind-up process *at all*. Thus, the Magnolia Companies have failed to plausibly allege that Garth or Clayton interfered with any of the contracts at issue. This Court should therefore grant this motion to dismiss the Magnolia Companies' claim for tortious interference with a contract as to Garth and Clayton.

Dismissal of the tortious interference claim against Garth is proper notwithstanding any attempt by the Magnolia Companies to assert that Garth acted as an "agent" of Starrex Technical Services. *See* Pet. ¶¶ 45–49. The claim would still fail as a matter of law, since Texas recognizes that "a person must be a stranger to a contract to tortiously interfere with it, hence, a contracting party's agent or employee acting in the party's interests *cannot interfere* with the party's contract." *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 401 (5th Cir. 2024) (quoting *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997)) (cleaned up) (emphasis added). Even accepting the Magnolia Companies' allegations as true, their contention that Garth was acting as an agent of Starrex bars their fraudulent inducement claim as a matter of law. [6]

**B.      The Magnolia Companies fail to allege sufficient facts to plausibly infer that Garth or Clayton disseminated any "forged" promissory notes.**

The remaining allegation relating to the tortious interference claim relates to Garth and Clayton's alleged dissemination of "forged" promissory notes. *See* Pet. ¶ 385. Critically—and

---

[6] *See, e.g.*, *Robinson v. Midland Cnty.*, 80 F.4th 704, 709 (5th Cir. 2023).

2696632

fatally for the Magnolia Companies—nothing in the Petition alleges that Garth and Clayton were involved in the dissemination of any promissory note to any underwriter. Further, as already discussed at length above, the Magnolia Companies only ever allege that Garth *drafted* the supposedly "forged" promissory notes and fail to plausibly allege that the notes were forged at all. *See supra* Part I. The Magnolia Companies do not allege Garth or Clayton had any involvement in disseminating those notes to any underwriter. Dismissal of the Magnolia Companies' remaining tortious interference claim based on dissemination of any "forged" promissory notes is therefore also proper.

III.     **Cause of Action No. 15. The Magnolia Companies Fail to State a Civil Conspiracy Claim Against Garth or Clayton.**

The Magnolia Companies assert a claim for civil conspiracy against all Defendants, including Garth and Clayton. The "basis" for this supposed conspiracy is that there was a meeting of the minds regarding (1) forging notes and falsely presenting them, (2) shutting down and taking over the Magnolia Companies' title operations, and (3) interfering with the Magnolia Companies' title contracts. These allegations are all based on the common law fraud and tortious interference claims the Magnolia Companies have alleged against Garth and the tortious interference claim they have asserted against Clayton. As established in Parts I and II above, the Magnolia Companies have failed to state a claim for fraud or tortious interference. Moreover, the Magnolia Companies fail to provide more than a threadbare recital of the elements of a conspiracy without pleading any supporting facts. As a result, the alleged conspiracy claim fails as to Garth and Clayton.

For the Magnolia Companies to adequately plead a claim for civil conspiracy, they must plead facts sufficient to allege the required elements under Texas law: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Vertex Servs., LLC v.*

*Oceanwide Hous., Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "Civil conspiracy is not an independent tort, but a derivative tort that depends on *participation in some underlying tort* for which the plaintiff seeks to hold the defendant liable." *Id.* (emphasis added).

Because a conspiracy claim "'survives or fails alongside' the underlying tort alleged," *id.*, the claim must be dismissed when a plaintiff fails to state a claim for the underlying conduct. *See ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*, No. H-10-2841, 2011 WL 13247456, at *7 (S.D. Tex. July 25, 2011) (Rosenthal, J.) (finding that where plaintiff failed to plead sufficient facts for claim conspiracy was based on, the related conspiracy claim is also properly dismissed). The Magnolia Companies—having failed to sufficiently allege claims against Garth for fraud or against Garth or Clayton for tortious interference—have not pled a plausible claim for any conspiracy based on that same alleged conduct.

