# EXHIBIT B

# PROMISSORY NOTE SECURITY AGREEMENT

THIS PROMISSORY NOTE SECURITY AGREEMENT (this "**Agreement**") is made as of April 29, 2023 by **Coast to Coast, LLC**, a Texas limited liability company/corporation (the "**Debtor**"), in favor of Starrex Insurance Services, Inc. ("**Secured Party**"). This Agreement is being entered pursuant to a letter of intent dated as of April 29, 2023 (the "**Letter of Intent**") and as security for promissory notes issued by the Debtor in the amount of US$1,300,000 on October 17, 2022 (as amended from time to time, the "**Note**"), by and among, *inter alios*, the Debtor, (collectively with the Debtor, the "**Magnolia Parties**"), Starrex Holdings, Inc., Starrex Insurance Holdings Inc. (collectively, the "**Starrex Subsidiaries**") and Starrex International, Ltd. ("**Starrex**"). All capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Note.

WHEREAS, the Letter of Intent consists of (i) the contributions of 100% of the issued and outstanding equity securities of the Starrex Subsidiaries, by Starrex and the contribution of 100% of the issued and outstanding equity securities of the Magnolia Parties by their respective equity holders to a newly formed U.S. corporation organized by Starrex ("**Newco**"), in exchange for Newco stock (the "**Acquisition**").

WHEREAS, as a condition to the closing of the Acquisition, the Debtor is required to enter into this Agreement to secure the obligations of the Debtor under each Note (as defined below).

WHEREAS, the Debtor shall receive direct and/or indirect benefits from the consummation of the transactions contemplated by the Letter of Intent.

For the sum of US$10.00 and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Debtor agrees with Secured Party as follows:

1. Certain Definitions. In this Agreement:

    (a) "Collateral" means, collectively, all of the Debtor's right, title and interest in the following assets: (i) all of the Debtor's Inventory, Accounts, Equipment, Fixtures, Investment Property, Deposit Accounts, General Intangibles, Documents, Instruments, Chattel Paper, Commercial Tort Claims, Letter-of-Credit Rights, Supporting Obligations, money and other personal property and (ii) all Products and Proceeds of the foregoing.

    (b) "Event of Default" means the occurrence or existence and continuance of an Event of Default (as defined in each Note).

    (c) "Excluded Assets" means any asset of the Debtor over which any mortgage, pledge, hypothecation, assignment (as security), deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest may not be granted due to the operation of applicable federal, state or local Law.

    (d) "Obligations" means: (i) all of Debtor's present and future monetary and other obligations to the Secured Party under the Note or otherwise; (ii) all of the Debtor's

EXHIBIT 5

- 2 -

present and future monetary and other obligations to Secured Party under this Agreement; and (iii) all of the foregoing obligations that arise after the filing of a petition by or against the Debtor under any bankruptcy, insolvency or similar law, even if the obligations do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise.

(e) "Permitted Liens" means whether now existing or hereafter arising or accruing, (i) any security interest in or other lien on any of the Collateral in favor of the Secured Party; (ii) any liens for federal, state or local taxes, assessments and other governmental charges not yet due and payable; (iii) statutory liens to (A) secure obligations to landlords, lessors or renters under leases or rental agreements or (B) in favor of carriers, warehousemen, and materialmen, to secure claims for labor, materials or supplies, which in each such case arose in the ordinary course of business and are not overdue; and (iv) liens in favor of a third party who is a bona fide provider or issuer of senior debt financing of the Debtor and who is not affiliated with the Debtor or any of their respective Affiliates.

(f) "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust, unincorporated association, government or political subdivision, (ii) any court, agency or other governmental body or (iii) any other entity, body, organization or group.

(g) "Schedule" means the Schedule attached to and made a part of this Agreement, as amended from time to time.

(h) "UCC" means the Uniform Commercial Code as in effect from time to time in the State of Nevada; provided, however, that if by reason of mandatory provisions of law, any or all of the perfection or priority of Secured Party's security interest in any item or portion of the Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of Nevada, the term "UCC" means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions hereof relating to such perfection or priority and for purposes of definitions relating to such provisions. Any capitalized or other term defined or used in the UCC and not defined in this Agreement or the Purchase Agreement has the meaning given to such term in the UCC.

2. Grant of Security Interest. The Debtor hereby grants to Secured Party for the ratable benefit of Secured Party a continuing security interest in all of the right, title and interest of the Debtor in, to and under the Collateral, wherever located, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, to secure the payment and performance of the Obligations, subject to Permitted Liens, and the Secured Party acknowledges and agrees that any right or remedy provided for herein may only be exercised in accordance with Section 10 of this Agreement.

