IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LTD., MAGNOLIA TITLE FLORIDA, LLC, THE PEABODY BULLDOG LLC, AND JOHN MAGNESS<br>*Plaintiffs*<br><br>V.<br><br>TYRELL L. GARTH, PHILLIP H. CLAYTON, DEBBIE MERRITT A/K/A DEBORAH MERRITT, MATTHEW D. HILL, CHARLES BURNS, P. GARRETT CLAYTON, SCOTT M. REEVES, ARIANE E. YOUNG, TINGLEMERRITT, LLP, STARREX TITLE FLORIDA, LLC, LAURIE COOPER, MARKETSTREET CAPITAL PARTNERS AR, LLC AND BRIAN A. BREWER<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.:4:24-cv-27679 |

## **DECLARATION OF JOHN MAGNESS**

I, John Magness, declare as follows:

1. My name is John Magness. I am over 21 years of age, of sound mind and competent to make this declaration. I have never been convicted of a crime and have personal knowledge of the facts stated below, which are true and correct. I declare under penalty of perjury that the statements below are true and correct. My date of birth is May 4, 1959.

2. I am the Manager for Coast to Coast Title, LLC, Sol City Title, LLC, Magnolia Title Florida, LLC, and Magnolia Title Arkansas, Ltd. (collectively, "Magnolia Entities"). I have held

this position since January 2022.

3. In my role, I am intimately familiar with the Magnolia Entities' business operations, data storage practices, confidential information, and trade secrets. The Magnolia Entities are title insurance agencies primarily involved in closing real estate transactions for the purpose of issuing title insurance policies.

**Direct Participation in Texas Meetings and Fraudulent Representations**

4. In September 2021, I attended a business meeting at the Starrex St. James location office in Houston, Texas, specifically in the 7th floor conference room of the management space. Present in person were Terry Garth, Phil Clayton, Bill York, Matt Hill, and myself. Scott Reeves participated in this meeting by phone. I also attended several other meetings at the Starrex office involving Scott Reeves, participating by phone.

5. During these meetings, Reeves actively participated in making fraudulent representations about Debbie Merritt's qualifications, specifically stating "Debbie can get that done" while referencing her purported expertise and educational credentials. Reeves specifically represented that Merritt possessed expertise in Canadian securities regulations due to her claimed educational background. These representations were made to me while I was physically present in Texas, with the specific intent to induce me to commit my business resources, time, and relationships to Starrex's Texas operations and to forego other valuable opportunities in the title industry. Additionally, Garth, Clayton, and Hill would tout Merritt's same qualifications, including her CFA and PhD.

6. I later learned these representations about Merritt's qualifications were false, as she did not possess the degrees or credentials that Reeves, Garth, Clayton, and Hill, represented she had during

these meetings. More specifically, I later learned that she had no college degree at all (although represented that she had an undergraduate degree in accounting), no MBA (as represented), no PhD at all (although represented that she had one from the UCLA Anderson School of Management in Global Economics and Management), and no CFA Charter from the CFA Institute (contrary to representations). I also learned that she had never even enrolled in these institutions.

**Scheme Targeting Texas Operations**

7. In April 2021, at a meeting at Post Oak Grill in Houston, Texas, Terry Garth and Phil Clayton specifically presented Scott Reeves as a key member of their team, emphasizing his role on regulatory boards and his oversight of securities compliance. This was part of their effort to recruit me and my Texas business operations. During this meeting, they represented that Reeves' oversight would ensure proper handling of all securities matters affecting Texas operations.

8. Throughout 2021 and 2022, Reeves participated in multiple phone calls specifically regarding raising money and acquisitions targeting Texas-based operations. These calls involved detailed discussions about Texas-based business activities and were directed at expanding operations within Texas.

9. Reeves served as Starrex counsel and personally negotiated with Nelson Mitchell and his counsel, Adam Fulkerson, both of whom were based in Texas, regarding his company's investment in our Texas-based operations. These negotiations occurred while I was present in Texas.

**Direct Interference with Texas Business Operations**

10. In early January 2024, Reeves took direct action to interfere with our Texas-based operations by sending an official letter to Qualia falsely stating that Starrex International, Ltd. owned our software deployment. *See* **EXHIBIT A, a true and correct copy of this letter.** This letter was sent at Debbie Merritt's request to support false claims that Starrex owned the deployment. Starrex International, Ltd. never owned the deployment and never owned all the data contained in the deployment, which was the Magnolias' exclusive, proprietary business property, intellectual property and trade secrets.

