**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, et al., | § | |
| | § | |
| Plaintiffs | § | Civil Action No. 4:24-cv-02767 |
| | § | |
| v. | § | |
| | § | |
| TYRRELL L. GARTH, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

---

**DEFENDANTS TYRRELL L. GARTH AND PHILLIP H. CLAYTON'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT
TO RULES 12(b)(6) AND 9(b)**

---

**BECK REDDEN LLP**

Fields Alexander – *Attorney in Charge*
State Bar No. 00783528
Federal Bar No. 16427
falexander@beckredden.com
Amy Parker Beeson – *of Counsel*
State Bar No. 24051156
Federal Bar No. 626178
abeeson@beckredden.com
Kaitie Sorenson – *of Counsel*
State Bar No. 24128633
Federal Bar No. 3859186
ksorenson@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANTS
TYRRELL L. GARTH AND PHILLIP H.
CLAYTON**

2715480

TABLE OF CONTENTS

PAGE

Table of Contents ................................................................................................................ ii

Table of Authorities ........................................................................................................... iv

Nature and Stage of the Proceeding .................................................................................... 1

Request for Oral Argument ................................................................................................. 2

Summary of the Argument .................................................................................................. 2

Issues to be Ruled on and Standards of Review ................................................................. 3

Argument & Authorities ...................................................................................................... 4

I.  Cause of Action No. 7. The Magnolia Companies Fail to State a Claim for Tortious Interference Against Garth or Clayton. ................................................................. 4

II.  Cause of Action No. 15. The Magnolia Companies Fail to State a Civil Conspiracy Claim Against Garth or Clayton. ........................................................................... 6

III.  Cause of Action No. 16. Magness and TPB Fail to Plead a Fraudulent Inducement Claim Against Garth or Clayton. ........................................................................... 8

    A.  Magness fails to state a fraudulent inducement claim based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies ............................................................................................................. 8

    B.  Magness cannot claim fraudulent inducement based on alleged oral representations that the Starrex Promissory Notes specifically contradict. .......... 13

    C.  Magness and TPB are contractually barred from asserting a fraudulent inducement claim related to the TPB Note or the BSpoke Settlement Agreement. ....................................................................................................... 14

        1.  Magness and TPB are barred from asserting a fraudulent inducement claim related to the TPB Note. .............................................. 14

        2.  Magness and TPB are barred from asserting a claim for fraudulent inducement related to the BSpoke Settlement Agreement. ...................... 16

IV.  Cause of Action No. 17. TPB Fails to Plead a Fraudulent Inducement Claim or a DTPA Cause of Action against Garth. ................................................................... 18

    A.  TPB is contractually barred from asserting a fraudulent inducement claim related to the BSpoke Settlement Agreement or the TPB Note. ........................... 19

B.      TPB fails to allege fraud with sufficient particularity under Rule 9(b). ............... 20

C.      TPB fails to allege the required elements under the DTPA. ................................ 20

V.     Cause of Action No. 18. Magness and the Magnolia Companies Fail to Plead a Claim for Common Law Fraud Against Garth or Clayton. ...............................................21

VI.    Cause of Action No. 19. The Magnolia Companies Fail to Plead a Claim for Unjust Enrichment Against Garth or Clayton. ...............................................................................23

VII.   Cause of Action No. 20. The Magnolia Companies Fail to Plead a Claim for Fraudulent Inducement into the Management Services Agreement Against Garth or Clayton. ..................................................................................................................................25

Conclusion ........................................................................................................................ 25

2715480

TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Adams Offshore Ltd. v. OSA Intern., LLC*,
    No. CIV.A. H-09-0465, 2011 WL 4625371 (S.D. Tex. Sept. 30, 2011) ...................................7

*Aguocha v. Newrez LLC*,
    No. 14-20-00797-CV, 2022 WL 678290 (Tex. App.—Houston [14th Dist.]
    Mar. 8, 2022, no pet.)...................................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................4, 7

*Bank of El Paso v. T.O. Stanley Boot Co., Inc.*,
    809 S.W.2d 279 (Tex. App.—El Paso 1991), *rev'd in part on other grounds*,
    847 S.W.2d 218 (Tex. 1992)......................................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................4, 11, 18, 24

*Burleson State Bank v. Plunkett*,
    27 S.W.3d 605 (Tex. App.—Waco 2000, pet. denied)..............................................21

*Carrier v. U.S. Bank, N.A.*,
    No. CIV.A. H-14-1347, 2014 WL 2807253 (S.D. Tex. June 20, 2014)...........................10, 12

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...............................................................12, 14, 16, 24

*ClaimHub, Inc. v. Universal Risk Ins. Services, Inc.*,
    No. H-10-2841, 2011 WL 13247456 (S.D. Tex. July 25, 2011) .................................6

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
    525 S.W.3d 671 (Tex. 2017).......................................................................................4

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
    112 S.W.3d 854 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ...................13

*Eun Bok Lee v. Ho Chang Lee*,
    411 S.W.3d 95 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ..............................24

*Fif Eng'g, LLC v. Pac. Employers Ins. Co.*,
    No. CV H-24-665, 2024 WL 3448016 (S.D. Tex. July 17, 2024)............................20

*Fitzgerald v. Water Rock Outdoors, LLC*,
    536 S.W.3d 112 (Tex. App.—Amarillo 2017, pet. denied)......................................23

*Forest Oil Corp. v. McAllen*,
   268 S.W.3d 51 (Tex. 2008) ................................................................................... 17

*Greater Ward African Methodist Episcopal Church v. Nationwide Mut.*
   *Fire Ins. Co.*,
   No. CV H-12-3472, 2013 WL 12137780 (S.D. Tex. Feb. 27, 2013) .................................... 11

*Guardian Life Ins. Co. v. Kinder*,
   663 F. Supp. 2d 544 (S.D. Tex. 2009) ............................................................... 13, 14

*Haase v. Glazner*,
   62 S.W.3d 795 (Tex. 2001) ............................................................ 8, 9, 10, 22

*Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*,
   573 S.W.3d 224 (Tex. 2019) ....................................................................... 8, 17

*Jacuzzi, Inc. v. Franklin Elec. Co., Inc.*,
   No. CIV.A. 3:07-CV-1090, 2008 WL 190319 (N.D. Tex. Jan. 22, 2008) .............................. 18

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ......................................................................... 14

*Kincaid v. Cummins Engine Co.*,
   No. 05-04-01803-CV, 2005 WL 1744959 (Tex. App.--Dallas July 26, 2005,
   no pet.) ................................................................................................ 21

*Lake v. Cravens*,
   488 S.W.3d 867 (Tex. App.—Fort Worth 2016, no pet.) .......................................... 12

*Lloyd v. Junkin*,
   75 S.W.2d 712 (Tex. App.—Dallas 1934, no writ) ............................................... 22

*McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*,
   582 S.W.3d 732 (Tex. App.—Houston [1st Dist.] 2019, no pet.) .................................. 5

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ....................................................................... 11

*Pace v. Cirrus Design Corp.*,
   93 F.4th 879 (5th Cir. 2024) ............................................................ 4, 22, 24, 25

*PCS Software, Inc. v. Dispatch Services, Inc.*,
   No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024) .............................. 12, 13

*Pechon v. La. Dep't of Health & Hosps.*,
   368 F. App'x 606 (5th Cir. 2010) ................................................................... 12

v

*Riverside Nat'l Bank v. Lewis*,
    603 S.W.2d 169 (Tex. 1980)............................................................................21

*Schlumberger Tech. Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997)..........................................................................15

*Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) .........................................................................10

*Spoljaric v. Percival Tours, Inc.*,
    708 S.W.2d 432 (Tex. 1986)..........................................................................11

*Stabilis Fund II LLC v. Compass Bank*,
    No. 3:18-CV-0283-B, 2018 WL 3768343 (N.D. Tex. Aug. 9, 2018)....................18

*Stone v. Lawyers Title Ins. Corp.*,
    537 S.W.2d 55 (Tex. App.—Corpus Christi 1976), *aff'd in part, rev'd in part*,
    554 S.W.2d 183 (Tex. 1977)..........................................................................23

*Taylor v. Ditech Fin., LLC*,
    No. CV H-16-2465, 2017 WL 2362493 (S.D. Tex. May 31, 2017 .......................20

*Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ..........................................................................4

*Tracy v. Chubb Lloyds Ins. Co. of Tex.*,
    2012 WL 2477706 (W.D. Tex. 2012)..............................................................20

*Transcor Astra Group S.A. v. Petrobras Am. Inc.*,
    650 S.W.3d 462 (Tex. 2022), *reh'g denied* (Sept. 2, 2022)..............................17

*Verastique v. City of Dallas*,
    106 F.4th 427 (5th Cir. 2024) .........................................................................12

*Vertex Servs., LLC v. Oceanwide Hous., Inc.*,
    583 S.W.3d 841 (Tex. App.—Houston [1st Dist.] 2019, no pet.) .........................6

*Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*,
    No. CIV.H-04-2220, 2007 WL 1256612 (S.D. Tex. Apr. 30, 2007).................15, 16

*William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*,
    No. CV 14-03496, 2016 WL 3223313 (S.D. Tex. Mar. 8, 2016) ...........................9

**RULES**

Fed. R. Civ. P. 9(b) ....................................................................................4, 7, 11, 19, 24

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 3

Rules 12(b)(6) and 9(b)...........................................................................................1, 23

2715480

## NATURE AND STAGE OF THE PROCEEDING

This lawsuit arises from a complex series of transactions pursued in the hopes of establishing a national title agency footprint. That vision slowly disintegrated over the course of several years, culminating in this lawsuit. Plaintiffs filed this lawsuit in Harris County District Court on June 3, 2024, and multiple Defendants removed to this Court thereafter. Defendants Tyrrell L. Garth and Phillip H. Clayton filed their original Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) on October 28, 2024. Dkt. No. 17. Plaintiffs filed their Response to the Motion to Dismiss and their First Amended Complaint on November 18, 2024. Dkt. Nos. 27, 29. As set forth in Defendants Garth and Clayton's Reply in support of the Motion to Dismiss [Dkt. No. 30], they are filing this new Motion to Dismiss in order to address the new factual allegations and causes of action set forth in Plaintiffs' First Amended Complaint and to allow for the efficient consideration of the arguments raised in the original Motion to Dismiss.[1]

In the First Amended Complaint, Plaintiffs have alleged a bevy of twenty-one claims against all or some of the eleven Defendants named in this action, including a variety of negligence, fraud, breach of contract, and breach of fiduciary duty causes of action. Plaintiffs assert six causes of action against Defendants Garth and Clayton: tortious interference, civil conspiracy, fraudulent inducement, common law fraud, unjust enrichment, and fraudulent inducement into the Management Services Agreement. Plaintiffs allege an additional cause of action against Garth they characterize as a combined fraudulent inducement and DTPA claim. This Motion to Dismiss focuses on the claims lodged against Garth and Clayton.

---

[1] Plaintiffs filed their First Amended Complaint on November 28, 2024. This Motion to Dismiss is timely based on Federal Rule of Civil Procedure 15(a)(3).

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.5A and Section 16(b) of Judge Rosenthal's Court Procedures, Defendants Garth and Clayton request the opportunity to be heard on this motion to dismiss based on (1) the complexity of the case and (2) the Court's preference in granting oral hearings where doing so will allow young lawyers who contributed significantly to the motion to gain substantive speaking opportunities.

**SUMMARY OF THE ARGUMENT**

Plaintiffs' allegations against Garth and Clayton fall far short of the standard required to plead claims sounding in fraud under Rule 9(b) and to otherwise survive a Rule 12(b)(6) motion to dismiss. As a preliminary matter, Plaintiffs' First Amended Complaint almost entirely fails to mention Clayton or attribute any conduct to him whatsoever. The First Amended Complaint fares little better in alleging sufficient facts as to Garth. For the reasons explained below, Plaintiffs' claims against Garth and Clayton should all be dismissed:

*Cause of Action No. 7: Tortious Interference*. The Magnolia Companies'[2] tortious interference claim against Garth and Clayton fails to allege Garth or Clayton engaged in any conduct that would constitute willful or intentional interference with any of the identified contracts and thus fails to state a claim upon which relief can be granted.

*Cause of Action No. 15: Conspiracy*. The Magnolia Companies' conspiracy claim against Garth and Clayton fails to allege Garth or Clayton participated in any underlying tort giving rise to the alleged civil conspiracy and thus fails to state a claim upon which relief can be granted.

*Cause of Action No. 16: Fraudulent Inducement*. Magness and TPB's fraudulent inducement claim against Garth and Clayton (1) fails to plead facts sufficient to satisfy the

---

[2] Unless otherwise stated, defined terms herein shall have the meanings ascribed to them in Plaintiffs' First Amended Complaint.

2

elements of a claim for fraudulent inducement, (2) fails to plead with the particularity required for alleging fraud under Rule 9(b), and with respect to the TPB Note and the BSpoke Settlement Agreement (3) is barred under binding disclaimer of reliance provisions.

*Cause of Action No. 17: Fraudulent Inducement/DTPA*. TPB's hybrid fraudulent inducement and DTPA claim against Garth fails on both accounts. The fraudulent inducement claim is barred under binding contractual disclaimer of reliance provisions, and the DTPA claim fails due to TPB's failure to allege facts showing TPB was a consumer or that the contract at issue involved the acquisition of any goods or services. Both claims fail for TPB's failure to plead with the specificity required under Rule 9(b).

