# EXHIBIT A



April 30, 2023

**CONFIDENTIAL**

Sol City Title, LLC d/b/a Magnolia Title - Houston
Coast to Coast Title, LLC d/b/a Magnolia – North Texas
Magnolia Title Florida, LLC
Magnolia Title Arkansas, LLC

**Re:    Letter Agreement Regarding Proposed Acquisition of Magnolia Entities**

Starrex International, Ltd., a corporation formed under the laws of Canada ("**Starrex**"), whose shares are listed on the Canadian Securities Exchange ("**CSE**") and traded on the U.S. OTC markets, is pleased to submit this letter agreement ("**Letter Agreement**") in connection with the proposed acquisitions of all of the issued and outstanding equity securities of Sol City Title, LLC d/b/a Magnolia Title – Houston; Coast to Coast Title, LLC d/b/a Magnolia – North Texas; Magnolia Title Florida, LLC; and Magnolia Title Arkansas, LLC (collectively the "**Magnolias**").

The proposed acquisition is expected to consist of the contributions of 100% of the issued and outstanding equity securities of Starrex Holdings, Inc., and Starrex Insurance Holdings Inc. (collectively, the "**Starrex Subsidiaries**"), by Starrex (on the one hand), and the contributions of 100% of the issued and outstanding equity securities of the Magnolias by their respective equity holders identified on the signature page hereof (each, a "**Magnolia Contributor**" and collectively, the "**Magnolia Contributors**") (on the other hand), to a newly formed U.S. corporation organized under the laws of the State of Delaware or some other State selected by Starrex ("**Newco**"), in exchange for Newco stock (the "**Proposed Transaction**"). The stock consideration payable to the Magnolia Contributors is set forth on Schedule B attached hereto and made a part hereof. The stock consideration has been reduced by the aggregate expected amount of promissory notes that will be outstanding at the Closing (as defined herein) of the Proposed Transaction in the aggregate amount of US$4 million (the "**Magnolias Debt**"), which notes were recently issued by the Magnolias to Starrex Insurance Holdings, Inc.

Alternatively, one or more holders of the Magnolias may prefer to dispose of their interest in the Magnolias to Starrex directly, which in such case, for the purposes of this Letter Agreement, the securities of Newco shall refer instead to securities of Starrex with such changes as may be necessary to give proper context to the clause, as applicable.

For the purposes of this Letter Agreement, Newco, Starrex, the Magnolias, and the Magnolia Contributors are referred to herein collectively as the "**Parties**" or individually as a "**Party**". "**Starrex Shares**" shall refer to the common stock of Starrex.

Except as specifically provided for in paragraph 7, the provisions of this Letter Agreement are to be construed as not legally binding on the Parties.

    A. **Security for Magnolias Debt.** Concurrently with the execution of this Letter Agreement the Magnolias shall enter into Security Agreements in the form attached as Schedule A hereto, with Starrex Insurance Holdings, Inc. over all of the present and after acquired property of each of the Magnolias, as applicable, in connection with providing security for the Magnolias Debt.

    B. **Definitive Agreement**. Starrex, Newco and the Magnolias shall use reasonably commercial efforts to formalize the terms of and to execute, and cause the Magnolia Contributors to execute, an Acquisition/Contribution Agreement and collateral documents to include Employment/Consulting Agreements and covenants not to compete, and agreements relating to the Exchangeable Shares, Exchangeable Performance Stock Rights and the Bonus Exchangeable Performance Stock Rights (as such terms are defined in Schedule B) (collectively the "**Definitive Agreements**"), to be entered into within 30 days of the execution by all Parties of this Letter Agreement.

    C. **Representations and Warranties**. The Definitive Agreements will contain customary and appropriate



representations, warranties and indemnifications of Starrex, Newco, the Magnolias, and the Magnolia Contributors.

D. **Closing**. Starrex, Newco, the Magnolias, and the Magnolia Contributors will use their mutual reasonable best efforts to consummate the Proposed Transaction approximately 30 days after the finalization of mutually acceptable Definitive Agreements ("**Closing**").

