IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LTD., MAGNOLIA TITLE FLORIDA, LLC, THE PEABODY BULLDOG LLC, AND JOHN MAGNESS<br>*Plaintiffs* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO.:4:24-cv-2767 |
| TYRELL L. GARTH, PHILLIP H. CLAYTON, DEBBIE MERRITT A/K/A DEBORAH MERRITT, MATTHEW D. HILL, CHARLES BURNS, P. GARRETT CLAYTON, SCOTT M. REEVES, ARIANE E. YOUNG, TINGLEMERRITT, LLP, STARREX TITLE FLORIDA, LLC, LAURIE COOPER, MARKETSTREET CAPITAL PARTNERS AR, LLC AND BRIAN A. BREWER<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS GARRETT CLAYTON, MATTHEW D. HILL, DEBBIE MERRITT, AND SCOTT M. REEVES' MOTION TO DISMISS PURSUANT TO RULES 12(B)(6) AND RULE 9(B)**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF REFERENCES ............................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

STATEMENT OF ISSUES AND STANDARD OF REVIEW ........................................ 1

ARGUMENT AND AUTHORITIES............................................................................... 2

    A.    Plaintiffs have Sufficiently Alleged Claim for Negligence against the Starrex Officers and Directors .............................................................................................................. 2

    B.    The Fraud-Based Claims are Sufficiently Pled Under Rule 9(b). ................................... 3

    C.    Magnolia Plaintiffs Sufficiently State a Claim for Breach of Contract Against Hill, Merritt, and Reeves ......................................................................................................... 5

    D.    Magnolia Plaintiffs Sufficiently Allege Breach of Fiduciary Duty Against Hill, Reeves, and Merritt............................................................................................................................ 6

    E.    The Tortious Interference Claim Against Hill, Merritt, and Reeves Is Sufficiently Pleaded ......... 8

    F.    The Conversion Claim Against Merritt and Cooper is Sufficiently Pleaded.................................. 9

    G.    Magnolia Plaintiffs Sufficiently Plead Claims for Misappropriation of Trade Secrets................ 10

    H.    Magnolia Plaintiffs Sufficiently Plead Claims for Unjust Enrichment ........................................ 12

    I.    Magnolia Plaintiffs Sufficiently Plead Claim for Common Law Misappropriation.................... 13

    J.    Magnolia Plaintiffs Sufficiently Plead Claim for Violation of the Lanham Act .......................... 14

    K.    Plaintiffs Sufficiently Plead Claims for Violations of Securities Laws........................................ 15

    L.    Magnolia Plaintiffs Sufficiently Plead Claim for Conspiracy ..................................................... 17

    M.    Plaintiffs Magness and The Peabody Bulldog Sufficiently Plead Fraudulent Inducement Claims Against Garth, Clayton, Hill, and Merritt ............................................................... 19

    N.    Plaintiffs Sufficiently Plead Claims for Common Law Fraud and Fraudulent Inducement......... 21

## TABLE OF REFERENCES

**Cases**

*ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) ..................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................................... 1

*Bell Atlantic Corp., v. Twombly*, 550 U.S. 544  (2007). ............................................................ 1, 2

*Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001)...................................................................... 4

*Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) .............................. 4

*Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386–87 (Tex. App.—Houston [14th Dist.] 2015, no pet.).................................................................................................................................... 9

*Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)................................... 7

*Neles-Jamesbury, Inc. v. Bill's Valves*,  974 F. Supp. 979, 982, (S.D. Tex. 1997) ...................... 10

*Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998) ...................................................................... 2

*See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)................................................................ 3

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ................................................ 2

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)........................................................ 16

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) . 19

*Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)........................................................................ 19

*Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001) .................................................................. 21

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ..................... 12

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)............ 21

*Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998) ............................................................................................................................................... 18

*Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)................................................................................ 18

*U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied) ........................................................................................................................... 13

**Statutes**

15 U.S.C. § 1125(a) ........................................................................................................................... 14

15 U.S.C. § 78aa ................................................................................................................................ 16

15 U.S.C. § 78j(b) .............................................................................................................................. 16

15 U.S.C. §§ 1051 et seq.................................................................................................................... 14

17 C.F.R. § 240.10b-5 ....................................................................................................................... 16

18 U.S.C. § 1514A ............................................................................................................................. 16

28 U.S.C. § 1331 ................................................................................................................................ 16

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................... 1, 2, 4, 5

Fed. R. Civ. P. 12(b)(6)....................................................................................................................... 1, 2

Fed. R. Civ. P. 12(d) ............................................................................................................................... 2

Fed. R. Civ. P. 15(a)(2)............................................................................................................................ 24

Rule 56 ................................................................................................................................................. 1, 2

Tex. Civ. Prac. & Rem. Code § 134A.002(6)...................................................................................... 11

NOW COME Plaintiffs Coast to Coast Title, LLC, Sol City Title, LLC, Magnolia Title Florida, LLC, Magnolia Title Arkansas, Ltd., The Peabody Bulldog, LLC, and John Magness (collectively, "Plaintiffs"), and file this Response in Opposition to Defendant Charles Burns, Garrett Clayton, Matthew D. Hill, Debbie Merritt, and Scott Reeves' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), and would respectfully show the Court as follows:

## NATURE AND STAGE OF PROCEEDINGS

1.      Plaintiffs bring this action against Defendants asserting claims for (1) negligence; (2) breach of contract; (3) breach of fiduciary duty; (4) tortious interference with contract; (5) conversion; (6) violation of the Texas Uniform Trade Secrets Act; (7) unjust enrichment; (8) common law misappropriation; (9) violation of the Lanham Act; (10) violation of securities laws; (11) conspiracy; (12) common law fraud; and (13) fraudulent inducement. These claims stem from Defendants' alleged misconduct, including fraudulent representations, breaches of contractual and fiduciary obligations, interference with Plaintiffs' business relationships, and the misappropriation of Plaintiffs' trade secrets and proprietary information. Plaintiffs also allege that Defendants engaged in deceptive trade practices and unlawful activities under federal and state law, causing significant harm to Plaintiffs. Defendants have moved to dismiss under Rule 12(b)(6) and Rule 9(b), or alternatively, for summary judgment under Rule 56, arguing that Plaintiffs have failed to state claims upon which relief can be granted and have failed to meet the heightened pleading standards for fraud. Plaintiffs now respond, demonstrating that the First Amended Complaint contains detailed factual allegations that sufficiently support each of their claims under the Federal Rules of Civil Procedure.

2.      Plaintiffs originally filed suit in state court in the 11th Judicial District of Harris County, Texas on June 3, 2024. Defendant Tyrrell Garth removed to this Court based upon Federal Question jurisdiction on July 25, 2024. Defendants filed their Motion to Dismiss Pursuant to Rules 12(b)(6), 9(b), and 56 on December 2, 2024. The present Response addresses Defendants' Motion to Dismiss.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

3.      The Court must determine whether Plaintiffs' First Amended Complaint states a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)  and whether the fraud-based claims meet the heightened pleading standard of Rule 9(b).

4.      The Court must also determine whether it will consider any matters outside the pleadings and apply a summary judgment standard under Rule 56.

5.      In reviewing a motion to dismiss under Rule 12(b)(6) , the Court must accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). A claim

is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 555 (2007).

6.      For claims sounding in fraud, Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake. This heightened pleading standard requires the Plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

7.      If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. *Id.*

## ARGUMENT AND AUTHORITIES

### A.   Plaintiffs have Sufficiently Alleged Claim for Negligence against the Starrex Officers and Directors

To prevail on a negligence claim, Plaintiffs must establish the existence of a legal duty owed by Defendants to Plaintiffs, a breach of that duty, and damages proximately caused by the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). Plaintiffs' First Amended Complaint sufficiently alleges each of these elements.

**1. Duty**. The Management Services Agreement (MSA) between Starrex and the Magnolia Plaintiffs created a contractual relationship that imposed specific duties on Starrex and, by extension, its officers and directors. Section 3.4 of the MSA explicitly states that "Affiliates and Third Parties shall be subject to the same restrictions on STARREX hereunder." (Plaintiffs' First Amended Complaint (hereinafter, "FAC") ¶¶102). Section 1.7 of the MSA defines "Third Parties" as "any person(s) or entity(ies) other than a Party or Affiliate." At the time of the MSA's execution, Hill was CEO of Starrex, Reeves was the corporate secretary, and Merritt was the CFO of Starrex. As officers of Starrex, they are considered Third Parties under the MSA and are therefore bound by its terms, including the duty to act in the best interests of the Magnolia Plaintiffs.

