IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, et al., | § § § | |
| Plaintiffs | § § | Civil Action No. 4:24-cv-02767 |
| v. | § § | |
| TYRRELL L. GARTH, et al., | § § § | |
| Defendants. | § § § | |

**DEFENDANTS TYRRELL L. GARTH AND PHILLIP H. CLAYTON'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT PURSUANT TO RULES 12(b)(6) AND 9(b)**

INTRODUCTION

Plaintiffs' Response to Defendants Garth and Clayton's Motion to Dismiss ("Motion") fails to provide authorities for the vast majority of their arguments and primarily attempts to editorialize their allegations to save their First Amended Complaint from dismissal. Dkt. No. 41. Plaintiffs' citations to the First Amended Complaint oftentimes misrepresent the allegations they actually pled. Plaintiffs even attempt to resurrect their common law fraud based on forgery cause of action that they admitted to dropping against Garth and Clayton in their Response to Defendants' original Motion to Dismiss. *See* Dkt. No. 29 ¶ 9 ("[Plaintiffs][1] have dropped their claim for forgery against Garth and Clayton."). Indeed, no such cause of action is alleged against Garth or Clayton in the First Amended Complaint. *See* FAC ¶¶ 403–19.

---

[1] Plaintiffs accidentally referred to themselves as Defendants in this sentence in the filing. *See id.*

Defendants Garth and Clayton's Motion should be granted and Plaintiffs' request for leave to amend should be denied. Garth and Clayton's original Motion to Dismiss laid out the numerous deficiencies in their first pleading, yet Plaintiffs still chose to provide the barest recitation of conclusory allegations against Garth or Clayton in their amended pleading. Plaintiffs' attempt to add new allegations in their Response not previously pled is improper and only serves to highlight the fact that future attempts at amendment will be pointless as their additional allegations are still woefully insufficient to state a claim against Garth or Clayton.

## ARGUMENT

**I.  Plaintiffs' Objections to Garth and Clayton's Motion and Evidence Are Meritless and Should Be Overruled.**

Plaintiffs lodged a number of objections to the exhibits Garth and Clayton attached to their Motion. First, they claim that the BSpoke Settlement Agreement is not properly considered at the motion to dismiss stage because it "is not attached to or integral to the First Amended Complaint." Dkt. No. 41 at 6. That simply is not the case. Garth and Clayton have attached the BSpoke Agreement in accordance with Fifth Circuit precedent, and it is properly considered with their Motion. *See Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010); *see also Verastique v. City of Dallas*, 106 F.4th 427, 430 n.1 (5th Cir. 2024) ("We 'must consider . . . documents incorporated into the complaint by reference.'"). Plaintiffs cite no authority to the contrary.

Plaintiffs' 16th and 17th causes of action for fraudulent inducement rest, in part, on the allegation that TPB and Magness were fraudulently induced into giving up their equity ownership in the BSpoke Entities. *See* FAC ¶¶ 489, 494–94, 503, 507. The BSpoke Settlement Agreement is

the agreement by which that transfer of equity took place, and it is therefore an integral part of their 16th and 17th causes of action. *See id.* Just because Plaintiffs fail to mention the agreement name does not alter the fact that it forms the basis of those causes of action.[2] Plaintiffs do not allege that there is some other agreement by which they "gave up" their shares in the BSpoke Entities or that no such agreement exists. *See* Dkt. No. 41 at 6–7. Moreover, the centrality of such a document to their fraudulent inducement claim is undisputable. As Plaintiffs themselves acknowledge, the existence of an agreement is a required element for a fraudulent inducement claim. *See id.* at 12. Plaintiffs' fraudulent inducement claims are based on Magness or TPB "giving up" their shares in the BSpoke Entities pursuant to the terms of the BSpoke Settlement Agreement, and they must be dismissed due to the disclaimer of reliance provision contained in the Agreement.

