# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Confidential Settlement Agreement and Release of All Claims (the "Agreement") is made between and among and entered into by John Magness ("Magness"), Britt Naponic ("Naponic"), and The Peabody Bulldog, LLC ("Peabody") (collectively with Magness and Naponic, the "Magness Parties"), and Bo and Sarah Blackburn (the "Blackburns"), #6 Metz Court ("Metz Court"), Sol City Title Managers, LLC ("Sol City Managers"), Rabbit Food, LLC ("Rabbit Food"), BS Title Team, LLC ("BS Title Team"), Pacific Waters Title, LLC ("1845 Title"), Blue Goose Title, LLC ("Noteworthy Title"), CSP Texas Joint Venture, LLC ("Key Title"), CSP Texas Joint Venture — San Antonio, LLC ("Key Title San Antonio"), Tall City Title, LLC ("Tall City Title"), Amarillo Title, LLC ("Amarillo Title"), Amarillo Title Managers, LLC ("Amarillo Managers"), Joy Title LLC ("Joy Title"), Joy Title Managers LLC ("Joy Managers"), Gateway City Title, LLC ("Gateway City Title"), Gateway City Title Managers, LLC ("Gateway City Managers"), Corpus Christi Title, LLC ("Corpus Christi Title"), and Corpus Christi Title Managers, LLC ("Corpus Christi Managers") (each a "BSpoke Party," and collectively with the Blackburns, the "BSpoke Parties"), and Tyrrell L. Garth ("Garth"), Phillip Clayton ("Clayton"), 405 Manhattan Investments, LLC ("405 Manhattan") and Alphabet Investments, LLC ("Alphabet") (collectively with Garth, Clayton and 405 Manhattan, the "the Alphabet Parties"), and Sol City Title, LLC ("Magnolia Houston"), Coast to Coast Title, LLC ("Magnolia Dallas"), Magnolia Title Florida, LLC ("Magnolia Florida"), and Magnolia Title Arkansas, LLC ("Magnolia Arkansas") (collectively, the "Magnolia Parties"),  and Starrex International Ltd. ("Starrex").  Any of the above may be referred to from time to time as a "Party" and all may be referred to jointly as the "Parties."







**NOW, THEREFORE,** in consideration of the mutual promises and performance hereinafter described, the Parties hereby agree as follows:











3.    **The Alphabet Parties' Release and Covenant Not to Sue:**  In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against the Alphabet Parties, and in return for the reduction of the Blackburns' Magnolia Equity Interest and Magnolia Special Contribution Interest as described herein, and for other good and valuable consideration, the Alphabet Parties, and each of their executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Bspoke Released Parties with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which the Alphabet Parties have or which could be asserted on their behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement, including without limitation any claims relating to the Promissory Note.



7







14.    This Agreement and the agreements referenced herein and signed as part of the settlement contain the entire understanding and agreement between the Parties, and it supersedes any prior or contemporaneous agreements, promises, statements, understandings, and/or representations, oral or written, relating to the matters set forth herein, which shall be superseded, void and unenforceable. Each Party understands that such Party is precluded from bringing any fraud or similar claim against any other Party based on any such communications, promises, agreements, statements, inducements, understandings, or representations. No oral statements or other prior written material not specifically incorporated into this Agreement, or the agreements signed in connection with this Agreement shall be of any force and effect, and no changes in or additions to this Agreement shall be recognized, unless incorporated into this Agreement by written amendment, such amendment to become effective on the date stipulated in it. Any amendment to this Agreement must be signed by all Parties to this Agreement.

15.    Each of the Parties (only for himself, herself, or itself as the case may be) agrees, promises, warrants and represents that no promise, statement, agreement, representation, inducement, or condition which is not expressly set forth in writing in this Agreement has been made to any of the Parties in executing this Agreement and/or to induce any other Party to enter into this Agreement. To the extent any such statements have been made, each Party expressly disclaims reliance on any such statement not set forth in writing in this Agreement.

16.    The Parties acknowledge that they have been advised to consult with an attorney of their choice about the terms of this Agreement, and each Party represents that it has consulted with such an attorney.

17.    The Parties represent and warrant that this Agreement is entered into without fraud or duress, in good faith, and for sufficient and adequate good and valuable consideration.

18.    The Parties to this Agreement have been represented by counsel in connection with the execution and delivery of this Agreement. Accordingly, for the purpose of contract construction rules, which may require the interpretation of an agreement against its drafter, no party shall be deemed the author of this Agreement.





28.     Each Party promises and agrees: (a) that each covenant, agreement, representation, and warranty contained in this Agreement is negotiated, bargained for, and contractual—and is not a mere recital; (b) that each covenant, agreement, representation, and warranty contained in this Agreement survives the execution of this Agreement; and (c) that each covenant, agreement, representation, and warranty contained in this Agreement shall be forever binding on, enforceable against, and conclusive as to each Party.





Signature Page 1 to Confidential Settlement Agreement and Release of Claims

_____
John Magness

_____
Britt Naponic

The Peabody Bulldog, LLC

BY: _____
        John Magness, Manager

_____
Bo Blackburn

_____
Sarah Blackburn

#6 Metz Court, LLC.

