**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, et al., | § | |
| | § | |
| Plaintiffs | § | Civil Action No. 4:24-cv-02767 |
| | § | |
| v. | § | |
| | § | |
| TYRRELL L. GARTH, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

---

**DEFENDANTS TYRRELL L. GARTH AND PHILLIP H. CLAYTON'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
PURSUANT TO RULES 12(b)(6) AND 9(b)**

---

**Beck Redden LLP**

Fields Alexander – *Attorney in Charge*
State Bar No. 00783528
Federal Bar No. 16427
falexander@beckredden.com
Amy Parker Beeson – *of Counsel*
State Bar No. 24051156
Federal Bar No. 626178
abeeson@beckredden.com
Kaitie Sorenson – *of Counsel*
State Bar No. 24128633
Federal Bar No. 3859186
ksorenson@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANTS
TYRRELL L. GARTH AND PHILLIP H.
CLAYTON**

2820418

T<small>ABLE OF</small> C<small>ONTENTS</small>

P<small>AGE</small>

Table of Contents ................................................................................................ ii

Table of Authorities ............................................................................................ iv

Nature and Stage of the Proceeding .................................................................. 1

Summary of the Argument .................................................................................. 1

Issues to be Ruled on and Standards of Review ................................................ 3

Argument & Authorities ..................................................................................... 4

I.    Cause of Action No. 1. Magness and TPB Fail to State a Claim for Common Law Fraud and Fraudulent Inducement Against Garth or Clayton .............................................. 4

    A.    Magness and TPB failed to state a fraud claim based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies ................................................ 4

    B.    Magness cannot claim fraudulent inducement based on alleged representations that the Starrex Promissory Notes specifically contradict ........... 7

    C.    TPB cannot claim fraud or fraudulent inducement based on alleged representations that the HMH Contribution Agreements specifically contradict ................................ 9

II.    Cause of Action No. 2. Magness and TPB Fail to State a Claim for Breach of Contract Against Garth or Clayton. ........................................... 10

III.    Cause of Action No. 3. Magness and TPB Fail to Plead a Claim for Promissory Estoppel Against Garth or Clayton. ........................................ 13

IV.    Cause of Action No. 4. Plaintiffs Fail to State a Claim for Common Law Fraud Against Garth or Clayton. ................................................... 13

V.    Cause of Action No. 5: TPB Fails to State a Claim for a Violation of the Deceptive Trade Practices Act Against Garth or Clayton. ...................... 15

VI.    Cause of Action No. 6. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Against Garth or Clayton. .......................................... 16

VII.    Cause of Action No. 8. The Magnolia Companies Fail to State a Claim for Tortious Interference Against Garth or Clayton. ............................ 18

VIII.    Cause of Action No. 10. Plaintiffs Fail to State a Claim for Unjust Enrichment Against Garth or Clayton. .......................................... 19

ii

IX.     Cause of Action No. 11. The Magnolia Companies Fail to State a Claim for Violations of the Texas Theft Liability Act Against Garth or Clayton. ...........................21

X.      Cause of Action No. 18. Plaintiffs Fail to State a Claim for a Constructive Trust Against Garth or Clayton. ...................................................................................22

XI.     Cause of Action No. 19. Plaintiffs Fail to State a Claim for an Accounting Against Garth or Clayton. ...................................................................................................23

XII.    Cause of Action No. 20. Plaintiffs Fail to State a Claim for Equitable Lien Against Garth or Clayton. ...................................................................................................23

XIII.   Cause of Action No. 21. Plaintiffs Fail to State a Claim for Civil Conspiracy Against Garth or Clayton. ...........................................................................................24

Conclusion ...........................................................................................................................25

2820418

TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*,
    393 S.W.3d 442 (Tex. App.—Houston [14th Dist.] 2012, pet. filed)....................................13

*Adams Offshore Ltd. v. OSA Intern., LLC*,
    No. CIV.A. H-09-0465, 2011 WL 4625371 (S.D. Tex. Sept. 30, 2011)................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................3, 21

*BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*,
    2008 WL 1991738 (Tex. App.—Houston [14th Dist.] May 8, 2008,
    pet. denied).......................................................................................................................13

*Carrier v. U.S. Bank, N.A.*,
    2014 WL 2807253 (S.D. Tex. June 20, 2014) ..................................................................5

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ............................................................................................7

*Chorman v. McCormick*,
    172 S.W.3d 22 (Tex. App.—Amarillo 2005, no pet.) ............................................................24

*ClaimHub, Inc. v. Universal Risk Ins. Services, Inc.*,
    No. H-10-2841, 2011 WL 13247456 (S.D. Tex. July 25, 2011) ............................................24

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
    525 S.W.3d 671 (Tex. 2017).............................................................................................18

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
    112 S.W.3d 854 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ...................................7

*Eun Bok Lee v. Ho Chang Lee*,
    411 S.W.3d 95 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ............................................20

*Fif Eng'g, LLC v. Pac. Employers Ins. Co.*,
    No. CV H-24-665, 2024 WL 3448016 (S.D. Tex. July 17, 2024)..........................................16

*Fitzgerald v. Water Rock Outdoors, LLC*,
    536 S.W.3d 112 (Tex. App.—Amarillo 2017, pet. denied)....................................................15

iv

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998)........................................................................5

*Garcia v. Communities in Sch. of Brazoria Cnty., Inc.*,
    2019 WL 2420079 (S.D. Tex. June 10, 2019) ........................................25

*Gonzalez v. United Broth. of Carpenters & Joiners of Am., Local 551*,
    93 S.W.3d 208 (Tex. App.—Houston [14th Dist.] 2002, no pet.)....................12, 13

*Guardian Life Ins. Co. v. Kinder*,
    663 F. Supp. 2d 544 (S.D. Tex. 2009) .....................................................8

*Haase v. Glazner*,
    62 S.W.3d 795 (Tex. 2001)........................................................................5

*Hart v. Salois*,
    605 F. App'x 694 (10th Cir. 2015) ..........................................................3

*Haynesville Shale Rentals, LLC v. Total Equip. & Serv., Inc.*,
    2014 WL 1379884 (S.D. Tex. Apr. 8, 2014) ..........................................16

*Hubbard v. Shankle*,
    138 S.W.3d 474 (Tex. App.—Fort Worth 2004, pet. denied) .................22

*JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
    546 S.W.3d 648 (Tex. 2018)..................................................................6, 7

*KCM Fin. LLC v. Bradshaw*,
    457 S.W.3d 70 (Tex. 2015)......................................................................22

*Kincaid v. Cummins Engine Co.*,
    2005 WL 1744959 (Tex. App.—Dallas July 26, 2005, no pet.)............16

*Lake v. Cravens*,
    488 S.W.3d 867 (Tex. App.—Fort Worth 2016, no pet.) ........................6

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ...................................................................5

*Meyer v. Cathey*,
    167 S.W.3d 327 (Tex. 2005)..............................................................17, 18

*Pace v. Cirrus Design Corp.*,
    93 F.4th 879 (5th Cir. 2024) ........................................................3, 14, 20

*PCS Software, Inc. v. Dispatch Services, Inc.*,
    No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024)............6