Moreover, as to the other required elements of conspiracy, the pleading does not state sufficient facts for a single required element. Rather, the entire conspiracy count is "a formulaic recitation of the elements of a cause of action' and, as to the facts surrounding the conspiracy, tenders naked assertions devoid of further factual enhancement." *See Adams Offshore Ltd. v. OSA Intern., LLC*, No. CIV.A. H-09-0465, 2011 WL 4625371, at *8 (S.D. Tex. Sept. 30, 2011) (Rosenthal, J.) (citing *Iqbal*, 556 U.S. at 678) (cleaned up). There are no allegations about how Garth or Clayton participated in any alleged conspiracy, any meeting of minds on the object of the alleged conspiracy, or any actions Garth or Clayton took in furtherance of the alleged conspiracy. To the extent the conspiracy claim is premised on any alleged fraud, those allegations must also comport with Rule 9(b), and the pleadings do not come close to satisfying the level of particularity

required. For these reasons, the Court should dismiss the civil conspiracy claim against Defendants Garth and Clayton.

## IV.     Cause of Action No. 16. Magness Fails to Plead a Fraudulent Inducement Claim Against Garth or Clayton.

Magness's claim for fraudulent inducement against Garth and Clayton is based primarily on a series of alleged misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies. Magness asserts that Garth and Clayton fraudulently induced him into "foregoing other lucrative employment opportunities;" "working without compensation;" and "causing Magness and the Magnolia Entities he managed to pursue a sham corporate 'acquisition' that Garth never intended to consummate." Pet. ¶ 442. Magness's real complaint is that the proposed acquisition never came to fruition. The misrepresentations he attributes to Garth and Clayton, however, do not provide a basis for a fraudulent inducement claim to compensate Magness for that grievance. Magness fails to even identify any contract he was fraudulently induced to enter. His allegations are devoid of the factual specificity required to assert a fraudulent inducement claim, and they should be dismissed as to both Garth and Clayton.

Magness separately alleges that Garth fraudulently induced him and TPB to issue a $100,000 promissory note in favor of Superior Am Cap Investments, LLC (the "TPB Note"). Magness is contractually barred from bringing a fraudulent inducement claim under the TPB Note's merger clause, and his claim that he was fraudulently induced into making the TPB Note should be dismissed.[7]

---

[7] The TPB Note is the subject of a pending state-court action filed by Superior Am Cap Investments, LLC. against both TPB and Magness. Cause No. 24DCCV0512, *Superior Am Cap Investments, LLC v. The Peabody Bulldog, LLC and John Magness*, in the 172nd District Court of Jefferson County, Texas.

A.     **Magness fails to state a fraudulent inducement claim based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies.**

1.     <u>Magness fails to identify a contract between himself and Garth or Clayton.</u>

"Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *see also Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). In order to state a claim for fraudulent inducement, Magness must therefore establish the elements of fraud *as they relate to an agreement between the parties*." *Id.* (emphasis added). Magness, however, fails to identify any such agreement.

Magness vaguely alleges he was fraudulently induced into foregoing "lucrative employment opportunities." This allegation plainly does not constitute fraudulent inducement. At best, it alleges Magness was induced into foregoing some hypothetical contract. When there is no contract, there is no detrimental reliance, and a fraudulent inducement claim cannot lie. *Haase*, 573 S.W.3d at 798. Magness also claims he was induced into "working without compensation." He fails, however, to identify any contract between himself and Garth or Clayton in which he undertook that purported obligation. Finally, Magness asserts that he was fraudulently induced into pursuing a transaction with Starrex on behalf of the Magnolia Companies. That transaction, however, was never consummated, and Magness again fails to identify any related contract between himself and Garth or Clayton. The only contract pertaining to Starrex's proposed acquisition of the Magnolia Companies cited in the Petition is a non-binding Letter of Intent between Starrex and the Magnolia Companies. *See* Pet. ¶ 119. Garth and Clayton, however, are neither parties nor signatories to that agreement. *See* Ex. E. Magness's failure to assert the existence of an agreement to which either Garth or Clayton was a party precludes him from asserting a fraudulent inducement claim as a matter of law.