3. Certain Covenants and Rights Concerning the Collateral.

(a) Taxes; Defense of Collateral. The Debtor will (i) before the date that a lien, security interest or any other encumbrance would be imposed by any Governmental

Certified Document Number: 111783843 - Page 2 of 12

- 3 -

Authority (with or without any action by such Governmental Authority or whether automatically), on any property of the Debtor, pay each tax, assessment, fee and charge imposed at any time by any government or political subdivision upon any of the Collateral or the acquisition, ownership, possession, use, operation or sale or other disposition thereof, except to the extent that such tax, assessment, fee or charge is being contested by the Debtor and (ii) defend the Collateral against each demand, claim, counterclaim, setoff and defense asserted at any time by any Person (other than those holding a Permitted Lien).

    (b)    <u>Obligations Relating to Collateral</u>.

    (i)    *Risk of Loss*.  The Debtor has the risk of loss of the Collateral.

    (ii)    *No Collection Obligation*.  Secured Party has no duty to preserve any rights relating to the Collateral after the occurrence and during the continuance of an Event of Default.

    (iii)    *No Assignment of Obligations*.  This Agreement does not constitute any assignment by the Debtor to Secured Party of any obligation of the Debtor relating to any of the Collateral or otherwise and the Debtor will at all times remain obligated to perform each such obligation.

    (c)    <u>No Disposition of Collateral</u>.  Other than in the ordinary course of the Debtor's business and other transactions entered into with Secured Party's knowledge, Secured Party does not authorize the Debtor to, and the Debtor will not: (i) make any sale, lease or other disposition of any of the Collateral outside the ordinary course of business, (ii) modify, compromise, cancel, subordinate or waive any material right relating to any of the Collateral except with respect to Permitted Liens or as otherwise described in this Agreement or (iii) grant or suffer to exist any security interest in or other lien upon any of the Collateral except Permitted Liens.

    (d)    <u>Debtors' Other Covenants</u>.  The Debtor (i) will preserve its existence and not, in one transaction or a series of related transactions, participate in any merger, consolidation, reorganization or similar transaction, or sell or otherwise transfer any of its assets, (ii) will not change the state of its incorporation or organization, (iii) will not change the location of any of the Collateral, (iv) will not change its legal name or business structure, (v) will conduct its business and use and maintain the Collateral in compliance with this Agreement and in material compliance with all applicable Laws, (vi) will maintain all-risk property insurance covering its assets reasonably satisfactory to Secured Party, naming Secured Party as lender's loss payee or the equivalent and entitling Secured Party to at least 30 days' prior written notice of policy cancellation or non-renewal, and provide evidence of such insurance to Secured Party and (vii) will promptly notify Secured Party of (A) any loss, theft or destruction of or damage to, or any demand, claim, counterclaim, setoff or defense affecting any Collateral, the value of which in the aggregate is at least $50,000, (B) any change regarding any information contained in Section 4 hereof or in the Schedule and (C) the occurrence or existence of any Event of Default.

Certified Document Number: 111783843 - Page 3 of 12

006695190 v1

- 4 -

(e) <u>Inspection and Verification</u>. No more than once per calendar year, Secured Party may inspect any of the Collateral in the Debtor's possession upon advanced notice; provided that if an Event of Default shall have occurred and be continuing, Secured Party may inspect the Collateral at any time with or without advance written notice. Secured Party may verify any of the Collateral not in the Debtor's possession in any commercially reasonable manner, whether directly with any Person obligated with respect thereto or in the name of the Debtor or otherwise; *provided that* unless an Event of Default shall have occurred and be continuing or the Debtor fails to promptly respond to any advance notice from the Secured Party to inspect such Collateral, Secured Party shall conduct such verification through the Debtor and not directly with such third Persons.

(f) <u>Transfer Restriction</u>. The Debtor shall not transfer to any Person any License or enter into any agreement or understanding to transfer any of the economic benefits of such License to any Person without the express consent required under the Act.

4. <u>Debtor's Representations and Warranties</u>. The Debtor represents and warrants that:

(a) <u>Certain Debtor Information</u>.

(i) The mailing address of the Debtor's principal office is the address identified in the Schedule.

(ii) The type of the Debtor's business structure is identified in the Schedule.

(iii) The Debtor's state of incorporation or organization is the state identified in the Schedule.