11. I had signed the very contract that initiated the Qualia deployment and did so as "Chairman" for Starrex Technical Services, a separate company from Starrex International, Ltd., at Debbie Merritt's instructions. *See* **EXHIBIT B, a true and correct copy of which is attached hereto**. It was sent via a DocuSign envelope entitled "Enterprise Order Form (Magnolia Title and Qualia)". *See* **EXHIBIT C, a true and correct copy of which is attached hereto.** Additionally, in December 2023, the Magnolias had made a payment of $33,374.75 to Qualia to cover their preexisting deployment through first quarter of 2024 through March.

12. Reeves' letter to Qualia directly resulted in the shutdown of our Texas operations and specifically interfered with:

   (a) Multiple active title insurance transactions for Texas customers
   
   (b) Employment relationships with Texas-based employees
   
   (c) Agency agreements with title insurers for Texas operations
   
   (d) Access to critical business data and systems for Texas operations

13. By ending the Qualia deployment the Magnolias had already paid for, Reeves' letter to Qualia materially contributed to the interference with and disruption of:

(a) All earnest money contracts and escrow agreements involving existing customers and Magnolia entities in Texas;

(b) Agency Agreements with multiple underwriters including ANTIC, Old Republic, Fidelity, and First American for Texas-based operations;

(c) Employment contracts with Texas-based employees; and

(d) Access to critical business systems.

14. After sending the letter to Qualia, Reeves took no action to correct the situation even after he knew or should have known that numerous Texas real estate closings were being disrupted, Texas customers were unable to close on their homes, and Texas operations and our employees were being severely damaged.

15. Thus, Reeves' actions directly facilitated the demise of the Texas-based Magnolias. Additionally, he caused employees to leave the Texas-based Magnolias by causing a shut down of critical business systems.

**Deliberate Targeting of Texas Business Relationships**

16. Reeves specifically targeted Texas-based business relationships by:

(a) Participating in meetings and calls where false representations were made about the expected appreciation of Starrex stock for Texas acquisitions including the "wealth event";

(b) Assisting in false representations about raising $50 million from "friends and family" for Texas acquisitions; and

(c) Supporting false claims about obtaining a $50 million credit facility for Texas business expansion.

17. Between April 2021 and 2023, Reeves actively participated in numerous calls and meetings specifically aimed at recruiting me and my Texas-based business connections.

18. These recruitment calls always had the same purpose: to convince me to bring my Texas business connections and operations to Starrex, with repeated representations about stock price increases, capital raises, and wealth generation opportunities specifically targeted at Texas-based operations.

19. Throughout this period, Reeves was actively involved in communications with Texas-based personnel and operations. His involvement was not casual or sporadic, but rather sustained and deliberate, with regular communications directed at Texas-based activities and personnel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  Nov 18, 2024  .

John Magness (Nov 18, 2024 18:09 CST)
John Magness

# EXHIBIT A



January 6, 2024

**BY E-MAIL**

QUALIA
201 Mission St, Suite 1800, San Francisco, CA
5700 South Mopac, Building D-410, Austin, TX

**Attention:**   Natalie Sanchex, Sr. Customer Success Manager - Strategic Accounts

Dear Ms. Sanchez:

**Re:**   Starrex International Ltd.  -  Authorized Signing Authorities
File No.  8187.001 SMR

I am corporate secretary and general counsel to Starrex International Ltd. ("**Starrex**").  This reply is to your inquiry email to Debbie Merritt, CFO of Starrex dated January 5, 2024 regarding Mr. John Magness purporting to have the authority to sign contracts on behalf of Starrex.

I confirm that Mr. Magness is NOT a director or officer of Starrex and, as such, he has no authority to bind Starrex in any contractual capacity.  I further confirm that the directors and officers of Starrex and, as such, the only contractual signing authorities of the company are as follows:

Matt Hill         President, CEO and a Director
Debbie Merritt   CFO
Scott Reeves     Corporate Secretary and Director
Garrett Clayton  Director
Charles Burns    Director

I trust that the foregoing is satisfactory.  Please contact me if you have any further questions or concerns.

Yours truly,
**TINGLE MERRETT LLP**

Scott M. Reeves
Assistant: Cathy Beglinger-Rivoire (403) 571-8007

SMR/cbr
cc.       Deb Merritt

{00722791 v1}

*#1250 Standard Life Building, 639 – 5th Avenue S.W.*
*Calgary, Alberta  T2P 0M9  Canada  T. 403-571-8000 F. 403-571-8008*
**Scott M. Reeves Direct Line 403-571-8015 Email sreeves@tinglemerrett.com**

# EXHIBIT B

# QUALIA FOR ENTERPRISE

# ORDER FORM

This Order Form is governed by the Qualia Master Agreement (the "Agreement") between Qualia Labs, Inc. ("Qualia") and   Starrex Technical Services   ("Customer").  Any capitalized terms used but not defined in this Order Form have the respective meanings given to them in the Agreement.  This Order Form is effective as of the last date signed below (the "Order Form Effective Date") with a start date of March 14, 2022 (the "Start Date").