*Cause of Action No. 18: Common Law Fraud*. Magness and the Magnolia Companies' common law fraud claim fails to plead facts sufficient to state a claim and fails to plead with the requisite specificity under Rule 9(b).

*Cause of Action No. 19: Unjust Enrichment*. The Magnolia Companies' unjust enrichment claim fails to state a claim upon which relief can be granted as to Garth or Clayton because they fail to plead facts that are not merely conclusory and speculative.

*Cause of Action No. 20: Fraudulent Inducement*. The Magnolia Companies' fraudulent inducement claim based on the Management Services Agreement is a carbon copy of Cause of Action 18 and must be dismissed for the same reasons.

### ISSUES TO BE RULED ON AND STANDARDS OF REVIEW

The issues to be ruled on are (1) whether Plaintiffs have pleaded their fraud claims with particularity under Rule 9(b) and (2) whether Plaintiffs have stated claims upon which relief can be granted under Rule 12(b)(6) for any claim asserted against Defendants Garth and Clayton.

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must

2715480

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

Moreover, to plead claims for fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Rule 9(b)'s heightened pleading standard is applied "with 'bite' and 'without apology'" in order to "stand[] as a gatekeeper to discovery" and "weed out meritless fraud claims sooner than later." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 891 (5th Cir. 2024).

## ARGUMENT & AUTHORITIES

### I.    Cause of Action No. 7. The Magnolia Companies Fail to State a Claim for Tortious Interference Against Garth or Clayton.

The Magnolia Companies' tortious interference claim against Garth and Clayton relies on the theory that Garth and Clayton interfered with certain contracts during the wind-up of the Magnolia Companies. But they do not allege any facts supporting the inference that Garth or Clayton had *anything* to do with that process—much less that they interfered with any specific contract.

To properly state a claim for tortious interference with a contract, a plaintiff must show: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the

plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). As originally pled, the Magnolia Companies' claim for tortious interference failed to identify a single contract with which Garth or Clayton purportedly interfered. *See* Pet. ¶ 200; *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 751 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Nor did Plaintiffs plausibly allege Garth or Clayton engaged in any tortious conduct with respect to any of the Magnolia Companies' contracts.

In their First Amended Complaint, Plaintiffs attempt to put band aids on these two issues. *See* FAC ("FAC") ¶ 422. However, neither attempt to patch up this claim's deficiencies is successful. First, while Plaintiffs do more specifically name some categories of contracts, they fail to allege any facts to show Garth or Clayton interfered with any specific agreement. *Id.* Indeed, the portion of the First Amended Complaint addressing Defendants' alleged interference with the Magnolia Companies' contracts during the wind-up process *never once* mentions Clayton and only refers to Garth *once* in the context of a years-old exchange in which he merely emphasized the importance of management support services. *Id.* ¶¶ 223–35.

Plaintiffs attempt to address the second deficiency by throwing in a vague and conclusory statement that the alleged interference "[was] executed at the direction of Garth and Clayton, the masterminds behind the scheme to wind-up and exercise control over Magnolia Arkansas and Magnolia Florida." *Id.* ¶ 426. In sharp contrast to this statement, the factual section of the First Amended Complaint addressing the wind-up process of Magnolia Arkansas and Magnolia Florida does not mention Garth or Clayton *at all*. *Id.* ¶¶ 236–89.

There is no mention of how Garth or Clayton interfered with a single, specified contract, and there is no mention of how Garth or Clayton served as the purported "masterminds" of the

5

wind-up process. The Magnolia Companies have failed to plausibly allege that Garth or Clayton interfered with any of the contracts at issue. Therefore, this Court should dismiss the Magnolia Companies' claim for tortious interference against Garth and Clayton.

**II.     Cause of Action No. 15. The Magnolia Companies Fail to State a Civil Conspiracy Claim Against Garth or Clayton.**

The Magnolia Companies assert a claim for civil conspiracy against all Defendants, including Garth and Clayton. The "basis" for this supposed conspiracy is that there was a meeting of the minds regarding (1) fraudulently inducing the Magnolia Companies to sign certain promissory notes in favor of Starrex (the "Starrex Promissory Notes"), (2) forging Magness's signature on numerous, unspecified checks, (3) shutting down and taking over the Magnolia Companies' title operations, and (4) interfering with the Magnolia Companies' contracts during the wind-up process. For the Magnolia Companies to adequately plead a claim for civil conspiracy, they must plead facts sufficient to allege the required elements under Texas law: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "Civil conspiracy is not an independent tort, but a derivative tort that depends on *participation in some underlying tort* for which the plaintiff seeks to hold the defendant liable." *Id.* (emphasis added).

Because a conspiracy claim "'survives or fails alongside' the underlying tort alleged," *id.*, the claim must be dismissed when a plaintiff fails to state a claim for the underlying conduct. *See ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*, No. H-10-2841, 2011 WL 13247456, at *7 (S.D. Tex. July 25, 2011) (Rosenthal, J.) (finding that where plaintiff failed to plead sufficient facts for claim conspiracy was based on, the related conspiracy claim is also properly dismissed). The

6

Magnolia Companies fail to provide more than a threadbare recital of the elements of a conspiracy without pleading any supporting facts involving Garth or Clayton in any of the allegedly tortious underlying conduct. As a result, the alleged conspiracy claim fails as to Garth and Clayton.

Plaintiffs make the conclusory allegation that "Defendants" conspired to fraudulently induce the Magnolias to enter into the Starrex Promissory Notes and forge the checks on the Magnolia Companies' bank accounts. *See* FAC ¶ 486. With respect to both allegations, however, Plaintiffs fail to make any factual allegations regarding *Garth* or *Clayton*'s individual purported involvement. Neither Garth nor Clayton is even mentioned in the series of factual allegations regarding the allegedly forged checks. *Id.* ¶¶ 411–19. And with respect to the Starrex Promissory Notes, Plaintiffs' sole threadbare allegation is that Garth purportedly represented to Magness that "the notes would not be circulated and were only for purposes of the audit." The allegation is not pled with the factual specificity that would be required under Rule 9(b), and as set forth below, the representation (even if it were made) is not actionable as it conflicts with the plain terms of the Notes. *See infra* Part III. Further, as set forth above, Plaintiffs have not plausibly alleged Garth or Clayton interfered with any of the Magnolia Companies' contracts or that they were involved in the wind-up process at all. *See supra* Part I. The Magnolia Companies—having failed to sufficiently allege claims against Garth or Clayton for tortious interference—have not pled a plausible claim for any conspiracy based on that same alleged conduct.

Moreover, as to the other required elements of conspiracy, the pleading does not state sufficient facts for a single required element. Rather, the entire conspiracy count is "a formulaic recitation of the elements of a cause of action' and, as to the facts surrounding the conspiracy, tenders naked assertions devoid of further factual enhancement." *See Adams Offshore Ltd. v. OSA Intern., LLC*, No. H-09-0465, 2011 WL 4625371, at *8 (S.D. Tex. Sept. 30, 2011) (Rosenthal, J.)