E. **Closing Conditions**. The conditions to Closing are set out below and will be conditioned on Starrex obtaining approval of its shareholders, as applicable, and upon the execution by all Parties of mutually agreeable Definitive Agreements (including all the equity holders of the Magnolias).

The Definitive Agreements are expected to contain a term whereby should either Starrex and Newco on the one hand, or the Magnolias or any of the Magnolia Contributors on the other hand, fail to close the Proposed Transaction for any reason other than a breach by the other, then the Parties failing to close shall forthwith pay to the other an expense break fee equal to the documented costs and expenses (including reasonable and necessary attorneys' fees) incurred in connection with the Proposed Transaction (the "**Break Fee**"). The Parties will be expected to acknowledge and agree that in the event such payment is made, such payment shall be the sole and exclusive remedy of such Party (except with respect to Starrex as set out herein) with respect to the failure to close the Proposed Transaction. The Definitive Agreements are also expected to contain a term whereby should the Magnolias and the Magnolia Contributors fail to close the Proposed Transaction for any reason other than a breach by Starrex, the Magnolias Debt shall be accelerated so that it is due and payable within ten (10) days of such event.

The key terms and conditions are expected to be substantially in the form attached as <u>Schedule B</u> to this Letter Agreement and made a part hereof, with such changes as the parties may negotiate in good faith.

1. **Conditions to the Obligation of Starrex and Newco to Close**

The obligation of Starrex and Newco to close the Proposed Transaction is expected to be subject to the prior satisfaction of the following conditions:

(a) Starrex shall have obtained the necessary shareholder approvals in order to complete the Proposed Transaction on the Closing;

(b) the Proposed Transaction does not result in an inversion transaction as described in section 7874 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder (collectively, the "**Code**") to the reasonable satisfaction of Starrex counsel;

(c) the contributions of the Starrex Subsidiaries and the Magnolias to Newco in exchange for Newco stock qualify for non-recognition tax treatment as described in section 351 of the Code to the reasonable satisfaction of Starrex counsel;

(d) the company business records of the Magnolias shall have been completed to the satisfaction of Starrex, acting reasonably;

(e) the Magnolias and the Magnolia Contributors shall have complied in all respects with their respective covenants herein;

(f) no event or occurrence shall have occurred which, in the opinion Starrex, acting reasonably, makes it impossible or unlikely that Starrex of any of its affiliates will be able to obtain any necessary regulatory or CSE approvals for the completion of the Proposed Transaction;

(g) there shall not have been a tender or exchange for some or all of the Magnolias' equity securities made or publicly proposed to be made by another person and no such tender or exchange shall have been publicly disclosed; nor shall Starrex or Newco have learned that the equity securities held by any Magnolia

Contributor, have been acquired or agreed to be acquired by another person or by persons acting jointly or in concert therewith;

(h) except as disclosed in writing by the Magnolias or the Magnolia Contributors to Starrex during due diligence, there shall not have been any threatened, instituted or pending action or proceeding before any court or governmental agency or other regulatory or administrative agency or commission or by any other person which materially and adversely affects the Magnolias or the Magnolia Contributors' equity interests in the Magnolias, directly or indirectly;

(i) except as otherwise contemplated herein, there shall not have occurred after the date hereof any change in the business, operations, assets, capitalization, financial condition, prospects, licenses, permits, rights, privileges or liability, whether contractual or otherwise, of the Magnolias which is materially adverse for such entity, provided however the Magnolias shall continue to be able to make routine expenditures and make routing distributions to owners consistent with prior practices. In addition, majority owners of the Magnolia Contributors may acquire some of the smaller owners' interests in the Magnolias entities pre-closing; and

(j) Starrex shall be satisfied that the Proposed Transaction may be made in accordance with applicable laws and the prior issuances of Magnolias' equity have been made in compliance with applicable laws.

The foregoing conditions will be for the exclusive benefit of Starrex and Newco and may be waived by Starrex or Newco (severally), in whole or in part, in its sole discretion, at any time and from time to time, without prejudice to any other rights each of them may have.