Specifically, duties owed by each individual defendant arise out of the Management Services Agreement between the Magnolias and Starrex (the "MSA"). (FAC ¶¶ 363-372). Section 3.4 of the MSA specifically states: "Affiliates and Third Parties shall be subject to the same restrictions on STARREX hereunder…" Section 1.7 of the MSA defines "Third Parties" as "any person(s) or entity(ies) other than a Party of Affiliate." At the time of the MSA's execution, Hill was CEO of Starrex, Reeves was the corporate secretary, and Merritt was the CFO of

Starrex. This contractual provision created a duties between the signatories to the MSA and any Third Parties thereto.  Accordingly, each individual defendant owed a duty to the Magnolias.

In addition to their contractual duties, Hill, Merritt, and Reeves, as officers and directors of Starrex, owed common law fiduciary duties to the Magnolia Plaintiffs. These duties arose from their positions of control and authority within Starrex and their direct involvement in the management and operations of the Magnolia entities. Texas law recognizes that corporate officers and directors owe a duty of care to the corporation and its affiliates, and this duty extends to third parties when the officers and directors engage in activities that directly impact those parties. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).

**2. Breach**. Plaintiffs' First Amended Complaint details numerous instances where Defendants breached their duties. For example, Hill and Merritt, with Reeves' knowledge and approval, authorized the use of forged signatures on Magnolia bank accounts, directly violating their duty to safeguard the Magnolias' assets. (FAC ¶¶ 406-408). They also misrepresented the purpose of the promissory notes, claiming they were "for-the-auditor-only," when in fact they were used to justify substantial withdrawals from Magnolia accounts, ultimately harming the Magnolia Plaintiffs. (FAC ¶¶ 122, 123).

Further, Reeves, in his role as a director and corporate secretary, failed to exercise proper oversight, allowing the fraudulent activities to occur. His participation in meetings and communications where false representations were made about the financial health and operational plans of the Magnolia entities constitutes a breach of his duty to act in the best interests of the Magnolia Plaintiffs. (FAC ¶¶ 59-61).

**3. Damages**. As a direct and proximate result of Defendants' breaches, the Magnolia Plaintiffs suffered significant damages, including but not limited to:

a. Loss of control over funds, operations, data, transactions, and other assets;

b. Impairment of business interests, revenue streams, and growth opportunities;

c. Losses arising from diverted opportunities and misappropriation of proprietary information;

d. Exposure to liability from lack of oversight and safeguarding of operations/compliance; and

e. General institutional damages and reputational harm from negligent mismanagement. (FAC ¶ 371).

These damages are a direct result of Defendants' failure to uphold their duties under the MSA and their common law duties as officers and directors.

Plaintiffs have sufficiently pleaded a negligence claim against Defendants Hill, Merritt, and Reeves. The MSA, along with common law principles, imposed duties on these individuals, which they breached through their actions and omissions. These breaches directly and proximately caused substantial damages to the Magnolia Plaintiffs. Therefore, Defendants' motion to dismiss the negligence claim should be denied.

**B.  The Fraud-Based Claims are Sufficiently Pled Under Rule 9(b).**

Plaintiffs have sufficiently pleaded their fraud-based claims, meeting the heightened pleading standard of Rule 9(b). Each element of fraud by non-disclosure and business disparagement is supported by specific factual allegations in the FAC.

**1. Fraud by Non-Disclosure (Against Merritt and Hill)**. To state a claim for fraud by non-disclosure, Plaintiffs must show that: (1) the defendant failed to disclose material facts that it had a duty to disclose; (2) the defendant knew the other party was ignorant of the facts and did not have an equal opportunity to discover them; (3) the defendant intended to induce the other party to act or refrain from acting by failing to disclose the facts; and (4) the other party relied on the non-disclosure and suffered injury as a result. *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001). Plaintiffs have pleaded these elements with the requisite specificity:

   **a. Failure to Disclose Material Facts:** Merritt and Hill failed to disclose the true purpose of the promissory notes, which were presented as "for-the-auditor-only" but were actually intended to secure a debt owed by the Magnolia Entities to Starrex. (FAC ¶¶ 122, 168). This non-disclosure was material because it directly affected the financial obligations and liabilities of the Magnolia Entities.

   **b. Knowledge of Plaintiffs' Ignorance:** Merritt and Hill knew that the Magnolia Plaintiffs were unaware of the true nature of the promissory notes. The notes were presented as a mere formality, and the true purpose was concealed. (FAC ¶¶ 122, 168). The Magnolia Plaintiffs did not have an equal opportunity to discover the truth because they trusted Merritt and Hill, who were in positions of authority and had superior knowledge of Starrex's financial dealings.

   **c. Intent to Induce Action or Inaction:** By failing to disclose the true purpose of the notes, Merritt and Hill intended to induce the Magnolia Plaintiffs to continue operating under the false impression that the notes did not represent a real financial obligation. This was done to maintain the appearance of financial stability and to further the fraudulent scheme. (FAC ¶¶ 166-173).

   **d. Reliance and Injury:** The Magnolia Plaintiffs relied on the non-disclosure by continuing to operate as if the notes were not a binding obligation. This reliance led to significant financial harm, including the misappropriation of funds and the eventual downfall of the Magnolia Entities. (FAC ¶¶ 371, 431).

**2. Business Disparagement (Against Merritt and Hill)**. To state a claim for business disparagement, Plaintiffs must show that: (1) the defendant published false and disparaging words about the plaintiff's economic interests; (2) with malice; (3) without privilege; and (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Plaintiffs have pleaded these elements with the requisite specificity:

   **a. Publication of False and Disparaging Words:** Merritt and Hill made false statements to third parties, including underwriters such as Agents National Title Insurance Company (ANTIC) and EssentVentures, about the Magnolia Plaintiffs' ability to pay their debts. Specifically, they claimed that the Magnolia Entities were unable to pay Starrex what was owed pursuant to the "for-the-auditor-only" promissory notes. (FAC ¶ 186). These statements were false because the notes were not intended to be enforced, and the Magnolia Entities had sufficient funds to meet their obligations.

   **b. Malice:** Merritt and Hill acted with malice, as they knowingly made false statements and misrepresented the purpose of the promissory notes. Their actions were intended to harm the Magnolia Plaintiffs' business reputation and financial stability. (FAC ¶¶ 186, 472).

c.  **Lack of Privilege:** There was no legal privilege that justified Merritt's and Hill's false statements to third parties. Their actions were not made in the context of any protected communication or legal duty.

d.  **Special Damages:** As a direct result of Merritt's and Hill's disparaging statements, underwriters terminated their relationships with the Magnolia Entities, causing significant financial harm and contributing to the downfall of the businesses. (FAC ¶ 186).

**3. Common Law Forgery.** Plaintiffs' claim of fraud based on common law forgery is not asserted as a separate cause of action but rather as a factual basis supporting the fraud claim. The forgery of Magness's signature on numerous checks constitutes fraudulent misrepresentation. This action demonstrates an intent to deceive and directly relates to the broader fraudulent scheme alleged in the complaint. (FAC ¶¶ 403-419).

Defendants' motion mischaracterizes Plaintiffs' fraud claim based on common law forgery. Plaintiffs are not asserting a private cause of action under the Texas Penal Code. Instead, they allege a common law fraud claim arising from Defendants' repeated use of Magness' signature to create the false impression that numerous high-value checks were authorized by Magness. References to the Texas Penal Code are included solely to underscore the fraudulent nature of Defendants' conduct.

Plaintiffs have sufficiently pleaded their fraud-based claims, meeting the heightened pleading standard of Rule 9(b). The specific allegations regarding the non-disclosure of the true purpose of the promissory notes, the disparagement of the Magnolia Entities' business, and the forgery of Magness's signature provide a clear and detailed account of the fraudulent conduct. Therefore, Defendants' motion to dismiss these claims should be denied.

## C. Magnolia Plaintiffs Sufficiently State a Claim for Breach of Contract Against Hill, Merritt, and Reeves

Plaintiffs have sufficiently stated a claim for breach of contract against Defendants Hill, Merritt, and Reeves. While it is generally true that corporate agents are not liable for breaches of their corporation's contracts, the MSA in this case specifically binds third parties involved in its execution.

**1. Existence of a Valid Contract**. The MSA is a valid and enforceable contract between the Magnolia Plaintiffs and Starrex International, Ltd. (FAC ¶ 390). The MSA outlines specific obligations and duties for Starrex and extends those obligations to its affiliates and third parties involved in providing services to the Magnolia Plaintiffs.