Second, Plaintiffs take issue with the fact that certain exhibits were not authenticated by sworn affidavit or otherwise. Dkt. No. 41 at 7. However, federal district courts in Texas have dismissed such objections. In *UST-Mamiya, Inc. v. True Sports, Inc.*, for example, the court rejected Plaintiffs' averment that an agreement attached to a motion to dismiss was "an unauthenticated document that [wa]s unsupported by any witness and should be excluded." 441 F. Supp. 3d 382, 389 (N.D. Tex. 2020). Like the plaintiff in *True Sports*, Plaintiffs here do not take issue with the validity of any of the documents Garth and Clayton attached as exhibits to their motion. The court in *True Sports* therefore properly concluded that the plaintiff's "technical objections [did] not (1) prevent the Court from considering the [challenged exhibit] at the motion to dismiss stage or (2) convert the . . . motion [to dismiss] into one for summary judgement." *Id.* Plaintiffs' argument that the Court should not consider the exhibits attached to Garth and Clayton's

---

[2] This should not be permitted as a matter of public policy. It would allow parties to employ gamesmanship to bring claims barred by the express terms of an agreement by simply referring to it vaguely. Plaintiffs should not be permitted to plead their claims so vaguely as to escape dismissal based on the agreement the claim could not exist without.

3

2752092

is incorrect as is their argument that if the exhibits are considered, the Court must convert Defendants Garth and Clayton's Motion to one for summary judgment. In *Berry v. Indianapolis Life Ins. Co.*, the court found it could consider, over objection, the same type of evidence at the 12(b)(6) stage "without converting" it into one for summary judgment where the plaintiffs "point[ed] out that the document [was] unauthenticated, [but did] not argue[] that it [was] not in fact authentic." 600 F. Supp. 2d 805, 812 (N.D. Tex. 2009). Plaintiffs have not argued that Defendants Garth and Clayton's exhibits are not in fact authentic, so this Court is permitted to consider the exhibits without converting this motion into one for summary judgment. *See id.* Plaintiffs' objections should be overruled.

**II.     Cause of Action No. 7. The Magnolia Companies Fail to State a Claim for Tortious Interference Against Garth or Clayton.**

In their Response, Plaintiffs cite the same paragraph for identifying specific contracts that Defendants Garth and Clayton cited in their Motion – paragraph 422. Garth and Clayton already pointed out that Plaintiffs had named a number of contracts in their First Amended Complaint but that naming the contracts is insufficient if they do not identify specific facts demonstrating that Garth or Clayton interfered with them.

Plaintiffs then point specifically to paragraphs 186, 206, 226, 232, 239, and 241 as providing specific factual allegations about Garth or Clayton's purported interference with the contracts named. However, none of the cited paragraphs demonstrate that Garth or Clayton tortiously interfered with a single contract. For example, paragraph 186 has nothing to do with Garth or Clayton and does not mention either of them by name *See* FAC ¶ 186; Dkt. No. 41 at 9. In similar fashion, the remainder of Plaintiffs' cited paragraphs do not fare better where they either fail to mention Garth or Clayton or fail to support the proposition for which Plaintiffs cited them in their Response. *See, e.g.*, FAC ¶ 206, 226, 232.

Paragraph 239 does manage to name both Garth and Clayton, but it only relates to an offer made by Starrex to settle with Magnolia Florida and Magnolia Arkansas. The communications identified in paragraph 239 state that Garth and Clayton own 2/3 of those entities, and states that "[t]hey are behind this." FAC ¶ 239. They do not clarify "who" exactly is behind this or what exactly "this" refers to. *See id.* Even if it refers to Garth and Clayton being supportive of a settlement offer, that in no way supports an allegation for tortious interference. It is vague and conclusory and provides no facts from which the Court can infer any conduct by Garth or Clayton amounting to tortious interference.

Paragraph 241 fares no better as it is merely an attempt at summation of an email and text message exchange between Debbie Merritt and John Magness, which they reproduce in the First Amended Complaint. *See* FAC at 62–63. The email does not mention Garth or Clayton at all, and the text messages only mention that Garth and Clayton own 2/3rds of Florida; that Debbie will have Garth and Clayton contact Magness if he "awaits" them; and that Garth and Clayton have responded in favor of some structural change that she is asking Nelson Mitchell to vote on. FAC at 62–63. In contrast, the relevant part of paragraph 241 provides that "Garth and Clayton have already agreed to this," which is vague and indecipherable as to what "this" refers to, and alleges that Debbie Merritt offered "to have Garth and Clayton make contact from the Starrex side to discuss a deal on Arkansas and Florida." *See id.* ¶ 241. None of these statements are supported by the documentary evidence they purport to rely on for this allegation. Furthermore, nothing in the text messages demonstrate that Garth or Clayton had anything to do with shutting off access to and ceasing migration of data.