BY: _____
        Sarah Blackburn, Manager

Sol City Title Manager, LLC.

BY: _____
        Sarah Blackburn, Manager

Rabbit Food, LLC

BY: _____
        Sarah Blackburn, Manager

BS Title Team, LLC.

BY: _____
        Sarah Blackburn, Manager

13

Signature Page 1 to Confidential Settlement Agreement and Release of Claims

_____
John Magness

_____
Britt Naponic

The Peabody Bulldog, LLC

BY: _____
       John Magness, Manager

*Bo Blackburn*
_____
Bo Blackburn

_____
Sarah Blackburn

#6 Metz Court, LLC.

BY: _____
       Sarah Blackburn, Manager

Sol City Title Manager, LLC.

BY: _____
       Sarah Blackburn, Manager

Rabbit Food, LLC

BY: _____
       Sarah Blackburn, Manager

BS Title Team, LLC.

BY: _____
       Sarah Blackburn, Manager

13

Signature Page 2 to Confidential Settlement Agreement and Release of Claims

Pacific Waters Title, LLC.

By: _____

Blue Goose Title, LLC

By: _____

CSP Texas Joint Venture, LLC.

By: _____

CSP Texas Joint Venture-San Antonio, LLC

By: _____

Tall City Title, LLC

By: _____

Amarillo Title, LLC.

By: _____

Amarillo Title Managers, LLC.

By: *Bo Blackburn* _____

Joy Title, LLC.

By: _____

Gateway City Title, LLC.

By: _____

Gateway City Title Mangers, LLC

By: _____

14

Signature Page 3 to Confidential Settlement Agreement and Release of Claims

Corpus Christi Title, LLC.

By:

Corpus Christi Title Managers, LLC.

By:

_____

Tyrrell L. Garth

_____

Phillip Clayton

405 Manhattan Investments, LLC.

By:_____

Alyse Draughon, Manager

Alphabet Investments, LLC.

By:_____

Clayton Hill, Manager

Sol City Title, LLC.

By:_____

John Magness, Manager

Coast to Coast Title, LLC.

By:_____

John Magness, Manager

Magnolia Title Florida, LLC.

By:_____

John Magness, Manager

15

DocuSign Envelope ID: 107C0C69-F40F-405D-B5F2-C6542BB5A336

Signature Page 3 to Confidlental Settlement Agreement and Release of Claims

Corpus Christi Title, LLC.

By:_____

Corpus Christi Title Managers, LLC.

By:_____


_____

Tyrrell L. Garth


_____

Philip Clayton

405 Manhattan Investments, LLC.

By: *Alyse Draughon*
_____
Alyse Draughon, Manager

Alphabet Investments, LLC.

By:_____
Clayton Hill, Manager


Sol City Title, LLC.

By:_____
John Magness, Manager


Coast to Coast Title, LLC.

By:_____
John Magness, Manager


Magnolia Title Florida, LLC.

By:_____
John Magness, Manager

Signature Page 3 to Confidential Settlement Agreement and Release of Claims

Corpus Christi Title, LLC.

By:_____

Corpus Christi Title Managers, LLC.

By:_____

_____
Tyrrell L. Garth

_____
Phillip Clayton

405 Manhattan Investments, LLC.

By:_____
    Alyse Draughon, Manager

Alphabet Investments, LLC.

By: _____
    Clayton Hill, Manager

Sol City Title, LLC.

By:_____
    John Magness, Manager

Coast to Coast Title, LLC.

By:_____
    John Magness, Manager

Magnolia Title Florida, LLC.

By:_____
    John Magness, Manager

15

Signature Page 4 to Confidiental Settlement Agreement and Release of Claims

Magnolia Title Arkansas, LLC

By: _____
     John Magness, Manager

Starrex International, Ltd.

By: _____
     Matt Hill, CEO

16

EXHIBIT A


Magness Parties Redemption Agreements

## REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between CSP Texas Joint Venture, LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

### WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement:

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.       Redemption of Interest. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.       Representations. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation,

1

remuneration or commission for the referral, transfer, designation, disposition or diversion of business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the Interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    Dispute Resolution.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation. If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation. No party may unreasonably withhold consent to the selection of a mediator. The parties will share the cost of the mediation equally. By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed. The parties may also agree to replace mediation with some other form of alternative dispute resolution. Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution. Nothing in this section will prevent a party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations. The use of any alternative dispute resolution procedure will not be construed under the doctrine of laches, waiver or estoppel to affect adversely the rights of either party.

4.    Controlling Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

5.     Binding Effect.     The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

6.     Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.     Further Assurances.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.     Entire Agreement and Amendment.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.     Effective Date.     The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.

CSP Texas Joint Venture, LLC

By: _____

_____, its _____

_____

John Magness

THE PEABODY BULLDOG, LLC

By: _____

John Magness, its _____

3

5.    Binding Effect.        The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

6.    Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.    Further Assurances.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.    Entire Agreement and Amendment.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.    Effective Date.        The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.