2820418

*Pechon v. La. Dep't of Health & Hosps.*,
    368 F. App'x 606 (5th Cir. 2010) ........................................................7

*Plotkin v. Joekel*,
    304 S.W.3d 455 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)...............16, 18

*Richards v. Suckle*,
    871 S.W.2d 239 (Tex. App.—Houston [14th Dist.] 1994, no writ) .......................24

*Schlumberger Tech. Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997).......................................................18

*Siddiqui v. Fancy Bites, LLC*,
    504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ................17

*Sohani v. Sunesara*,
    2023 WL 1112165 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023,
    pet. denied)..................................................................17

*Southern v. Goetting*,
    353 S.W.3d 295 (Tex. App.—El Paso 2011, pet. denied) .................................11

*Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) .......................................................5

*Spoljaric v. Percival Tours, Inc.*,
    708 S.W.2d 432 (Tex. 1986).......................................................6

*Stone v. Lawyers Title Ins. Corp.*,
    537 S.W.2d 55 (Tex. App.—Corpus Christi 1976), *aff'd in part, rev'd in part*,
    554 S.W.2d 183 (Tex. 1977)......................................................14

*T.O. Stanley Boot Co. v. Bank of El Paso*,
    847 S.W.2d 218 (Tex. 1992).......................................................12

*Taylor v. Ditech Fin., LLC*,
    No. CV H-16-2465, 2017 WL 2362493 (S.D. Tex. May 31, 2017) ....................16

*Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) .......................................................3

*Verastique v. City of Dallas*,
    106 F.4th 427 (5th Cir. 2024) .......................................................7

*Vertex Servs., LLC v. Oceanwide Hous., Inc.*,
    583 S.W.3d 841 (Tex. App.—Houston [1st Dist.] 2019, no pet.) .........................25

vi

*Westinde v. JPMorgan Chase Bank, N.A.*,
  2014 WL 4631405 (N.D. Tex. Sept. 16, 2014).......................................................23

*William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*,
  2016 WL 3223313 (S.D. Tex. Mar. 8, 2016).............................................................9

*Yeske v. Piazza Del Arte, Inc.*,
  513 S.W.3d 652 (Tex. App.—Houston [14th Dist.] 2016, no pet.)..........................23

*Zentech, Inc. v. Gunter*,
  606 S.W.3d 847 (Tex. App. 2020).............................................................................11

## STATUTES

Tex. Bus. & Com. Code
  § 17.49..................................................................................................................15, 16
  § 17.50(c)....................................................................................................................16

Tex. Civ. Prac. & Rem. Code § 134.002(2)........................................................................21

## RULES

Fed. R. Civ. P.
  8(a)...............................................................................................................................3
  9(b)...............................................................................................................................3
  41(b).........................................................................................................................3, 4

2820418

## NATURE AND STAGE OF THE PROCEEDING

On February 28, 2025, Plaintiffs filed their Second Amended Complaint. Dkt. No. 67.[1] Despite having been ordered to comply with their obligation to submit "a short and plain statement" of their claims, Plaintiffs filed a 109-page, 361-paragraph behemoth. *See id.* Plaintiffs reached a settlement agreement with certain defendants who had been a focus of the first two complaints, but instead of materially shortening the length of the complaint, Plaintiffs somehow found six new claims to assert against Defendants Garth and Clayton. *See id.*; Dkt. No. 50.

In the Second Amended Complaint, Plaintiffs now assert thirteen causes of action against Garth and Clayton: common law fraud and fraudulent inducement, breach of oral contract, promissory estoppel, common law fraud, claim, breach of fiduciary duty, tortious interference, unjust enrichment, constructive trust, accounting, equitable lien, civil conspiracy, and violations of the Deceptive Trade Practices Act ("DTPA") and the Texas Theft Liability Act ("TTLA").

## SUMMARY OF THE ARGUMENT

Plaintiffs' allegations against Garth and Clayton fall far short of the standard required to plead claims sounding in fraud under Rule 9(b) and to otherwise survive a Rule 12(b)(6) motion to dismiss. Plaintiffs' Second Amended Complaint ("SAC") almost entirely fails to attribute any conduct to Clayton whatsoever. The Complaint fares little better in alleging sufficient facts as to Garth. For the reasons explained below, Plaintiffs' claims against Garth and Clayton should all be dismissed with prejudice:

---

[1] Plaintiffs originally filed this lawsuit in Harris County District Court on June 3, 2024, multiple Defendants removed to this Court thereafter. Dkt. No. 1. Defendants Garth and Clayton filed their original Motion to Dismiss on October 28, 2024. Dkt. No. 17. Plaintiffs filed their First Amended Complaint on November 18, 2024. Dkt. No. 27. Defendants Garth and Clayton filed their Motion to Dismiss Plaintiffs' First Amended Complaint on December 2, 2024 (Dkt. No. 37), to which Plaintiffs responded on December 23, 2024 (Dkt. No. 41). The Court held a hearing on Defendants Garth and Claytons Motion to Dismiss the First Amended Complaint on February 3, 2025, and the Court ordered Plaintiffs to file an amended complaint and summary organizational chart of the claims asserted. Dkt. No. 57.

| Claim | Bases for Dismissal. |
|---|---|
| **Count 1**: Common Law Fraud and Fraudulent Inducement | • Failure to plead any actionable, material misrepresentations<br>• Justifiable reliance is barred by agreements directly contradicting alleged misrepresentations.<br>• Failure to otherwise plead the elements of fraud in compliance with Rule 9(b). |
| **Count 2**: Breach of Contract | • Barred by written contracts contravening the terms of the alleged oral agreements.<br>• Failure to plead facts sufficient to give rise to an enforceable contract. |
| **Count 3**: Promissory Estoppel | • Failure to plead facts showing reasonable and justifiable reliance. |
| **Count 4**: Common Law Fraud | • Failure to plead facts sufficient to state a claim and failure to plead with the requisite specificity under Rule 9(b). |
| **Count 5**: DTPA | • Failure to allege facts showing TPB[2] was a consumer, that a transaction at issue involved the acquisition of any goods or services, or any deceptive or fraudulent conduct with sufficient specificity under Rule 9(b). |
| **Count 6**: Breach of Fiduciary Duty | • Failure to allege any plausible basis by which Garth or Clayton would owe them fiduciary duties. |
| **Count 8**: Tortious Interference | • Failure to plausibly allege Garth or Clayton engaged in any conduct constituting willful or intentional interference with any of the identified contracts. |
| **Count 10**: Unjust Enrichment | • Failure to plead sufficient facts to show any benefit received. |
| **Count 11**: TTLA | • Failure to plead any facts to plausibly allege Garth or Clayton misappropriated any property belonging to the Magnolia Companies. |
| **Count 18**: Constructive Trust | • Failure to allege facts showing fraud, breach of fiduciary duty, and unjust enrichment as required. |
| **Count 19**: Accounting | • Failure to allege facts giving rise to such relief as to Garth and Clayton. |
| **Count 20**: Equitable Lien | • Failure to allege facts giving rise to such relief. |
| **Count 21**: Civil Conspiracy | • Failure to allege Garth or Clayton participated in any underlying tort giving rise to the alleged civil conspiracy. |

---

[2] Unless otherwise stated, defined terms herein shall have the meanings ascribed to them in Plaintiffs' Second Amended Complaint.