12

2696632

2.     Magness fails to state a claim under the remaining requirements for a fraudulent inducement claim.

Even if Magness had identified a contract between himself and Garth or Clayton, he fails to plausibly allege the elements that would be necessary to assert a fraudulent inducement claim. He fails to adequately plead that Garth and Clayton: (1) "made a material misrepresentation;" (2) "knew at the time that the representation was false or lacked knowledge of its truth;" (3) "intended that *the plaintiff* should rely or act on the misrepresentation;" or that "(4) *the plaintiff* relied on the misrepresentation; and (5) *the plaintiff's* reliance on the misrepresentation caused injury." *Id.* Magness's pleadings fail to allege sufficient facts for any of these elements.

As a preliminary matter, Magness fails to allege *any* misrepresentations made by Clayton. The failure to separately identify Clayton's role in the alleged fraud renders the fraudulent inducement claim as to Clayton dead on arrival under Rule 9(b). *See Pace*, 93 F.4th at 891 (requiring pleading to "separately identify the roles of individual defendants" under Rule 9(b)).

While Magness alleges some purported misrepresentations were made by Garth, none is actionable. Each alleged misrepresentation fails to state a claim under Rule 12(b)(6) or offer sufficient particularity under Rule 9(b). With respect to Starrex's proposed acquisition of the Magnolia Companies, Magness alleges that Garth:

1.   "[a]ffirmatively, misstat[ed] that Starrex would 'raise $50 million in cash and a $50 million credit facility' to robustly capitalize and fund the combined Magnolia/Starrex operations post-merger;"

2.   falsely promised Magness he "would be appointed CEO and awarded a Board seat at Starrex after the merger, with no involvement from Starrex's existing leadership;"

3.   misrepresented his ability to inflate Starrex's stock price to $5 per share by summer 2023 and affirmatively "deceived Magness into believing he could forego substantial cash compensation since his future Starrex equity would make him extremely wealthy;" and

4.   deceived Magness into believing that Starrex planned to use the merged Magnolia Companies to aggressively acquire title companies nationwide, "necessitating

> Magness/Magnolias [to] sign[] oppressive NDAs with various target companies to facilitate this claimed growth strategy."

Pet. ¶¶ 68, 443.

These purported misrepresentations all lack at least one of the when, why, and how required for fraud claims under Rule 9(b). *See Pace*, 93 F.4th at 890. For three out of the four misrepresentations, Magness fails to state when or where the alleged misrepresentations were purportedly made and fails to allege the manner in which the misstatements were allegedly conveyed to Magness. Although Magness does allege he was promised he would become a director on the board of Starrex and be appointed CEO of Starrex at a meeting that took place on a specific date, *see* Pet. ¶ 71, those limited details are not sufficient to save his claim.

Magness fails to plead sufficient facts to plausibly explain why any of the alleged misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies were actually fraudulent. *See Carrier v. U.S. Bank, N.A.*, No. CIV.A. H-14-1347, 2014 WL 2807253, at *4 (S.D. Tex. June 20, 2014) (Rosenthal, J.) (citing *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Id.* (citing *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)). Magness must "set forth specific facts supporting an inference of fraud" to survive a motion to dismiss under Rule 9(b). *Id.* (citing *Melder*, 27 F.3d at 1102).

As to the first alleged misrepresentation, Magness asserts he was misled as to Starrex's intention to pursue capitalization and funding for the "combined Magnolia/Starrex operations *post-merger*." *See* Pet. ¶ 68 (emphasis added). He acknowledges, however, that the proposed merger never took place. *Id.* ¶ 128. Magness's allegation that the promised capitalization and funding were never "pursued or even contemplated" is insufficient to assert a fraudulent inducement claim when

14

the circumstances required to perform on the purported promise never came to fruition. After all, the failure to perform on a promise "is no evidence of the promissor's intent not to perform when the promise was made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Magness fails to allege facts supporting a reasonable inference that Garth did not believe that Starrex would pursue capitalization and funding for the post-merger entity *if the merger had taken place*. The fact that the transaction never came to fruition does not make his statements fraudulent.