(iv) The Debtor's exact legal name is as set forth in the first paragraph of this Agreement, and any prior legal name used by the Debtor within the last year is identified in the Schedule.

(v) Any Deposit Account of the Debtor is described in the Schedule.

(vi) The Debtor has the registered trademarks, copyrights or patents or commercial tort claims set forth in the Schedule.

(b) <u>Title to and Transfer of Collateral</u>. The Debtor has rights in and the power to transfer its rights in the Collateral and its title to the Collateral is free of all adverse claims, liens, security interests and restrictions on transfer or pledge except with respect to Permitted Liens and as created or permitted by, or provided for in, this Agreement.

(c) <u>Location of Collateral</u>. All Goods included in the Collateral (other than inventory sold in the ordinary course of business and laptops, peripherals and other similar mobile equipment used by any of the Debtor's employees or consultants which are located

- 5 -

outside of the locations set for on the Schedule) are and will be maintained solely at the location or locations listed in the Schedule unless otherwise permitted herein and the information contained in the Schedule with respect to each such location is complete and accurate.

   (d) <u>Business Purpose</u>.  Any existing Obligations have been, and any future Obligations will be incurred solely for business or commercial purposes.

  5. <u>Costs</u>.  The Debtor will pay to Secured Party on demand, all reasonable costs incurred at any time by Secured Party in enforcing any of its rights or remedies hereunder, including (a) reasonable costs relating to the perfection or protection of the security interest granted herein or to the payment or performance by Secured Party, at its sole option, of any of the Debtor's obligations hereunder that the Debtor fails to timely pay or perform within ten (10) Business Days after receipt of written notice from Secured Party of such failure, (b) reasonable costs of foreclosure and other enforcement actions and (c) the reasonable fees and disbursements of external counsel to Secured Party in enforcing its rights or remedies hereunder.

  6. <u>Remedies upon Default</u>.

   (a) <u>General</u>.  After the occurrence and during the continuance of an Event of Default,

    (i) Secured Party shall have the right to declare all Obligations and all interest outstanding thereon and expenses and other amounts payable under this Agreement to be due and payable immediately; provided however, that in the case of an Event of Default under clause (d), (e), (f), (g) or (h) of the definition of Event of Default in the Note, such acceleration shall be automatic and without notice upon the occurrence of such Event of Default and (ii) Secured Party may pursue any right or remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce or satisfy any of the Obligations then owing, whether by acceleration or otherwise, or then otherwise outstanding.

   (b) <u>Concurrent Remedies</u>.  Without limiting the generality of Section 6(a) hereof, after the occurrence and during the continuance of any Event of Default, Secured Party has the right to pursue any of the following remedies separately, successively or concurrently, as applicable:

    (i) to file suit and Secured Party may seek any ancillary remedies available under applicable Law, including levy of attachment and garnishment;

    (ii) to enforce the Debtor's rights against Account Debtors and other obligors with respect to any Collateral and to instruct such Persons to pay all amounts owing by them to the Debtor directly to Secured Party;

Certified Document Number: 111783843 - Page 5 of 12

- 6 -

      (iii)    to take possession of any of the Collateral if not already in its possession without demand and without legal process but in accordance with the terms of this Agreement, and the Debtor grants to Secured Party the right, for this purpose subject to any rights of the property owner, to enter into or on any premises where any of the Collateral may be located and, upon Secured Party's demand, the Debtor will assemble and make the Collateral available to Secured Party at a reasonable location as it directs, and

      (iv)    with or without taking possession, to sell, lease or otherwise dispose of any of the Collateral at a public or private sale in accordance with the UCC.

Notwithstanding anything to the contrary herein, the Secured Party shall enforce all of its rights and remedies hereunder in accordance with the UCC, any other applicable Laws and Section 10 of this Agreement. The Debtor shall assist (and cause its agents and employees to assist), the Secured Party in enforcing all of its rights and remedies hereunder, including, without limitation, assisting in all communications or activities of the Secured Party with any Governmental Authority in exercising any of its remedies hereunder and taking all actions requested by the Secured Party with respect to the Collateral (including, without limitation, all actions necessary for any sales of the Collateral in accordance with the terms and conditions of this Agreement).