Services

- Subject to the terms and conditions of the Agreement, Qualia hereby agrees to provide Customer with non-exclusive, non-transferable access during the Order Form Full Term (as defined below) to the latest version of Qualia Core and Qualia Connect, Qualia's client-facing portal.
- Qualia Core
    o Workflow: Qualia Core eliminates the need for multiple systems and rekeying information to complete a file. Process files faster with automatic property data retrieval and personalized dashboards for processors to track their tasks and workflows.  Qualia Core is an integrated solution that provides highly configurable custom workflows that provide automatic updates and notifications, trackable due dates, and custom reports.
    o Accounting: Qualia Core comes out of the box with fully operational accounting, reconciliations, fraud protection, and smart balancing features so that each closing's accounting flows smoothly. Customer can also use Qualia Core to monitor Customer's escrow accounts and reduce the work of reconciliation by getting alerted about potential fraud in minutes.
    o Reporting: Analyze Customer's bottom line with fully customizable reports. Harness Customer's data to monitor productivity and market more effectively to lenders and realtors.
    o Qualia may, from time to time, offer additional services in connection with Qualia Core.  Customer shall not be obligated to purchase any additional services, but in the event that Customer agrees to use any additional services, Qualia reserves the right to charge subscription or transactional fees related to such usage.
- Qualia Connect
    o Status updates: Customer's clients can track the progress of each order and receive real-time updates.
    o Messaging: Messages are attached to their respective orders, and Customer's team shares this inbox.  All communications are shared within the password protected portal.  This also helps lenders and realtors to keep communications organized by order.
    o Tasks: With the Information Request feature, Customers can configure requests so that the requests are sent automatically to different participants to obtain the necessary information electronically.  With the Closing Scheduler feature, the process of scheduling closings is streamlined to allow Customer's clients to select times that work for them based on Customer's availability.  These tasks also include automatic reminders.
    o Ordering and Quoting: Customer's clients can get quotes and order new closings with Customer.  Qualia Connect collects all of the relevant information, and Customer's clients will receive a quote with all of the fees broken down and can send Customer an order.
    o Mobile app: Customer's clients can do all of this right from their iPhone or Android.
    o Quoting Tool: Customer will receive a quoting calculator that Customer can add to Customer's website. Customer can now direct Customer's clients to Customer's website to register for Qualia Connect, login, or get quotes.

Fees

- Base Fee: $119,999: price for access to Qualia Core and Qualia Connect during each Order Form Current Term, entitling Customer to open 6,000 orders during each Order Form Current Term.  The Base Fee will be separated into quarterly payments. Orders will count towards the allotment once open, regardless of whether such order is later cancelled.

Qualia Labs, Inc.
04/12/2021 Version

STARREX015189

- Overage Fee: $29: price per Closed Order (as defined below) after Customer opens 6,000 orders during the Order Form Current Term.
- For example: If (a) Customer's plan allowed Customer to open 240 orders, (b) Customer had an Overage Fee per extra Closed Order of $99, and (c) Customer opened 250 orders: After opening 240 orders, Customer will be charged a $99 Overage Fee for each of the 10 additional orders opened that becomes a Closed Order, regardless of when such closed status is reached.

Term

- This Order Form will be binding and in full force and effect for the Order Form Full Term (as defined below).
- This Order Form commences on the Order Form Effective Date and continues for a period of 12 months from the Start Date (the "Initial Order Form Term"), unless earlier terminated in accordance with the Agreement.
- Upon expiration of the Initial Order Form Term, this Order Form shall renew automatically for additional successive twelve (12) month terms, unless either Party provides written notice of nonrenewal at least thirty (30) days prior to the end of the then-current term (each, a "Renewal Order Form Term"). For purposes of this Order Form, "Order Form Current Term" means, at the applicable point in time, the then-current Initial Order Form Term or Renewal Order Form Term, as applicable; and "Order Form Full Term" means the entire term of this Order Form. If either Party provides timely notice of its intent not to renew this Order Form, this Order Form terminates on the expiration of the Order Form Current Term, unless earlier terminated in accordance with the Agreement. Qualia may change any pricing or fees under this Order Form upon at least sixty (60) days' prior notice, and such change shall be effective as of the commencement of the subsequent Renewal Order Form Term.