2715480

(citing *Iqbal*, 556 U.S. at 678) (cleaned up). There are no allegations about how Garth or Clayton participated in any alleged conspiracy, any meeting of minds on the object of the alleged conspiracy, or any actions Garth or Clayton took in furtherance of the alleged conspiracy. For these reasons, the Court should dismiss the civil conspiracy claim against Garth and Clayton.

## III.    Cause of Action No. 16. Magness and TPB Fail to Plead a Fraudulent Inducement Claim Against Garth or Clayton.

Magness and TPB's claim for fraudulent inducement against Garth and Clayton is based primarily on a hodgepodge of misrepresentations Garth and Clayton allegedly made to Magness regarding Starrex's proposed acquisition of the Magnolia Companies. Magness's real complaint is that the proposed acquisition never came to fruition. The misrepresentations he attributes to Garth and Clayton, however, do not provide a basis for a fraudulent inducement claim to compensate Magness for that grievance. Magness fails to even identify any contract he was fraudulently induced to enter. The other alleged misrepresentations Magness and TBP cite to support their fraudulent inducement claim do not fare any better. All of the allegations are devoid of the factual specificity required to assert a fraudulent inducement claim, and the claims should be dismissed as to both Garth and Clayton.

### A.    Magness fails to state a fraudulent inducement claim based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies.

"Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *see also Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). In order to state a claim for fraudulent inducement, Magness must therefore establish the elements of fraud *as they relate to an agreement between the parties.*" *Id.* (emphasis added). Magness, however, fails to identify any such agreement.

2715480

Magness vaguely alleges that Garth and Clayton fraudulently induced him into "foregoing other lucrative employment opportunities;" "working without compensation;" and "causing Magness and the Magnolia Entities he managed to pursue a sham corporate 'acquisition' that Garth never intended to consummate." FAC ¶ 488. Magness's complaint that he was induced to *forego* entering into some unspecified contract plainly does not support a claim for fraudulent inducement. *See Haase*, 62 S.W.3d at 798 ("Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim. Thus, when a party has not incurred a contractual obligation, it has not been induced to do anything."). Magness's claim that he was induced into "working without compensation" similarly fails to identify any contract in which he undertook that purported obligation.

Finally, Magness asserts that he was fraudulently induced into pursuing a transaction with Starrex on behalf of the Magnolia Companies. That transaction, however, was never consummated. The only contract pertaining to Starrex's proposed acquisition of the Magnolia Companies cited in the Complaint is a non-binding Letter of Intent between Starrex and the Magnolia Companies. *See* FAC ¶ 143. Garth and Clayton, however, are neither parties nor signatories to that agreement, and Plaintiffs have not alleged Garth or Clayton was serving as an agent or otherwise authorized representative of Starrex with respect to that agreement. Absent that allegation, "asserting a fraudulent inducement claim against a third party to [a] contract is inconsistent with Texas case law. . . . Fraudulent inducement . . . requires *the plaintiff and defendant* to have entered into an enforceable contract.'" *William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*, No. CV 14-03496, 2016 WL 3223313, at *8 (S.D. Tex. Mar. 8, 2016) (emphasis added). Magness's failure to assert the existence of an agreement to which either Garth or Clayton

was a party or acted as an agent for a party precludes him from asserting a fraudulent inducement claim as a matter of law.

Even if Magness had properly identified a contract he was fraudulently induced into entering related to Starrex's proposed acquisition of the Magnolia Companies, he fails to plausibly allege the remaining elements that would be necessary to assert a fraudulent inducement claim. He fails to adequately plead that Garth or Clayton: (1) "made a material misrepresentation;" (2) "knew at the time that the representation was false or lacked knowledge of its truth;" (3) "intended that the plaintiff should rely or act on the misrepresentation;" or that "(4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Haase*, 62 S.W.3d at 798.

The misrepresentations Magness alleges include: (1) falsely promising Magness "would be appointed CEO and awarded a Board seat at Starrex after the merger, with no ongoing involvement from Starrex's existing leadership;" (2) misrepresenting their ability to inflate Starrex's stock price to $5 per share by summer 2023 and affirmatively "deceiv[ing] Magness into believing he could forego substantial cash compensation since his future Starrex equity would make him extremely wealthy;" (3) deceiving Magness into believing that Starrex planned to use the merged Magnolia Companies to aggressively acquire title companies nationwide, "necessitating oppressive nondisclosure agreements with targets to facilitate a growth strategy;" and (4) representing that Starrex would raise $50 million in cash and get a $50 million credit facility and that they "could use Starrex stock to induce other acquisitions." FAC ¶¶ 489, 491.

Magness fails to plead sufficient facts to plausibly explain why any of the alleged misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies were actually fraudulent. *See Carrier v. U.S. Bank, N.A.*, No. H-14-1347, 2014 WL 2807253, at *4 (S.D.

Tex. June 20, 2014) (Rosenthal, J.) (citing *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Id.* (citing *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)). Magness must "set forth specific facts supporting an inference of fraud" to survive a motion to dismiss under Rule 9(b). *Id.* (citing *Melder*, 27 F.3d at 1102).

The fact that Starrex's proposed acquisition of the Magnolia Companies never occurred does not make Garth or Clayton's representations fraudulent. Magness, for example, asserts he was promised leadership positions within Starrex after the merger/acquisition. *See* FAC ¶ 489 (emphasis added). However, this "promise" was obviously contingent on the consummation of the proposed merger/acquisition. The future event required for any performance on this alleged promise to be due never occurred. And after all, the failure to perform on a promise "is no evidence of the promissor's intent not to perform when the promise was made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Magness claims Garth supposedly knew the leadership positions promised to Magness "directly contradicted Starrex management's plan and intentions to remain [in control]." *Id.* However, Magness wholly fails to provide any facts from which to infer this conclusion. This bare, conclusory allegation fails to provide more than a label and conclusion and thus falls far short of what is required to survive a motion to dismiss. *See Greater Ward Afr. Methodist Episcopal Church v. Nationwide Mut. Fire Ins. Co.*, No. CV H-12-3472, 2013 WL 12137780, at *1 (S.D. Tex. Feb. 27, 2013) (Rosenthal, J.) (citing *Twombly*, 550 U.S. at 554).

Magness fails to plead any facts from which to plausibly infer that any of the other alleged misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies were false or that Garth made them with knowledge of such falsity. Magness simply asserts that "[e]ach of

11

these representations was knowingly false when made." FAC ¶ 497. This is precisely the type of "simple allegation[] that defendants possess fraudulent intent" that "will not satisfy Rule 9(b)." *See Carrier*, 2014 WL 2807253, at *4.