**2. Conditions to the Obligation of the Magnolia Contributors to Close**

The obligation of the Magnolia Contributors to enter into a Definitive Agreement is expected to be subject to the prior satisfaction of the following conditions:

(a) Newco and Starrex shall have complied in all respects with their covenants herein;

(b) no event or occurrence shall have occurred which, in the opinion of the Magnolia Contributors, acting reasonably, makes it impossible or unlikely that the Magnolias will be able to obtain any necessary regulatory approvals for the completion of the Proposed Transaction;

(c) there shall not have been any threatened, instituted or pending action or proceeding before any court or governmental agency or other regulatory or administrative agency or commission or by any other person which materially and adversely affects Newco or Starrex, directly or indirectly;

(d) except as otherwise contemplated herein, there shall not have occurred after the date hereof any change (or any condition, event or development involving a prospective change) in the business, operations, assets, capitalization, financial condition, prospects, licenses, permits, rights, privileges or liability, whether contractual or otherwise, of Newco or Starrex which, in the sole judgment of the Magnolia Contributors, acting reasonably, is materially adverse to Newco or Starrex; and

(e) the Magnolia Contributors shall be satisfied that the Proposed Transaction may be made in accordance with applicable laws and the prior issuances of the Starrex Shares have been made in compliance with applicable laws.

The foregoing conditions will be for the exclusive benefit of the Magnolia Contributors and may be waived by the Magnolia Contributors, in whole or in part, in their collective discretion, at any time and from time to time, without prejudice to any other rights it may have.



### 3. Other Matters

The Definitive Agreements will address the execution of employment/consulting agreements with senior management of the Magnolias on mutually agreeable terms (the "**Employment/Consulting Agreements**").

Except as otherwise permitted in this Letter Agreement, the business of the Magnolias shall be conducted only in the usual and ordinary course of business consistent with past practices and the Magnolia Contributors shall keep Starrex and Newco apprised of all material developments relating thereto;

Starrex agrees that, from and including the date hereof until termination of this Agreement, unless the Magnolia Contributors agree otherwise in writing, acting reasonably, or as otherwise expressly contemplated by this Agreement, Starrex's business shall be conducted only in the usual and ordinary course of business consistent with past practices and Starrex shall keep the Magnolia Contributors apprised of all material developments relating thereto.

### 4. Access to Information

(a) The Magnolia Contributors and the Magnolias agree to provide to Starrex and Newco all information relating to the business and affairs of the Magnolias as Starrex and Newco may reasonably require in connection with this matter. To the extent that the Magnolia Contributors and the Magnolias are not restricted from doing so pursuant to confidentiality or other restrictions with third parties (which they will use their best efforts to obtain a waiver or consent from) the Magnolia Contributors and the Magnolias shall provide access to each of the Magnolias offices to the officers and employees of Starrex and Newco during normal business hours on reasonable notice following the execution of this Letter Agreement and the officers and agents of the Magnolias shall consult with the officers and agents of Starrex and Newco (as they may reasonably request) in respect of the day-to-day operations of the Magnolias.

(b) Starrex agrees to provide to the Magnolia Contributors all information relating to the business and affairs of Starrex as the Magnolia Contributors may reasonably require in connection with this matter. Starrex will keep the Magnolia Contributors fully informed as to Starrex's business, operations and affairs.

### 5. Disclosure and Non-solicitation

(a) No disclosure or announcement, public or otherwise, in respect of this Letter Agreement or the Proposed Transaction contemplated herein will be made by any Party hereto nor by any of their owners, directors, officers, affiliates, employees or representatives without the prior agreement of the other Parties as to timing, content and method, hereto, provided that the obligations herein will not prevent any Party from making, after consultation with the other Party, such disclosure as its counsel advises is required by applicable law or the rules and policies of the CSE.