**2. Defendants' Obligations Under the MSA**. Section 3.4 of the MSA states that "Affiliates and Third Parties shall be subject to the same restrictions on STARREX hereunder." (FAC, ¶ 102). Section 1.7 defines "Third Parties" as "any person(s) or entity(ies) other than a Party or Affiliate." As officers of Starrex, Hill, Merritt, and Reeves fall under this definition of Third Parties. They were bound by its terms due to their direct involvement in the activities governed by the MSA and through this particular provision.

Specifically, Plaintiffs have made it clear that the basis for holding the individual defendants liable for the breach by Starrex through Section 3.4 of the MSA, which states "Affiliates and Third Parties shall be subject to the same restrictions on STARREX hereunder…" Further, Section 1.7 of the MSA defines "Third Parties" as "*any person(s)* or entity(ies) other than a Party or Affiliate." (emphasis added). At the time of the MSA's execution, Hill was CEO of Starrex, Reeves was the corporate secretary, and Merritt was the CFO of Starrex. By the plain language of the MSA, Hill, Reeves, and Merritt were contractually bound as third parties.

**3. Breach of Contract**. Plaintiffs allege that Defendants Hill, Merritt, and Reeves breached the MSA by:

    **a. Failing to Act in the Best Interests of the Magnolia Plaintiffs:** Section 3.3 of the MSA requires Starrex and, by extension, its officers and third parties, to act in the best interests of the Magnolia Plaintiffs. Defendants breached this provision by engaging in conduct detrimental to the Magnolia Plaintiffs, including making misrepresentations, misappropriating funds, and interfering with business relationships. (FAC ¶ 392).

    **b. Misappropriating Funds:** Defendants, particularly Merritt, misappropriated at least $1 million from the Magnolia Plaintiffs immediately after HMHTI's investment. (FAC ¶ 392). This misappropriation was facilitated through unauthorized withdrawals and the use of forged signatures on company checks. (FAC ¶¶ 403-419).

    **c. Making Misrepresentations and Disparaging Statements:** Defendants made numerous misrepresentations about the financial health and obligations of the Magnolia Plaintiffs, including false statements to underwriters about the purpose and enforceability of the promissory notes. (FAC ¶¶ 122-123, 186). They also made disparaging statements about the Magnolia Plaintiffs to third parties, damaging their business reputation. (FAC ¶ 468-473).

    **d. Violating the Non-Disclosure Agreement:** Defendants breached the Non-Disclosure Agreement attached to the MSA by disclosing confidential information and using it to the detriment of the Magnolia Plaintiffs. (FAC ¶ 393).

**4. Damages**. As a direct result of these breaches, the Magnolia Plaintiffs suffered substantial damages, including loss of funds, business opportunities, and damage to their reputation. (FAC ¶ 371). These damages are a direct consequence of Defendants' failure to adhere to their contractual obligations under the MSA.

Plaintiffs have sufficiently alleged that Defendants Hill, Merritt, and Reeves, acting as third parties under the MSA, breached their contractual obligations. Hill, Merrit, and Reeves were all bound by the provision as agents and employees of Starrex. Their actions, as detailed in the FAC, demonstrate a clear violation of the MSA's terms and caused significant harm to the Magnolia Plaintiffs. Therefore, the breach of contract claim against Defendants Hill, Merritt, and Reeves should not be dismissed.

**D. <u>Magnolia Plaintiffs Sufficiently Allege Breach of Fiduciary Duty Against Hill, Reeves, and Merritt</u>**

Plaintiffs have sufficiently alleged that Defendants Hill, Merritt, and Reeves owed and breached fiduciary duties to the Magnolia Plaintiffs. These duties arise from the MSA, their positions as officers and directors of Starrex, and their direct involvement in the management and operations of the Magnolia entities.

**1. Existence of Fiduciary Duty**. The MSA, particularly through Sections 3.3 and 3.4, imposed fiduciary duties on Starrex and its officers to act in the best interests of the Magnolia Plaintiffs. (FAC, ¶ 102). As officers of Starrex, Hill, Merritt, and Reeves were bound by these provisions and had a duty to act with loyalty and care towards the Magnolia Plaintiffs. Additionally, as corporate officers and directors, they owed a fiduciary duty to act in the best interests of the entities they served, including refraining from self-dealing and ensuring the proper use of corporate assets. *See, e.g., Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963) (officers and directors are fiduciaries).

Furthermore, Merritt's representation of herself as the CFO of the Magnolia entities to third parties, including regulatory bodies and financial institutions, established a fiduciary relationship. (FAC ¶ 401). By assuming this role, Merritt undertook a duty to act in the best interests of the Magnolia Plaintiffs in all financial matters.

**2. Breach of Fiduciary Duty**. Plaintiffs' First Amended Complaint details numerous instances where Defendants breached their fiduciary duties:

   a. **Misappropriation of Funds:** Merritt, with the knowledge and approval of Hill, misappropriated funds from the Magnolia Plaintiffs' accounts. This included unauthorized withdrawals totaling approximately $1 million, which were used to satisfy personal debts of other Defendants. (FAC ¶¶ 536-539). Such actions constitute a clear breach of their duty to safeguard the Magnolia Plaintiffs' assets.

   b. **Misrepresentations and Non-Disclosure:** Hill and Merritt made material misrepresentations regarding the purpose of the promissory notes, falsely claiming they were "for-the-auditor-only" when, in fact, they were intended to create a financial obligation for the Magnolia Plaintiffs. (FAC ¶¶ 122-123). They also failed to disclose critical information about the financial status of the Magnolia entities to underwriters, leading to the termination of important business relationships. (FAC ¶ 186). These actions breach their duty of candor and full disclosure.

   c. **Self-Dealing and Usurpation of Corporate Opportunities:** Defendants engaged in self-dealing by diverting corporate opportunities and resources from the Magnolia Plaintiffs to benefit themselves and Starrex. This includes the unauthorized use of the Magnolia Plaintiffs' trade secrets, proprietary information, and business relationships. (FAC ¶¶ 551-559).

   d. **Negligent Oversight:** Reeves, as a director and member of the Audit Committee, failed to exercise proper oversight over the financial operations and management of the Magnolia entities. This negligence allowed the fraudulent activities and breaches of fiduciary duty to occur and persist. (FAC ¶¶ 59-61).

**3. Damages**. As a direct result of these breaches, the Magnolia Plaintiffs suffered substantial damages, including financial losses, loss of business opportunities, damage to reputation, and other consequential damages. (FAC ¶ 371).

Plaintiffs have sufficiently alleged that Defendants Hill, Merritt, and Reeves owed and breached fiduciary duties to the Magnolia Plaintiffs. Their actions, as detailed in the FAC, demonstrate a clear violation of their duties of loyalty, care, and candor. These breaches directly and proximately caused significant harm to the Magnolia Plaintiffs. Therefore, the breach of fiduciary duty claim should not be dismissed.

**E.  The Tortious Interference Claim Against Hill, Merritt, and Reeves Is Sufficiently Pleaded**

Plaintiffs have sufficiently pleaded a claim for tortious interference with contract against Defendants Hill, Merritt, and Reeves. The elements of this claim are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damages; and (4) actual damage or loss occurred. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

**1. Existence of Contracts**. Plaintiffs' First Amended Complaint identifies multiple contracts subject to interference, including:

**a. Lease Contracts:** Each Magnolia entity had lease contracts for their office locations. (FAC ¶ 422).

**b. Qualia Deployment Contract:** Although the contract was between Starrex and Qualia, the Magnolia Plaintiffs were the intended beneficiaries and paid for the services. (FAC ¶ 423). The MSA between Starrex and the Magnolia entities establishes the Magnolia Plaintiffs' right to use Qualia's services. (FAC, ¶ 102).

**c. Agency Agreements:** Each Magnolia entity had agency agreements with various title insurance underwriters, including Agents National Title Insurance Company (ANTIC), Old Republic, Fidelity, and First American. (FAC ¶ 422).

**d. Employment Contracts:** The Magnolia entities had employment contracts with their employees. (FAC ¶ 422).

**e. Earnest Money Contracts and Escrow Agreements:** The Magnolia entities held earnest money contracts and escrow agreements involving customers purchasing properties. (FAC ¶ 422).

**2. Willful and Intentional Interference**. Plaintiffs allege that Defendants Hill, Merritt, and Reeves willfully and intentionally interfered with these contracts through a series of wrongful acts, including:

**a. Misrepresentations to Qualia:** Reeves, acting on behalf of Starrex, sent a letter to Qualia falsely stating that Starrex owned the Magnolia Entities' software deployment, leading to the termination of the Magnolia Plaintiffs' access to the Qualia platform. (FAC ¶ 53). This act directly interfered with the Magnolia Plaintiffs' ability to utilize the software services they had paid for and were entitled to use.