None of Plaintiffs' cited paragraphs provide facts sufficient to state a claim for tortious interference against Garth or Clayton, and nothing in Plaintiffs' Response changes the correct

5

outcome for their claim for tortious interference. The Magnolia Companies have failed to plausibly allege that Garth or Clayton interfered with any of the contracts at issue. Plaintiffs' labels, conclusions, and formulaic recitation of the elements of this cause of action will not do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Their claim for tortious interference against Garth and Clayton should be dismissed for failure to state a claim upon which relief can be granted.

### III. Cause of Action No. 15. The Magnolia Companies Fail to State a Civil Conspiracy Claim Against Garth or Clayton.

In their Response, Plaintiffs simply cite the elements of conspiracy and make conclusory claims that they have adequately made those allegations in their First Amended Complaint. *See* Dkt. No. 41 at 10–11. They claim that a number of paragraphs provide what is necessary to adequately plead these elements, specifically that Garth or Clayton had a meeting of the minds or undertook any unlawful, overt acts. *Id.* However, those paragraphs do not sufficiently plead a cause of action for conspiracy against Garth or Clayton.

Moreover, Plaintiffs have not contested the fact that a conspiracy cause of action depends on a defendant's participation in an underlying tort. *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Because a conspiracy claim "'survives or fails alongside' the underlying tort alleged," *id.*, the claim must be dismissed when a plaintiff fails to state a claim for the underlying conduct. *See ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*, No. H-10-2841, 2011 WL 13247456, at *7 (S.D. Tex. July 25, 2011) (Rosenthal, J.) (finding that where plaintiff failed to plead sufficient facts for claim conspiracy was based on, the related conspiracy claim is also properly dismissed). And Plaintiffs have failed to sufficiently allege their causes of action against Garth and Clayton for any underlying torts.

Plaintiffs allege that a number of paragraphs provide specific factual allegations showing that Garth and Clayton participated in a meeting of the minds. Dkt. No. 41 at 10–11. None of the

6

2752092

paragraphs do so sufficiently, and several of them do not appear to relate to the proposition for which Plaintiffs have cited them. For example, Plaintiffs claim that "Defendants worked together to fabricate and use the 'for-the-auditor-only' promissory notes to create a false impression of debt owed by the Magnolia Plaintiffs" and cite paragraphs 122 and 123 as support. *See* Dkt. No. 41 at 10–11. However, paragraphs 122 and 123 do not name or refer to Garth or Clayton. *See* FAC ¶ 122–23. The other cited paragraphs fail for similar reasons—none of which overcome the deficiencies outlined in Garth and Clayton's Motion. The allegations fall far below the detail required to state a claim under Rules 12(b)(6) or 9(b), and none of the paragraphs cited in Plaintiffs' Response saves their conspiracy claim from dismissal based on their failure to allege that Garth or Clayton participated in a meeting of the minds.

Similarly, the paragraphs Plaintiffs cite to support that Garth or Clayton committed any unlawful acts as part of the conspiracy do not support that conclusion. For example, paragraph 83 refers to a misrepresentation allegedly made by Garth to Kevin Gartland, who is a nonparty in this suit, and is not an actionable misrepresentation that could form the basis for asserting a conspiracy cause of action against Garth or Clayton. "Generally, a person is not entitled to relief for a fraudulent representation if it was not made to that person directly." *Turner v. Pavlicek*, No. CIV.A. H-10-00749, 2011 WL 4458757, at *11 (S.D. Tex. Sept. 22, 2011) (Rosenthal, J.). Absent well-pled allegations that Garth (1) intended for the alleged misrepresentations he made to third parties to be repeated to Magness and (2) knew that Magness would act in reliance on the misrepresentations, Magness's fraudulent inducement claim based on misrepresentations allegedly made to third parties fails, and any alleged conspiracy claim on that alleged fraudulent inducement claim fails alongside it. *Id.* Plaintiffs' conspiracy claim should be dismissed as to Garth and Clayton.