CSP Texas Joint Venture, LLC


By: _____
        _____, its _____


_____
        John Magness

THE PEABODY BULLDOG, LLC

By: _____
        John Magness, its _Manager_


3

C:\Users\Kelly\AppData\Local\Microsoft\\Windows\INetCache\Content.Outlook\XJMI47T1\Redemption Agmt59.docx

## REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between Corpus Christi Title LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

### WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement;

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.    Redemption of Interest. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.    Representations. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation, remuneration or commission for the referral, transfer, designation, disposition or diversion of

1

business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    Dispute Resolution.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation.  If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation.  No party may unreasonably withhold consent to the selection of a mediator.  The parties will share the cost of the mediation equally.  By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed.  The parties may also agree to replace mediation with some other form of alternative dispute resolution.  Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution.  Nothing in this section will prevent a party from resorting to judicial proceedings if:  (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations.  The use of any alternative dispute resolution procedure will not be construed under the doctrine of laches, waiver or estoppel to affect adversely the rights of either party.

4.    Controlling Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.  The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

5.    Binding Effect.    The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

2

6.    Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.    Further Assurances.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.    Entire Agreement and Amendment.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.    Effective Date.        The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.


Corpus Christi Title LLC

By: _____

_____, its _____


_____

John Magness

THE PEABODY BULLDOG, LLC

By: _____

John Magness, its _____

3

6.      Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.      Further Assurances.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.      Entire Agreement and Amendment.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.      Effective Date.      The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.


Corpus Christi Title LLC

By: _____
          _____, its _____


_____
          John Magness

THE PEABODY BULLDOG, LLC

By: _____
          John Magness, its _____

3

## REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between CSP Texas Joint Venture -- San Antonio, LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

### WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement;

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.    Redemption of Interest. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.    Representations. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation,

1

remuneration or commission for the referral, transfer, designation, disposition or diversion of business opportunities from, or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    Dispute Resolution.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation. If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation. No party may unreasonably withhold consent to the selection of a mediator. The parties will share the cost of the mediation equally. By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed. The parties may also agree to replace mediation with some other form of alternative dispute resolution. Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution. Nothing in this section will prevent a party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations. The use of any alternative dispute resolution procedure will not be construed under the doctrine of latches, waiver or estoppel to affect adversely the rights of either party.

4.    Controlling Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XFMT47TI\Redemption Agmt39.docx

5.      Binding Effect.       The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

6.      Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.      Further Assurances.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.      Entire Agreement and Amendment.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.      Effective Date.       The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.

CSP Texas Joint Venture -- San Antonio, LLC

By: _____
    _____, its _____


_____
    John Magness

THE PEABODY BULLDOG, LLC

By: _____
    John Magness, its _____

3

5.    Binding Effect.    The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

6.    Execution in Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.    Further Assurances.   Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.    Entire Agreement and Amendment.   This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.   This Agreement may be amended only by written instrument signed by the parties hereto.

9.    Effective Date.    The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.

CSP Texas Joint Venture - - San Antonio, LLC

By: _____
        _____, its _____

_____
John Magness

THE PEABODY BULLDOG, LLC

By: _____
John Magness, its _____

3

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XJMI47T1\Redemption Agmt39.docx

## REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between Gateway City Title, LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

### WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement;

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.    Redemption of Interest. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.    Representations. Assignor hereby represents that the interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation, remuneration or commission for the referral, transfer, designation, disposition or diversion of

i

business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the Interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    Dispute Resolution.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation. If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation. No party may unreasonably withhold consent to the selection of a mediator. The parties will share the cost of the mediation equally. By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed. The parties may also agree to replace mediation with some other form of alternative dispute resolution. Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution. Nothing in this section will prevent a party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations. The use of any alternative dispute resolution procedure will not be construed under the doctrine of latches, waiver or estoppel to affect adversely the rights of either party.

4.    Controlling Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

5.    Binding Effect.    The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

2

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XJMI47TJ\Redemption Agmt68.docx

6.    Execution in Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.    Further Assurances.   Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.    Entire Agreement and Amendment.   This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.   This Agreement may be amended only by written instrument signed by the parties hereto.

9.    Effective Date.       The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.

Gateway City Title LLC

By: _____

_____, its _____


_____
John Magness

THE PEABODY BULLDOG, LLC

By: _____
John Magness, its _____

6.      <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.      <u>Further Assurances</u>. Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.      <u>Entire Agreement and Amendment</u>. This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement. This Agreement may be amended only by written instrument signed by the parties hereto.

9.      <u>Effective Date</u>.        The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.

Gateway City Title LLC

By: _____
        _____, its _____

_____
John Magness

THE PEABODY BULLDOG, LLC

By: _____
        John Magness, its _____

3

EXHIBIT B-1


Partial Membership Interest Redemption Agreements


Magnolia Houston

Magnolia Dallas

Magnolia Florida

Magnolia Arkansas

SOL CITY TITLE, LLC D/B/A MAGNOLIA TITLE
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Sol City Title, LLC d/b/a Magnolia Title, a Texas limited liability company (the "Company"), and Sol City Title Managers, LLC, a Texas limited liability company (the "Partially Redeemed Member").