2820418

ISSUES TO BE RULED ON AND STANDARDS OF REVIEW

The issues to be ruled on are (1) whether Plaintiffs have stated claims against Garth and Clayton upon which relief can be granted under Rule 12(b)(6), (2) whether Plaintiffs have pleaded their fraud claims against Garth and Clayton with particularity under Rule 9(b), and (3) whether Plaintiffs have complied with Rule 8(a) and the Court's order for a short and plain statement.

To survive a motion to dismiss, under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Rule 9(b)'s heightened pleading standard is applied "with 'bite' and 'without apology'" in order to "stand[] as a gatekeeper to discovery" and "weed out meritless fraud claims sooner than later." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 891 (5th Cir. 2024).

Lastly, Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Neither district courts nor defendants should be "required to 'piece' together the plaintiffs' complaint." *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015). "If the plaintiff fails . . . to comply with these rules . . . a defendant may move to dismiss the action or any claim against it," and "[u]nless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

3

2820418

ARGUMENT & AUTHORITIES

The Court previously cautioned Plaintiffs that their First Amended Complaint did not comply with Rule 8(a) and specifically ordered Plaintiffs to amend their pleading to bring it in compliance with the rule. Plaintiffs have entirely failed to do so in their 109-page, typo-ridden, incomprehensible Second Amended Complaint. Dismissal for Plaintiffs' failure to comply with Rule 8(a) under Rule 41(b) is thus independently proper. *See* Fed. R. Civ. P. 41(b).

I.      **Cause of Action No. 1. Magness and TPB Fail to State a Claim for Common Law Fraud and Fraudulent Inducement Against Garth or Clayton.**

Magness and TPB's claim for common law fraud and fraudulent inducement against Garth and Clayton is based primarily on the allegation that Garth and Clayton made material misrepresentations to Magness regarding consideration he would receive upon Starrex's proposed acquisition of the Magnolia Companies. Magness and TPB's real complaint has always been that the proposed acquisition never came to fruition. The misrepresentations Magness and TPB attribute to Garth and Clayton, however, do not provide a basis for a fraud or fraudulent inducement claim to compensate them for that grievance. The other alleged misrepresentations Magness and TBP cite to support this claim do not fare any better. All of the allegations are devoid of the factual specificity required to assert a fraud claim, and the claim should be dismissed as to both Garth and Clayton.

A.      **Magness and TPB failed to state a fraud claim based on any alleged misrepresentation related to Starrex's proposed acquisition of the Magnolia Companies.**

Magness and TPB claim they were defrauded to "surrender valuable assets and opportunities" by alleged misrepresentations that Garth and Clayton made pertaining to events that would transpire and compensation and benefits to which they would be entitled upon consummation of Starrex's acquisition of the Magnolia Companies—including Garth and

4

Clayton's support in raising $50MM in capital to fund the new venture, Starrex shares, and both a board seat and the title of CEO for Magness. SAC ¶ 171(a), (c), (e). None of these allegations support a claim for fraud or fraudulent inducement. [3]

"A fraud cause of action requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Carrier v. U.S. Bank, N.A.*, 2014 WL 2807253, at *4 (S.D. Tex. June 20, 2014) (Rosenthal, J.) (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)). Magness and TPB must "set forth specific facts supporting an inference of fraud" to survive a motion to dismiss under Rule 9(b). *See id.*

First, Magness and TPB do not plausibly explain why any of the alleged misrepresentations related to Starrex's *proposed* acquisition of the Magnolia Companies were fraudulent. *See id.* (citing *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). The fact that Starrex's proposed acquisition of the Magnolia Companies never occurred does not make Garth's or Clayton's representations fraudulent. Magness, for example, asserts he was promised leadership positions within Starrex "after the merger." *See* SAC ¶ 171(b). However, this "promise" was obviously contingent on consummation of the proposed merger. The future event required for any performance on this alleged promise to be due never occurred. And after all, the failure to

---

[3] Magness and TPB have failed to make clear which claims are for fraud versus fraudulent inducement. However, because they have failed to plead any contract they were induced into entering based on any of these alleged representations, any claim for fraudulent inducement would fail. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ("Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.").

perform on a promise "is no evidence of the promissor's intent not to perform when the promise was made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

Moreover, none of the allegations Magness and TPB assert lead to a plausible inference that any of the alleged misrepresentations they attribute to Garth and Clayton were false when they were made. SAC ¶¶ 174–75, 179. The eight subsections under paragraph 174 have nothing to do with the objective truth of the representations at the time they were made, and all are too vague and conclusory to support an inference that Garth and Clayton knew the statements were false when made. *See id.* The same is true with respect to the "facts" alleged in paragraphs 175 and 179, most of which are entirely incomprehensible. To the extent any meaning can be gleaned from those paragraphs, it does not support the inference that Garth or Clayton knew any representations were false when made or were made with reckless disregard for their truth. *See id.* ¶ 175–79.

Importantly, none of the misrepresentations Garth purportedly made about *future events* that *might* transpire *if* Starrex had ever actually acquired the Magnolia Companies are actionable. "The generally accepted rule is that predictions and conjectures relating to future events cannot serve as actionable fraud." *Lake v. Cravens*, 488 S.W.3d 867, 894–95 (Tex. App.—Fort Worth 2016, no pet.). And none of their representations about the success of the *proposed* venture go beyond "mere 'puffery.'" *See PCS Software, Inc. v. Dispatch Servs., Inc.*, 2024 WL 3448009, at *2 (S.D. Tex. July 16, 2024) (Rosenthal, J.).

Even if Magness and TPB had identified an actionable misrepresentation about Starrex's proposed acquisition of the Magnolia Companies, they have utterly failed to show their reliance on any such misrepresentation was justifiable. *See JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). The misrepresentations Magness and TPB cite are all based on future events that might have transpired if Starrex had actually acquired the Magnolia

Companies. Starrex, however, was never under any obligation to do so. As Magness finally admits in this Complaint, the Letter of Intent ("LOI") regarding the proposed transaction was explicitly non-binding.[4] *See* SAC ¶ 194. The only binding provision of the LOI allowed either party to terminate the agreement and elect not to move forward with the proposed transaction.[5] Ex. M at 1, 5 ¶ 7. Magness and TPB's reliance upon any oral representation to the contrary is therefore not justifiable. An "oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *JP Morgan*, 546 S.W.3d at 658 (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858–59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

Finally, despite Plaintiffs' representation that they have pled this claim with "particularity . . . in order to satisfy Rule 9(b)," nothing could be further from the truth. *See* SAC ¶ 171. The claim relating to the $50 million capital raise is perhaps the biggest culprit of this issue. It appears that Magness decided to remove even the vague details he previously provided (that the capital raise was to occur after the Starrex acquisition/merger with the Magnolia Companies) to help get by Defendant's argument that such representations were not actionable.[6] *Compare* Dkt. No. 27 ¶ 97, *with* SAC ¶ 171(a). However, by doing so, Plaintiffs have stripped the allegation of any of the particulars that would be required under Rule 9(b). Plaintiffs' vague allegation plainly fails to satisfy Rule 9(b)'s requirements.