The second alleged misrepresentation regarding Magness's leadership positions in the post-merger entity were also obviously contingent on consummation of the proposed merger. *See* Pet. ¶ 68. The Petition acknowledges the merger did not happen. The future event required for any performance on this alleged promise to be due never occurred. And the mere fact that the merger did not occur is not sufficient to allege that this representation was falsely made. Magness claims Garth supposedly knew the leadership positions promised to Magness "directly contradicted Starrex management's plan and intentions to remain [in control]." *Id.* However, Magness wholly fails to provide any facts from which to infer this conclusion. This bare, conclusory allegation fails to provide more than a label and conclusion and thus falls far short of what is required to survive a motion to dismiss. *See Greater Ward Afr. Methodist Episcopal Church v. Nationwide Mut. Fire Ins. Co.*, No. CV H-12-3472, 2013 WL 12137780, at *1 (S.D. Tex. Feb. 27, 2013) (Rosenthal, J.) (citing *Twombly*, 550 U.S. at 554).

Magness fails to plead any facts from which to plausibly infer that any of the alleged misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies were false or that Garth made them with knowledge of such falsity. Magness simply asserts that "[e]ach of these representations was knowingly false when made." Pet. ¶ 445. This is precisely the type of

"simple allegation[] that defendants possess fraudulent intent" that "will not satisfy Rule 9(b)." *See Carrier*, 2014 WL 2807253, at *4.

Moreover, none of the misrepresentations Garth purportedly made about *future events* that *might* transpire *if* Starrex had ever actually acquired the Magnolia Companies go beyond "mere 'puffery.'" *See PCS Software, Inc. v. Dispatch Servs., Inc.*, No. CV H-23-108, 2024 WL 3448009, at *2 (S.D. Tex. July 16, 2024) (Rosenthal, J.) (finding that statements about capabilities of software were mere puffery insufficient for the actionable misrepresentation required for fraudulent inducement claim). "The generally accepted rule is that predictions and conjectures relating to future events cannot serve as actionable fraud." *Lake v. Cravens*, 488 S.W.3d 867, 894–95 (Tex. App.—Fort Worth 2016, no pet.) (citing *Precision Motors, Inc. v. English*, 517 S.W.2d 371, 372 (Tex. App.—Beaumont 1974, no writ); *Spoljaric*, 708 S.W.2d at 435). The misrepresentations Magness cites are all based on future events that might have transpired if Starrex had actually acquired the Magnolia Companies. Starrex, however, was never under any obligation to do so. Starrex only ever entered into a non-binding Letter of Intent. *See* Ex. E. In fact, the only "legally binding" provision was the one allowing for the Letter of Intent to be terminated by either party:[8]

> Except as specifically provided for in paragraph 7, the provisions of this Letter Agreement are to be construed as <mark>not legally binding</mark> on the Parties.

*Id.* at 1.

Paragraph 7 allowed either party to terminate the Letter of Intent "if a Definitive Agreement was not entered into on or prior to 5:00 p.m. (Houston time) on, June 30, 2023, or such later date as the Parties may mutually agree to in writing." Ex. E at 5 ¶ 7(c). As a result, the alleged

---

[8] Plaintiffs refer to a "Binding Letter of Intent," but as is clear from looking at Exhibit E, it is explicitly non-binding. Ex. E at 1.

misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies suffer from an important defect—they are not the kind of statements that constitute actionable fraud. *See PCS Software, Inc.*, 2024 WL 3448009, at *2. Rather, they are no more than mere puffery or, at most, predictions about future events, and cannot constitute actionable misrepresentations required for fraudulent inducement.

Finally, to the extent any of the supposed misrepresentations were made to third parties, they do not give rise to a claim by Magness for fraudulent inducement. *See* Pet. ¶¶ 50, 54 (alleging misrepresentations regarding the proposed acquisition were made to B. Nelson Mitchell, HMH Title Investments, Kevin Gartland, and All American Title Co.). "Generally, a person is not entitled to relief for a fraudulent representation if it was not made to that person directly." *Turner v. Pavlicek*, No. CIV.A. H-10-00749, 2011 WL 4458757, at *11 (S.D. Tex. Sept. 22, 2011) (Rosenthal, J.). Absent well-pled allegations that Garth (1) intended for the alleged misrepresentations he made to third parties to be repeated to Magness and (2) knew that Magness would act in reliance on the misrepresentations, Magness's fraudulent inducement claim based on misrepresentations allegedly made to third parties fails. *Id.*

For all of these reasons, Magness has failed to state a claim for fraudulent inducement against Garth or Clayton based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies.