      7.    **Sale of Collateral Consisting of Securities.** If the Collateral includes any security (whether Investment Property or a General Intangible) that might be required to be registered pursuant to applicable law (including, but not limited to, the United States *Securities Act of 1933*, as amended from time to time (the "**Securities Act of 1933**")) before being permitted to be sold or otherwise disposed of, or offered for sale or other disposition, by Secured Party, and Secured Party opts for any sale or other disposition of such security without such registration, (a) Secured Party is not obligated to delay such sale or other disposition to permit such registration, and (b) in order to comply with such Law, Secured Party has the right to restrict the prospective purchasers in such sale or other disposition (including, but not limited to, restricting such prospective purchasers to Persons meeting specified requirements as to financial sophistication or intent to purchase for investment and not with a view to sale or other disposition), restrict the terms of such sale or other disposition (including, but not limited to, restricting future sales and other dispositions) and impose other restrictions on any aspect of such sale or other disposition (including, but not limited to, the advertising or conduct thereof).

      8.    **Standards for Sale or Other Disposition in Commercially Reasonable Manner.** If, after the occurrence and during the continuance of an Event of Default, Secured Party opts for any sale or other disposition of any portion of the Collateral, whether or not such portion of the Collateral is of a specialized nature, (a) no restrictions required by applicable Law on the prospective purchasers in such sale or other disposition (including, but not limited to, a restriction of such prospective purchasers to Persons meeting specified requirements as to financial sophistication or intent to purchase for investment and not with a view to sale or other disposition), restriction on the terms of such sale or other disposition (including, but not limited to, restricting future sales and other dispositions) or other restriction on any aspect of such sale or other disposition (including, but not limited to, the advertising or conduct thereof) imposed by Secured

Certified Document Number: 111783843 - Page 6 of 12

- 7 -

Party in order to comply with applicable law (including, but not limited to, the Securities Act of 1933) will be a factor in determining such sale or other disposition to have been made in other than a commercially reasonable manner, and (b) such sale or other disposition will not be determined to have been made in other than a commercially reasonable manner by reason of (i) Secured Party having obtained any insurance, credit enhancement or other protection to insure it against or reduce loss, or to provide it a guaranteed return, in connection with such sale or other disposition so long as such terms provide Secured Party with the highest price for the Collateral, (ii) such sale or other disposition having been advertised in a medium of general or limited circulation, (iii) such sale or other disposition not being made at the time and place therefor specified in any notice thereof provided that the adjournment thereof is announced at such specified time and place or a time and place announced at any adjournment thereof, (iv) such sale or other disposition being a public or private sale or other disposition, (v) such sale or other disposition being made in a wholesale or retail market, with or without any assistance of any auctioneer, consultant, broker, investment banker or other professional or with or without contacting any Person in the same business as the Debtor to determine its interest in acquiring such portion of the Collateral, (vi) the exercise by Secured Party of, or the failure by Secured Party to exercise, any collection remedy against any Person (obligated with respect to such portion of the Collateral), (vii) such sale or other disposition involving the sale or other disposition of such portion of the Collateral either for future delivery or for future payment without retention by Secured Party until such future payment and the failure of such future delivery or such future payment to occur, (viii) the failure of Secured Party to remove any lien or encumbrance on or adverse claim to such portion of the Collateral or (ix) the failure of Secured Party, except to the extent required by applicable law, to obtain any consent of any Person required for such sale or other disposition.

   9. General.

    (a) Cumulative Effect. All rights and remedies of Secured Party under this Agreement are cumulative and no such right or remedy is exclusive of any other such right or remedy. This Agreement does not modify or terminate any other agreement, instrument or other document binding upon the Debtor in favor of Secured Party.

    (b) Filing of Financing Statements. The Debtor authorizes Secured Party to file one or more financing statements describing the Collateral in any jurisdiction necessary to carry out the terms of this Agreement, and, without limiting the generality of foregoing, the Debtor authorizes Secured Party to use terms such as "All assets" or "All personal property and fixtures" to describe the Collateral.

    (c) Notices. Any notice or other communication required or permitted hereunder must be in writing and is sufficiently given if given in accordance with the requirements of the Note. Each requirement under applicable law of reasonable notice of any event by Secured Party to the Debtor will be deemed to have been met if the notice is given at least ten (10) days before the date on or after which the event is to occur.

    (d) Assignments. Each party hereto may assign any of its rights, interests or obligations under this Agreement or in respect of the Obligations to any affiliate or successor-in-interest of such party or any other third party, with the prior written consent

- 8 -

of other party, which may not be unreasonably withheld (in the case of affiliates and successors in interest) except that the rights, interests, obligations and duties of the Secured Party shall be assigned to any replacement Sellers' Representative as described in the Note.