Additional Terms

- Fees will be charged to credit card or debited (or obtained via another designated payment method) as incurred. All fees are non-refundable. Customers paying via credit card will be charged a credit card fee of up to $0.30 plus 2.9% per transaction, in addition to the amounts mentioned above.
- Customer hereby authorizes Qualia to, without prior notice and without any further approval, deduct such amounts from any prepaid or outstanding balance or to charge, debit or otherwise obtain such amounts from any designated payment method, as applicable.
- Interest of 1.5% per month, plus all expenses incurred by Qualia in connection with collection, apply to any overdue balance.
- A "Closed Order" meets one or more of the following criteria:
    - the order status is marked as "Closed"
    - 80% or more of the proceeds (or 80% or more of the draw amount if file is a HELOC) have been disbursed
    - the order is older than two (2) months from the close date listed on the order dashboard (or seven (7) months from the open date if there is no close date listed on the order dashboard)
    - Customer disburses the proceeds to itself; or
    - Final Policy is issued
- Customer shall not itemize or reference any fees paid or due to Qualia, or identify Qualia or any Qualia product or service, on any invoice, bill, or disclosure of costs submitted by or on behalf of Customer to any third party, including consumers of real estate transactions, in connection with any amounts payable by or on behalf of such third party (including any consumer) to Customer. Further, should Customer decide to increase any of its own fees to reflect, in whole or in part, any increase in its costs or overhead that is attributable to a Qualia product or service that Customer uses, Customer agrees that any such increase shall not exceed the amount that Customer paid for its use of such Qualia product or service.
- Each order will use both Qualia Core and Qualia Connect; there is no way to turn off Qualia Connect for individual orders.
- For the avoidance of doubt, the Start Date will not be adjusted, including situations where Customer has not yet received Services.
- In the event that there is a prior Order Form between the Parties for the same Services, this Order Form will serve to replace and terminate the prior Order Form for such Services.

Qualia Labs, Inc.
04/12/2021 Version

STARREX015190

IN WITNESS WHEREOF, the Parties have executed this Order Form by their signatures below.

| Qualia Labs, Inc. | Customer |
|---|---|
| Signature: *Stewart Watts* (DocuSigned by: 92C75D544F71478) | Signature: *[signature]* (DocuSigned by: E4037BF7976B490) |
| Printed Name: Stewart Watts | Printed Name: John Magness |
| Title: VP of Finance | Title: Chairman |
| Date: 3/10/2022 | Date: 3/10/2022 |

# EXHIBIT C

**From:** John Magness
**Sent:** Thursday, March 10, 2022 12:06 PM
**To:** Debbie Merritt CFA, PhD
**Subject:** Fwd: Completed: Qualia Legal: Signature Requested - Enterprise Order Form(Magnolia Title & Qualia)
**Attachments:** Enterprise Order Form with Magnolia Title (6226535002).pdf; Summary.pdf

Sent from my iPhone
Begin forwarded message:

> **From:** Qualia Legal via DocuSign <dse_NA3@docusign.net>
> **Date:** March 10, 2022 at 11:57:47 AM CST
> **To:** John Magness <johnmagness1020@gmail.com>
> **Subject: Completed: Qualia Legal: Signature Requested - Enterprise Order Form(Magnolia Title & Qualia)**
> **Reply-To:** Qualia Legal <qualia.contracts@qualia.com>



Your document has been completed

VIEW COMPLETED DOCUMENT

**Qualia Legal**
qualia.contracts@qualia.com

All parties have completed Qualia Legal: Signature Requested - Enterprise Order Form(Magnolia Title & Qualia).

Hi,

We have prepared and attached "Enterprise Order Form (Magnolia Title and Qualia)" for your signature. Please review and sign the document at your earliest convenience.

IMPORTANT NOTE: If you are signing on behalf of Magnolia Title, please be sure to include the FULL AND ACCURATE LEGAL BUSINESS NAME of Magnolia Title as "Customer" in the open text field located in the first paragraph. .

Thanks!

Powered by 

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
9B2454026DA04679B55FB72A4349AC243

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by Qualia Legal who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

STARREX015188

# Declaration of John Magness - Reeves FINAL

Final Audit Report                                        2024-11-19

| | |
|---|---|
| Created: | 2024-11-19 |
| By: | Philip Racusin (pracusin@hchlawyers.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAgdXrzFA6T239uTL1TRCDBWAvCL5PkKHw |

## "Declaration of John Magness - Reeves FINAL" History

- Document created by Philip Racusin (pracusin@hchlawyers.com)
  2024-11-19 - 0:05:34 AM GMT

- Document emailed to John Magness (johnmagness1020@gmail.com) for signature
  2024-11-19 - 0:05:42 AM GMT

- Email viewed by John Magness (johnmagness1020@gmail.com)
  2024-11-19 - 0:08:35 AM GMT

- Document e-signed by John Magness (johnmagness1020@gmail.com)
  Signature Date: 2024-11-19 - 0:09:59 AM GMT - Time Source: server

- Agreement completed.
  2024-11-19 - 0:09:59 AM GMT

Adobe Acrobat Sign