Moreover, none of the misrepresentations Garth purportedly made about *future events* that *might* transpire *if* Starrex had ever actually acquired the Magnolia Companies go beyond "mere 'puffery.'" *See PCS Software, Inc. v. Dispatch Servs., Inc.*, No. CV H-23-108, 2024 WL 3448009, at *2 (S.D. Tex. July 16, 2024) (Rosenthal, J.) (finding that statements about capabilities of software were mere puffery insufficient for the actionable misrepresentation required for fraudulent inducement claim). "The generally accepted rule is that predictions and conjectures relating to future events cannot serve as actionable fraud." *Lake v. Cravens*, 488 S.W.3d 867, 894–95 (Tex. App.—Fort Worth 2016, no pet.). The misrepresentations Magness cites are all based on future events that might have transpired if Starrex had actually acquired the Magnolia Companies. Starrex, however, was never under any obligation to do so. Starrex only ever entered into a non-binding Letter of Intent ("LOI"). *See* Ex. A.[3] In fact, the only "legally binding" provision was the one allowing for the LOI to be terminated by either party:[4]

> Except as specifically provided for in paragraph 7, the provisions of this Letter Agreement are to be construed as ==not legally binding== on the Parties.

Paragraph 7 allowed either party to terminate the LOI "if a Definitive Agreement was not entered into on or prior to 5:00 p.m. (Houston time) on, June 30, 2023, or such later date as the Parties may mutually agree to in writing." Ex. A at 5 ¶ 7(c). As a result, the alleged

---

[3] The Complaint repeatedly references the Letter of Intent, and the Court may therefore rely on it in deciding this motion to dismiss. *Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Verastique v. City of Dallas*, 106 F.4th 427, 430 n.1 (5th Cir. 2024) ("We 'must consider . . . documents incorporated into the complaint by reference.'").
[4] Plaintiffs refer to a "Binding Letter of Intent," but it is explicitly non-binding. Ex. A at 1.

misrepresentations related to Starrex's proposed acquisition of the Magnolia Companies suffer from an important defect—they are not the kind of statements that constitute actionable fraud. *See PCS Software, Inc.*, 2024 WL 3448009, at *2. Rather, they are no more than mere puffery or, at most, predictions about future events, and cannot constitute actionable misrepresentations. For all of these reasons, Magness has failed to state a claim for fraudulent inducement against Garth or Clayton based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies.

**B.      Magness cannot claim fraudulent inducement based on alleged oral representations that the Starrex Promissory Notes specifically contradict.**

Magness contends that Garth misrepresented that the Starrex Promissory Notes the only needed to be signed for purposes of the audit. *See* FAC ¶ 495. The allegation is not pled with the specificity required under Rule 9(b), and it is not actionable in any event. "A party who enters into a written contract, while relying on a contrary oral agreement does so at its own peril and is not rewarded with a claim of fraudulent inducement when the other party seeks to invoke its rights under the contract." *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 554 (S.D. Tex. 2009) (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). The four Starrex Promissory Notes all explicitly state:

> This Note is due and payable as follows:
>
> All unpaid principal and accrued and unpaid interest due hereunder shall be due and payable in full on June 23, 2023 (the "Final Maturity Date").

Exs. B–E. There can be no justifiable reliance on any representation Garth supposedly made that is contradicted by the express terms of the Notes indicating they were due and payable on June 23, 2023. *See Guardian Life Ins. Co.*, 663 F. Supp. 2d at 554. Further, all four Starrex Security

13

Agreements (which Magness concedes that he signed in wet ink, FAC ¶ 145) all explicitly state that they are being entered into "**as security for promissory notes issued by [the Magnolia Companies]**" and incorporate by reference the promissory notes."[5] Exs. F–I. The alleged misrepresentation Magness attributes to Garth cannot constitute fraudulent inducement as it conflicts with the plain terms of the contracts themselves.

Moreover, Garth is neither a signatory to the Starrex Promissory Notes or Security Agreements, nor have Plaintiffs pled any facts showing that Garth was an authorized agent or representative of Starrex at the time the alleged representation was made with respect to these contracts. As a result, Magness and TPB cannot bring a claim against Garth for fraudulent inducement relating to the Starrex Promissory Notes or Security Agreements.

### C. Magness and TPB are contractually barred from asserting a fraudulent inducement claim related to the TPB Note or the BSpoke Settlement Agreement.

#### 1. Magness and TPB are barred from asserting a fraudulent inducement claim related to the TPB Note.

Magness and TPB also assert a claim for fraudulent inducement based on the allegation that Garth promised neither Magness nor TPB would be required to pay back a $100,000 note issued by Magness and TPB in favor of Superior Am Cap Investments, LLC. The TPB Note is central to Magness's claim. Ex. J. It is therefore properly considered as part of the pleadings, and the Court may rely on it in deciding this motion.[6] The TPB Note contains two significant provisions—(1) a provision requiring repayment of the debt and (2) a merger clause:

---

[5] *See supra* note 3.

[6] *See supra* note 3. When a contract is referred to in the complaint, the contract is central to the plaintiff's claim, and the defendant attaches the contract to a motion to dismiss, that contract is properly considered part of the pleadings. In that circumstance, the Fifth Circuit allows courts to consider the terms of the contract in assessing a motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey*, 394 F.3d at 288).

2715480

> This Note is due and payable as follows:
>
> All unpaid principal and accrued and unpaid interest due hereunder shall be due and payable in full on August 31, 2022 (the "Final Maturity Date").

> THE WRITTEN AGREEMENT FOR THIS LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED ABOVE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Ex. J.

Under Texas law, a clear and unequivocal expression of intent to disclaim reliance on the specific matters in dispute can preclude a claim of fraudulent inducement. *Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, No. CIV.H-04-2220, 2007 WL 1256612, at *12 (S.D. Tex. Apr. 30, 2007) (Rosenthal, J.) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)). The question is whether the contract in question "clearly evince[s] an intent to disclaim reliance on past representations." *Id.* at *11. The merger clause at issue here is nearly identical to the merger clauses at issue in *Whitney National Bank*, one of which provided as follows:

> THIS AGREEMENT, THE NOTE, AND THE OTHER LOAN DOCUMENTS REFERRED TO HEREIN EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERCEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND **MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

*Id.* The Court evaluated the contract language chosen by the parties and noted that while the "merger clauses do not disclaim reliance on any specific representation," they do state "that earlier oral or written statements extrinsic to the agreements, related to their subject matter, are superseded

15

by the agreements and may not contradict, supplement, or modify any contractual term." *Id.* at *12. As such, the Court concluded that the merger clauses "preclude a fraud claim based on prior representations that are related to the agreements . . . but that would vary or contradict their terms." *Id.*

Magness and TPB are advocating for exactly this result. Their fraud claim purports to rely on an alleged prior oral representation that the TPB Note would be forgiven—a representation that if honored would directly vary and contradict the plain terms of the Note. The TPB Note explicitly requires all unpaid principal and interest to be paid in full by August 31, 2022. Magness and TPB cannot avoid that obligation by relying on an alleged, contradictory prior oral representation. The merger clause bars Magness and TPB's claim for fraudulent inducement related to the TPB Note, and it should be dismissed.