(b) For purposes of this Letter Agreement, "**Confidential Information**" means any information concerning a Party (the "**Disclosing Party**") or its business, operations, properties, employees, customers, business models, plans and assets made available to the other Party or its agents or representatives in connection with this Letter Agreement or the Proposed Transaction (the "**Receiving Party**"); provided that it does not include information which is: (i) generally available to or known by the public other than as a result of improper disclosure by the Receiving Party; or (ii) obtained by the Receiving Party from a source other than the Disclosing Party, provided that (to the reasonably knowledge of the Receiving Party) such source was not bound by a duty of confidentiality to the Disclosing Party or another party with respect to such information.

(c) Except as and only to the extent required by applicable law, a Receiving Party will not disclose or use, and it will cause its agents or representatives not to disclose or use, any Confidential Information furnished, or to be furnished, by a Disclosing Party or its representatives to the Receiving Party or its representatives at any time or in any manner other than for purposes of evaluating the transactions proposed in this Agreement.



(d) If this Agreement is terminated pursuant to paragraph 7 below, each Receiving Party will promptly return to the Disclosing Party or destroy any Confidential Information and any work product produced from such Confidential Information in its possession or in the possession of any of its representatives.

(e) During the term of this Letter Agreement, and for 18 months following its termination (excepting closing on the anticipated transactions) neither Starrex, Newco nor any of their respective owners, directors, officers, affiliates, agents, employee or representatives will solicit employees or independent contractors of the Magnolias.

## 6. Exclusivity

The Magnolias hereby agree that, after the date hereof and continuing until this Letter Agreement is terminated as provided for herein, they shall not, nor shall they permit any of their respective owners, directors, officers, affiliates, employees or representatives, to solicit, initiate, encourage or participate in any discussions or negotiations with any third party concerning:

(a) any sale of any material portion of the business or assets of the Magnolias, as the case may be, except in the ordinary course of business; or

(b) any acquisition or disposition of equity of the Magnolias or any contribution, merger, amalgamation, consolidation, business combination or other similar transaction involving the Magnolias, except as contemplated herein;

without first discussing with and obtaining the prior written approval of Starrex.

## 7. Termination

This Letter Agreement may be terminated by written notice given to the other Party hereto, at any time prior to completion of the transactions contemplated hereby:

(a) by mutual written consent of Newco, Starrex, the Magnolias, and the Magnolia Contributors;

(b) by either Starrex, Newco, a Magnolia, or a Magnolia Contributor if a court of competent jurisdiction or a governmental, regulatory or administrative agency or commission shall have issued an order, decree or ruling or taken any other action permanently restraining, enjoining or otherwise prohibiting any of the transactions contemplated by this Letter Agreement and such order, decree, ruling or other action shall have become final and non-appealable, provided that the Party seeking to terminate this Letter Agreement pursuant to this paragraph shall have used all commercially reasonable efforts to remove such order, decree, ruling or injunction;

(c) by any Party if a Definitive Agreement is not entered into on or prior to 5:00 p.m. (Houston time) on, June 30, 2023, or such later date as the Parties may mutually agree to in writing.

In the event of the termination of this Letter Agreement as provided in this paragraph, the Magnolias Debt shall become immediately due and payable within ten (10) days of the termination of this Letter Agreement. Provisions relating to this paragraph, paragraphs 5 (disclosure and non-solicitation), 6 (exclusivity), 8 (amendment), 11 (notice), 13 (expenses), 17 (governing law/venue) and 20 (time of the essence) shall survive the termination of this Letter Agreement. Nothing contained in this paragraph 7 shall relieve any Party from liability for any breach of any provision of this Letter Agreement prior to its termination.

In the event of termination of this Letter Agreement, each of the Parties shall forthwith return to the other all confidential and other information relating to such other Party.



8. **Amendment**

This Letter Agreement may be amended by mutual agreement between all of the Parties hereto. This Letter Agreement may not be amended except by an instrument in writing signed by the appropriate officer or agent on behalf of each of the Parties hereto.