**b. Misappropriation of Funds:** Merritt, with Hill's knowledge and approval, misappropriated funds from the Magnolia Plaintiffs' accounts, impairing their ability to fulfill their contractual obligations. (FAC ¶¶ 536-539).

**c. Disparagement and False Statements:** Merritt and Hill made false and disparaging statements to underwriters about the Magnolia Plaintiffs' financial stability, leading to the termination of agency agreements. (FAC ¶ 186).

**d. Solicitation of Employees:** Defendants, including Cooper, solicited Magnolia employees to resign and join competing entities, interfering with their employment contracts. (FAC ¶ 206).

These actions were taken with the intent to disrupt the Magnolia Plaintiffs' business operations and contractual relationships.

**3. Proximate Cause**. Defendants' actions were the proximate cause of the damages suffered by the Magnolia Plaintiffs. The termination of access to the Qualia platform, the misappropriation of funds, and the disparagement to underwriters directly led to the disruption of the Magnolia Plaintiffs' business operations, loss of contracts, and ultimately, the destruction of their businesses.

**4. Actual Damage or Loss**. As a result of Defendants' interference, the Magnolia Plaintiffs suffered actual damages, including:

- o Loss of business opportunities and contracts.
- o Financial losses due to misappropriated funds.
- o Damage to business reputation and goodwill.
- o Costs associated with the shutdown of their operations.

**5. Defendants' Actions Were Not Justified**. Defendants' actions were not justified or privileged. They acted with malice and intent to harm the Magnolia Plaintiffs' business interests. Their conduct was aimed at usurping the Magnolia Plaintiffs' business for their own benefit, which is not a legitimate business purpose.

Plaintiffs have sufficiently pleaded a claim for tortious interference with contract against Defendants Hill, Merritt, and Reeves. The FAC identifies the contracts interfered with, the specific acts of interference, the intent behind those acts, and the resulting damages. Therefore, Defendants' motion to dismiss this claim should be denied.

## F.  The Conversion Claim Against Merritt and Cooper is Sufficiently Pleaded

Plaintiffs have adequately pleaded a claim for conversion against Merritt and Cooper. Conversion requires showing that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused. *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386–87 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

**1. Ownership or Right to Possession**. Plaintiffs have clearly alleged that the Magnolia Companies owned and had the right to possess various forms of property, including:

a. **Tangible Personal Property:** Furniture, equipment, and other tangible assets located within the Magnolia Arkansas and Magnolia Florida offices. (FAC ¶ 434).

b. **Cash:** Funds held in the Magnolia Plaintiffs' bank accounts, including those at Frost Bank. (FAC ¶ 535).

c. **Intellectual Property:** While conversion generally applies to physical property, Texas law recognizes that intangible property, such as trade secrets and confidential business information, can be converted if merged with a tangible object (e.g., documents, electronic files).

**2. Unlawful Assumption and Exercise of Dominion and Control**. Plaintiffs allege specific acts by Merritt and Cooper that constitute unlawful assumption and exercise of dominion and control over their property:

- **Merritt:**

  - Authorized and facilitated the withdrawal of approximately $1 million from the Magnolia Plaintiffs' Frost Bank accounts without authorization. (FAC ¶¶ 536-539).

  - Used her position as CFO to access and control the Magnolia Plaintiffs' financial accounts for the benefit of herself and other defendants. (FAC ¶ 535).

- **Cooper:**

  - Resigned from her position with the Magnolia Entities but continued to access and use their confidential information and trade secrets, including customer lists and business strategies. (FAC ¶ 554).

  - Facilitated the transfer of Magnolia Plaintiffs' tangible assets and business operations to MarketStreet. (FAC ¶ 555).

**3. Demand and Refusal**. Plaintiffs allege that a demand was made for the return of these assets, which was refused by Defendants. (FAC ¶ 435). The demand was made both directly to the defendants and through the plaintiffs' counsel to the defendants' counsel.

**4. Damages**. As a result of the conversion, Plaintiffs have suffered damages, including the loss of use of their tangible and intangible property, financial losses, and damage to their business operations.

**5. Conversion of Intangible Property**. While Defendants correctly state that conversion typically applies to physical property, Texas law recognizes an exception for intangible property that is merged with a tangible object. *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982, (S.D. Tex. 1997). (noting that intangible property can be converted if it is merged with a document). Here, Plaintiffs' intangible property, including trade secrets and confidential information, was contained in electronic files and documents that were accessed and used by Defendants. This satisfies the requirement for conversion of intangible property merged with a tangible object.

Plaintiffs have sufficiently pleaded a claim for conversion against Merritt and Cooper. The FAC identifies the property converted, the manner in which it was converted, and the damages suffered as a result. Therefore, Defendants' motion to dismiss this claim should be denied.

## G. Magnolia Plaintiffs Sufficiently Plead Claims for Misappropriation of Trade Secrets

Plaintiffs have sufficiently pleaded their claims for misappropriation of trade secrets under both Cause of Action No. 9 (Texas Uniform Trade Secrets Act) and Cause of Action No. 21 (common law).

**1. Cause of Action No. 9: Violation of the Texas Uniform Trade Secrets Act**

The Texas Uniform Trade Secrets Act (TUTSA) defines a "trade secret" as information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that:

    **a.** derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    **b.** is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tex. Civ. Prac. & Rem. Code § 134A.002(6).

Plaintiffs' First Amended Complaint identifies the following trade secrets misappropriated by Defendants:

- o **Customer lists:** (FAC ¶ 445). These lists contain valuable information about clients, their preferences, and transaction history.

- o **Proprietary aggregation of information and title opinions:** (FAC ¶ 445). This information represents a unique and valuable compilation of data and analysis developed by the Magnolia Plaintiffs.

- o **Business strategies and plans:** (FAC ¶ 445). These include confidential plans for expansion, marketing, and operations.

- o **Confidential financial data:** (FAC ¶ 445). This includes sensitive information about the Magnolia Plaintiffs' financial performance, pricing, and cost structures.

- o **Specialized operational methodologies:** (FAC ¶ 445). These are unique processes and procedures developed by the Magnolia Plaintiffs to efficiently and effectively conduct their business.

These trade secrets derive independent economic value from not being generally known or readily ascertainable by competitors. Plaintiffs took reasonable measures to maintain their secrecy, including implementing confidentiality agreements, restricting access to sensitive information, and using password protection. (FAC ¶ 445).

Plaintiffs allege that Defendants, including Merritt and Hill, misappropriated these trade secrets through improper means, including:

    **a.** **Breach of Confidential Relationship:** Merritt and Hill, as officers of Starrex, had access to the Magnolia Plaintiffs' trade secrets through the MSA and their positions of authority. They breached their duty of confidentiality by disclosing and using this information for the benefit of Starrex and themselves. (FAC ¶ 446).

    **b.** **Unauthorized Access and Use:** Cooper, after resigning from the Magnolia Plaintiffs, retained and exploited her access to the Magnolia Plaintiffs' systems, downloading proprietary customer data and other confidential information. (FAC ¶ 554). She then transferred this information to MarketStreet and Brewer. (FAC ¶ 555).

    **c.** **Conspiracy:** Defendants conspired to misappropriate the trade secrets, with each playing a role in the unauthorized acquisition, use, and disclosure of the information. (FAC ¶¶ 481-486).

Plaintiffs further allege that Defendants used the misappropriated trade secrets for their commercial advantage, causing harm to the Magnolia Plaintiffs. (FAC ¶ 558). Specifically, Defendants used the trade secrets

to compete unfairly with the Magnolia Plaintiffs, to solicit their customers and employees, and to ultimately destroy their businesses.

**2. Cause of Action No. 21: Common Law Misappropriation of Trade Secrets**

Plaintiffs' claim for common law misappropriation of trade secrets is based on the same factual allegations as their TUTSA claim. The elements of a common law misappropriation claim are similar to those under TUTSA and are sufficiently pleaded in the First Amended Complaint.

**Conclusion**

Plaintiffs have sufficiently pleaded their claims for misappropriation of trade secrets under both TUTSA and common law. The FAC identifies the specific trade secrets at issue, the manner in which they were misappropriated, and the harm caused to the Magnolia Plaintiffs. Therefore, Defendants' motion to dismiss these claims should be denied.