**IV.    Causes of Action Nos. 16 and 17. Magness and TPB Fail to Plead a Fraudulent Inducement Claim Against Garth or Clayton.**

Plaintiffs respond to Garth and Clayton's argument that the fraudulent inducement causes of action must be dismissed by making more sweeping statements unsupported by the law and by citing inapposite paragraphs of their First Amended Complaint. Plaintiffs once again proffer their conclusory allegations in an attempt to demonstrate that they alleged the necessary facts, but all they do is emphasize the deficiencies Garth and Clayton already identified.

Specifically, Plaintiffs have provided conclusory or vague statements in their Response claiming that the alleged misrepresentations are not puffery or opinion as Garth and Clayton contend in their Motion. Dkt. No. 41 at 12–14. What they have not provided are any authorities supporting those assertions or countering the authorities Garth and Clayton cited in support of their Motion. *See id.* Plaintiffs' conclusions that they have alleged the necessary facts are inadequate. They fail to address the fact that Garth and Clayton were not signatories to the non-binding Letter of Intent or the fact that the LOI is non-binding. Their implausible allegations of the merger between Starrex and the Magnolia Companies being inevitable and "a sure thing" simply cannot overcome the language in the LOI itself as was recited in Garth and Clayton's Motion. The bare conclusions unsupported by factual allegations are not sufficient to save Plaintiffs' claim for fraudulent inducement from dismissal. *See Greater Ward Afr. Methodist Episcopal Church v. Nationwide Mut. Fire Ins. Co.*, No. CV H-12-3472, 2013 WL 12137780, at *1 (S.D. Tex. Feb. 27, 2013) (Rosenthal, J.).

**A.    The Starrex Promissory Notes bar Plaintiffs' fraudulent inducement claims relating to whether the notes were "for audit purposes only."**

The express terms of the Starrex Promissory Notes bar Plaintiffs' claim they were fraudulently induced into executing the notes based on the alleged extra-contractual representation that they were "for audit purposes only." Dkt. No. 41 at 14–15. Plaintiffs do not cite a single case

8

to contradict that argument. *See id.* They first argue that the Starrex Promissory Notes are irrelevant to this claim, although they fail to explain how that could be the case. *See id.* They then argue that even if they were relevant, the express terms of the Starrex Promissory Notes would not bar their claim because it is based on a supplemental representation that is not contained in the Starrex Promissory Notes. *Id.*

Plaintiffs claim the supplemental representation was that the "the inevitable, sure-thing merger" would make it so the notes did not need to be repaid. *See id.* at 15. However, this argument does not pass muster. Either the Starrex Promissory Notes needed to be repaid or not. A representation that something would happen that would allow them to not be repaid contradicts the explicit provision in the Starrex Promissory Notes requiring them to be repaid. Plaintiffs cannot rely on such a contradiction of the express terms of the notes to save their fraudulent inducement claim relating to the Starrex Promissory Notes. *See Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 554 (S.D. Tex. 2009).

**B.    The TPB Note's merger clause precludes a fraud claim based on prior representations that contradict its terms.**

Plaintiffs misconstrue the authorities they cite in support of their argument that the merger clause in the TPB Note should not bar their claim. *See* Dkt. No. 41 at 15–16. They cite *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) and *Italian Cowboy Partner, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336 (Tex. 2011),[3] but these cases stand for a different type or extent of disclaiming reliance. *See id.* These cases stand for the proposition that an explicit disclaimer of reliance provision, i.e., one that actually uses words like "rely" or "reliance," will bar claims for fraudulent inducement based on representations relating

---

[3] This line of cases was explained in detail in Garth and Clayton's Motion to Dismiss in support of their argument that the BSpoke Settlement Agreement's disclaimer of reliance provision bars Plaintiffs' claims as they relate to giving up interests in the BSpoke Entities.