**RECITALS:**

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 4,200 Class A Series I Units (the "Units") of the Company and is a party to the Third Amended and Restated Company Agreement of Sol City Title (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 3,700 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated _August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

1.    **Assignment and Redemption.** (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member. The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto. The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit

holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

    **2.**     **Representations and Warranties.** The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.         (a)     The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.         (b)     Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

        (c)     The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

    **3.**     **Miscellaneous.**

c.         (a)     <u>Assignment and Binding Effect</u>. All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.         (b)     <u>Authority</u>. Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.         (c)     <u>Survival</u>. All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

        (d)     <u>Expenses; Attorneys' Fees</u>. Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to a reasonable sum as and for

reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)    Counterparts; Facsimile or Electronic Delivery.  This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)    Applicable Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)    Severability.  Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)    Entire Agreement.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.  There are no oral agreements between or among the parties hereto.

(i)    Construction.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.            (j)    Further Assurances.  After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

2.

(k)    Notice.  All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return

receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

**EXECUTED** as of the Effective Date.

### COMPANY

Sol City Title, LLC d/b/a Magnolia Title

By:_____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Sol City Title Managers, LLC

By:_____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

### MEMBERS:

SOL CITY TITLE MANAGERS, LLC

BY:_____

SARAH BLACKBURN,
MANAGER

Partial Membership Interest Redemption Agreement
Signature Page

**EXECUTED** as of the Effective Date.

### COMPANY

Sol City Title, LLC d/b/a Magnolia Title

By: _____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Sol City Title Managers, LLC

By: _____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email: _____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

### MEMBERS:

SOL CITY TITLE MANAGERS, LLC

BY: _____

SARAH BLACKBURN,
MANAGER

Partial Membership Interest Redemption Agreement
Signature Page

GF INSURANCE INVESTMENTS, LLC.

BY: _____
     JESSICA GARTH, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____
     MATTHEW CLAYTON HILL,
     MANAGER

**SOL CITY TITLE, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE: DECEMBER 31, 2021**

**MEMBER INFORMATION**

| Member | Units (by Class) |
|---|---|
| **Class A Series I Member:** | |
| Sol City Title Managers, LLC | 500 Units (5%) |
| **Class A Series II Members:** | |
| GF Insurance Investments, LLC | 3,850 Units (38.5%) |
| Alphabet Investments, LLC | 3,850 Units (38.5%) |
| Peabody Bulldog, LLC | 1,800 Units (18%) |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members**: Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

| | | |
|---|---|---|
| 1. | #6 Metz Court, LLC | $ 62,875 |
| 2. | GF Insurance Investments, LLC | $ 60,062 |
| 3. | Alphabet Investments, LLC | $ 60,063 |
| Total | | $183,000 (subject to Special Contribution Provisions) |

COAST TO COAST TITLE, LLC
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Coast to Coast Title, LLC, a Texas limited liability company (the "Company"), and Rabbit Food, LLC, a Texas limited liability company and Sarah Blackburn (collectively, the "Partially Redeemed Member").

## RECITALS:

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 4,000 Class A Series 1 Units (the "Units") of the Company and is a party to the First Amended and Restated Company Agreement of Coast to Coast Title, LLC (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 3,500 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

1.    **Assignment and Redemption.**  (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member.  The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto.  The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from

and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

      **2.**    **Representations and Warranties.**  The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.           (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.           (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

           (c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

      **3.**    **Miscellaneous.**

c.           (a)    <u>Assignment and Binding Effect</u>.  All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.           (b)    <u>Authority</u>. Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.           (c)    <u>Survival</u>.  All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

           (d)    <u>Expenses; Attorneys' Fees</u>. Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be

entitled, in addition to such other relief as may be granted, to a reasonable sum as and for reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)     Counterparts; Facsimile or Electronic Delivery. This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)     Applicable Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)     Severability. Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)     Entire Agreement. This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification. There are no oral agreements between or among the parties hereto.

(i)     Construction. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.     (j)     Further Assurances. After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

(k)     Notice. All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

EXECUTED as of the Effective Date.

**COMPANY**

Coast to Coast Title, LLC

By:_____
    John Magness, Manager

    Address for Notice:

    14701 St Mary's Lane, Suite 150
    Houston, TX 77079
    Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Road, LLC

By:_____
    Sarah Blackburn, Manager

_____
    Sarah Blackburn

    Address for notice:

    925 S. Capital Of Texas Highway
    Building A, Suite 175
    Austin, TX 78746
    Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS**:

405 MANHATTAN INVESTMENTS, LLC

BY:_____
    ALYSE DRAUGHON, MANAGER

**EXECUTED** as of the Effective Date.

**COMPANY**

Coast to Coast Title, LLC

By:_____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____

Sarah Blackburn, Manager

_____

Sarah Blackburn

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF
THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY
APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE
AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE
EFFECTIVE DATE:

**MEMBERS:**

405 MANHATTAN INVESTMENTS, LLC

BY:_____

ALYSE DRAUGHON, MANAGER

Partial Membership Interest Redemption Agreement
Signature Page

DocuSign Envelope ID: DD49EB7A-F9F4-44DA-A044-4F722845A38F

**EXECUTED** as of the Effective Date.

### COMPANY

Coast to Coast Title, LLC

By:_____
    John Magness, Manager

    Address for Notice:

    14701 St Mary's Lane, Suite 150
    Houston, TX 77079
    Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Rabbit Food, LLC

By:_____
    Sarah Blackburn, Manager

_____
    Sarah Blackburn

    Address for notice:

    925 S. Capital Of Texas Highway
    Building A, Suite 175
    Austin, TX 78746
    Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

### MEMBERS:

405 MANHATTAN INVESTMENTS, LLC

BY: *Alyse Draughon*
    ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____
MATTHEW CLAYTON HILL,
MANAGER

PEABODY BULLDOG, LLC

BY: _____
JOHN MAGNESS, MANAGER

**COAST TO COAST TITLE, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE:  DECEMBER 31, 2021**

**MEMBER INFORMATION**

| <u>Member</u> | <u>Units</u><br><u>(by Class)</u> |
|---|---|
| **Class A Series I Member:** | |
| Rabbit Food, LLC | 500 Units (5%) |
| **Class A Series II Members:** | |
| 405 Manhattan Investments, LLC | 3,875 Units (38.75%) |
| Alphabet Investments, LLC | 3,875 Units (38.75%) |
| Peabody Bulldog, LLC | <u>1,750 Units (17.5%  )</u> |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-I Members:**  Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

| | | |
|---|---|---|
| 1. | #6 Metz Court, LLC | $161,025 |
| 2. | 405 Manhattan Investments, LLC | $153,863 |
| 3. | Alphabet Investments, LLC | <u>$153,863</u> |
| **Total** | | $468,751<br>(subject to<br>Special Contribution<br>Provisions) |

MAGNOLIA TITLE FLORIDA, LLC
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Magnolia Title Florida, LLC, a Florida limited liability company (the "Company"), and Rabbit Food, LLC, a Texas limited liability company (the "Partially Redeemed Member").

**RECITALS:**

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 3,000 Class A Series I Units (the "Units") of the Company and is a party to the First Amended and Restated Company Agreement of Magnolia Title Florida, LLC (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 2,625 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

1.    **Assignment and Redemption.** (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member. The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto. The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from

and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

**2.    Representations and Warranties.**  The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.                    (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.                    (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

                    (c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

**3.    Miscellaneous.**

c.                    (a)    <u>Assignment and Binding Effect</u>.    All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.                    (b)    <u>Authority</u>.  Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.                    (c)    <u>Survival</u>.    All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

                    (d)    <u>Expenses; Attorneys' Fees</u>.  Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be

entitled, in addition to such other relief as may be granted, to a reasonable sum as and for reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)   Counterparts; Facsimile or Electronic Delivery.  This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)   Applicable Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)   Severability.  Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)   Entire Agreement.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.  There are no oral agreements between or among the parties hereto.

(i)   Construction.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.       (j)   Further Assurances.  After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

(k)   Notice.  All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Florida, LLC

By: ...............................................................

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By: _____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email: _____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS:**

405 MANHATTAN INVESTMENTS, LLC

BY: _____

ALYSE DRAUGHON, MANAGER

**EXECUTED** as of the Effective Date.

### COMPANY

Magnolia Title Florida, LLC

By:_____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Rabbit Food, LLC

By:_____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX  78746
Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF
THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY
APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE
AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE
EFFECTIVE DATE:

### MEMBERS:

405 MANHATTAN INVESTMENTS, LLC

BY: _____

ALYSE ANGELLE, MANAGER

DocuSign Envelope ID: 107C0C69-F40F-405D-B5F2-C6542BB5A338

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Florida, LLC

By:_____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS:**

405 MANHATTAN INVESTMENTS, LLC

BY: _Alyse Draughon_

ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _M. Clayton Hill_

MATTHEW CLAYTON HILL,
MANAGER

PEABODY BULLDOG, LLC

BY: _____

JOHN MAGNESS, MANAGER

MAGNOLIA TITLE FLORIDA, LLC
REVISED
EXHIBIT 3.1
EFFECTIVE:  DECEMBER 31, 2021

MEMBER INFORMATION

| Member | Units (by Class) |
|---|---|
| **Class A Series I Member:** | |
| Rabbit Food, LLC | 375 Units (3.75%) |
| **Class A Series II Members:** | |
| 405 Manhattan Investments, LLC | 4,162.5 Units (41.625%) |
| Alphabet Investments, LLC | 4,162.5 Units (41.625%) |
| Peabody Bulldog, LLC | 1,300 Units (13%   ) |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members:**  Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

| | | |
|---|---|---|
| 1. | #6 Metz Court, LLC | $ 26,100 |
| 2. | 405 Manhattan Investments, LLC | $ 24,950 |
| 3. | Alphabet Investments, LLC | $ 24,950 |
| **Total** | | $ 76,000 (subject to Special Contribution Provisions) |

MAGNOLIA TITLE ARKANSAS, LLC
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Magnolia Title Arkansas, LLC, an Arkansas limited liability company (the "Company"), and Rabbit Food, LLC, a Texas limited liability company (the "Partially Redeemed Member").