### B. Magness cannot claim fraudulent inducement based on alleged representations that the Starrex Promissory Notes specifically contradict.

---

[4] Magness appears to attempt to get around this problematic fact by claiming that Garth and Clayton exercised control over Starrex such that they bound Starrex to acquire or merge with the Magnolias.
[5] The Complaint repeatedly references the LOI. The Court may therefore rely on it in deciding this motion to dismiss. *See Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) *Verastique v. City of Dallas*, 106 F.4th 427, 430 n.1 (5th Cir. 2024).
[6] *See* Dkt. No. 37 at 17 (citing FAC ¶¶ 489, 491).

2820418

Magness next claims he was fraudulently induced into signing the Starrex Promissory Notes by representations that the Notes were only "for the auditors as part of the acquisition that was certain to occur." SAC ¶ 171(d). The allegation is not pled with the specificity required under Rule 9(b), and it is not actionable in any event. "[A] party who enters into a written contract, while relying on a contrary oral agreement does so at its own peril and is not rewarded with a claim of fraudulent inducement when the other party seeks to invoke its rights under the contract." *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 554 (S.D. Tex. 2009). The four Starrex Promissory Notes all explicitly state:

> This Note is due and payable as follows:
>
> All unpaid principal and accrued and unpaid interest due hereunder shall be due and payable in full on June 23, 2023 (the "Final Maturity Date").

Exs. A–D. There can be no justifiable reliance on any representation Garth or Clayton supposedly made that is contradicted by the express terms of the Notes indicating they were due and payable on June 23, 2023. *See Guardian Life Ins. Co.*, 663 F. Supp. 2d at 554. Further, all four Starrex Security Agreements explicitly state that they are being entered into "**as security for promissory notes issued by [the Magnolia Companies]**" and incorporate by reference the promissory notes."[7] Exs. E–H at 2.[8] The Starrex Security Agreements contain an integration clause, which provides that each is "the entire agreement of the Debtor and Secured Party concerning its subject matter." *Id.* sec. 9(j). The alleged misrepresentation Magness attributes to Garth and Clayton cannot constitute fraudulent inducement as it conflicts with the plain terms of the Notes themselves—which Magness now concedes that he specifically authorized Debbie Merritt to sign. *See Guardian Life Ins.*, 663 F. Supp. 2d at 554; SAC ¶ 155.

---

[7] The Complaint repeatedly references the Starrex Promissory Notes, so the Court may therefore rely on them in deciding this motion to dismiss. *See supra* note 5.

[8] Pin cites herein refer to the PDF page number including exhibit slip sheet.

2820418

Moreover, neither Garth nor Clayton is a signatory to the Notes or Security Agreements, nor has Magness pled any facts showing that Garth or Clayton were authorized agents or representatives of Starrex at the time the alleged representation was made with respect to these contracts.[9] As a result, Magness and TPB cannot bring a claim against Garth for fraudulent inducement relating to the Starrex Promissory Notes or Security Agreements.

### C. TPB cannot claim fraud or fraudulent inducement based on alleged representations that the HMH Contribution Agreements specifically contradict.

TPB also claims that it was fraudulently induced to accept dilution of its equity in the Magnolia Companies based on the representation that Garth and Clayton would make "promised" capital contributions and that TPB would receive millions of Starrex shares after the proposed acquisition occurred. SAC ¶ 171(c). TPB alleges that it was induced into diluting its equity in the Magnolia Companies from 20% to 11% based on these representations. *Id.* ¶ 171(c).

The "why" for this alleged fraud was purportedly to dilute TPB's equity to shield Garth and Clayton from the upcoming investment by HMH/Nelson Mitchell. *Id.* ¶ 171(c). The upcoming investment was entered into via the HMH Contribution Agreements,[10] which directly contradict this allegation. Exs. I–L. The Contribution Agreements show that each of TPB and Garth's and Clayton's entities had the same number of units before and after HMH became a member. *See* Ex. I at 36 (Revised Exhibit 3.1, Effective December 31, 2021), 37 (Revised Exhibit 3.1, Effective

---

[9] Absent that allegation, "asserting a fraudulent inducement claim against a third party to [a] contract is inconsistent with Texas case law. . . . Fraudulent inducement . . . requires *the plaintiff and defendant* to have entered into an enforceable contract.'" *William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*, 2016 WL 3223313, at *8 (S.D. Tex. Mar. 8, 2016) (emphasis added).

[10] The HMH Contribution Agreements are the agreements by which HMH/Nelson Mitchell agreed to invest money in the Magnolia Companies and the members agreed to give HMH shares of the Magnolia Companies in return. Because these agreements are referenced in the Complaint and are central to the why for this claim, they are properly considered in this motion to dismiss. *See supra* note 5.

9

September 9, 2022).[11] All members' equity was proportionately reduced when HMH became a member. *Id.* TPB's claim for equity dilution is entirely implausible based on the HMH Contribution Agreements. Any fraud claim based on the alleged equity dilution must be dismissed.

Moreover, TPB speculatively claims that the representation about the capital contribution was false when made based solely on some bank records showing money being transferred from the Magnolia Companies to Starrex or third parties. SAC ¶ 174(e). But that is completely nonsensical. TPB attempts to buttress this gargantuan inferential leap with the unabashed speculation that Starrex advanced money on Garth and Clayton's behalf and that the subsequent transfers reflected in the bank records from the Magnolia Companies to Starrex and third parties were to repay this purported "personal debt". *Id.* ¶ 174(d). TPB alleges no facts to show this, such as when Starrex purportedly advanced the funds, whether it happened in a single or multiple transfers, and which Magnolia Companies received what funds. The failure to even allege this critical half of the story when TPB has acknowledged that it has the bank records it would need to do so renders this claim entirely implausible. TPB has failed to allege that the representations were false or knowingly false when made, which is required for this claim. It must be dismissed.

## II.    Cause of Action No. 2. Magness and TPB Fail to State a Claim for Breach of Contract Against Garth or Clayton.

Plaintiffs attempt to repackage their fraud and fraudulent inducement claims from the first cause of action to claim that there were two oral contracts formed between Magness or TPB on the one hand and Garth and Clayton on the other. In the first, allegedly entered into in April 2021, Magness allegedly "agreed to contribute his expertise, industry relationships, and full-time efforts to building a national title insurance platform," and "[i]n exchange, Garth and Clayton would

---

[11] The HMH Contribution Agreements for the remaining Magnolias show the same. Ex. J at 35–36 (Sol City); Ex. K at 36–37 (Magnolia Arkansas); Ex. L at 35–36 (Magnolia Florida).

10

ensure that Magness became CEO of Starrex, received a board seat, obtained 3 million shares of Starrex stock, and led the nationwide expansion of title operations." SAC ¶ 186. In the second, allegedly entered into on July 22, 2022, TPB alleges that Garth and Clayton agreed to personally contribute a million dollars to the Magnolia Companies, and TPB in exchange would receive a reduction in equity in the Magnolia Companies and receive millions of Starrex shares. *Id.* ¶ 191.