**B.** **Magness is contractually barred from asserting a fraudulent inducement claim related to the TPB Note.**

Magness also asserts a claim for fraudulent inducement based on the allegation that Garth promised neither he nor TPB would be required to pay back a $100,000 note issued by Magness and TPB in favor of Superior Am Cap Investments, LLC. The TPB Note, a copy of which is attached as Exhibit F to this motion, is central to Magness's claim. It is therefore properly

considered as part of the pleadings, and the Court may rely on it in deciding this motion.[9] The TPB

Note contains two significant provisions—(1) a provision requiring repayment of the debt and (2)

a merger clause:

> This Note is due and payable as follows:
>
> All unpaid principal and accrued and unpaid interest due hereunder shall be due and payable in full on August 31, 2022 (the "Final Maturity Date").

> THE WRITTEN AGREEMENT FOR THIS LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED ABOVE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Ex. F.

Under Texas law, a clear and unequivocal expression of intent to disclaim reliance on the

specific matters in dispute can preclude a claim of fraudulent inducement. *Whitney Nat. Bank v.*

*Air Ambulance by B & C Flight Mgmt., Inc.*, No. CIV.H-04-2220, 2007 WL 1256612, at *12 (S.D.

Tex. Apr. 30, 2007) (Rosenthal, J.) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d

171, 181 (Tex. 1997)). The question is whether the contract in question "clearly evince[s] an intent

to disclaim reliance on past representations." *Id.* at *11. The merger clause at issue here is nearly

identical to the merger clauses at issue in *Whitney National Bank*, one of which provided as

follows:

> THIS AGREEMENT, THE NOTE, AND THE OTHER LOAN DOCUMENTS REFERRED TO HEREIN EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERCEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND **MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR**

---

[9] *See supra* note 4. When a contract is referred to in the complaint, the contract is central to the plaintiff's claim, and the defendant attaches the contract to a motion to dismiss, that contract is properly considered part of the pleadings. In that circumstance, the Fifth Circuit allows courts to consider the terms of the contract in assessing a motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey*, 394 F.3d at 288).

**SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

*Id.* The Court evaluated the contract language chosen by the parties and noted that while the "merger clauses do not disclaim reliance on any specific representation," they do state "that earlier oral or written statements extrinsic to the agreements, related to their subject matter, are superseded by the agreements and may not contradict, supplement, or modify any contractual term." *Id.* at *12. As such, the Court concluded that the merger clauses "preclude a fraud claim based on prior representations that are related to the agreements . . . but that would vary or contradict their terms." *Id.*

Magness is advocating for exactly this result. His fraud claim purports to rely on an alleged prior representation that the TPB Note would be forgiven—a representation that if honored would directly vary and contradict the plain terms of the Note. The TPB Note explicitly requires all unpaid principal and interest to be paid in full by August 31, 2022. Magness cannot avoid that obligation by relying on an alleged, contradictory prior representation. The merger clause bars his claim for fraudulent inducement related to the TPB Note, and it should be dismissed.

**V.  Cause of Action No. 17. TPB Fails to Plead a Fraudulent Inducement Claim or a DTPA Cause of Action against Garth.**

TPB broadly alleges that Garth fraudulently induced it to give up its ownership interest in the BSpoke entities by allegedly promising (1) that TPB would receive 3 million shares of Starrex stock upon the consummation of Starrex's proposed acquisition of the Magnolia Companies and (2) that the TPB Note would be forgiven. Pet. ¶¶ 450–53. Neither allegation states a claim for fraudulent inducement or a violation of the DTPA.

TPB relinquished its interests in the BSpoke entities pursuant to the terms of a binding settlement agreement involving a host of parties including Magness, TPB, the Magnolia

19

Companies, the BSpoke entities, Garth, and Clayton (the "BSpoke Settlement Agreement"). The TPB Note was entered into months prior and bears no relationship to TPB's decision to relinquish its interests in the BSpoke entities. TPB's allegations fail to plausibly allege otherwise. Regardless, TPB is barred from asserting a claim for fraudulent inducement with respect to either document as they both contain binding disclaimers of reliance.