(e) Severability. If any provision of this Agreement is found to be void, invalid or unenforceable by a court of competent jurisdiction, that finding will only affect the provisions found to be void, invalid or unenforceable and will not affect the remaining provisions of this Agreement.

(f) Binding Effect. This Agreement binds the Debtor, all other Persons who or that become bound as a debtor hereto and the legal representatives, successors and assignees of the Debtor and all other such Persons and inures to the benefit of and is enforceable by Secured Party and the legal representatives, successors, assignees or replacements of Secured Party.

(g) Headings. Section headings used in this Agreement are for convenience only. They are not a part of this Agreement and will not be used in construing it.

(h) Applicable Law, Jurisdiction, Venue and Jury Waiver. Section 17 of the Letter of Intent regarding governing law, jurisdiction, and dispute resolution shall apply to this Agreement, mutatis mutandis. THE PARTIES EXPRESSLY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL.

(i) Rules of Construction. In this Agreement, (i) no reference to "Proceeds" authorizes any sale, transfer or other disposition of the Collateral by the Debtor except as otherwise provided herein, (ii) "includes" and "including" are not limiting, (iii) "or" is not exclusive, (iv) "all" includes "any" and "any" includes "all," (v) any gender includes any other gender, as the context may require, and (vi) the terms "hereby," "hereof," "herein," "hereunder" and similar terms refer to this Agreement and not to any particular provision of it.

(j) Integration and Modifications. This Agreement is the entire agreement of the Debtor and Secured Party concerning its subject matter. Any modification to this Agreement must be made in writing and signed by the Debtor and Secured Party.

(k) Termination. This Agreement will remain in full force and effect until and will terminate only upon the final and indefeasible payment and performance in full of the Obligations (other than contingent obligations) and upon the termination of this Agreement, Secured Party will, at the Debtor's expense, execute and deliver to the Debtor such documents as the Debtor shall reasonably request to evidence the termination of this Agreement and the security interests and the release of the security interests on the Collateral.

(l) Further Assurances. The Debtor agrees to execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence, perfect or protect the security interest granted herein or to otherwise effectuate any of the rights or

- 9 -

remedies granted to Secured Party hereby, including without limitation (i) assisting the Secured Party in any disposition of the Collateral in accordance with this Agreement or (ii) assisting the Secured Party in negotiating with any Governmental Authority. The Debtor will furnish to Secured Party a description, in form and content satisfactory to Secured Party, of any Commercial Tort Claim hereafter acquired by the Debtor promptly after such Commercial Tort Claim arises. Any such Commercial Tort Claim constitutes part of the Collateral. Secured Party may attach any such description of any Commercial Tort Claim to this Agreement, and such description will form part of the Schedule. If any of the Collateral is at any time located on premises in which a Person other than the Debtor has any interest (whether such Person is an owner, mortgagee or landlord), the Debtor will, upon any request by Secured Party, (i) obtain and deliver with respect to such Person that is an Affiliate of the Debtor or (ii) use commercially reasonable efforts to obtain and delivery with respect to any such Person that is not an Affiliate of the Debtor, to Secured Party a landlord, bailee, or other applicable waiver, unless prohibited by applicable law, executed by such Person, in form and substance satisfactory to Secured Party.

(m)  **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by email (including those in portable document format) or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

10.  **Subordination.**

The Debtor shall not subordinate the security interest in the Collateral without the express written consent of the Secured Party.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the day and year first set forth above.

DEBTOR:

**Coast to Coast Title, LLC**

By: _____
Name: John Magness
Title: Sole Member, Board of Managers

SECURED PARTY:

**Starrex Insurance Holdings, Inc.**

By: _____
Name: Matthew D. Hill
Title: Chief Executive Officer

## SCHEDULE
## To
## Security Agreement

A.     Section 4(b) Certain Debtor Information:

(i)     Mailing address of Debtor's principal office:

        1888 Saint James Place, Suite 120
        Houston, Texas 77056

(ii)     Type of Debtors' business structure: limited liability company or corporation

(iii)     The Debtor's state of incorporation or organization: Texas

(iv)     List each prior legal name used by the Debtor within the last year: N/A

088269.06024 Business 23435309v3

{00065136.v1}

Certified Document Number: 111783843 - Page 11 of 12

Certified Document Number: 1117783843 - Page 12 of 12



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   October 28, 2024

Certified Document Number:        111783843 Total Pages:  12

*Marilyn Burgess*

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**