### 2. Magness and TPB are barred from asserting a claim for fraudulent inducement related to the BSpoke Settlement Agreement.

Magness and TPB are also barred from bringing any claim that they were fraudulently induced to enter into the BSpoke Settlement Agreement by a valid and enforceable disclaimer of reliance provision. TPB relinquished its interests in the BSpoke entities pursuant to the terms of a binding settlement agreement involving a host of parties including Magness, TPB, the Magnolia Companies, the BSpoke entities, Garth, and Clayton (the "BSpoke Settlement Agreement").[7]

"[P]arties who contractually promise not to rely on extra-contractual statements—more than that, promise that they have in fact not relied upon such statements—should be held to their word." *Transcor Astra Group S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 477 (Tex. 2022), *reh'g*

---

[7] *See* Ex. K. Due to the confidential nature of the Agreement, all provisions not directly relevant to this motion to dismiss have been redacted. The BSpoke Settlement Agreement forms the basis for multiple of Magness's and TPB's causes of action, and as with the other documents referenced in the First Amended Complaint, it may properly be considered in deciding this motion to dismiss. *See Causey*, 394 F.3d at 288.

*denied* (Sept. 2, 2022), (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008)).

When "sophisticated parties represented by counsel disclaim reliance on representations about a

specific matter in dispute, such a disclaimer may be binding, conclusively negating the element of

reliance in a suit for fraudulent inducement." *Int'l Bus. Machines Corp.*, 573 S.W.3d at 229. To

determine whether a waiver of reliance provision is binding, courts consider whether:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during
> negotiations the parties specifically discussed the issue which has become the topic
> of the subsequent dispute;
> (2) the complaining party was represented by counsel;
> (3) the parties dealt with each other at arm's length;
> (4) the parties were knowledgeable in business matters; and
> (5) the release language was clear.

*Id.* Here, all five considerations support finding that Magness and TPB disclaimed any reliance on

statements not explicitly included in the BSpoke Settlement Agreement:

> 14.    This Agreement and the agreements referenced herein and signed as part of
> the settlement contain the entire understanding and agreement between the Parties,
> and it <u>supersedes any prior or contemporaneous agreements, promises, statements,</u>
> <u>understandings, and/or representations</u>, oral or written, relating to the matters set
> forth herein, which shall be superseded, void and unenforceable. <u>Each Party</u>
> <u>understands that such Party is precluded from bringing any fraud or similar claim</u>
> <u>against any other Party based on any such communications, promises, agreements,</u>
> <u>statements, inducements, understandings, or representations</u>. <u>No oral statements or</u>
> <u>prior written material not specifically incorporated into this Agreement, or the</u>
> <u>agreements signed in connection with this Agreement shall be of any force and</u>
> <u>effect</u> . . . .
>
> 15.    Each of the Parties (only for himself, herself, or itself as the case may be)
> <u>agrees, promises, warrants, and represents that no promise, statement, agreement,</u>
> <u>representation, inducement, or condition which is not expressly set forth in writing</u>
> <u>in this Agreement has been made to any of the Parties in executing this Agreement</u>
> <u>and/or induce any other Party to enter into this Agreement</u>. To the extent any such
> statements have been made, <u>each Party expressly disclaims reliance on any such</u>
> <u>statement not set forth in writing in this Agreement</u>.

Ex. K. First, the terms of the contract were negotiated and specific to the dispute and parties

involved. The Agreement itself acknowledges that the agreements therein were negotiated and

bargained for and not mere recitals. *Id.* ¶ 28. And the parties did specifically contemplate the issue that has become the topic of this dispute—TPB's giving up ownership interests in the BSpoke entities. That is quite literally the main subject of the BSpoke Settlement Agreement.

The release language is unequivocal in its disclaimer of reliance of any statements not set forth in writing in the Agreement. The Agreement further acknowledges that all parties consulted with an attorney, which would include TPB and Magness, so the complaining party was represented by counsel. *Id.* ¶ 16.

To the extent Magness and TPB argue that a disclaimer of reliance provision is improperly decided at the 12(b)(6) phase, that argument is without merit. *See Stabilis Fund II LLC v. Compass Bank*, No. 3:18-CV-0283-B, 2018 WL 3768343, at *1 (N.D. Tex. Aug. 9, 2018) (dismissing fraudulent inducement claims barred by disclaimers of reliance where based on affirmative misrepresentations). In fact, courts have dismissed such fraudulent inducement claims barred by disclaimers of reliance with prejudice. *See id.* (dismissing fraudulent inducement claim barred by reliance disclaimer with prejudice).[8] As a result, Magness and TPB's claim that it was fraudulently induced to give up its interests in the BSpoke entities is incapable of success.

## IV.   Cause of Action No. 17. TPB Fails to Plead a Fraudulent Inducement Claim or a DTPA Cause of Action against Garth.

TPB broadly alleges that Garth fraudulently induced it to give up its ownership interest in the BSpoke entities by allegedly promising (1) that TPB would receive three million shares of Starrex stock upon the consummation of Starrex's proposed acquisition of the Magnolia

---

[8] Even if the Court were to consider the issue premature to decide at this stage, Magness and TPB are not relieved of "[their] burden under *Bell Atlantic* to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Jacuzzi, Inc. v. Franklin Elec. Co., Inc.*, No. 3:07-CV-1090, 2008 WL 190319, at *5 (N.D. Tex. Jan. 22, 2008) (quoting *Bell Atl.*, 550 U.S. at 567). Here, Magness and TPB fail to allege any factual basis to avoid enforcement of the reliance disclaimer so, "the claim for relief is not facially plausible." *See id.* And since Magness and TPB were directly involved with the BSpoke Settlement Agreement, "any facts necessary to circumvent the reliance disclaimer should already be available to it, without the necessity of first conducting discovery." *See id.*

Companies and (2) that the TPB Note would be forgiven. FAC ¶¶ 502–04. Neither allegation states a claim for fraudulent inducement or a violation of the DTPA, and neither claim is asserted with the particularity required under Rule 9(b). Further, the claim is barred due to binding disclaimers of reliance. TPB attempts to assert a cause of action based on the same conduct under the DTPA but fails to plausibly allege that TPB was a consumer or that the contracts at issue were for the acquisition of goods or services.

> ### A.    TPB is contractually barred from asserting a fraudulent inducement claim related to the BSpoke Settlement Agreement or the TPB Note.