9. **Waiver**

Each of Starrex, Newco, a Magnolia, and a Magnolia Contributor may: (i) extend the time for the performance of any of the obligations or other acts of the other; (ii) waive compliance with any of the other's agreements or the fulfillment of any conditions to its own obligations contained herein; or (iii) waive inaccuracies in any of the other's representations or warranties contained herein or in any document delivered by the other Party hereto; provided, however, that any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

10. **Miscellaneous**

The Parties hereto shall be entitled to rely upon delivery of an executed electronic copy of this Letter Agreement which shall be viewed in all respects as an original.

11. **Notice**

Any notice required hereunder may be given by delivery to its addressee, whether by hand, messenger, certified or registered mail, a reliable express delivery service or by email, to the address below:

> in the case of Newco and Starrex:
>
>> 14701 Saint Mary's Lane, Suite 150
>> Houston, Texas 77079
>> Ph: (281) 406-8337
>> Email: mhill@starrexintl.com
>> Copied to: dmerritt@starrexintl.com (CFO of Starrex)
>>
>> Attention:    Matt Hill
>>               President and Chief Executive Officer of Starrex
>
> in the case of the Magnolias:
>
>> 1888 Saint James Pl, Suite 120
>> Houston, Texas 77079
>> Email: john.magness@magnoliatitleteam.com
>>
>> Attention:    John Magness
>>               Sole Member, Board of Managers

Any notice given as provided herein will be deemed to have been received at the time of its delivery if delivered by hand or by email during regular business hours, and if sent outside of regular business hours, on the first business day after the date of receipt.

12. **Assignment**

Neither this Letter Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties hereto. Any unauthorized assignment is void. This Agreement shall inure to the benefit of the Parties'



respective successors and permitted assigns.

### 13. Expenses

If any Party fails to enter into the Definitive Agreement by June 30, 2023, each of Starrex, Newco, the Magnolias, and each Magnolia Contributor shall bear their own out-of-pocket costs and expenses, including legal, accounting and financial consultant and advisory expenses incurred by each respective Party in connection with this Letter Agreement and the transactions contemplated hereby.

### 14. Currency

Unless otherwise stated, all dollar amounts herein are in US dollars.

### 15. Severability

Whenever possible, each provision of this Letter Agreement shall be interpreted in such manner as to be effective and valid under applicable law. Any provision of this Letter Agreement that is invalid or unenforceable in any jurisdiction shall be ineffective to the extent of such invalidity or unenforceability without invalidating or rendering unenforceable the remaining provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 16. Counterpart Execution

This Letter Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute one Letter Agreement.

### 17. Governing Law. Venue.

This Letter Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without reference to principles of conflicts of laws. Any action or proceeding involving any dispute, claim or controversy relating to or arising under this Letter Agreement, or the dealings of the Parties shall be commenced and prosecuted exclusively in the state district courts located in Tarrant County, Texas, or the U.S. District Court for the Western District of Texas (Fort Worth Division), and each of the Parties hereto hereby (a) expressly and irrevocably consents and submits to the exclusive jurisdiction of such courts in any such action or proceeding, and (b) irrevocably waives to the fullest extent permitted by applicable law, and agrees not to assert that it is not subject to the jurisdiction of such courts, that such legal proceeding has been brought in an inconvenient forum, or that the venue of such proceeding is improper.

### 18. Authority

Each of the Parties has the requisite power and authority to enter into this Agreement on behalf of such Party and such execution shall bind such Party under this Agreement. The execution and delivery of this Agreement and the performance of the obligations hereunder have been duly authorized by all necessary company action, and do not conflict with any other agreement of the Parties with any third parties.

### 19. Waiver of Jury Trial

EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS PROPOSAL OR THE DEFINITIVE AGREEMENTS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS PROPOSAL AND THE DEFINITIVE AGREEMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.



## 20. Time is of the essence

Time shall be of the essence of this Letter Agreement.

If you agree with the this Letter Agreement, please execute the same in the space provided and return it to Debbie Merritt at dmerritt@starrexintl.com on or before 9:00 pm (CST) on April 30, 2023. Your execution of this Letter Agreement shall constitute your agreement only to be legally bound by the terms specially identified in paragraph **7**.

[signature page follows]



This Letter Agreement is dated effective as of the date first set forth above.