**H.  Magnolia Plaintiffs Sufficiently Plead Claims for Unjust Enrichment**

Plaintiffs have sufficiently pleaded their claims for unjust enrichment against Defendants. Unjust enrichment occurs when a party obtains a benefit from another by fraud, duress, or taking an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Plaintiffs allege that Defendants were unjustly enriched through their wrongful conduct, which conferred a benefit upon them that would be inequitable for them to retain.

**1. Cause of Action No. 10 (Against Hill, Merritt, Starrex Title Florida, LLC, MarketStreet, Cooper, and Brewer)**

Plaintiffs allege that Defendants were unjustly enriched through the wrongful takeover of Magnolia Arkansas and Magnolia Florida. (FAC ¶ 451). This takeover involved the misappropriation of the Magnolia Plaintiffs' assets, including their intellectual property, customer relationships, and goodwill. (FAC ¶ 452). As a result of these actions, Defendants obtained a valuable business operation without fairly compensating the Magnolia Plaintiffs.

Specifically, Plaintiffs allege:

  a. **Misappropriation of Funds:** Merritt, with Hill's knowledge and approval, authorized the withdrawal of approximately $1 million from the Magnolia Plaintiffs' accounts without authorization. (FAC ¶¶ 536-539). These funds were used for the benefit of Starrex, not the Magnolia Plaintiffs.

  b. **Takeover of Business Operations:** Defendants, through a coordinated effort, took over the operations of Magnolia Arkansas and Magnolia Florida, using the Magnolia Plaintiffs' assets, trade secrets, and business relationships to their advantage. (FAC ¶¶ 234-235).

  c. **Benefit to Defendants:** As a result of their actions, Defendants obtained a fully operational and profitable business without incurring the costs and expenses typically associated with starting and building such a business. They also benefited from the goodwill and reputation developed by the Magnolia Plaintiffs.

It would be unconscionable to allow Defendants to retain the benefits they obtained through their wrongful conduct. They have been unjustly enriched at the expense of the Magnolia Plaintiffs, who have suffered significant financial losses and damage to their business.

**2. Cause of Action No. 19 (Against Garth, Clayton, Hill, and Merritt)**

Plaintiffs allege that Defendants Garth, Clayton, Hill, and Merritt were unjustly enriched through their wrongful misappropriation of funds from Magnolia's Frost Bank accounts. (FAC ¶ 535). Specifically, Plaintiffs allege that:

   a. **Unauthorized Withdrawals:** Defendants orchestrated a series of unauthorized withdrawals from the Magnolia Plaintiffs' accounts, totaling approximately $1 million. (FAC ¶ 537).

   b. **Forged Signatures:** These withdrawals were facilitated by the forgery of John Magness's signature on numerous checks. (FAC ¶ 536).

   c. **Personal Benefit:** The funds were used to satisfy the personal antecedent debt of Defendants Clayton and Garth to Starrex. (FAC ¶ 538).

Defendants' retention of these benefits is unjust because the funds were obtained through forgery and unauthorized withdrawals. The funds were used to satisfy personal obligations, not for the benefit of the Magnolia Plaintiffs.

Plaintiffs have sufficiently pleaded claims for unjust enrichment against Defendants. The FAC alleges specific facts demonstrating how each Defendant obtained a benefit through wrongful conduct and why it would be inequitable for them to retain those benefits. Therefore, Defendants' motion to dismiss the unjust enrichment claims should be denied.

## I.  Magnolia Plaintiffs Sufficiently Plead Claim for Common Law Misappropriation

Plaintiffs have sufficiently pleaded a claim for common law misappropriation against Defendants. To establish a claim for common law misappropriation, a plaintiff must show: (1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff. *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied). Plaintiffs' First Amended Complaint satisfies these elements:

**1. Creation of Product:** The Magnolia Plaintiffs created a valuable business through extensive time, labor, skill, and financial investment. This included developing:

   a. **Trade Secrets:** Proprietary customer lists, aggregations of title information and opinions, business strategies and plans, and specialized operational methodologies. (FAC ¶ 445).

   b. **Goodwill and Reputation:** A strong reputation for excellence in the title insurance industry, built over years of operation. (FAC ¶ 455).

13

    c.  **Business Operations:** Established business operations in multiple locations, including valuable lease agreements, vendor relationships, and employee contracts. (FAC ¶ 422).

    **2. Free Riding by Defendants:** Defendants, including Merritt, Hill, Starrex Title Florida, LLC, MarketStreet, Cooper, and Brewer, engaged in a concerted effort to misappropriate the Magnolia Plaintiffs' business, thereby gaining a special advantage in the marketplace. This misappropriation included:

    a.  **Use of Trade Secrets:** Defendants used the Magnolia Plaintiffs' trade secrets to compete directly with them, soliciting their customers and using their confidential information. (FAC ¶ 446).

    b.  **Taking Over Operations:** Defendants took over the Magnolia Plaintiffs' office locations, phone numbers, email systems, and other assets, effectively hijacking their ongoing business operations. (FAC ¶¶ 234-235).

    c.  **Impersonation:** Defendants held themselves out as the Magnolia Plaintiffs, using their name, logo, and branding to confuse customers and capitalize on their goodwill. (FAC ¶ 268).

These actions allowed Defendants to "free ride" on the Magnolia Plaintiffs' efforts and investments, gaining an unfair competitive advantage.

    **3. Commercial Damage:** As a result of Defendants' misappropriation, the Magnolia Plaintiffs suffered significant commercial damage, including:

    a.  **Loss of Business Opportunities:** The Magnolia Plaintiffs lost existing and prospective business due to Defendants' interference and usurpation of their operations.

    b.  **Damage to Reputation:** The confusion created by Defendants' actions damaged the Magnolia Plaintiffs' reputation in the marketplace.

    c.  **Financial Losses:** The Magnolia Plaintiffs suffered financial losses due to the misappropriation of their assets, loss of business, and expenses incurred in attempting to mitigate the damage.

Plaintiffs have sufficiently pleaded a claim for common law misappropriation. The FAC details the Magnolia Plaintiffs' investment in creating a valuable business, Defendants' wrongful appropriation of that business, and the resulting commercial damage. Therefore, Defendants' motion to dismiss this claim should be denied.

**J.**  **Magnolia Plaintiffs Sufficiently Plead Claim for Violation of the Lanham Act**

Plaintiffs have sufficiently pleaded a claim for violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., against Defendants. The Lanham Act protects against the unauthorized use of trademarks and trade dress that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. 15 U.S.C. § 1125(a).

    **1. Protectable Marks**. Plaintiffs have used and established common law rights in distinctive trademarks and trade dress associated with their business, including:

    a.  **The "Magnolia Title" name:** This name has been used in commerce by the Magnolia entities in connection with their title insurance services. (FAC ¶ 236).

    **b. The Magnolia Title logo:** The distinctive logo used by the Magnolia entities in their marketing and branding. (FAC ¶ 456).

    **c. Trade dress:** The overall image and appearance of the Magnolia Plaintiffs' offices, marketing materials, and online presence, which create a unique and recognizable identity in the marketplace.

These marks have acquired secondary meaning through Plaintiffs' continuous use in commerce, extensive marketing efforts, and the development of a strong reputation for excellence in the title insurance industry. (FAC ¶ 455).

    **2. Infringing Use by Defendants**. Defendants have used marks that are identical or confusingly similar to the Magnolia Plaintiffs' marks in connection with their competing title insurance services. Specifically, Defendants have:

    **a. Taken over and are using the Magnolia Title name:** Defendants are operating under the name "Magnolia Title" in the same locations previously occupied by the Magnolia Plaintiffs. (FAC ¶¶ 234-235).

    **b. Used the Magnolia Title logo and branding:** Defendants are using the same or substantially similar logo and branding on their social media accounts, websites, and marketing materials. (FAC ¶ 456).

    **c. Copied the Magnolia Plaintiffs' trade dress:** Defendants have replicated the overall look and feel of the Magnolia Plaintiffs' offices and operations to create the false impression that they are the same entity. (FAC, pp. 72-75, 126-127).

    **3. Likelihood of Confusion**. Defendants' use of the Magnolia Plaintiffs' marks is likely to cause confusion among consumers, who may mistakenly believe that Defendants are affiliated with, sponsored by, or endorsed by the Magnolia Plaintiffs. (FAC, ¶¶ 281-288, 465-466). This likelihood of confusion is heightened by the fact that Defendants are operating in the same geographic area and offering the same services as the Magnolia Plaintiffs—in fact, in the same exact offices—with the intention to confuse the public. (FAC, ¶¶ 234, 281-288, 465-466, pp. 72-75, 126-127).