9

to the agreement but not explicitly in the agreement. *See Italian Cowboy Partner, Ltd.*, 341 S.W.3d at 336. For example, in *Schlumberger*, the court held that a disclaimer of reliance provision barred claims for fraudulent inducement into an agreement where the defendant had represented the "project was neither technologically feasible nor commercially viable" and "that the project had a negative value"—neither of which were contradicted in the agreement itself. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 178. This is distinct from what Garth and Clayton argue relating to the TPB Note.

Here, Garth and Clayton's argument is that the TPB Note contains a provision declaring "there are no unwritten oral agreements between the parties," as well as a provision contradicting the oral representation Plaintiffs allege induced them to enter into the contract, which bars them from bringing their claim for fraudulent inducement. *See Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, No. CIV.H-04-2220, 2007 WL 1256612, at *12 (S.D. Tex. Apr. 30, 2007) (Rosenthal, J.). Garth and Clayton's argument is that Plaintiffs cannot have justifiably relied on an oral representation to enter into a contract that specifically contradicts the alleged oral representation.

Plaintiffs cannot lodge a claim for fraudulent inducement that contradicts an express provision of the TPB Note—that it is **due and payable**. *See* Ex. J. It is particularly barred from doing so because of the presence of the merger clause in the TPB Note. *See Whitney Nat. Bank*, 2007 WL 1256612, at *12. As this Court has previously noted in analyzing language identical to that set forth in the TPB Note, although the "merger clauses do not disclaim reliance on any specific representation," but they do state "that earlier oral or written statements extrinsic to the agreements, related to their subject matter, are superseded by the agreements and ***may not contradict, supplement, or modify any contractual term***." *Id.* (emphasis added). The merger

10

clause in the TPB Note is sufficient to "preclude a fraud claim based on prior representations that are related to the agreements . . . but that would vary or contradict their terms." *See id.* Plaintiffs cannot be permitted to bring a fraudulent inducement claim based on an alleged misrepresentation that contradicts express terms of the agreement. This claim must be dismissed.

**C.     The BSpoke Settlement Agreement bars Plaintiffs' fraudulent inducement claims as to any relinquishment of ownership in the BSpoke Entities.**

Plaintiffs acknowledge that the BSpoke Settlement Agreement contains a disclaimer of reliance provision. Dkt. No. 41 at 17. Their only argument is that it was not supported by consideration as to Garth or Clayton, so they claim Garth and Clayton cannot rely on that provision to bar this claim. *Id.* at 17–18. However, this argument is again contradicted by the express terms of the BSpoke Settlement Agreement. The Agreement provides that it is being executed "in consideration of the mutual promises and performances" set forth in the Agreement, including those given and undertaken by the Alphabet Parties. Ex. A at 3, 7.[4] The Alphabet Parties are defined to include Tyrrell L. Garth ("Garth"), Philip Clayton ("Clayton"), 405 Manhattan Investments, LLC ("405 Manhattan") and Alphabet Investments, LLC ("Alphabet"). *Id.* at 1.

The BSpoke Settlement Agreement provides that Garth and Clayton, as individuals included in the Alphabet Parties, have provided consideration for entering into the agreement. *Id.* at 3, 7. And indeed, they released any claims they had against the BSpoke Released Parties while those parties released any claims against the Alphabet Parties, including Garth and Clayton. *See id.* at 7. The BSpoke Settlement Agreement was supported by consideration as to Garth and

---

[4] This exhibit is the same as Exhibit K to Defendants' Motion to Dismiss, but it has two additional sections left unredacted. These sections are not necessary to succeed on Defendants' Motion to Dismiss—only to address a point raised in Plaintiffs' Response regarding an alleged lack of consideration. They were left redacted in Exhibit K out of concern for confidentiality provisions in the agreement and only include them now to dispute Plaintiffs' argument as they were previously irrelevant. As a result, Defendants do not believe that the Court must consider these provisions to grant their Motion to Dismiss. However, to the extent the Court finds it must consider these provisions regarding Garth and Clayton's consideration for the BSpoke Settlement Agreement, Defendants hereby request leave of the Court to attach this exhibit to their Reply.