## RECITALS:

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 3,000 Class A Series I Units (the "Units") of the Company and is a party to the First Amended and Restated Company Agreement of Magnolia Title Arkansas, LLC (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 2,625 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

1.    **Assignment and Redemption.** (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member.  The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto.  The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from

and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

      **2.**     **Representations and Warranties.** The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.          (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.          (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

          (c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

      **3.**     **Miscellaneous.**

c.          (a)    <u>Assignment and Binding Effect</u>. All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.          (b)    <u>Authority</u>. Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.          (c)    <u>Survival</u>. All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

          (d)    <u>Expenses; Attorneys' Fees</u>. Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be

entitled, in addition to such other relief as may be granted, to a reasonable sum as and for reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)  Counterparts; Facsimile or Electronic Delivery.  This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)  Applicable Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)  Severability.  Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)  Entire Agreement.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.  There are no oral agreements between or among the parties hereto.

(i)  Construction.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.  (j)  Further Assurances.  After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

(k)  Notice.  All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Arkansas, LLC

By:_____
    John Magness, Manager

    Address for Notice:

    14701 St Mary's Lane, Suite 150
    Houston, TX 77079
    Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____
    Sarah Blackburn, Manager

    Address for notice:

    925 S. Capital Of Texas Highway
    Building A, Suite 175
    Austin, TX 78746
    Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS**:

405 MANHATTAN INVESTMENTS, LLC

BY:   _____
    ALYSE DRAUGHON, MANAGER

**EXECUTED** as of the Effective Date.

### COMPANY

Magnolia Title Arkansas, LLC

By: _____
    John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Rabbit Food, LLC

By: _____
    Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email: _____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF
THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY
APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE
AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE
EFFECTIVE DATE:

### MEMBERS:

405 MANHATTAN INVESTMENTS, LLC

BY: _____
    ALYSE ANGELLE, MANAGER

DocuSign Envelope ID: 107C0C69-F40F-406D-B5F2-C8542BB5A338

**EXECUTED** as of the Effective Date.

### COMPANY

Magnolia Title Arkansas, LLC

By: _____
John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Rabbit Food, LLC

By: _____
Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

### MEMBERS:

405 MANHATTAN INVESTMENTS, LLC

BY: _Alyse Draughon_____
ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____
MATTHEW CLAYTON HILL,
MANAGER

PEABODY BULLDOG, LLC

BY: _____
JOHN MAGNESS, MANAGER

## MAGNOLIA TITLE ARKANSAS, LLC
### REVISED
### EXHIBIT 3.1
### EFFECTIVE: DECEMBER 31, 2021

### MEMBER INFORMATION

| Member | Units (by Class) |
|---|---|
| **Class A Series I Member:** | |
| Rabbit Food, LLC | 375 Units (3.75%) |
| **Class A Series II Members:** | |
| 405 Manhattan Investments, LLC | 4,162.5 Units (41.625%) |
| Alphabet Investments, LLC | 4,162.5 Units (41.625%) |
| Peabody Bulldog, LLC | 1,300 Units (13%  ) |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members:** Cancelled effective 12/31/21 and converted to Class A-Series II Units

EXHIBIT B-2

#6 Metz Court Assignment of Special Contributions

Magnolia Houston and Magnolia Dallas

## SOL CITY TITLE, LLC D/B/A MAGNOLIA TITLE

### ASSIGNMENT OF SPECIAL CONTRIBUTIONS

This Assignment of Special Contributions (this "Assignment") is made and entered into to be effective as of the Effective Date (defined below), by and between #6 Metz Court, LLC, a Texas limited liability company, solely owned by Sarah Blackburn ("Assignor") and GF Insurance Investments, LLC, a Texas limited liability company and Alphabet Investments, LLC, a Texas limited liability company (collectively "Assignees"), and is being made for the purposes and consideration stated herein.

### WITNESSETH:

Whereas, Assignor has previously made Special Contributions in the amount of $183,000 to Sol City Title, LLC, a Texas limited liability company ("Company"), said contributions being described in Section 3.6 of Company's Third Amended and Restated Company Agreement, dated as of November 4, 2021 (the "Company Agreement") as Special Contributions; and

Whereas, Assignor and Assignees, in addition to other parties, have executed a certain Confidential Settlement Agreement And Release Of All Claims (the "Settlement Agreement"), the terms and provisions of which are incorporated herein by reference, wherein Assignor agreed to transfer and assign to Assignees the following described portion of Assignor's Special Contributions in Company; and

Whereas, Assignor has agreed to assign the following described portion of Assignor's Special Contributions in Company to Assignees, and Assignees desire to accept the assignment and transfer of said Special Contributions, in accordance with the terms and provision as set forth herein below;

NOW, THEREFORE, Assignor and Assignees hereby agree as follows:

1.    For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, assigns and delivers to Assignees, the following amounts of Assignor's Special Contributions, free and clear of all liens and encumbrances:

    (a)    GF Insurance Investments, LLC:  $48,000; and

    (b)    Alphabet Investments, LLC: $48,000.