*With respect to the alleged oral contract with Magness*, "[i]t is well settled that a written instrument may not be varied by evidence of an oral agreement that contravenes its terms." *Zentech, Inc. v. Gunter*, 606 S.W.3d 847, 855 (Tex. App. 2020).[12] Here, Magness again impermissibly attempts to vary the only binding term of the LOI for the proposed Starrex transaction—that it could be terminated. Ex. M at 1, 5 ¶ 7.[13] Claiming that there was an oral contract requiring Starrex to go through with the transaction with the Magnolia Companies— which is required for any of these representations to occur—would directly vary the only legally binding provision in the LOI. Magness fails to allege any facts that are not legally barred from forming the basis for a breach of contract claim, so it must be dismissed.

Moreover, "[a] contract is not legally binding unless its terms are sufficiently definite so that a court can understand what the promisor undertook." *See Southern v. Goetting*, 353 S.W.3d 295, 299–300 (Tex. App.—El Paso 2011, pet. denied). While Magness claims he has pled definite terms for his alleged oral agreement, he has done no such thing. *See id.* ¶ 194. Rather, his promised consideration—of contributing his expertise, industry relationships, and full-time efforts to building a national title insurance platform—is so vague as to be unenforceable. *See id.* What Magness undertook is so indefinite that it would be impossible for a court to determine his legal

---

[12] "The parol evidence rule prohibits the enforcement of any agreements that are inconsistent with the [agreement], whether made before or contemporaneous with the execution of the [agreement]." *Id.*

[13] The Court can rely on the LOI because it is referenced in the Complaint and central to the claims. *See supra* note 5.

obligations under the alleged contract. *See id.* For example, if Magness only got the title business to expand to one half of the country, would he have breached the agreement? What extent of using his "industry relationships" would be sufficient? Did he need to call each person he knew a certain number of times? Unclear. Magness's claim for an oral contract is not pled with sufficiently definite terms to be enforceable.[14] Because Magness has failed to plead an enforceable contract, his claim for breach of contract must be dismissed.

      *For the alleged equity dilution oral contract with TPB*, there are multiple written contracts that were entered into shortly after this alleged oral contract involving TPB's equity in the Magnolia Companies. And "when the parties have concluded a valid integrated agreement, th[e] [parol evidence] rule precludes enforcement of ***inconsistent*** prior or contemporaneous agreements." *Gonzalez v. United Broth. of Carpenters & Joiners of Am., Local 551*, 93 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (emphasis added). One such agreement is the BSpoke Settlement Agreement, which establishes that TPB owned far more than 11% in all four of the Magnolia Companies as of the effective date of the Agreement: **August 28, 2022**. Ex. N at 12. TPB's supposed equity dilution was alleged to have taken place on **July 18, 2022**. SAC ¶ 176(c). In executing the BSpoke Settlement Agreement, TPB specifically agreed that it "supersede[d] any prior or contemporaneous agreements, promises, statements, understandings, and/or representations, oral or written, relating to the matters set forth herein, which shall be superseded, void and unenforceable." Ex. N at 10 ¶ 14.

      The BSpoke Settlement Agreement, which was entered into more than a month after TPB's alleged equity dilution, renders TPB's claim entirely implausible. It shows that the BSpoke Parties redeemed the majority of their interests in the Magnolia Companies in exchange for TPB

---

[14] At best, this alleged contract is non-binding because it leaves open the essential term of when the consideration would occur. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

redeeming its interests in the BSpoke Entities. TPB could not have possibly owned 20% equity in the Magnolia Companies prior to the execution of the BSpoke Settlement Agreement,[15] which was fully integrated.[16] TPB cannot now come and claim that it had a different oral contract with Garth and Clayton prior to the date of the BSpoke Settlement Agreement, which is exactly what it has done with this claim.[17] TPB's claim must be dismissed.

### III.    Cause of Action No. 3. Magness and TPB Fail to Plead a Claim for Promissory Estoppel Against Garth or Clayton.

TPB and Magness allege the same unenforceable "promises" to support their claim for promissory estoppel. *See* SAC ¶ 198. But this claim fares no better because Magness and TPB fail to adequately allege justifiable and reasonable reliance as is required for promissory estoppel. *See BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, 2008 WL 1991738, at *2 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied). Promissory estoppel cannot be used to circumvent the parol evidence rule. *See 2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 457 (Tex. App.—Houston [14th Dist.] 2012, pet. filed); *Gonzalez v. The United Brotherhood of Carpenters and Joiners of America, Local 551*, 93 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2002, no pet.). As discussed in the prior section, there are at least two written agreements on the same subjects that contradict these "promises." *See supra* Part II. The LOI has a binding contradictory provision and the BSpoke Settlement Agreement is entirely binding.[18] *Id.* As a result, they bar this claim just as they barred the breach of contract claim.

### IV.    Cause of Action No. 4. Plaintiffs Fail to State a Claim for Common Law Fraud Against Garth or Clayton.

---

[15] *See infra* Part VIII.

[16] It provides in part: "No oral statements or prior written material not specifically incorporated into this Agreement, or the agreements signed in connection with this Agreement shall be of any force and effect." Ex. N at § 14.

[17] Similarly, the Contribution Agreements, also executed after the alleged oral contract, contain integration clauses and directly contradict what Magness claims. Exs. I–L at 25.

[18] The claim for promissory estoppel based on equity dilution is barred by the integration clause of the BSpoke Settlement Agreement as well. *See 2001 Trinity Fund, LLC*, 393 S.W.3d at 457.

2820418

Plaintiffs' fraud claim is based on "numerous material misrepresentations to Plaintiffs regarding their authority and intentions, financial resources and plans, and Merritt's qualifications." SAC ¶ 213. However, the claim only refers to the alleged misrepresentations about Merritt and her qualifications. *Id.* ¶ 214–16. The alleged time of these representations was sometime between April 2021 and February 2024, but that essentially encompasses the entire length of the relationship as alleged by Plaintiffs. It is entirely insufficient to allege when the misrepresentations relating to Merritt occurred under Rule 9(b). *See Pace*, 93 F.4th at 891. Plaintiffs' failure to do so is fatal to this claim, and it should be dismissed based on this ground alone. However, the pleading deficiencies by no means stop at the failure to allege the "when."

Plaintiffs also make the conclusory claim that they pleaded sufficient facts to show that Garth and Clayton knew Merritt's qualifications were false when they shared them with Magness. To support this allegation, they assert that: "Clayton also indicated that they had knowledge when they made comments that Merritt would seemingly 'burn the house down' if she lost her position because she could never obtain such a position again," "Clayton's admission stating that, or words to the effect that 'if anyone does a forensic audit [on the Magnolias], we are f\*\*cked,' Garth's instruction to backdate promissory notes, and their sophisticated business backgrounds precluding any claim of ignorance." SAC ¶ 216–17. None of this shows that Garth or Clayton had any knowledge of Merritt's fraud that she perpetrated on everyone, including the publications that apparently published her as one of the "Top 50 Women in Finance." *See id.* ¶ 217.