Even setting the reliance disclaimers aside, TPB's claims for fraudulent inducement fail as they are not asserted with the particularity required under Rule 9(b). TPB attempts to assert a cause of action based on the same conduct under the DTPA but fails to ever assert that TPB is a "consumer" under the statute or that the complained-of transactions involved the sale of any goods or services as is plainly required to state a DTPA claim.

A. **TPB is contractually barred from asserting a fraudulent inducement claim related to the BSpoke Settlement Agreement or the TPB Note.**

Both the BSpoke Settlement Agreement and the TPB Note contain provisions that bar fraudulent inducement claims. As set forth in detail above, the TPB Note's merger clause precludes claims of fraud that contradict its plain terms. *See supra* subpart IV.B. TPB is precluded from bringing a claim for fraudulent inducement based on an alleged representation that neither TPB nor Magness would have to repay the TPB Note when the Note specifically provides that it is due and payable and supplies a merger clause. *Id.*

TPB is also barred from bringing any claim that it was fraudulently induced to enter into the BSpoke Settlement Agreement by a valid and enforceable disclaimer of reliance provision. The BSpoke Settlement Agreement forms the basis for TPB's causes of action, and as with the other documents referenced in the Petition, it may properly be considered in deciding this motion

to dismiss. *See Causey*, 394 F.3d at 288. A true and correct copy of the BSpoke Settlement

Agreement is attached hereto as Exhibit G.[10]

"[P]arties who contractually promise not to rely on extra-contractual statements—more

than that, promise that they have in fact not relied upon such statements—should be held to their

word." *Transcor Astra Group S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 477 (Tex. 2022), *reh'g*

*denied* (Sept. 2, 2022), (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008)).

When "sophisticated parties represented by counsel disclaim reliance on representations about a

specific matter in dispute, such a disclaimer may be binding, conclusively negating the element of

reliance in a suit for fraudulent inducement." *Int'l Bus. Machines Corp.*, 573 S.W.3d at 229. To

determine whether a waiver of reliance provision is binding, courts consider whether:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during
> negotiations the parties specifically discussed the issue which has become the topic
> of the subsequent dispute;
> (2) the complaining party was represented by counsel;
> (3) the parties dealt with each other at arm's length;
> (4) the parties were knowledgeable in business matters; and
> (5) the release language was clear.

*Id.*

Here, all five considerations support finding that TPB disclaimed any reliance on

statements not explicitly included in the BSpoke Settlement Agreement:

> 14.     This Agreement and the agreements referenced herein and signed as part of
> the settlement contain the entire understanding and agreement between the Parties,
> and it **supersedes any prior or contemporaneous agreements, promises,**
> **statements, understandings, and/or representations**, oral or written, relating to
> the matters set forth herein, which shall be superseded, void and unenforceable.
> **Each Party understands that such Party is precluded from bringing any fraud**
> **or similar claim against any other Party based on any such communications,**
> **promises, agreements, statements, inducements, understandings, or**
> **representations. No oral statements or prior written material not specifically**
> **incorporated into this Agreement, or the agreements signed in connection with**

---

[10] Due to the confidential nature of the Agreement, all provisions not directly relevant to this motion to dismiss have been redacted.

**this Agreement shall be of any force and effect**, and no changes in or additions to this Agreement shall be recognized, unless incorporated into this Agreement by written amendment, such amendment to become effective on the date stipulated in it. Amy amendment to this Agreement must be signed by all Parties to this Agreement.

15.     Each of the Parties (only for himself, herself, or itself as the case may be) **agrees, promises, warrants, and represents that no promise, statement, agreement, representation, inducement, or condition which is not expressly set forth in writing in this Agreement has been made to any of the Parties in executing this Agreement and/or induce any other Party to enter into this Agreement**. To the extent any such statements have been made, **each Party expressly disclaims reliance on any such statement not set forth in writing in this Agreement**.