Both the BSpoke Settlement Agreement and the TPB Note contain provisions that bar fraudulent inducement claims. As set forth in detail above, the TPB Note's merger clause precludes claims of fraud that contradict its plain terms. *See supra* section III(C)(1). TPB is precluded from bringing a claim for fraudulent inducement based on an alleged representation that neither TPB nor Magness would have to repay the TPB Note when the Note specifically provides that it is due and payable and supplies a merger clause. *Id.* Moreover, the TPB Note was entered into months before TPB entered into the BSpoke Settlement Agreement and bears no relationship to TPB's decision to relinquish its interests in the BSpoke entities. TPB's allegations fail to plausibly allege otherwise.

As set forth above, the BSpoke Settlement Agreement also has a valid disclaimer of reliance provision that bars any fraudulent inducement claims based on extra-contractual representations. *See supra* section III(C)(2). Due to the valid and enforceable disclaimer of reliance provisions in both the BSpoke Settlement Agreement and the TPB Note, TPB is categorically unable to plead facts sufficient to plausibly allege reliance on any suggested misrepresentations. Thus, the fraudulent inducement claim in Count 17 should be dismissed with prejudice for the failure to state a claim.

### B.    TPB fails to allege fraud with sufficient particularity under Rule 9(b).

Moreover, both alleged misrepresentations are devoid of the particularity required under Rule 9(b) for fraud claims. For the first alleged misrepresentation relating to the Starrex shares, TPB fatally neglects to allege the how and why required under Rule 9(b). *See* FAC ¶ 503. For the second alleged misrepresentation, TPB fails to allege the when, where, what, how, and why required under Rule 9(b). *Id.* ¶ 504. As a result, the fraudulent inducement claim based on these two misrepresentations can and should be dismissed on Rule 9(b) grounds alone.

### C.    TPB fails to allege the required elements under the DTPA.

TPB has also failed to allege any cognizable claim for an action under the DTPA, and the claim must be dismissed under Rule 12(b)(6) and 9(b). First, the DTPA claim fails to satisfy the who, what, when, where, how, and why required under Rule 9(b). DTPA claims are subject to Rule 9(b)'s heightened pleading standard where the gravamen of the claim is fraud. *Fif Eng'g, LLC v. Pac. Emps. Ins. Co.*, No. CV H-24-665, 2024 WL 3448016, at *3 (S.D. Tex. July 17, 2024) (Rosenthal, J.) (citing *Tracy v. Chubb Lloyds Ins. Co. of Tex.*, 2012 WL 2477706, at *7 (W.D. Tex. 2012)). And for the same reason the fraudulent inducement part of this claim fails under 9(b), the DTPA claim also fails. *See supra* subpart IV(B).

Second, TPB also fails to state a claim upon which relief can be granted under the DTPA by failing to plausibly allege that TPB was a consumer eligible to assert a claim under the DTPA. *See Taylor v. Ditech Fin., LLC*, No. CV H-16-2465, 2017 WL 2362493, at *3 (S.D. Tex. May 31, 2017) (Rosenthal, J.) (requiring plaintiff to show that "*he or she is a consumer under the DTPA*" (emphasis added)). "To qualify as a consumer under the DTPA, a plaintiff 'must seek or acquire goods or services by lease or purchase.'" *Id.* "For purposes of the DTPA, 'goods' is defined as 'tangible chattels or real property,' and 'services' is defined as 'work, labor, or service purchased or leased for use.'" *Aguocha v. Newrez LLC*, No. 14-20-00797-CV, 2022 WL 678290, at *4 (Tex.

App.—Houston [14th Dist.] Mar. 8, 2022, no pet.). As for the consumer requirement, TPB makes a bare, conclusory allegation that it is or was a consumer. *See* FAC ¶ 510. And TPB does no more than make another conclusory allegation that it "sought to seek or acquire by purchase or lease, goods and services." *Id.*

TPB fails to plead any facts as to what goods or services by lease or purchase it was supposedly acquiring when it made the decision to enter into either the BSpoke Settlement Agreement or the TPB Note. *See id.* Regardless, negotiating a settlement agreement is not a consumer transaction, and TPB is not a consumer under that Agreement as a matter of law. *See Kincaid v. Cummins Engine Co.*, No. 05-04-01803-CV, 2005 WL 1744959, at *1 (Tex. App.—Dallas July 26, 2005, no pet.) (mem. op.). The TPB Note also cannot serve as a basis for a DTPA claim because "a loan of money is neither a good nor a service." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 614 (Tex. App.—Waco 2000, pet. denied) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980)); *Bank of El Paso v. T.O. Stanley Boot Co., Inc.*, 809 S.W.2d 279, 289 (Tex. App.—El Paso 1991), *rev'd in part on other grounds*, 847 S.W.2d 218 (Tex. 1992) ("[T]he mere lending of money is not a good or service . . . ."). To the contrary, TPB alleges the Note was acquired so it could "pay taxes." FAC ¶ 504. Because TPB fails to allege facts to establish even the most basic requirements for lodging a DTPA claim and cannot allege the elements required, the Court should dismiss TPB's DTPA claim with prejudice.

## V.    Cause of Action No. 18. Magness and the Magnolia Companies Fail to Plead a Claim for Common Law Fraud Against Garth or Clayton.

Magness and the Magnolia Companies assert a claim for common law fraud[9] against Garth and Clayton, among other Defendants. Magness and the Magnolia Companies generally allege "a

---

[9] The elements for common law fraud are the same as for fraudulent inducement, except for the requirement of a valid contract. *See Haase*, 62 S.W.3d at 798.

scheme to induce Plaintiffs' participation in their business venture through . . . representations about their management team's qualifications and business capabilities." FAC ¶ 514. These representations appear to be based largely on alleged representations made about the potential benefits of working with Starrex, Debbie Merritt's qualifications to be CFO of Starrex, and alleged representations about "AmCap" providing guaranteed business to the Magnolia Companies.[10] Plaintiffs fail to allege sufficient facts to plead a common law fraud claim under Rule 9(b) and 12(b)(6), and the claim should be dismissed. Moreover, Plaintiffs fail to separately identify Garth's or Clayton's individual role in the alleged fraud. *See Pace*, 93 F.4th at 891.

As discussed in Part III, alleged misrepresentations about events that could happen in the future *if* Starrex acquired the Magnolia Companies do not constitute actionable fraud. *See* FAC ¶¶ 515, 517. Because "that which lies in the future cannot be a matter of certain knowledge, it is held that all such representations must be taken and understood as mere expressions of opinion, and therefore their *nonfulfillment cannot be treated as fraud.*" *Lloyd v. Junkin*, 75 S.W.2d 712, 714 (Tex. App.—Dallas 1934, no writ) (emphasis added). Plaintiffs have pled no facts showing that Garth or Clayton knew the transaction with Starrex would not occur or that they had no intention of Starrex completing the transaction with the Magnolia Companies at the time the alleged misrepresentations were made. Accordingly, none of the alleged misrepresentations are more than mere expressions of opinion or puffery.