**STARREX:**

Starrex International Ltd.

BY: _____
MATTHEW HILL, CEO

**NEWCO:**

BY: Starrex International Ltd., its Promoter

BY: _____
MATTHEW HILL, Authorized Agent

**MAGNOLIAS**

**Sol City Title, LLC d/b/a Magnolia Title – Houston**

By: _____
Title: Manager

**Coast to Coast Title, LLC d/b/a Magnolia – North Texas**

By: _____
Title: Manager

**Magnolia Title Florida, LLC**

By: _____
Title: Manager

**Magnolia Title Arkansas, LLC**

By: _____
Title: Manager

**SCHEDULE B**
**Statement of Additional Terms of Transactions**

A.   **Additional Defined Terms**:

*Magnolia Contributors:*

1) HMH Lifestyles, L.P. and/or its designated affiliate (an "**Affiliate**"), which means a person who is controlled directly or indirectly by HMH (collectively, "**HMH**"). For purposes of this definition, control means the right or ability to elect the majority of the directors of a corporation, to exercise more than fifty percent (50%) of the voting rights in the controlled entity or otherwise to direct the management or policies of the controlled entity.

2) 405 Manhattan Investments, LLC; GF Investments, LLC; Alphabet Investments, LLC; Rabbit Food, LLC; Sarah Blackburn; and Sol City Title Managers (collectively, "**Remaining Members**").

*Property Contributed by the Magnolia Contributors:*

100% of all of the issued and outstanding equity interests in the Magnolias:

1) Sol City Title, LLC d/b/a Magnolia Title – Houston ("**Magnolia Houston**")

2) Coast to Coast Title, LLC d/b/a Magnolia – North Texas ("**Magnolia Dallas**")

3) Magnolia Title Florida, LLC ("**Magnolia Florida**")

4) Magnolia Title Arkansas, LLC ("**Magnolia Arkansas**")

B.   **Stock Consideration to be Issued by Newco to the Magnolia Contributors:**

The total estimated value of Newco stock to be issued to the Magnolia Contributors in exchange for their equity securities in the Magnolias is US$18,224,247 (US$14,224,247 after the reduction for debt owing to Starrex Insurance Holdings, Inc., which is estimated to be US$4.0 million at the projected closing date of June 30, 2023).

The Newco stock issued to the Magnolia Contributors shall be in the form of Newco common stock with exchange rights that provide for the right to exchange Newco stock into Starrex common stock ("**Exchangeable Shares**"), plus certain performance stock rights that provide for the right to receive Newco stock that is exchangeable into Starrex common stock ("**Exchangeable Performance Stock Rights**").

All figures are adjusted for the debt owed by a particular Magnolia entity. Each Exchangeable Share shall be exchangeable in accordance with the terms of the Exchangeable Shares into one (1) common share of Starrex ("**Starrex Shares**") for a period of five (5) years for no additional consideration, and each Exchangeable Performance Stock Right shall be exchangeable into one (1) Exchangeable Share for no additional consideration upon completion of the Performance Conditions (defined below):

1) **Magnolia Dallas:**

   i) MHM: Allocated and issued at closing as follows:

   (1) an aggregate of US$[$3,940,078.56] of Newco stock (comprised of [US$788,015.71] of

       Exchangeable Shares valued at a price of US$**[1.10]** per share (the "**Protected Price**") and 5 year performance stock rights ("**Performance Stock Rights**") to acquire [US$3,152,062.85] of Exchangeable Shares for no additional consideration if Performance Conditions (defined below) are met, deemed to be issued at the Protected Price, in accordance with Canadian Stock Exchange regulations; and

    (2) 350,000 share purchase warrants to purchase Newco stock exchangeable into Starrex Shares giving HMH the right to purchase Exchangeable Shares at the Protected Price for a period of five (5) years from the closing date, subject to acceleration of the expiration date upon thirty (30) days' notice to the holders, in the event the Starrex Shares trade at or above US$\_\_\_\_ for a period of thirty (30) consecutive trading days (the "**Earned Warrants**").

  ii) Remaining Members: Allocated pro rata and issued at closing as follows:

    (1) US$[5,442,097.46] (comprised of [US$1,088,419.49] of Exchangeable Shares and Exchangeable Performance Stock Rights to acquire [US$4,353,677.97] Exchangeable Shares for no additional consideration if Performance Conditions are met), under the same provisions as the HMH stock, above.