    **4. Damages**. As a result of Defendants' infringing activities, the Magnolia Plaintiffs have suffered damages, including:

    **a. Loss of Business:** Customers have been diverted to Defendants due to the confusion created by their use of the Magnolia Plaintiffs' marks.

    **b. Damage to Reputation:** The goodwill and reputation associated with the Magnolia Plaintiffs' marks have been diluted and tarnished by Defendants' actions.

    **c. Corrective Advertising Costs:** The Magnolia Plaintiffs will be required to expend substantial resources to correct the confusion created by Defendants' conduct.

Plaintiffs have sufficiently pleaded a claim for violation of the Lanham Act. The FAC identifies the protected marks, Defendants' infringing use of those marks, the likelihood of confusion created by that use, and the resulting damages. Therefore, Defendants' motion to dismiss this claim should be denied.

**K. <u>Plaintiffs Sufficiently Plead Claims for Violations of Securities Laws</u>**

Plaintiffs have sufficiently pleaded claims for violations of securities laws against Defendants Merritt, Hill, and Reeves. These claims arise from Defendants' fraudulent misrepresentations and omissions in connection with the offer and sale of securities, as well as their failure to comply with disclosure requirements under both U.S. and Canadian securities laws.

**1. Jurisdiction and Applicable Law**. This Court has jurisdiction over Plaintiffs' securities law claims pursuant to 15 U.S.C. § 78aa (granting exclusive jurisdiction to federal district courts for violations of the Securities Exchange Act of 1934) and 28 U.S.C. § 1331 (federal question jurisdiction). Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), and the Sarbanes-Oxley Act of 2002 (18 U.S.C. § 1514A). Additionally, Plaintiffs allege violations of Canadian securities laws, specifically those related to disclosure requirements for public companies listed on the Canadian Securities Exchange (CSE).

**2. Standing**. Plaintiffs have standing to bring their securities law claims. Magness was induced to enter into transactions involving Starrex stock based on fraudulent misrepresentations made by Defendants. (FAC ¶ 476). These misrepresentations concerned the value and potential appreciation of Starrex stock, which was to be part of the consideration for the acquisition of the Magnolia entities. (FAC ¶¶ 488-496). Additionally, the Magnolia Plaintiffs were harmed by the fraudulent conduct of Defendants, which affected the value of their equity interests and their ability to operate their businesses.

**3. Violations of Section 10(b) and Rule 10b-5**. Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 prohibit manipulative and deceptive practices in connection with the purchase or sale of securities. To state a claim under Section 10(b) and Rule 10b-5, Plaintiffs must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Plaintiffs have pleaded these elements with the requisite particularity:

    **a. Material Misrepresentations and Omissions:** Defendants made numerous material misrepresentations and omissions regarding:

        i. The financial health and stability of Starrex. (FAC ¶¶ 148, 174).

        ii. The purpose and nature of the promissory notes, falsely claiming they were "for-the-auditor-only" and would not be enforced. (FAC ¶¶ 122-123).

        iii. The qualifications and credentials of Debbie Merritt, who played a crucial role in Starrex's financial operations. (FAC ¶¶ 48, 516).

        iv. The planned acquisition of the Magnolia entities and the issuance of Starrex stock as consideration. (FAC ¶¶ 85, 488).

b. **Scienter:** Defendants acted with scienter, meaning they knew their representations were false or were reckless in disregarding the truth. The deliberate fabrication of the promissory notes, the misrepresentations about Merritt's credentials, and the repeated assurances to Magness about the acquisition and stock value demonstrate a clear intent to deceive. (FAC ¶¶ 123, 162, 489).

c. **Connection with Purchase or Sale of Securities:** The misrepresentations and omissions were made in connection with the proposed acquisition of the Magnolia entities, which involved the issuance of Starrex stock as consideration. (FAC ¶ 488). Magness was induced to enter into agreements and transactions based on the understanding that he would receive valuable Starrex stock. (FAC ¶ 489).

d. **Reliance:** Plaintiffs relied on Defendants' misrepresentations and omissions in agreeing to the proposed acquisition and in continuing to work with Starrex. (FAC ¶ 498). Magness specifically relied on the assurances regarding the stock value and the acquisition strategy when making decisions about his involvement with Starrex. (FAC ¶ 498).

e. **Economic Loss:** Plaintiffs suffered economic losses as a result of Defendants' fraudulent conduct. The Magnolia entities were financially damaged by the misappropriation of funds, the disruption of their business operations, and the loss of business opportunities. (FAC ¶ 371). Magness suffered losses due to his reliance on the false promises of stock compensation and the failure of the acquisition to materialize as represented. (FAC ¶ 498).

f. **Loss Causation:** Defendants' misrepresentations and omissions directly caused Plaintiffs' losses. Had Defendants been truthful about the financial condition of Starrex, the purpose of the promissory notes, and Merritt's qualifications, Plaintiffs would not have entered into the agreements or suffered the subsequent damages.

**4. Violations of Sarbanes-Oxley Act of 2002**. Plaintiffs also allege that Defendants violated the Sarbanes-Oxley Act of 2002, which requires CEOs and CFOs to certify the accuracy of financial reports and disclosures. Merritt and Hill, as CFO and CEO of Starrex, respectively, certified financial statements that contained false and misleading information. (FAC ¶ 174). These certifications were made with knowledge of the falsity of the information, constituting a violation of Sarbanes-Oxley.

**5. Violations of Canadian Securities Laws**. In addition to U.S. securities laws, Plaintiffs allege that Defendants violated Canadian securities laws, including those related to disclosure requirements for public companies listed on the Canadian Securities Exchange (CSE). (FAC ¶ 148). Starrex's failure to disclose material information about its financial condition, the true nature of the promissory notes, and the qualifications of its key personnel constitutes violations of these laws.

Plaintiffs have sufficiently pleaded claims for violations of securities laws against Defendants Merritt, Hill, and Reeves. The FAC details the specific misrepresentations and omissions, the context in which they were made, and the resulting harm to Plaintiffs. These allegations satisfy the heightened pleading standards for fraud and establish a plausible claim for relief under both U.S. and Canadian securities laws. Therefore, Defendants' motion to dismiss these claims should be denied.

**L.  <u>Magnolia Plaintiffs Sufficiently Plead Claim for Conspiracy</u>**

Plaintiffs have sufficiently pleaded a claim for civil conspiracy against Defendants. A civil conspiracy under Texas law is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998). To state a claim for conspiracy, a plaintiff must plead facts showing: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

Plaintiffs' First Amended Complaint satisfies these elements:

**1. Two or More Persons**. Plaintiffs allege that Defendants, including Garth, Clayton, Hill, Merritt, Reeves, Cooper, and Brewer, conspired to harm the Magnolia Plaintiffs. (FAC ¶¶ 481-486). Each of these individuals played a distinct role in the conspiracy, as detailed in the FAC.

**2. Object to Be Accomplished**. The object of the conspiracy was to defraud the Magnolia Plaintiffs, misappropriate their assets, and ultimately take over their business operations for the benefit of Defendants. (FAC ¶ 484). This unlawful purpose is evident from the coordinated actions taken by Defendants to deceive, manipulate, and harm the Magnolia Plaintiffs.

**3. Meeting of the Minds**. The FAC alleges that Defendants had a "meeting of the minds" to achieve their unlawful objectives. (FAC ¶ 486). This is supported by specific factual allegations, including:

   a. **Coordinated Actions:** Defendants worked together to fabricate and use the "for-the-auditor-only" promissory notes to create a false impression of debt owed by the Magnolia Plaintiffs. (FAC ¶¶ 122-123).

   b. **Communications and Meetings:** Defendants held meetings and communicated regularly to plan and execute their scheme. For instance, in January 2024, Merritt, Hill, and others, including counsel, discussed a plan to take over the assets of Magnolia Arkansas and Magnolia Florida. (FAC ¶ 486).

   c. **Role of Cooper:** Defendant Cooper acted as a liaison between Starrex and the Magnolias, using her position to facilitate the misappropriation of trade secrets and the takeover of business operations. (FAC ¶ 484).