11

2752092

Clayton because they surrendered "a legal right," which "constitutes valid consideration to support a contract." *See Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex. App.—San Antonio 2011, pet. denied). Plaintiffs argue that Garth and Clayton were "entirely superfluous" to the BSpoke Settlement Agreement because they only owned the Magnolia Companies through other entities they controlled. Dkt. No. 41 at 17–18. However, the fact that Plaintiffs have sued Garth and Clayton *individually* in this lawsuit shows just how necessary it was for Garth and Clayton to be parties *individually* in the BSpoke Settlement Agreement.

Moreover, Plaintiffs have essentially conceded that the BSpoke Settlement Agreement's disclaimer of reliance provision bars their fraudulent inducement claim as long as Garth and Clayton provided consideration. *See* Dkt. No. 41 at 17. They did. The fraudulent inducement claims in counts 16 and 17 relating to any relinquishment of interests in the BSpoke Entities must be dismissed with prejudice.

**V.     Cause of Action No. 17. TPB Fails to Plead a DTPA Cause of Action against Garth.**

Plaintiffs' Response argues—again without citing any applicable authority—that they have adequately alleged a claim against Garth for violations of the DTPA. Dkt. No. 41 at 18–19. To support their argument, they have merely cited sections of the DTPA and paragraphs in the First Amended Complaint. *Id.* They have done nothing to combat the authority cited by Garth and Clayton in support of their Motion. As a result, Plaintiffs have failed to contest the argument that not only has TPB failed to plead a sufficient claim under the DTPA but also they could not do so no matter how hard they tried because the type of agreements at issue do not qualify as agreements to acquire goods or services under the DTPA. *See Kincaid v. Cummins Engine Co.*, No. 05-04-01803-CV, 2005 WL 1744959, at *1 (Tex. App.—Dallas July 26, 2005, no pet.) (mem. op.); *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 614 (Tex. App.—Waco 2000, pet. denied). Plaintiffs' DTPA claim in cause of action number 17 must be dismissed with prejudice.

**VI. Cause of Action No. 18. Magness and the Magnolia Companies Fail to Plead a Claim for Common Law Fraud Against Garth or Clayton.**

Plaintiffs have done nothing more than make conclusory allegations in an attempt to buttress their already conclusory allegation of common law fraud in the First Amended Complaint. Dkt. No. 41 at 19–21. And Plaintiffs have again failed to cite any authority to argue why Garth and Clayton's cited cases do not apply and thus show that Plaintiffs' alleged misrepresentations are nothing more than puffery or opinion. As Garth and Clayton have outlined at length in their Motion, the types of misrepresentations they allege do not constitute actionable fraud.

**VII. Cause of Action No. 19. The Magnolia Companies Fail to Plead a Claim for Unjust Enrichment Against Garth or Clayton.**

In Plaintiffs' Response relating to the unjust enrichment claim, they seek to enlarge the claim for unjust enrichment in a way that is not supported by the First Amended Complaint. Dkt. No. 41 at 22–23. They have added a number of references to accusations that are not mentioned at all in their claim for unjust enrichment. *See* FAC ¶ 534–42. The claim only mentions an allegation that Garth and Clayton have been "unjustly enriched through their wrongful misappropriation of funds from Magnolia's Frost Bank accounts through unauthorized withdrawals and forged signatures." FAC ¶ 535. Plaintiffs attempt to add in a usurpation of business opportunities and control and benefitting from the Magnolia Entities as elements of their unjust enrichment claim, but their First Amended Complaint makes no mention of these aspects constituting unjust enrichment. *See* FAC ¶ 534–42. It also adds several more brand-new allegations that are not in the First Amended Complaint. Dkt. No. 41 at 23 ¶ 58; *Partners & Friends Holding Corp. v. Cottonwood Minerals L.L.C.*, 653 F. Supp. 3d 344, 351 (N.D. Tex. 2023), *aff'd*, No. 23-10192, 2023 WL 8649880 (5th Cir. Dec. 14, 2023) ("[N]ew allegations cannot be raised in a response to a motion to dismiss."). It cites no paragraphs from the First Amended Complaint that allegedly

13

support these statements, and even if it did, these conclusory allegations would not pass muster. If anything, their Response shows how deplete the First Amended Complaint is.