    Assignor retains the sum of $87,000 of Special Contributions for its own account.

2.    Assignor hereby represents that the Special Contributions assigned and transferred to Assignees is owned by Assignor in fee simple and has not heretofore been transferred, assigned or encumbered in any manner and that Assignor has full authority to enter into and complete the Assignment to Assignees in the manner described herein.  There is no outstanding amount,

liability, obligation, indebtedness or compensation (fixed or contingent) or any equity interest or right to purchase or receive any equity interest in the Special Contributions assigned herein. There is no litigation pending, or to the best knowledge of Assignor, threatened, which in any manner adversely affects the Special Contributions or the legal capacity of Assignor to consummate the transactions contemplated by this Assignment. Assignor will promptly indemnify the Assignees to the fullest extent by law for any damage, including attorney fees, incurred by Assignees with respect to any claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.      This Assignment shall be governed by and construed and enforced under the laws of the State of Texas. The parties agree the venue for any action filed to enforce this Assignment shall be in the appropriate courts sitting in Harris County, Texas.

4.      The parties represent and warrant that each has taken all necessary action to authorize their respective managers to execute this Assignment on each party's behalf, and upon execution hereof by each party's respective manager, each party and their respective legal representatives, successors and assigns shall be fully bound by the terms and provisions hereof.

5.      This Assignment may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles, photocopies or email copies thereof, may be appended to any other counterpart and when so appended will constitute an original.

6.      This Assignment is made and entered into in furtherance of the Settlement Agreement, and each party agrees to execute and deliver such further consents, affidavits, agreements and other documents, including, without limitation, amendments to the Company Agreement, that may be required or necessary in order to effectuate the provisions of this Assignment.

7.      This Assignment represents the entire agreement between the parties hereto and supersedes all prior negotiations or agreements, either oral or written, between the parties pertaining to the subject matter hereof. This Assignment may be amended only by a written instrument signed by the parties hereto.

8.      The Effective Date of this Assignment shall be December 31, 2021, for all purposes.

*Signature page follows:*

EXECUTED, as of the date of the respective signatures herein below, but to be effective as of the Effective Date.

#6 METZ COURT, LLC

_____  _____
DATED             BY: SARAH BLACKBURN
                ITS: MANAGER

GF INSURANCE INVESTMENTS, LLC

_____  _____
DATED             BY: JESSICA GARTH
                ITS: MANAGER

ALPHABET INVESTMENTS, LLC

_____  _____
DATED             BY: CLAYTON HILL
                ITS: MANAGER

THE UNDERSIGNED MEMBERS OF THE COMPANY HEREBY APPROVE OF THE TRANSACTION CONTEMPLATED HEREIN AS OF THE DATE FIRST ABOVE MENTIONED:

**MEMBERS:**

SOL CITY TITLE MANAGERS, LLC

BY: _____
  SARAH BLACKBURN,  MANAGER

GF INSURANCE INVESTMENTS, LLC

BY: _____
  JESSICA GARTH, MANAGER

Assignment of Special Contributions
Signature Page

EXECUTED, as of the date of the respective signatures herein below, but to be effective as of the Effective Date.

#6 METZ COURT, LLC

DATED _____

BY: SARAH BLACKBURN
ITS: MANAGER

GF INSURANCE INVESTMENTS, LLC

_____8/31/22_____
DATED

BY: JESSICA GARTH
ITS: MANAGER

ALPHABET INVESTMENTS, LLC

_____8/31/22_____
DATED

BY: CLAYTON HILL
ITS: MANAGER

THE UNDERSIGNED MEMBERS OF THE COMPANY HEREBY APPROVE OF THE TRANSACTION CONTEMPLATED HEREIN AS OF THE DATE FIRST ABOVE MENTIONED:

**MEMBERS**:

SOL CITY TITLE MANAGERS, LLC

BY: _____
SARAH BLACKBURN,   MANAGER

GF INSURANCE INVESTMENTS, LLC.

BY: _____
JESSICA GARTH, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____

MATTHEW CLAYTON HILL, MANAGER

## COAST TO COAST TITLE, LLC D/B/A MAGNOLIA TITLE DALLAS

## ASSIGNMENT OF SPECIAL CONTRIBUTIONS

This Assignment of Special Contributions (this "Assignment") is made and entered into to be effective as of the Effective Date (defined below), by and between #6 Metz Court, LLC, a Texas limited liability company, solely owned by Sarah Blackburn ("Assignor") and 405 Manhattan, LLC, a Texas limited liability company and Alphabet Investments, LLC, a Texas limited liability company (collectively "Assignees"), and is being made for the purposes and consideration stated herein.