Moreover, Plaintiffs fail to plead any facts that show Garth or Clayton knew or recklessly asserted Merritt's qualifications without knowledge of their truth. To do so, Plaintiffs would have needed to plead facts sufficient to allege that they stated her qualifications in wanton disregard of Plaintiffs' rights or in indifference to the results which might follow. *See Stone v. Lawyers Title*

14

*Ins. Corp.*, 537 S.W.2d 55, 71–72 (Tex. App.—Corpus Christi 1976), *aff'd in part, rev'd in part*, 554 S.W.2d 183 (Tex. 1977). Plaintiffs again failed to plead any facts showing that Garth or Clayton knew Merritt's qualifications were false or that Garth or Clayton as shareholders had any duty to verify the qualifications of Starrex's Chief Financial Officer. Plaintiffs do not allege either was a member of the Board of Directors, nor do they contend either of them had any official position at Starrex.

Further, any statements about Merritt's qualifications are inactionable because they are not material or constitute mere puffery or opinion because they were not "the type of statement that 'a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question'" or mere puffery or opinion for statements about Ms. Merritt's intelligence or general qualifications. *See Fitzgerald v. Water Rock Outdoors, LLC*, 536 S.W.3d 112, 118 (Tex. App.—Amarillo 2017, pet. denied). Lastly, Plaintiffs have failed to allege any injury such representations caused. They list a number of items, but they either plead no causal relationship (such as how this related to equity dilution or Magness's compensation) or fail to show how they were injured (Management Services Agreement). *See* SAC ¶¶ 221–22. Plaintiffs fail to state a claim.

## V.    Cause of Action No. 5: TPB Fails to State a Claim for a Violation of the Deceptive Trade Practices Act Against Garth or Clayton.

First, the DTPA is entirely inapplicable to the alleged transaction, and it must be dismissed. TPB alleges "it paid valuable consideration for the services by relinquishing its $2.2 million equity position," as well as other consideration. SAC ¶ 225. But the DTPA explicitly does not "apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000." Tex. Bus. & Com. Code § 17.49. TPB's own pleading alleges that it paid consideration worth $2.2 million, so its

15

claim must be dismissed. *See id.*; *Haynesville Shale Rentals, LLC v. Total Equip. & Serv., Inc.*, 2014 WL 1379884, at *4 (S.D. Tex. Apr. 8, 2014).[19]

Second, TPB fails to allege any cognizable claim for an action under the general requirements of the DTPA or to satisfy the who, what, when, where, how, and why required under Rule 9(b). *See Fif Eng'g, LLC v. Pac. Emps. Ins. Co.*, 2024 WL 3448016, at *3 (S.D. Tex. July 17, 2024) (Rosenthal, J.). TPB also fails to state a claim upon which relief can be granted under the DTPA by failing to plausibly allege that TPB was a consumer eligible to assert a claim under the DTPA. *See Taylor v. Ditech Fin., LLC*, 2017 WL 2362493, at *3 (S.D. Tex. May 31, 2017) (Rosenthal, J.). "To qualify as a consumer under the DTPA, a plaintiff 'must seek or acquire goods or services by lease or purchase.'" *Id.*

TPB still makes no more than a bare, conclusory allegation that it is or was a consumer or that it "sought and acquired services through transactions." *See* SAC ¶¶ 224–25. TPB alleges it "sought and acquired" "professional financial services" and "professional management services." *Id.* ¶ 225. But it is entirely a mystery what services TPB purportedly acquired. This fails to provide any of the required specificity required for claims sounding in fraud. Moreover, the $2.2 million equity position it alleges as consideration took place in the BSpoke Settlement Agreement, which is categorically not a good or service. *See Kincaid v. Cummins Engine Co.*, 2005 WL 1744959, at *1 (Tex. App.—Dallas July 26, 2005, no pet.) (mem. op.).

## VI. Cause of Action No. 6. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Against Garth or Clayton.

The existence of a fiduciary relationship is a required element for a breach of fiduciary duty claim. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet.

---

[19] Additionally, because TPB's DTPA claim is groundless in fact or law, Defendants Garth and Clayton are entitled to their reasonable attorneys' fees. *See* Tex. Bus. & Com. Code § 17.50(c). If the Court finds TPB's claim groundless, Defendants will thereafter file a Motion for Attorney's Fees for defending against the DTPA action.

2820418

denied). Based on what Plaintiffs have pled, Defendants Garth and Clayton do not owe fiduciary duties to Magness, TPB, or even the Magnolia Companies, and thus, Plaintiffs cannot state a claim.

*No formal duties*. Starting with TPB, in Texas there is no formal fiduciary relationship between members of a limited liability company as a matter of law. *See Sohani v. Sunesara*, 2023 WL 1112165, at *14 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied) ("This Court has declined to recognize a 'broad formal fiduciary relationship' between members in a limited liability company."); *see also Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 365-69 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Neither Garth nor Clayton were even members of the Magnolia Companies individually. Rather, their investment vehicles—GH Insurance Investments, Alphabet Investments, and 405 Manhattan Investments—were. As discussed above, the Complaint incorporates by reference the BSpoke Settlement Agreement and HMH Contribution Agreements, which establish the owners of the Magnolia Companies. *See* Exs. N, I – L. Moving on to Magness, his claim for breach of fiduciary duty also fails because he was not a member of the Magnolia Companies individually either. Further, the Magnolia Companies also bring direct claims for breach of fiduciary duty against Garth and Clayton. But even assuming their investment entities owed fiduciary duties to the Magnolia Companies, Plaintiffs plead no good-faith basis suggesting that Garth and Clayton individually owed such duties. No such authority exists.

*No informal duties*. Plaintiffs fare no better in alleging that Garth or Clayton owe them informal fiduciary duties. While Texas law recognizes an informal fiduciary duty that may arise from certain moral, social, domestic, or personal relationships of trust and confidence, it has long been recognized that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Mere subjective trust does not, as a matter of law, transform arm's-length dealings into a fiduciary

17

relationship. *Id.* at 331. The Supreme Court of Texas has cautioned that "[i]n order to give full force to contracts, [they] do not create such a relationship lightly." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–177 (Tex. 1997).

Plaintiffs' pleading in this regard is entirely unsatisfactory. They allege Garth and Clayton owed fiduciary duties "arising from their positions of trust and confidence and de facto control over operations." SAC ¶ 234. Plaintiffs then list four acts that allegedly establish this fact; however, none of those acts are pled with sufficient specificity. *See id.* ¶¶ 234(a)–(d). For example, to what entity are these acts supposedly relevant? The pleading is so incredibly vague as to make even that most basic detail impossible to decipher. And Plaintiffs' allegations as to the remaining elements of breach of fiduciary duty similarly do not hold water due to their vague and conclusory nature. Plaintiffs have not pled facts to infer that their breach of fiduciary duty claim as to Garth or Clayton satisfy any of the required elements for such a claim.[20] It must be dismissed.

## VII.   Cause of Action No. 8. The Magnolia Companies Fail to State a Claim for Tortious Interference Against Garth or Clayton.