16.     The Parties acknowledge that they have been advised to consult with an attorney of their choice about the terms of this Agreement, and **each Party represents that it has consulted with such an attorney**.

17.     The Parties represent and warrant that this Agreement **is entered into without fraud or duress**, in good faith, and for sufficient and adequate good and valuable consideration.

Ex. G. First, the terms of the contract were negotiated and specific to the dispute and parties involved. The Agreement itself acknowledges that the agreements therein were negotiated and bargained for and not mere recitals. *Id.* ¶ 28. And the parties did specifically contemplate the issue that has become the topic of this dispute—TPB's giving up ownership interests in the BSpoke entities. That is quite literally the main subject of the BSpoke Settlement Agreement.

The release language is unequivocal in its disclaimer of reliance of any statements not set forth in writing in the Agreement. The Agreement further acknowledges that all parties consulted with an attorney, which would include TPB and Magness, so the complaining party was represented by counsel. *Id.* ¶ 16.

To the extent TPB argues that a disclaimer of reliance provision is improperly decided at the 12(b)(6) phase, that argument is without merit. *See Stabilis Fund II LLC v. Compass Bank*, No. 3:18-CV-0283-B, 2018 WL 3768343, at *1 (N.D. Tex. Aug. 9, 2018) (dismissing fraudulent

inducement claims barred by disclaimers of reliance where based on affirmative misrepresentations). In fact, courts have dismissed such fraudulent inducement claims barred by disclaimers of reliance with prejudice. *See id.* (dismissing fraudulent inducement claim barred by reliance disclaimer with prejudice).[11]

As a result, TPB's claim that it was fraudulently induced to give up its interests in the BSpoke entities is incapable of success. Due to the valid and enforceable disclaimer of reliance provisions in both the BSpoke Settlement Agreement and the TPB Note, TPB is categorically unable to plead facts sufficient to plausibly allege reliance on any suggested misrepresentations. Thus, the fraudulent inducement claim in Count 17 should be dismissed with prejudice for the failure to state a claim.

### B.   TPB fails to allege fraud with sufficient particularity under Rule 9(b).

Moreover, both alleged misrepresentations are devoid of the particularity required under Rule 9(b) for fraud claims. For the first alleged misrepresentation relating to the Starrex shares, TPB fatally neglects to allege the how and why required under the Rule. *See* Pet. ¶ 451. For the second alleged misrepresentation, TPB fails to allege the when, where, what, how, and why required under Rule 9(b). *Id.* ¶ 452. As a result, the fraudulent inducement claim based on these two misrepresentations can and should be dismissed on Rule 9(b) grounds alone.

### C.   TPB fails to allege the required elements under the DTPA.

TPB has also failed to allege any cognizable claim for an action under the DTPA, and the claim must be dismissed under Rule 12(b)(6) and 9(b). First, under Rule 9(b), the DTPA claim

---

[11] However, if the Court does consider it premature to decide at this stage, it does not relieve TPB of "its burden under *Bell Atlantic* to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Jacuzzi, Inc. v. Franklin Elec. Co., Inc.*, No. CIV.A. 3:07-CV-1090, 2008 WL 190319, at *5 (N.D. Tex. Jan. 22, 2008) (quoting *Bell Atl.*, 550 U.S. at 567). Here, TPB fails to allege any factual basis to avoid enforcement of the reliance disclaimer so, "the claim for relief is not facially plausible." *See id.* And since TPB was directly involved with the BSpoke Settlement Agreement, "any facts necessary to circumvent the reliance disclaimer should already be available to it, without the necessity of first conducting discovery." *See id.*

fails to satisfy the who, what, when, where, how, and why. DTPA claims are subject to Rule 9(b)'s heightened pleading standard where the gravamen of the claim is fraud. *Fif Eng'g, LLC v. Pac. Emps. Ins. Co.*, No. CV H-24-665, 2024 WL 3448016, at *3 (S.D. Tex. July 17, 2024) (Rosenthal, J.) (citing *Tracy v. Chubb Lloyds Ins. Co. of Tex.*, 2012 WL 2477706, at *7 (W.D. Tex. 2012)). And for the same reason the fraudulent inducement part of this claim fails under 9(b), the DTPA claim also fails. *See supra* subpart V.B.