Further, any statements about Debbie Merritt's qualifications are inactionable because they are not material and constitute mere puffery or opinion. For a representation to be "material, it must be the type of statement that 'a reasonable person would attach importance to and would be

---

[10] As to this last alleged representation, it is unclear what Plaintiffs are alleging here with respect to "AmCap." Superior Am Cap Investments, LLC was never part of the negotiations among Starrex and the Magnolia Companies, and this reference to "AmCap" is the only mention of any such role in the entire 152-page Complaint. However, that this reference to "AmCap" is confusing does not save Plaintiffs' claim from dismissal.

induced to act on the information in determining his choice of actions in the transaction in question.'" *Fitzgerald v. Water Rock Outdoors, LLC*, 536 S.W.3d 112, 118 (Tex. App.—Amarillo 2017, pet. denied). No reasonable person would attach importance to anything said by two non-director/officers of a company about an employee of that company's qualifications. To do so would be imminently unreasonable and thus these statements cannot constitute material misrepresentations. *See id.* And statements about Ms. Merritt's intelligence or general qualifications are mere puffery or opinion and do not constitute actionable fraud. *See id.*

Moreover, Plaintiffs fail to plead any facts that show Garth or Clayton knew or recklessly asserted Merritt's qualifications without knowledge of their truth. To do so, Plaintiffs would have needed to plead facts sufficient to allege that they stated her qualifications in wanton disregard of Plaintiffs' rights or in indifference to the results which might follow. *See Stone v. Lawyers Title Ins. Corp.*, 537 S.W.2d 55, 71–72 (Tex. App.—Corpus Christi 1976), *aff'd in part, rev'd in part*, 554 S.W.2d 183 (Tex. 1977). Plaintiffs failed to plead any facts showing that Garth or Clayton knew Merritt's qualifications were false or that Garth or Clayton had any duty to verify the qualifications of Starrex's Chief Financial Officer. Plaintiffs do not allege either was a member of the Board of Directors, nor do they contend either of them had an official position with the company beyond being investors. Accordingly, Plaintiffs fail to state a claim for common law fraud under Rules 12(b)(6) and 9(b), and this claim should be dismissed.

**VI.   Cause of Action No. 19. The Magnolia Companies Fail to Plead a Claim for Unjust Enrichment Against Garth or Clayton.**

"Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Unjust enrichment can only occur "by fraud, duress, or the taking of an undue advantage." *Id.* To the extent Plaintiffs' claim for

unjust enrichment is premised on fraud, it needs to comport with the specificity required by Rule 9(b). *See Pace*, 93 F.4th at 891. Plaintiffs' unjust enrichment claim is entirely lacking in facts to implicate Garth or Clayton. The only facts they actually plead relate to several alleged withdrawals by Starrex from the Magnolia Companies' bank account that allegedly involved forgeries of Magness's signature. *See* FAC ¶¶ 403–11. However, none of those facts allege Garth or Clayton had any involvement with the alleged forgeries. *See id.* Beyond that, Plaintiffs only make vague and conclusory allegations of what hypothetical reason Starrex had for withdrawing the funds.

The Magnolia Companies reference several communications they allege "support" the speculation that the money was used to satisfy personal debt owed by Garth or Clayton, but they fail to show how any of those communications support that inference. Moreover, of the communications Defendants Garth and Clayton have access to, they categorically do not support any such inference. The "[t]ext messages from Merritt dated September 5, 2022 confirming Clayton had already spent $1 million,"[11] do not support any inference that withdrawals were made to pay back personal debts owed by Garth or Clayton. *See* Ex. L. Speculation does not suffice to state a plausible claim, and Plaintiffs have provided nothing more than that. *See Twombly*, 550 U.S. at 555.

The claim also contradicts itself. First, Plaintiffs' state that Magness's signature was one of two signatures required for all withdrawals. FAC ¶ 537. Then, Plaintiffs state that Defendants had "complete control over the Magnolia accounts." *Id.* ¶ 539. And in what has become Plaintiffs' signature move—they have again failed to separately identify Garth or Clayton's individual roles in the alleged fraud. *See Pace*, 93 F.4th at 891; FAC ¶¶ 536–37. Plaintiffs have failed to state a claim upon which relief can be granted.

---

[11] *See supra* note 3. Because the text messages were referenced in the complaint and are central to Plaintiffs' claims, they may be considered in deciding a Motion to Dismiss. *Causey*, 394 F.3d at 288.

**VII.    Cause of Action No. 20. The Magnolia Companies Fail to Plead a Claim for Fraudulent Inducement into the Management Services Agreement Against Garth or Clayton.**

In this cause of action, the Magnolia Companies essentially allege a carbon copy of Cause of Action 18. They allege that multiple Defendants, including Garth and Clayton, fraudulently induced the Magnolia Companies to enter into a Management Services Agreement ("MSA") based on the same alleged misrepresentations in Cause of Action 18's fraud claim regarding Merritt's qualifications. *See supra* Part V. For the same reasons these representations do not constitute actionable fraud for common law fraud, they fail to constitute fraudulent inducement. Moreover, specifically as to the MSA, the Magnolia Companies do not allege any involvement by Garth or Clayton in the actual consummation of the MSA, and they are not a party to it. The Magnolia Companies have also failed to plausibly allege Garth or Clayton made any misrepresentations with the intent of inducing the Magnolia Companies to enter into the MSA, falling short of what is required by both 12(b)(6) and 9(b). This claim should be dismissed.

CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court dismiss Counts 7, 15, 16, and 18–20 as to Garth and Clayton and Count 17 as to Garth for the reasons outlined above. Defendants Garth and Clayton further respectfully request the Court dismiss these claims with prejudice and deny Plaintiffs' leave to amend a second time.

2715480

Dated: December 2, 2024

Respectfully submitted,

**BECK REDDEN LLP**

By:    <u>/s/ Fields Alexander</u>
       Fields Alexander – *Attorney in Charge*
       State Bar No. 00783528
       Federal Bar No. 16427
       falexander@beckredden.com
       Amy Parker Beeson – *of Counsel*
       State Bar No. 24051156
       Federal Bar No. 626178
       abeeson@beckredden.com
       Kaitie Sorenson – *of Counsel*
       State Bar No. 24128633
       Federal Bar No. 3859186
       ksorenson@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone No. (713) 951-3700
Facsimile No. (713) 951-3720

**ATTORNEYS FOR DEFENDANTS TYRRELL L. GARTH AND PHILLIP H. CLAYTON**

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2024, I served the foregoing notice via the CM/ECF system, which will provide notice to all parties of record.

By *<u>/s/ Fields Alexander</u>*
Fields Alexander