2) **Magnolia Houston:**

  a) HMH: Allocated and issued at closing as follows:

    i) [US$689,593.14] of Newco stock (comprised of [US$137,918.63] of Exchangeable Shares issued at the Protected Price and Exchangeable Performance Stock Rights to acquire [US$551,674.52] of Exchangeable Shares for no additional consideration), and

    ii) 150,000 of Earned Warrants,

  b) Remaining Members: Allocated pro rata and issued at closing: [US$1,225,943.37] of Newco stock (comprised of [US$245,188.67] of Exchangeable Shares and Exchangeable Performance Stock Rights to acquire [US$980,754.69] of Exchangeable Shares for no additional consideration) under the same provisions as the HMH stock, above.

3) **Magnolia Florida:**

  a) HMH: Allocated and issued at closing: [US$280,659.28] of Newco stock (comprised of [US$56,131.86] of Exchangeable Shares issued at the Protected Price and Exchangeable Performance Stock Rights to acquire [US$224,527.43] of Exchangeable Shares for no additional consideration).

  b) Remaining Members: Allocated pro rata and issued at closing: [US$1,122,637.14] of Newco stock (comprised of [US$224,527.43] of Exchangeable Shares and Exchangeable Performance Stock Rights to acquire [US$898,109.71] of Exchangeable Shares for no additional consideration) under the same provisions as the HMH stock, above.

4) **Magnolia Arkansas:**

  a) MHM: Allocated and issued at closing: [US$379,798.21] of Newco stock (comprised of [US$75,959.64] of Exchangeable Shares issued at the Protected Price and Exchangeable Performance Stock Rights to acquire [US$303,838.57] of Exchangeable Shares for no additional consideration).

b) <u>Remaining Members:</u> Allocated and issued pro rata and issued at closing: [US$1,519,192.84] of Newco stock (comprised of [US$303,838.57] of Exchangeable Shares and Exchangeable Performance Stock Rights to acquire [US$1,215,354.27] of Exchangeable Shares for no additional consideration) under the same provisions as the HMH stock, above.

C. **<u>Additional Terms:</u>**

The Exchangeable Performance Stock Rights shall vest and be exercisable by the holders thereof for no additional consideration following the date that the aggregate monthly revenue for the Magnolias exceeds US$1,550,000 for two consecutive months (the "**Performance Conditions**"). All annual run rate revenue calculations shall be based upon the average of 2 months actual revenue of the Magnolias and will be calculated on a monthly basis beginning on the 2 month anniversary of closing in accordance with a sample schedule attached as Schedule ____ hereto.

The contributions in the Proposed Transaction are intended to qualify as tax deferred contributions of property under section 351 of the Code.

In addition to the Exchangeable Performance Stock Rights, Newco shall issue at closing, pro rata to all holders of the Magnolias, 10 year bonus Exchangeable Performance Stock Rights ("**Bonus Exchangeable Performance Stock Rights**") to acquire up to an additional [US$1,400,000] of Exchangeable Shares at the Protected Price broken down by entity as follows:

        Magnolia Dallas – US$804,034.75
        Magnolia Houston – US$200,631.78
        Magnolia Florida – US$195,947.04
        Magnolia Arkansas – US$199,386.42

The Bonus Exchangeable Performance Stock Rights shall vest on a pro-rated basis and be exercisable for Exchangeable Shares for no additional consideration, if the aggregate annualized run rate for the Magnolias is greater than US$18.2 million up to a maximum of US$22 million, with the full US$1.4 million earned upon achieving US$22 million.

Exchangeable Performance Stock Rights are not assignable, and only give rise only to the right to receive Exchangeable Shares in Newco.