**4. Unlawful, Overt Acts**. Defendants committed numerous unlawful acts in furtherance of the conspiracy, including:

   a. **Forgery:** Using an image of Magness' signature on numerous checks without authorization. (FAC ¶ 486).

   b. **Misappropriation of Funds:** Making unauthorized withdrawals from the Magnolia Plaintiffs' bank accounts. (FAC ¶¶ 536-539).

   c. **Fraudulent Misrepresentations:** Making false statements to the Magnolia Plaintiffs, underwriters, and other third parties about the financial condition and obligations of the Magnolia entities. (FAC ¶¶ 48, 50, 52, 59, 85, 122-123, 186, 488-496).

   d. **Tortious Interference:** Interfering with the Magnolia Plaintiffs' contracts and business relationships. (FAC ¶¶ 422, 484).

e. **Misappropriation of Trade Secrets:** Unlawfully acquiring, using, and disclosing the Magnolia Plaintiffs' confidential information and trade secrets. (FAC ¶¶ 446, 554-557).

**5. Damages**. As a proximate result of the conspiracy, the Magnolia Plaintiffs suffered substantial damages, including financial losses, loss of business opportunities, damage to reputation, and the eventual destruction of their businesses. (FAC ¶¶ 371, 431, 498, 558).

Plaintiffs have sufficiently pleaded a claim for civil conspiracy against Defendants. The FAC details the agreement among Defendants to achieve an unlawful purpose, the specific overt acts taken in furtherance of the conspiracy, and the resulting damages. Therefore, Defendants' motion to dismiss this claim should be denied.

## M. Plaintiffs Magness and The Peabody Bulldog Sufficiently Plead Fraudulent Inducement Claims Against Garth, Clayton, Hill, and Merritt

Plaintiffs Magness and The Peabody Bulldog have sufficiently pleaded claims for fraudulent inducement against Defendants Garth, Clayton, Hill, and Merritt. Fraudulent inducement is a particular species of fraud that arises when a party is induced to enter into a contract based on false representations. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). To state a claim for fraudulent inducement, a plaintiff must show: (1) a material misrepresentation; (2) which was false; (3) and which was either known to be false when made or was made recklessly without any knowledge of its truth and as a positive assertion; (4) which the speaker intended to be acted upon by the other party; (5) which the other party acted in reliance on; and (6) which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Plaintiffs' First Amended Complaint details numerous instances where Defendants Garth, Clayton, Hill, and Merritt made material misrepresentations and omissions of fact with the specific intent to fraudulently induce Plaintiffs into entering agreements and taking actions that they would not have otherwise taken.

### 1. Specific Instances of Fraudulent Inducement:

a. **Misrepresentations Regarding Starrex Stock and Wealth Event:**

- **When and Where:** From April 2021 through April 2023, in numerous meetings and communications. (FAC ¶ 490).

- **Who:** Garth, Clayton, Hill, and Merritt. (FAC ¶ 490).

- **What:** Defendants represented that Magness would receive millions of shares in Starrex stock in exchange for bringing industry opportunities to Starrex. (FAC ¶ 490). They also misrepresented their ability to inflate Starrex's stock price to over $5 per share by summer 2023 and stated that Magness would experience a "wealth event" based on the approximately 3 million shares of Starrex stock he would receive. (FAC ¶ 489). They further claimed they could raise $50 million from friends and family and secure a $50 million credit facility. (FAC ¶ 491).

- **Falsity:** These representations were false, as Defendants knew that Starrex did not intend to appoint Magness as CEO or award him a board seat, nor did they have the ability to inflate the stock price as claimed. (FAC ¶ 489). The promised shares were never delivered,

- **Intent:** Defendants made these representations with the intent that Magness rely on them and be induced to join Starrex, contribute his expertise and business connections, and forego other lucrative opportunities. (FAC ¶ 489).

- **Reliance:** Magness justifiably relied on these representations, believing that he would receive substantial equity in Starrex and that the company had the financial backing and growth potential described by Defendants. (FAC ¶ 498).

- **Damages:** As a result of his reliance, Magness forewent other employment opportunities, including one that would have paid him $900,000 per year, and invested his time, resources, and reputation in Starrex. (FAC ¶ 498). He also suffered financial losses due to the devaluation of his promised equity and the failure of Starrex to achieve its projected growth.

b. **Misrepresentations Regarding Promissory Notes:**

- **When and Where:** In meetings with Magness in April 2023. (FAC ¶ 495).

- **Who:** Garth, Hill, and Merritt. (FAC ¶ 495).

- **What:** Defendants represented that the promissory notes were only for audit purposes and would not be circulated or enforced. (FAC ¶ 495). They stated that the funds sitting on Magnolia's balance sheet were classified as a prepayment for the acquisition of the Magnolia entities. (FAC ¶ 496).

- **Falsity:** These representations were false, as evidenced by Defendants' later attempts to enforce the notes and their use of the notes to justify taking over the Magnolia entities. (FAC ¶¶ 122-123, 186).

- **Intent:** Defendants intended for Magness to sign the promissory notes based on the false representation that they were merely a formality. (FAC ¶ 495).

- **Reliance:** Magness relied on these representations and signed the notes, believing they would not be enforced. (FAC ¶ 145).

- **Damages:** As a result of his reliance, Magness and the Magnolia entities became liable for a substantial debt that Defendants later attempted to collect, causing financial harm and contributing to the destruction of the Magnolia businesses. (FAC ¶ 371).

c. **Misrepresentations to The Peabody Bulldog:**

- **When and Where:** In mid-2022, during negotiations and a mediation involving BSpoke Title. (FAC ¶ 503).

- **Who:** Garth. (FAC ¶ 503).

- **What:** Garth represented that if The Peabody Bulldog relinquished $2.2 million in equity in BSpoke Title, it would receive 3,000,000 shares of Starrex stock. (FAC ¶ 503). Garth also stated that a promissory note made by Magness and TPB for $100,000 to Garth's company, Superior Am Cap Investments, LLC, was only for tax efficiency purposes and would be forgiven. (FAC ¶ 504).

- **Falsity:** These representations were false. The Peabody Bulldog never received the promised Starrex shares, and the promissory note was not forgiven. (FAC ¶¶ 503-505).

- **Intent:** Garth made these representations with the intent to induce The Peabody Bulldog to relinquish its equity in BSpoke Title and transfer those assets to entities under Garth's control. (FAC ¶ 505).

- **Reliance:** The Peabody Bulldog justifiably relied on these representations and relinquished its equity in BSpoke Title. (FAC ¶ 507).

- **Damages:** As a result of its reliance, The Peabody Bulldog suffered substantial economic losses, including the loss of valuable equity, income streams, and appreciation. (FAC ¶ 507).

**2. Fraudulent Inducement into the MSA**. Plaintiffs have also sufficiently pleaded a claim for fraudulent inducement into the MSA. Defendants made material misrepresentations regarding Merritt's qualifications, stating that she had a B.S. in accounting, an MBA, and a Ph.D., and was a CFA. (FAC ¶ 516). These representations were false, as Merritt did not possess these credentials. (FAC ¶ 523). Defendants knew these representations were false or made them recklessly without regard for their truth. They intended for Plaintiffs to rely on these misrepresentations when entering into the MSA, which placed Merritt in a position of significant financial control over the Magnolia entities. (FAC ¶ 545). Plaintiffs justifiably relied on these misrepresentations and, as a result, suffered damages. (FAC ¶ 550).

Plaintiffs have sufficiently pleaded claims for fraudulent inducement, detailing specific misrepresentations made by Defendants, the context in which those misrepresentations were made, and the resulting harm to Plaintiffs. These allegations satisfy the heightened pleading standard for fraud under Rule 9(b) and establish a plausible claim for relief. Therefore, Defendants' motion to dismiss these claims should be denied.

## N.  Plaintiffs Sufficiently Plead Claims for Common Law Fraud and Fraudulent Inducement

Plaintiffs have sufficiently pleaded claims for common law fraud and fraudulent inducement against Defendants. To state a claim for common law fraud, a plaintiff must allege: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See, e.g., Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Fraudulent inducement is a species of common law fraud that shares the same elements but applies when a contract exists between the parties. *See, e.g., Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001).

Plaintiffs' First Amended Complaint sets forth detailed factual allegations that satisfy each of these elements as to each of the defendants.

**1. Fraudulent Inducement Claims (Against Garth, Clayton, Hill, and Merritt):**

**a.  Misrepresentations Regarding Starrex Stock and Wealth Event:**

- **When and Where:** From April 2021 through April 2023, in numerous meetings in Texas and through phone calls and communications. (FAC ¶ 490).

- **Who:** Garth, Clayton, Hill, and Merritt. (FAC ¶ 490).