In support of their business opportunities allegation, they cite paragraphs 490 and 83. Paragraph 490 does not allege a single business opportunity Garth or Clayton supposedly usurped. FAC ¶ 490. Paragraph 83 merely alleges that Gartland would not have sold All American to Starrex if he had known that Starrex would not end up acquiring the Magnolia Companies. FAC ¶ 83. Plaintiffs do not allege how Garth and Clayton were unjustly enriched by Starrex acquiring All American. *See id.* These paragraphs do not support what Plaintiffs allege they support in their Response. *See* Dkt. No. 41 at 22.

To support this new allegation of Garth and Clayton controlling and benefitting from the Magnolia Companies, they cite paragraphs 84 through 87 and 76. Dkt. No. 41 at 22. Paragraphs 84 through 87 merely discuss Nelson Mitchell and his company HMHTI contributing to the Magnolia Companies and the agreements negotiated and signed to accomplish that. FAC ¶ 84–87. This again alleges no facts to show how Garth or Clayton did anything wrongful or obtained any benefit from the investment, not to mention the fact that any allegation that the investment was used to pay off personal loans is conclusory as was outlined in Garth and Clayton's Motion. Paragraph 76 merely alleges that Garth acted as though he was the authorized representative for Starrex, but the only facts Plaintiffs allege relate to a single instance in which he signed a mediation agreement on behalf of Starrex. FAC ¶ 76.

Plaintiffs' claim for unjust enrichment should be dismissed for all the same reasons as outlined in Defendants Garth and Clayton's Motion. They have failed to state a claim upon which relief can be granted as to Garth and Clayton. Nothing in their Response demonstrates otherwise.

**VIII. Cause of Action No. 20. The Magnolia Companies Fail to Plead a Claim for Fraudulent Inducement into the Management Services Agreement Against Garth or Clayton.**

As it relates to the fraudulent inducement claim as to the Management Services Agreement, Plaintiffs merely editorialize their vague, conclusory, and unsupported allegations relating to this cause of action, but they do nothing to dispute Defendants Garth and Clayton's arguments in support of their Motion. Dkt. No. 41 at 23–24. They do not dispute the fact that they failed to allege Garth or Clayton had any involvement in the actual consummation of the MSA or the fact that they are not a party to it. Furthermore, they agree with Defendants Garth and Clayton's characterization that these claims are identical to those found in cause of action number 18. As a result, these claims should be dismissed for the same reasons outlined in Defendants Garth and Clayton's Motion.

### CONCLUSION

Plaintiffs have done nothing in their Response to dispute the arguments outlined in Defendants Garth and Clayton's Motion. They have essentially admitted that their First Amended Complaint is inadequate through their additions and mischaracterizations of accusations that are not present in the pleading and have also demonstrated that any opportunity to amend would be futile as their additional allegations still fail to pass muster. Defendants Garth and Clayton respectfully request the Court grant their Motion to Dismiss and dismiss Plaintiffs' claims against Garth and Clayton with prejudice.

Dated: December 30, 2024                                   Respectfully submitted,

                                                            **BECK REDDEN LLP**

                                                            By:    */s/ Fields Alexander*
                                                                          Fields Alexander – *Attorney in Charge*
                                                                           State Bar No. 00783528
                                                                           Federal Bar No. 16427
                                                                           falexander@beckredden.com
                                                                           Amy Parker Beeson – *of Counsel*

>State Bar No. 24051156
>Federal Bar No. 626178
>abeeson@beckredden.com
>Kaitie Sorenson – *of Counsel*
>State Bar No. 24128633
>Federal Bar No. 3859186
>ksorenson@beckredden.com
>1221 McKinney St., Suite 4500
>Houston, Texas 77010-2010
>Telephone No. (713) 951-3700
>Facsimile No. (713) 951-3720
>
>**ATTORNEYS FOR DEFENDANTS TYRRELL L. GARTH AND PHILLIP H. CLAYTON**

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2024, I served the foregoing notice via the CM/ECF system, which will provide notice to all parties of record.

>By */s/ Fields Alexander*
>Fields Alexander