## WITNESSETH:

Whereas, Assignor has previously made Special Contributions in the amount of $468,751 to Coast to Coast Title, LLC, a Texas limited liability company ("Company"), said contributions being described in Section 3.6 of Company's Third Amended and Restated Company Agreement, dated as of November 4, 2021 (the "Company Agreement") as Special Contributions; and

Whereas, Assignor and Assignees, in addition to other parties, have executed a certain Confidential Settlement Agreement And Release Of All Claims (the "Settlement Agreement"), the terms and provisions of which are incorporated herein by reference, wherein Assignor agreed to transfer and assign to Assignees the following described portion of Assignor's Special Contributions in Company; and

Whereas, Assignor has agreed to assign the following described portion of Assignor's Special Contributions in Company to Assignees, and Assignees desire to accept the assignment and transfer of said Special Contributions, in accordance with the terms and provision as set forth herein below;

NOW, THEREFORE, Assignor and Assignees hereby agree as follows:

1.    For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, assigns and delivers to Assignees, the following amounts of Assignor's Special Contributions, free and clear of all liens and encumbrances:

      (a)     405 Manhattan Investments, LLC:  $190,875; and

      (b)     Alphabet Investments, LLC: $190,876.

      Assignor retains the sum of $87,000 of Special Contributions for its own account.

2.    Assignor hereby represents that the Special Contributions assigned and transferred to Assignees is owned by Assignor in fee simple and has not heretofore been transferred, assigned or encumbered in any manner and that Assignor has full authority to enter into and complete the

Assignment to Assignees in the manner described herein. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent) or any equity interest or right to purchase or receive any equity interest in the Special Contributions assigned herein. There is no litigation pending, or to the best knowledge of Assignor, threatened, which in any manner adversely affects the Special Contributions or the legal capacity of Assignor to consummate the transactions contemplated by this Assignment. Assignor will promptly indemnify the Assignees to the fullest extent by law for any damage, including attorney fees, incurred by Assignees with respect to any claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.     This Assignment shall be governed by and construed and enforced under the laws of the State of Texas. The parties agree the venue for any action filed to enforce this Assignment shall be in the appropriate courts sitting in Harris County, Texas.

4.     The parties represent and warrant that each has taken all necessary action to authorize their respective managers to execute this Assignment on each party's behalf, and upon execution hereof by each party's respective manager, each party and their respective legal representatives, successors and assigns shall be fully bound by the terms and provisions hereof.

5.     This Assignment may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles, photocopies or email copies thereof, may be appended to any other counterpart and when so appended will constitute an original.

6.     This Assignment is made and entered into in furtherance of the Settlement Agreement, and each party agrees to execute and deliver such further consents, affidavits, agreements and other documents, including, without limitation, amendments to the Company Agreement, that may be required or necessary in order to effectuate the provisions of this Assignment.

7.     This Assignment represents the entire agreement between the parties hereto and supersedes all prior negotiations or agreements, either oral or written, between the parties pertaining to the subject matter hereof. This Assignment may be amended only by a written instrument signed by the parties hereto.

8.     The Effective Date of this Assignment shall be December 31, 2021, for all purposes.

*Signature page follows:*

EXECUTED, as of the date of the respective signatures herein below, but to be effective as of the Effective Date.

#6 METZ COURT, LLC

_____

DATED

BY: SARAH BLACKBURN
ITS: MANAGER

405 MANHATTAN INVESTMENTS, LLC

_____

DATED

BY: ALYSE DRAUGHON
ITS: MANAGER

ALPHABET INVESTMENTS, LLC

_____

DATED

BY: MATTHEW CLAYTON HILL
ITS: MANAGER

THE UNDERSIGNED MEMBERS OF THE COMPANY HEREBY APPROVE OF THE TRANSACTION CONTEMPLATED HEREIN AS OF THE DATE FIRST ABOVE MENTIONED:

MEMBERS:

RABBIT FOOD, LLC

BY: _____
        SARAH BLACKBURN,  MANAGER

405 MANHATTAN INVESTMENTS, LLC.

BY: _____
        ALYSE DRAUGHON, MANAGER

EXECUTED, as of the date of the respective signatures herein below, but to be effective as of the Effective Date.

#6 METZ COURT, LLC


_____    _____
DATED                         BY:  SARAH BLACKBURN
                              ITS:  MANAGER


405 MANHATTAN INVESTMENTS, LLC

9/2/2022
_____    *Alyse Draughon*
DATED                         BY:  ALYSE DRAUGHON
                              ITS:  MANAGER


ALPHABET INVESTMENTS, LLC

8/31/27
_____    *M. Clayton Hill*
DATED                         BY:  MATTHEW CLAYTON HILL
                              ITS:  MANAGER


THE UNDERSIGNED MEMBERS OF THE COMPANY HEREBY APPROVE OF THE TRANSACTION CONTEMPLATED HEREIN AS OF THE DATE FIRST ABOVE MENTIONED:

MEMBERS:

RABBIT FOOD, LLC

BY: _____
       SARAH BLACKBURN,   MANAGER

405 MANHATTAN INVESTMENTS, LLC.

BY: *Alyse Draughon*
       ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____
MATTHEW CLAYTON HILL, MANAGER