The Magnolia Companies' claim for tortious interference against Garth and Clayton relies on alleged interference with the HMH Investment Agreement, Qualia platform contract, agency agreements with major underwriters, KIPP Educational Foundation Client Agreement, and employment agreements with key personnel. SAC ¶ 247. To properly state a claim for tortious interference with a contract requires the existence of a valid contract subject to interference and facts sufficient to plausibly allege that the defendant willfully and intentionally interfered with the contract.[21] *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

---

[20] *See Plotkin*, 304 S.W.3d at 479 (also requiring "the defendant's breach of the fiduciary duties arising from that relationship" and "injury to the plaintiff, or benefit to the defendant, resulting from that breach").

[21] Additional elements include that the interference proximately caused the plaintiff's injury and that the plaintiff incurred actual damage or loss. *Id.*

As an initial matter, the Magnolia Companies have completely failed to allege that Garth or Clayton had any involvement with the Qualia contract, agreements with underwriters, and employment agreements. To the extent the claim against Garth and Clayton is based on those contracts, it must be dismissed as to Garth and Clayton. *See* SAC ¶¶ 91–146 (mentioning Garth or Clayton only in relation to a proposed settlement offer).

Moreover, the Magnolia Companies have failed to allege any facts from which the Court can infer that Garth or Clayton directed the allegedly unauthorized diversion of HMH's capital contribution. *Id.* ¶¶ 247–49. Despite saying repeatedly throughout the Complaint that Garth and Clayton directed the unauthorized diversion of funds to satisfy personal obligations, they provide nothing but vague, conclusory, and speculative statements in support of that allegation. *See id.* ¶ 249. Since that is the sole basis for which they have alleged Garth or Clayton interfered with the HMH Agreement, that claim fails.

Likewise, Plaintiffs have failed to allege sufficient facts to allege a valid contract with KIPP Educational Foundation for a $10,000 donation. For example, there are no allegations identifying who the parties to the contract were or when it was executed. This claim does not even provide fair notice of what the basis is for it. In terms of alleging interference, they at most allege that Garth and Clayton opposed paying such a donation. Plaintiffs do not allege that Garth or Clayton had any knowledge of a contract with KIPP or that the check was part of that contract. Plaintiffs' claims for tortious interference fail to state a claim and must be dismissed.

## VIII.   Cause of Action No. 10. Plaintiffs Fail to State a Claim for Unjust Enrichment Against Garth or Clayton.

Plaintiffs allege that Garth and Clayton have obtained substantial benefits by (1) misappropriating HMH's $1 million investment to satisfy Garth and Clayton's alleged personal obligations to Starrex, (2) increasing equity without capital contribution, (3) acquiring Magness's

19

professional services without compensation, and (4) TPB surrendering its equity position in the BSpoke Entities. SAC ¶ 265. "Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Because Plaintiffs' claim is based on all of the same conduct alleged as fraud elsewhere in the Complaint, it must comport with the specificity required by Rule 9(b). *See Pace*, 93 F.4th at 891; *Eun Bok Lee*, 411 S.W.3d at 111.

Regarding the allegation that Garth and Clayton misappropriated and then benefitted from HMH's $1 million investment, Plaintiffs have failed to allege sufficient facts to show that any misappropriation or benefit to Garth or Clayton occurred. Despite repeatedly making references to the alleged misappropriation of the HMH investment throughout the Complaint, Plaintiffs never actually provide more than rank speculation about the alleged misappropriation. *See* SAC ¶¶ 77–80, 204, 235, 249, 265. They merely list a number of transfers taking place on different dates and in different amounts that go from the Magnolias to Starrex or a third-party named Commercial Construction Services ***and none to Garth or Clayton***. *See id.* ¶ 78.

The sole allegation about those transfers having any benefit to Garth or Clayton is that they were used to satisfy debt Garth and Clayton supposedly owed to Starrex. *See id.* ¶ 265(a). The "facts" they allege support this allegation do no such thing. They refer to "Clayton's audit admission" and "Merritt's text" as tying Garth and Clayton to personal enrichment but provide nothing else. *See id.* ¶ 268. Elsewhere in the Complaint, the "facts" fare no better. They claim Hill made several comments that support Garth and Clayton having benefitted, but the statements make little sense and they fail to support Garth or Clayton benefitting from these funds. *See id.* ¶ 79 (alleging Hill said "I can't believe they [Garth and Clayton] did this again" and "I'm going to be

in deep trouble as the CEO of Starrex"). Speculation does not suffice to state a plausible claim, and Plaintiffs have provided nothing more than that. *See Twombly*, 550 U.S. at 555.

The second alleged substantial benefit invokes the First Amended and Restated Company Agreement of Coast to Coast Title, LLC as showing this purported benefit. *See* SAC ¶ 265(b). But that agreement only mentions 405 Manhattan Investments and Alphabet Investments having contributed $495,000 before TPB was ever even a member of Coast to Coast. Ex. O at 39. The agreement also directly contradicts their alleged claim that Garth or Clayton acquired Magness's professional services without compensation, which is their third alleged substantial benefit by showing that Magness was the only one with the authority to determine compensation. *Id.* at section 5.1(a), 5.3(d); *see* SAC ¶ 265(c). Magness's claim that he was not compensated fails to plausibly state a claim for unjust enrichment considering his compensation was solely determined by himself and thus fails to provide any basis that it was "wrongfully obtained." *See id.*

The fourth alleged substantial benefit—TPB giving up its equity in the BSpoke Entities— fails to even identify a benefit that Garth or Clayton secured as a result, so this basis also fails as a matter of law. *See* SAC ¶ 265(d).

**IX.    Cause of Action No. 11. The Magnolia Companies Fail to State a Claim for Violations of the Texas Theft Liability Act Against Garth or Clayton.**

The Magnolia Companies have not pled facts sufficient to plausibly allege that Garth or Clayton misappropriated any property. The Magnolia Companies' speculation is not enough to plead this claim, which also sounds in fraud and must be pled in accordance with Rule 9(b).

The Magnolia Companies claim that Garth and Clayton violated the TTLA by misappropriating the HMH investment. The TTLA defines theft as "unlawfully appropriating property." Tex. Civ. Prac. & Rem. Code § 134.002(2). It further limits the liability to the "person who commits theft." *Id.* The statute is clear that it has to be the person who actually committed

21

theft. They essentially allege that Garth and Clayton "unlawfully appropriated these funds through their direction of specific transfers." SAC ¶ 252(a). There are no allegations even suggesting that Garth or Clayton themselves transferred the money or plausibly alleging they directed any of the transfers either. This claim fails as a matter of law.

Then for the first time in this Complaint, Plaintiffs claim Garth and Clayton also directed the diversion of corporate funds from the Magnolia Companies' accounts and stole the Magnolias' business operations in Florida and Arkansas. *Id.* ¶ 252(b), (c). Neither of these claims is supported by any factual allegations. They make conclusory statements in paragraph 258, providing that "Garth and Clayton's involvement was not merely passive; they orchestrated [and] directed the scheme to deprive the Magnolias of this property through their control of Starrex and direction of Cooper and other defendants." *Id.* ¶ 258. The only allegations relating to the alleged scheme to take over Magnolia Arkansas and Florida are conclusory or do not allege Garth or Clayton were involved with misappropriating or actually misappropriated anything. *See id.* ¶ 89 (alleging Garth ghostwrote "a coercive 'settlement'" relating to Magnolia Arkansas and Florida).