Second, TPB also fails to state a claim upon which relief can be granted under the DTPA. "To bring a DTPA claim for a deceptive or unconscionable act, a plaintiff must show that: (1) *he or she is a consumer under the DTPA*; (2) the defendants committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA or engaged in an unconscionable action or course of action under § 17.50(a)(3); and (3) these acts were the producing cause of his or her actual damages." *Taylor v. Ditech Fin., LLC*, No. CV H-16-2465, 2017 WL 2362493, at *3 (S.D. Tex. May 31, 2017) (Rosenthal, J.) (citing *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002)). "To qualify as a consumer under the DTPA, a plaintiff 'must seek or acquire goods or services by lease or purchase.'" *Id.* (quoting *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied)). "For purposes of the DTPA, 'goods' is defined as 'tangible chattels or real property,' and 'services' is defined as 'work, labor, or service purchased or leased for use.'" *Aguocha v. Newrez LLC*, No. 14-20-00797-CV, 2022 WL 678290, at *4 (Tex. App.—Houston [14th Dist.] Mar. 8, 2022, no pet.) (citing Tex. Bus. & Com. Code § 17.45(1)–(2)).

TPB fails to make any allegation—even a mere conclusory one—that it is or was a consumer with respect to the BSpoke Settlement Agreement or the TPB Note. Negotiating a settlement agreement is not a consumer transaction, and TPB was not a consumer under that

Agreement. *See Kincaid v. Cummins Engine Co.*, No. 05-04-01803-CV, 2005 WL 1744959, at *1 (Tex. App.—Dallas July 26, 2005, no pet.) (mem. op.). TPB does not allege that it was seeking to acquire any goods or services by lease or purchase when it made the decision to settle the pending disputes and enter into the BSpoke Settlement Agreement. *Id.*

The TPB Note also cannot serve as a basis for a DTPA claim because "a loan of money is neither a good nor a service." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 614 (Tex. App.—Waco 2000, pet. denied) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980)); *Bank of El Paso v. T.O. Stanley Boot Co., Inc.*, 809 S.W.2d 279, 289 (Tex. App.—El Paso 1991), *rev'd in part on other grounds*, 847 S.W.2d 218 (Tex. 1992) ("[T]he mere lending of money is not a good or service . . . ."). While there are cases in which borrowers have qualified as consumers if the money was sought to acquire a good or service, TPB makes no such allegation. *See Plunkett*, 27 S.W.3d at 614. To the contrary, TPB alleges the Note was acquired so it could "pay taxes." Pet. ¶ 452.

Because TPB fails to allege even the most basic requirements for lodging a DTPA claim, and in fact cannot allege the elements required, the Court should dismiss TPB's DTPA claim without leave to amend.

### CONCLUSION

For the reasons set forth herein, Defendant Phillip H. Clayton respectfully requests the Court to dismiss Counts 7, 15, and 16 for Plaintiffs' failure to state a claim upon which relief can be granted under Rule 12(b)(6) and 9(b). Defendant Tyrrell L. Garth respectfully requests the Court dismiss Counts 6, 7, 15, 16, and 17 for the reasons outlined above.

2696632

Dated: October 28, 2024

Respectfully submitted,

**BECK REDDEN LLP**

By:     /s/ Fields Alexander
   Fields Alexander – *Attorney in Charge*
   State Bar No. 00783528
   Federal Bar No. 16427
   falexander@beckredden.com
   Amy Parker Beeson – *of Counsel*
   State Bar No. 24051156
   Federal Bar No. 626178
   abeeson@beckredden.com
   Kaitie Sorenson – *of Counsel*
   State Bar No. 24128633
   Federal Bar No. 3859186
   ksorenson@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone No. (713) 951-3700
Facsimile No. (713) 951-3720

**ATTORNEYS FOR DEFENDANTS
TYRRELL L. GARTH AND PHILLIP H.
CLAYTON**

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2024, I served the foregoing notice via the CM/ECF system, which will provide notice to all parties of record.

By */s/ Fields Alexander*
Fields Alexander

27