All underlying Starrex Shares issuable in connection with Newco stock shall contain standard restrictions on trading of a four (4) month plus one (1) day hold period following the date of issue of the Newco stock as prescribed by securities legislation in Canada, and all Newco stock issuable in connection with the Proposed Transaction shall contain a legend as prescribed by applicable U.S. securities legislation. In addition, the Starrex Shares obtained upon exercise or exchange of the Earned Warrants, Exchangeable Shares, Exchangeable Performance Stock Rights and Exchangeable Bonus Performance Stock Rights may be subject to lock-up agreements to insure that an orderly market is maintained for the trading of Starrex Shares in the public markets, namely 25% will be released every six (6) months following the date of issuance upon the exchange and/or exercise over a period of two (2) years.

The transactions contemplated in this Section will be memorialized by acquisition/contribution agreements among Newco and the holders of each of the Magnolias, as applicable, with supporting agreements as required with Starrex.

It is the intention of Starrex to redomicile or amalgamate into the United States following receipt of Canadian

tax advice, and for Newco and the domesticated/amalgamated Starrex to merge in a tax deferred transaction as described in section 368 of the Code, with either Starrex or Newco surviving the merger as determined by Starrex.

Each agreement regarding the Proposed Transaction and any other transaction described herein will contain customary pre and post-closing covenants, representations and warranties, and customary anti-dilution protections. Each acquisition agreement will require (as a condition to closing) for the relevant parties to deliver a non-compete agreement under which each such officer or party, as applicable, would be prohibited from competing with Starrex or Newco (collectively, "**STX**") in any business that has been acquired by STX. Each acquisition agreement will also contain non-solicitation provisions and requirements related to confidential information and trade secrets to protect the acquired business of STX. Each party to the acquisition agreements will make customary representations and warranties that will survive for 3 years after the closing date, except for those representations and warranties related to (i) taxes, tax returns, employee benefit matters, environmental, and health and safety matters which shall survive until 90 days following the expiration of the applicable statute of limitations period; and (ii) certain "fundamental" representations, which shall survive indefinitely. With regard to taxes, the Magnolias will be responsible for (i) any taxes of the Magnolias for periods up to and including the date of closing, and (ii) any taxes arising by virtue or as a result of the transactions contemplated above and any tax liabilities relating to periods prior to closing that are not yet accrued, including, without limitation, those tax liabilities that would have been or would be accrued under accrual accounting and/or any amounts resulting from a change in the Magnolias' method of accounting (e.g., cash to accrual basis). Each Party will indemnify the other Parties for (i) breaches of their respective representations and warranties, (ii) their respective covenants included as part of the acquisition agreement, and (iii) as applicable, liabilities, actions, conditions, or occurrences existing or taking place, or related to periods prior to the closing (including operations). Except in the case of fraud and taxes, such indemnification obligations of the Magnolias or the holders thereof, for clauses (i) and (iii) above, would be capped at the aggregate amount of the consideration paid by STX to the applicable holder of an Agency.

Projected Closing Date: June 30, 2023.

D. <u>Other Matters:</u>

(1)     HMH will be granted the right, but is under no obligation, to participate in a minimum amount of $500,000 in one or more initial equity placements that STX contemplates to complete in connection with the closing of the Magnolia transactions and other acquisitions.

(2)     STX grants to HMH a first and preferential right, but not obligation, to participate in all future debt or equity capital raises, subsequent to the initial capital raise described in paragraph (1) above. Notwithstanding the foregoing, STX agrees that it will not issue any stock that has a higher voting or distribution priority than the stock being issued hereunder without affording HMH the right to participate in any such offering.

<u>Confidentiality</u>: The contents of this proposal, and the fact that it has been signed, are subject to the terms of the Confidentiality and Non-Circumvention Agreement between HMH and STX dated May 20, 2022, and unless otherwise provided under that agreement, may only be disclosed by the parties hereto to each of their respective owners, directors, governing persons, and advisers on a need to know basis or as required by STX pursuant to applicable securities laws or the rules of the CSE.