21

- **What:** Defendants represented that Magness would receive millions of shares in Starrex stock in exchange for bringing industry opportunities for Starrex. (FAC ¶ 490). They also misrepresented their ability to inflate Starrex's stock price to over $5 per share by summer 2023 and stated that Magness would experience a "wealth event" based on the approximately 3 million shares of Starrex stock he would receive. (FAC ¶ 489). They further claimed they could raise $50 million from friends and family and secure a $50 million credit facility. (FAC ¶ 491).

- **Falsity:** These representations were false, as Defendants knew that Starrex did not intend to appoint Magness as CEO or award him a board seat, nor did they have the ability to inflate the stock price as claimed. (FAC ¶ 489). The promised shares were never delivered, and the promised financial backing did not materialize.

- **Intent:** Defendants made these representations with the intent that Magness rely on them and be induced to join Starrex, contribute his expertise and business connections, and forego other lucrative opportunities. (FAC ¶ 489).

- **Reliance:** Magness justifiably relied on these representations, believing that he would receive substantial equity in Starrex and that the company had the financial backing and growth potential described by Defendants. (FAC ¶ 498).

- **Damages:** As a result of his reliance, Magness forewent other employment opportunities, including one that would have paid him $900,000 per year, and invested his time, resources, and reputation in Starrex. (FAC ¶ 498). He also suffered financial losses due to the devaluation of his promised equity and the failure of Starrex to achieve its projected growth.

b. **Misrepresentations Regarding Promissory Notes:**

- **When and Where:** In meetings with Magness in April 2023 and in subsequent communications. (FAC ¶¶ 495, 596).

- **Who:** Garth, Hill, and Merritt. (FAC ¶ 495).

- **What:** Defendants represented that the promissory notes were only for audit purposes and would not be circulated or enforced. (FAC ¶ 495). They stated that the funds sitting on Magnolia's balance sheet were classified as a prepayment for the acquisition of the Magnolia entities. (FAC ¶ 496).

- **Falsity:** These representations were false, as evidenced by Defendants' later attempts to enforce the notes and their use of the notes to justify taking over the Magnolia entities. (FAC ¶¶ 122-123, 186).

- **Intent:** Defendants intended for Magness to sign the promissory notes based on the false representation that they were merely a formality. (FAC ¶ 495).

- **Reliance:** Magness relied on these representations and signed the notes, believing they would not be enforced. (FAC ¶ 145).

- **Damages:** As a result of his reliance, Magness and the Magnolia entities became liable for a substantial debt that Defendants later attempted to collect, causing financial harm and contributing to the destruction of the Magnolia businesses. (FAC ¶ 371).

c. **Misrepresentations to The Peabody Bulldog:**

- **When and Where:** In mid-2022, during negotiations and a mediation involving BSpoke Title. (FAC ¶ 503).

- **Who:** Garth. (FAC ¶ 503).

- **What:** Garth represented that if The Peabody Bulldog relinquished $2.2 million in equity in BSpoke Title, it would receive 3,000,000 shares of Starrex stock. (FAC ¶ 503). Garth also stated that a promissory note made by Magness and TPB for $100,000 to Garth's company, Superior Am Cap Investments, LLC, was only for tax efficiency purposes and would be forgiven. (FAC ¶ 504).

- **Falsity:** These representations were false. The Peabody Bulldog never received the promised Starrex shares, and the promissory note was not forgiven. (FAC ¶¶ 503-505).

- **Intent:** Garth made these representations with the intent to induce The Peabody Bulldog to relinquish its equity in BSpoke Title and transfer those assets to entities under Garth's control. (FAC ¶ 505).

- **Reliance:** The Peabody Bulldog justifiably relied on these representations and relinquished its equity in BSpoke Title. (FAC ¶ 507).

- **Damages:** As a result of its reliance, The Peabody Bulldog suffered substantial economic losses, including the loss of valuable equity, income streams, and appreciation. (FAC ¶ 507).

**2. Common Law Fraud (Against Garth, P. Clayton, G. Clayton, Hill, Reeves, and Merritt)**.  Plaintiffs also assert a common law fraud claim based on Defendants' misrepresentations regarding Merritt's qualifications and credentials.

**a. Misrepresentations Regarding Merritt's Qualifications:**

- **When and Where:** Beginning in April 2021 and continuing through subsequent meetings and communications. (FAC ¶¶ 515-521).

- **Who:** Garth, P. Clayton, Hill, and Reeves. (FAC ¶¶ 515-521).

- **What:** Defendants repeatedly represented that Merritt had extensive academic credentials, including a bachelor's degree and MBA from the University of Memphis, a PhD from UCLA Anderson School of Management, and a Chartered Financial Analyst (CFA) designation. (FAC ¶ 516). They touted her as "wicked smart" and emphasized her purported expertise in U.S. and Canadian securities regulations. (FAC ¶ 516).

- **Falsity:** These representations were false. Merritt did not possess any of these credentials. (FAC ¶ 523).

- **Intent:** Defendants made these representations with the intent to induce Magness to join the business venture, contribute his expertise and relationships, and rely on Merritt's purported expertise in managing the financial and regulatory aspects of the business. (FAC ¶ 527).

- **Reliance:** Magness justifiably relied on these representations, believing that Merritt was highly qualified and capable of handling the complex financial operations of the venture. (FAC ¶ 528).

- **Damages:** As a result of his reliance, Magness invested his time, resources, and reputation in the venture, and suffered financial losses due to Merritt's lack of qualifications and subsequent mismanagement. (FAC ¶ 531).

**3. Fraudulent Inducement into the MSA (Against Garth, Clayton, Hill, and Merritt)**. Plaintiffs also assert a claim for fraudulent inducement into the MSA based on Defendants' misrepresentations regarding Merritt's qualifications.

a. **Misrepresentations:** Defendants represented that Merritt possessed the necessary qualifications and expertise to oversee the financial operations contemplated by the MSA. (FAC ¶ 545). These representations were false, as Merritt lacked the claimed credentials.

b. **Intent:** Defendants made these misrepresentations with the intent to induce the Magnolia Plaintiffs to enter into the MSA and entrust their financial operations to Starrex. (FAC ¶ 545).

c. **Reliance:** The Magnolia Plaintiffs justifiably relied on these misrepresentations in executing the MSA and granting Starrex control over their financial operations. (FAC ¶ 549).

d. **Damages:** As a result of their reliance, the Magnolia Plaintiffs suffered damages, including misappropriation of funds, loss of business opportunities, and damage to their reputation. (FAC ¶ 550).

Plaintiffs have sufficiently pleaded claims for common law fraud and fraudulent inducement, detailing specific misrepresentations made by each Defendant, the context in which those misrepresentations were made, and the resulting harm to Plaintiffs. These allegations satisfy the heightened pleading standard for fraud under Rule 9(b) and establish a plausible claim for relief. Therefore, Defendants' motion to dismiss these claims should be denied.

## REQUEST FOR LEAVE TO AMEND

In the event that the Court finds any deficiencies in Plaintiffs' First Amended Complaint, Plaintiffs respectfully request leave to amend. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Here, any deficiencies in the pleadings can be cured through amendment, and such amendment would not be futile. Plaintiffs have diligently investigated the facts and circumstances surrounding Defendants' conduct and can provide additional details to further support their claims.

## CONCLUSION

Plaintiffs have sufficiently pleaded each of their claims against Defendants, providing detailed factual allegations that support the elements of each cause of action. The First Amended Complaint meets the pleading standards under both Rule 8 and Rule 9(b), and Plaintiffs have demonstrated that they have standing to bring their claims. Defendants' motion to dismiss is based on a mischaracterization of Plaintiffs' allegations and a failure to consider the complaint as a whole. Therefore, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, Plaintiffs request leave to amend their complaint to address any perceived deficiencies.

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request that this court deny Defendants' Motion to Dismiss, and for any other relief, both in equity and at law, to which Plaintiff may show itself justly entitled.

Dated:  December 23, 2024.

Respectfully submitted,

**HENDERSHOT COWART P.C.**

By: */s/ Philip D. Racusin*
SIMON W. HENDERSHOT, III
SBN: 09417200
trey@hchlawyers.com
PHILIP D. RACUSIN
SBN: 24054267
pracusin@hchlawyers.com
1800 Bering Drive, Suite 600
Houston, Texas 77057
Telephone:  (713) 783-3110
Facsimile:   (713) 783-2809
**ATTORNEYS FOR PLAINTIFFS COAST TO COAST TITLE, LLC,
SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LTD.,
MAGNOLIA TITLE FLORIDA, LLC, THE PEABODY BULLDOG
LLC AND JOHN MAGNESS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, a copy of the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Philip D. Racusin*
Philip D. Racusin