## X.    Cause of Action No. 18. Plaintiffs Fail to State a Claim for a Constructive Trust Against Garth or Clayton.

"A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment." *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied). "Three elements are generally required for a constructive trust to be imposed under Texas law. The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015). Because Plaintiffs fail to state claims for fraud, breach of fiduciary duty, and unjust enrichment against Garth or Clayton, two of the three required

elements are lacking. *See supra* Parts I, IV, VI, VIII. Moreover, they have entirely failed to allege any identifiable property that can be traced back to any original property. This claim fails.

XI.   **Cause of Action No. 19. Plaintiffs Fail to State a Claim for an Accounting Against Garth or Clayton.**

As an initial matter, it is unclear whether Plaintiffs seek an accounting as a remedy sought in conjunction with another cause of action or as a separate suit in equity. *See Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 674 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The former requires success on the foundational cause of action before any remedy can be contemplated for it, while the latter requires "a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting." *Id.* at 674–75.

This claim is facially nonsensical. Plaintiffs have not pled that there is any contract giving them a right to an accounting from Garth or Clayton. Plaintiffs have also failed to plead any basis for Garth or Clayton to owe formal or informal fiduciary duties to any of the Plaintiffs. *See supra* Part VI. Since breach of fiduciary duty is the sole basis for the claim or the remedy of accounting, the failure to plead a breach of fiduciary duty claim against Garth or Clayton is fatal. *See Westinde v. JPMorgan Chase Bank, N.A.*, 2014 WL 4631405, at *12 (N.D. Tex. Sept. 16, 2014).

Further, it is unclear whose or what accounts for which they want an accounting. Plaintiffs have not pled that Garth and Clayton have access to or even could do an accounting of Starrex or the Magnolias, assuming those are the entities for which an accounting is sought. Plaintiffs have not pleaded any facts to show an entitlement to an accounting from Garth or Clayton, nor have they pleaded sufficient facts to even understand what they seek. To the extent this is pled as a standalone cause of action, it must be dismissed.

XII.   **Cause of Action No. 20. Plaintiffs Fail to State a Claim for Equitable Lien Against Garth or Clayton.**

An equitable lien is entirely unavailable based on what the Plaintiffs have pled. "An

equitable lien arises when the surrounding circumstances indicate the parties to the transaction intended that certain property would secure the payment of a debt." *Chorman v. McCormick*, 172 S.W.3d 22, 24 (Tex. App.—Amarillo 2005, no pet.). "An equitable lien . . . is one in which a court of equity implies a[n] ***agreement*** arising out of the relationship of the parties and the circumstances of their dealings." *Richards v. Suckle*, 871 S.W.2d 239, 241 (Tex. App.—Houston [14th Dist.] 1994, no writ) (emphasis added).

Plaintiffs cannot plead claims for any agreement, express or implied, that would give rise to an equitable lien. And Plaintiffs have not pled sufficient facts to show Defendants "wrongfully obtained" any property even if that was a basis for an equitable lien, which it is not. *See id.*, SAC ¶¶ 283, 233.[22] And even if they had, they have not pled facts showing that certain property would secure the payment of a debt as is required for an equitable lien. *See Chorman*, 172 S.W.3d at 24. This claim must be dismissed.

## XIII.    Cause of Action No. 21. Plaintiffs Fail to State a Claim for Civil Conspiracy Against Garth or Clayton.

Plaintiffs base their conspiracy cause of action on Garth and Clayton's alleged fraud, tortious interference, and breaches of fiduciary duty. SAC ¶ 287. "Civil conspiracy is not an independent tort, but a derivative tort that depends on *participation in some underlying tort* for which the plaintiff seeks to hold the defendant liable." *Vertex Services, LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (emphasis added). Because a conspiracy claim "'survives or fails alongside' the underlying tort alleged," *id.*, the claim must be dismissed when a plaintiff fails to state a claim for the underlying conduct. *See ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*, 2011 WL 13247456, at *7 (S.D. Tex. July 25,

---

[22] Page 93 of the Complaint inexplicably goes from paragraph 283 to **232–33** and then to **315–17** before going back to paragraph 284 on page 94.

2011) (Rosenthal, J.). Because Plaintiffs have failed to plead their claims for fraud, tortious interference, and breach of fiduciary duty, any alleged conspiracy based on those causes of action fails.[23] *See supra* Parts I, IV, VI, VIII.

A conspiracy claim requires: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Vertex Servs., LLC*, 583 S.W.3d at 857. Plaintiffs fail to provide more than a threadbare recital of the elements of a conspiracy without pleading any supporting facts involving Garth or Clayton in any of the allegedly tortious underlying conduct. Rather, the entire conspiracy count is "a formulaic recitation of the elements of a cause of action' and, as to the facts surrounding the conspiracy, tenders naked assertions devoid of further factual enhancement." *See Adams Offshore Ltd. v. OSA Intern., LLC*, 2011 WL 4625371, at *8 (S.D. Tex. Sept. 30, 2011) (Rosenthal, J.) (citing *Iqbal*, 556 U.S. at 678) (cleaned up). As a result, the alleged conspiracy claim fails as to Garth and Clayton.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court dismiss Counts 1–6, 8, 10–11, 18–21 as to Garth and Clayton for the reasons outlined above. Defendants Garth and Clayton further respectfully request the Court dismiss these claims with prejudice and deny Plaintiffs leave to amend a third time, particularly in light of the Court's warning that this would be Plaintiffs' last opportunity to replead and their failure to conform to the Court's demand for them to provide a short and plain statement of their claims. Defendants further seek all other relief to which they may be entitled, at law or in equity.

---

[23] Moreover, "under Texas law, civil conspiracy claims must be based on an underlying state tort." *Garcia v. Communities in Sch. of Brazoria Cnty., Inc.*, 2019 WL 2420079, at *11 (S.D. Tex. June 10, 2019) (Rosenthal, J.) (collecting cases). Accordingly, the allegations for wire, mail, and bank fraud do not suffice to state an underlying tort required for a civil conspiracy claim. *See id.*

25

2820418

Dated: March 21, 2025

Respectfully submitted,

**BECK REDDEN LLP**

By:     /s/ Fields Alexander
       Fields Alexander – *Attorney in Charge*
       State Bar No. 00783528
       Federal Bar No. 16427
       falexander@beckredden.com
       Amy Parker Beeson – *of Counsel*
       State Bar No. 24051156
       Federal Bar No. 626178
       abeeson@beckredden.com
       Kaitie Sorenson – *of Counsel*
       State Bar No. 24128633
       Federal Bar No. 3859186
       ksorenson@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone No. (713) 951-3700
Facsimile No. (713) 951-3720

**ATTORNEYS FOR DEFENDANTS
TYRRELL L. GARTH AND PHILLIP H.
CLAYTON**

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2025, I served the foregoing notice via the CM/ECF system, which will provide notice to all parties of record.

By *<u>/s/ Fields Alexander</u>*
Fields Alexander

27

2820418