**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

Coast to Coast Tile, LLC, et al.,                  §
                                                                     §
v.                                                                    §          Case Number: 4:24-cv-2767
                                                                     §
Garth, et al.                                                     §

**Plaintiffs' Response to the Motions to Dismiss and**
**Notice of Partial Dismissal**

## Table of Contents

Table of Contents ...................................................................................................................ii

Table of Authorities ..............................................................................................................iii

Procedural Posture & Standard of Review ........................................................................ 1

Summary of the Argument .................................................................................................. 2

Argument ............................................................................................................................... 4

I.      Rule 41(a)(1)(A) notice of partial dismissal. ........................................................... 4

II.     The triad of remaining claims survive. ................................................................... 6

        A.      Fraud and fraudulent inducement claims are proper. ............................... 6

                1.      Sufficiently clear and detailed allegations exist. ........................... 6

                2.      The counterarguments fail. ................................................................ 9

        B.      The breach of fiduciary duty claims are proper. .......................................11

                1.      Sufficiently clear and detailed allegations exist. ..........................11

                2.      The counterarguments fail. .............................................................. 13

        C.      The conspiracy claims are proper. ............................................................. 15

                1.      Sufficiently clear and detailed allegations exist. ......................... 15

                2.      The counterarguments fail. .............................................................. 17

        D.      Additional procedural issues. .................................................................... 19

                1.      Footnote-only points are waived.................................................... 19

                2.      Outside materials should not be considered............................... 19

                3.      If outside materials are considered, conversion is required. .................20

        E.      The Starrex motion fails for the same reason as Garth & Clayton........................ 21

III.    Requests for leave to amend. ................................................................................... 21

        A.      Correction amendments are warranted. .................................................... 21

        B.      Conforming amendments are warranted..................................................... 23

        C.      Leave to amend for further Rule 8/9 compliance is warranted. ........................... 24

Conclusion ........................................................................................................................... 25

Certificate of Service............................................................................................................ 27

## Table of Authorities

Page(s)

<u>**Cases**</u>

*Apex Towing Co. v. Tolin*,
  41 S.W.3d 118 (Tex. 2001) ............................................................. 15

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) ......................................................... 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 2

*Branch v. CEMEX, Inc.*,
  No. H-11-1953, 2012 WL 2357280 (S.D. Tex. June 20, 2012 (Rosenthal, J.),
    *aff'd*, 517 F. App'x 276 (5th Cir. 2013) ................................. 19, 20

*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*,
  811 F.2d 278 (5th Cir. 1987) ............................................................ 4

*First United Pentecostal Church of Beaumont v. Parker*,
  514 S.W.3d 214 (Tex. 2017) .......................................................... 11

*Flores v. Amazing Grace Primary Home Care, L.L.C.*,
  No. 24-40434, 2025 WL 832795 (5th Cir. Mar. 17, 2025) .............. 24

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998) ............................................................ 10

*Gen. Retail Services, Inc. v. Wireless Toyz Franchise, LLC*,
  255 F. App'x 775 (5th Cir. 2007) .............................................. 20, 20

*Holloway v. Skinner*,
  898 S.W.2d 793 (Tex. 1995) .......................................................... 14

*Italian Cowboy Partners v. Prudential Ins. Co. of Am.*,
  341 S.W.3d 323 (Tex. 2011) ............................................................ 9

*Jamieson By & Through Jamieson v. Shaw*,
  772 F.2d 1205 (5th Cir. 1985). ...................................................... 25

*Lundy v. Masson*,
  260 S.W.3d 482 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ........................ 13, 14

*Mayequx v. La. Health Serv. & Indem. Co.*,
  376 F.3d 420 (5th Cir. 2004). ........................................................ 24

*Murphy v. Inexco Oil Co.*,
    611 F.2d 570 (5th Cir. 1980)............................................................21

*Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*,
    975 S.W.2d 546.....................................................................18

*Oswalt v. Scripto, Inc.*,
    616 F.2d 191 (5th Cir. 1980)..........................................................3, 4

*PCA Minerals, LLC v. Merit Energy Partners I, L.P.*,
    725 F. App'x 239 (5th Cir. 2018)......................................................14

*Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*,
    474 F.2d 250 (5th Cir. 1973)..........................................................3, 4

*Pugh v. Golden Rule Ins. Co.*, No. 3:09-CV-0372-D,
    2009 WL 10704786, (N.D. Tex. Oct. 14, 2009) .................................25

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996)..........................................................18

*Xie v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
    2021 WL 5968689 (5th Cir. Dec. 15, 2021) ................................20, 20

## Federal Rules

Fed. R. Civ. P.
    Rule 5...........................................................................1
    Rule 8...........................................................................1
    Rule 9...........................................................................1
    Rule 12(b)(6).....................................................................1
    Rule 41(a)(1)(A)................................................................3, 4
    Rule 41(b)........................................................................1

## State Rules

Texas Evidence
    Rule 8...........................................................................1
    Rule 41..........................................................................5

## Secondary Sources

5 B Charles A. Wright & Arthur R. Miller et al.,
    Federal Practice & Procedure §§ 1349, 1355-66 (West 4th ed. 2025).........................*passim*

Plaintiffs Coast to Coast Title, LLC, Sol City Title, LLC, Magnolia Title Florida, LLC, Magnolia Title Arkansas, Ltd., The Peabody Bulldog, LLC, and John Magness, file this response to the motions to dismiss, Docs. 69 & 70, and file this notice of partial dismissal.

## Procedural Posture & Standard of Review

Defendants moved to dismiss with prejudice all claims pleaded against them by Plaintiffs' Second Amended Complaint, Doc. 67 under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Doc. 69 at 1-2; Doc. 70 at 9-11.  The normal Rule 12(b)(6) standard applies. *See* Fed. R. Civ. P. 8, 9, 12(b)(6); 5B Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure §§ 1349, 1355-66 (West 4th ed. 2025) (hereinafter "Wright & Miller").  Rules 8 and Rule 9 do not supply an *additional* basis for dismissal beyond their role in defining what it means to "state a claim upon which relief can be granted" under Rule 12(b)(6).  A pleading that violates those rules violates Rule 12(b)(6), and a pleading that satisfies them satisfies Rule 12(b)(6).

Garth & Clayton also move to dismiss the complaint for "failure to comply with Rule 8(a) under Rule 41(b)."  Doc. 70 at 11.  This requires no additional analysis because Rule 12(b)(6) already captures the action's only disputed pleading requirements.  Rule 41(b) applies if "the plaintiff fails to prosecute or to comply with these rules or a court order."  Fed. R. Civ. P. 41(b). But here there is no rule or court order imposing an especially *higher* pleading standard on this case.  The only noncompliance defendants assert is with the standard pleading requirements that apply of their own force and are captured by Rule 12(b)(6).  As Wright & Miller explain, the supposed "Rule 41" dismissal basis should just be "considered in connection with the particular Rule that has been invoked." Wright & Miller § 2369.  No separate Rule 41(b) issue exists here. The only issues entail classic applications of Rule 8 and 9 through Rule 12(b)(6).

## Summary of the Argument

Plaintiffs' Second Amendment Complaint presents a triad of claims that are well-pleaded, that will soon be supported by compelling evidence, and that will ultimately deserve a jury's most serious damage award: (1) the claims for fraud and fraudulent inducement, (2) the claims for breach of fiduciary duty, and (3) the claims for civil conspiracy.  Fulfilling all that Rule 8 and 9 require, the complaint successfully pleads a detailed, particularized, and plausible account of a coordinated, multi-year fraudulent scheme in which Garth & Clayton misrepresented material facts, abused their positions of trust, and orchestrated a covert takeover of Plaintiffs' businesses. As to this triad of primary claims that will lead the case henceforth, the motion is meritless and should be denied.

Both motions principally fault the complaint for its length and factual complexity, claiming it is too prolix to satisfy Rule 8. But when Rule 8 calls for a "a short and plain statement of the claim," it imposes no arbitrary cap on pages or paragraphs.  Nor does it discourage comprehensive factual recitations—particularly where, as here, the misconduct spans multiple years, multiple actors, and multiple jurisdictions. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In these kinds of cases,  Rule 8 not only allows but *requires* "heft."  *Id.*  It not only allows but *requires* the establishment of proper "setting."  *Id.*  It not only allows but *requires* sufficient "factual enhancement," *id.*, especially for cases that entail a "potentially massive factual controversy."  *Id.*  The fact that these allegations are numerous is not a pleading defect—it is a reflection of the fraud's scale and of Rule 9(b)'s particularity requirement, which Defendants themselves invoke. A complaint cannot simultaneously be both too much and too little, and this one certainly isn't.  Though certainly not flawless, the Second Amended Complaint gives fair notice and satisfies all of the pleading standards that Rule 12(b)(6) calls for testing it against.

If that alone were not enough to defeat the motion's length complaints, Plaintiffs have now gone above and beyond what is required to dramatically simplify the matter even further. Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), *Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250 (5th Cir. 1973), and *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980), Plaintiffs will now voluntarily dismiss essentially all of the current complaint's *other* claims—i.e., Plaintiffs will now voluntarily dismiss essentially everything except the triad of claims for (1) fraud and fraudulent inducement, (2) breach of fiduciary duty, and (3) civil conspiracy. The resulting Rule 41(a)(1)(A) dismissal is self-executing and takes effect immediately. Because of this important development, Plaintiffs' complaint is now substantially narrower as a matter of law, to the tune of *fifteen* fewer counts and ~130 fewer associated allegation paragraphs—eliminating the very surplusage that Defendants invoke most fervently. This standard and prudent exercise of litigation strategy is not a concession. It instead reflects Plaintiffs' commitment to streamline the case even further than the complaint already does, focusing on the robust triad of claims that are most clearly meritorious and deserving of full damage awards. Thus, to the extent that the Defendants' Rule 12 motions target claims that are no longer in the case, the motions should be denied as moot. And to the extent that the Defendants' Rule 12 motions attack the surviving triad of claims, their simultaneous contentions of both pleading excess and insufficiency fail.

Alternatively, should the Court hold that any Rule 8 or 9 deficiencies exist, Plaintiffs request leave to file an amended complaint that (1) advances only the three remaining sets of claims, (2) spans no more than 25 pages, and (3) is filed within 14 days of the order granting leave. A "substantial reason" beyond mere delay would be needed to deny that request, *e.g.*, *Mayequx v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004), and there is no substantial reason here. With both promptness and brevity assured, there is "good cause" to grant this leave.

**Argument**

## I.  Rule 41(a)(1)(A) notice of partial dismissal.

Federal Rule of Civil Procedure 41(a)(1)(A) provides that a plaintiff may dismiss an action "without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  That procedure is available to Plaintiffs here because no answer or motion for summary judgment has been filed.  *Id.* And though "there is a certain amount of inconsistency in the cases," with some allowing only dismissals as to entire actions, Wright & Miller § 2362 & nn.10-15, the Fifth Circuit rule is broader.

Under *Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250 (5th Cir. 1973), *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980), and their progeny, Rule 41(a)(1)(A) is available for invocation either as to an entire action in toto *or more granularly as to less than an entire action.  Id.* at 194-195 ("While the Second Circuit . . . has held that "action" in Rule 41 means the entire controversy, that view was rejected by this Court in *Plains Growers, Inc., Fl. M. I. Co. v. Ickes-Braun Glass, Inc.*, 474 F.2d 250 (5th Cir. 1973)"); *see also Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 279 n.1 (5th Cir. 1987) (citing *Oswalt* to uphold another partial Rule 41 dismissal).  Though those decisions may be outliers vis-à-vis other circuits, they remain good Fifth Circuit law, foreclosing the restrictive notion that Rule 41 dismissals can only occur vis-à-vis an entire action.

Thus, Plaintiffs hereby invoke Federal Rule of Civil Procedure 41(a)(1)(A) as construed by *Plains Growers* (5th Cir. 1973) and *Oswalt* (5th Cir. 1980) to dismiss just the following claims as pleaded by Plaintiffs' Second Amended Complaint:

- Count Two: Breach of Contract.
- Count Three: Promissory Estoppel.
- Count Five: Deceptive Trade Practices Act.
- Count Seven: Conversion.

- Count Eight: Tortious Interference with Contract.
- Count Nine: Misappropriation of Trade Secrets – TUTSA.
- Count Ten: Unjust Enrichment.
- Count Eleven: Texas Theft Liability Act.
- Count Twelve: Unfair Competition.
- Count Fifteen: Defamation.
- Count Sixteen: Business Disparagement.
- Count Seventeen: Federal Trademark Infringement and Unfair Competition.
- Count Eighteen: Constructive Trust.
- Count Nineteen: Accounting.
- Count Twenty: Equitable Lien.

This dismissal does *not* apply to any matter that is not expressly dismissed above.  In particular, the dismissal does *not* apply to the following claims regarding common law fraud and/or fraudulent inducement, breach of fiduciary duty, and conspiracy:

- Count One: Common Law Fraud and Fraudulent Inducement.
- Count Four: Common Law Fraud.
- Count Six: Breach of Fiduciary Duty.
- Count Thirteen: Breach of Fiduciary Duty.
- Count Fourteen: Aiding and Abetting Breach of Fiduciary Duty.
- Count Twenty-One: Civil Conspiracy.

And insofar as it constitutes a "claim" for these purposes, Plaintiffs do not dismiss—Plaintiffs continue to maintain—their request for exemplary damages stemming from the surviving claims. *See* Doc. 67 ¶¶ 320–325 (Count Twenty-Two: Exemplary Damages).

Alternatively, if the mechanism of a Rule 41(a)(1)(A) dismissal is deemed unavailable despite *Plains Growers* (5th Cir. 1973) and *Oswalt* (5th Cir. 1980), Plaintiffs request an order accomplishing that same end through alternative procedural mechanisms of either (1) an order granting leave to amend under Rule 15(a) for "good cause," or (2) any other procedural vehicle deemed sufficient to carry this position's substance, *cf.* Wright & Miller § 2362 ("A number of other courts have taken a similar position and used the three Rules [41, 15, and 21) interchangeably").

II.     **The triad of remaining claims survive.**

A.     **Fraud and fraudulent inducement claims are proper.**

Plaintiffs' Second Amended Complaint pleads the following claims regarding common law fraud and fraudulent inducement: Count One: Common Law Fraud and Fraudulent Inducement by Plaintiff John Magness and the Peabody Bulldog against Defendants Garth and Clayton, *see* Doc. 67 at 49–56, ¶¶ 169–183, and Count Four: Common Law Fraud by all Plaintiffs against Defendants Garth and Clayton, *id.* at 63-66, ¶¶ 212-222. The motion's request to have these claims dismissed should be denied for the following reasons.

1.     **Sufficiently clear and detailed allegations exist.**

Fraud requires a material misrepresentation, knowledge of its falsity, intent to induce reliance, actual and justifiable reliance, and resulting injury. *See* Doc. 70 at 12. "Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).

Summarized to their essence, Plaintiffs' claims for fraud and fraudulent inducement show that Garth and Clayton made knowingly false promises—including substantial capital raise, personal investment, Starrex acquisition, and a CEO role for Magness—to induce formation and investment in the Magnolia entities. *See* Doc. 67 ¶¶ 67–71, 83, 171–174. Relying on these, Magness declined a $900,000 job and gave up $2 million in equity, while Nelson invested nearly $1 million. *See* Doc. 67 ¶¶ 77-79, 176, 183. The fraud includes concealment of key facts, such as

6

CFO Debbie Merritt's falsified credentials, which Defendants allegedly knew and used to create a false sense of legitimacy.  Doc. 67 ¶¶ 214–219, 181–182. Plaintiffs seek reliance damages plus exemplary damages for knowing, intentional misconduct—well within Rule 9(b)'s particularity standard.  Doc. 67 ¶¶ 1, 171, 175, 180–183.

Realizing that Rule 9 applies, the complaint bolsters that essential story with all of the particularity needed.  The fully detailed version of events fills in the overture with consistency:

- Garth and Clayton made repeated, specific representations to Plaintiff John Magness and his investment vehicle, The Peabody Bulldog LLC ("TPB"), with the purpose and effect of inducing them to commit substantial time, resources, and capital to a purported acquisition and roll-up strategy under the Starrex banner. Doc. 67 ¶ 1 (describing "a calculated fraud involving specific misrepresentations about funding capabilities, acquisition plans, and corporate governance").

- At a formal business meeting on April 8, 2021, Garth represented that he would raise "$50 million from friends and family investors," identifying specific names such as Ben Moreland, while Clayton discussed a matching "$50 million credit facility" and a structured acquisition plan. Doc. 67 ¶ 67 ("On April 8, 2021, at Post Oak Grill in Houston, Garth made specific, concrete representations").

- On April 13, 2021, Clayton emailed Magness, promising "a $10.00 share by the summer and [we] could control our destiny." Doc. 67 ¶ 68 ("Clayton emailed Magness from Texas: …'join partners with the highest of moral character' and … 'We could easily have a $10.00 share by the summer'").

- Garth and Clayton also told Magness he would be made CEO of Starrex, given a board seat, and receive 3 million shares—statements repeated at a January 2022 meeting and in

subsequent emails. *See* Doc. 67 ¶ 69 ("Garth elaborated … that they would acquire specific title companies by putting 20% of the purchase price down … and [Magness] would become CEO of Starrex"); Doc. 67 ¶ 171(b) ("You [Magness] will be appointed CEO and awarded a Board seat at Starrex").

- In July 2022, they induced TPB to relinquish a portion of its equity on the representation that they (Garth and Clayton) would personally contribute substantial capital. *See* Doc. 67 ¶ 83 ("Garth and Clayton affirmed that they would contribute the full million dollars").

- In truth, Garth and Clayton never made the promised contribution. Instead, they directed Starrex to advance the funds and then misappropriated a later investment to repay Starrex— thereby satisfying their own personal obligations. *See* Doc. 67 ¶¶ 1, 77.

- Plaintiffs reasonably relied on these misrepresentations. Magness declined a $900,000/year role at another institution within days of the April 8, 2021, meeting and devoted three years of uncompensated effort to the Magnolia venture. Doc. 67 ¶ 176(a) ("Magness declined position offering $900,000 annual compensation on April 21, 2021 … referenced his commitment to the Starrex opportunity").

- The Peabody Bulldog similarly relied on Garth and Clayton's equity funding promise in agreeing to a dilution of its stake, resulting in the loss of valuable equity. Doc. 67 ¶ 176(c) ("The Peabody Bulldog accepted reduction in equity from 20% to 11% on July 18 2022").

- Garth and Clayton's conduct was knowing and intentional. In July 2023, Clayton admitted that "if anyone does a forensic audit [on the Magnolias], we are f**cked," confirming awareness of the wrongdoing. Doc. 67 ¶ 175 ("Clayton's July 2023 statement … 'if anyone does a forensic audit [on the Magnolias], we are f**cked'").

Together, these and the other allegations advanced to show the claims for fraud and fraudulent inducement meet the Rule 9 burden that applies.

### 2.      The counterarguments fail.

*Particularity*.  Garth & Clayton argue that Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b).  Doc. 70 at 4–5.  But as detailed above, Plaintiffs have met the heightened pleading standard of Rule 9(b) by detailing the specific circumstances constituting fraud.  Their pleadings specify the Who (Defendants Garth and Clayton), the What (Misrepresentations regarding capital contributions, leadership roles, and financial arrangements), the When (Specific dates, such as the April 8, 2021 meeting and subsequent communications), the Where (Locations including the Post Oak Grill in Houston) and the How (By making false promises to induce Plaintiffs' reliance and investment.).  Such detailed allegations satisfy Rule 9(b)'s requirements.

*Reasonable reliance.*  Garth & Clayton also argue that Plaintiffs' reliance on the alleged misrepresentations was not reasonable or justifiable.  Doc. 70 at 6–7.  But under Texas law, the reasonableness of reliance is typically a question of fact not suitable for dismissal at the pleading stage.  Plaintiffs have alleged that they relied on Defendants' specific promises, such as the commitment to personal capital contributions and leadership roles, which were central to their decision to invest and participate in the business ventures.  *See* Doc. 67 ¶¶ 69, 83, 176. And though there is great emphasis placed on the Starrex promissory notes and agreements supposedly negating justifiable reliance, a party who fraudulently induces another to enter into a contract cannot then hide behind the contract's merger clause—at least not necessarily, as a matter of law without factual inquiry.  *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 327 (Tex. 2011) ("a merger clause does not waive the right to sue for fraud should a

party later discover that the representations it relied upon before signing the contract were fraudulent.").

*Future performance.*    Garth & Clayton next argue that the alleged misrepresentations are non-actionable opinions or future promises.  Doc. 70 at 7–8.  But while opinions or future promises are generally not actionable, they can form the basis of a fraud claim if the speaker had no intention of fulfilling them at the time they were made.  *E.g., Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).  Plaintiffs allege that Defendants made promises, such as personal capital contributions and leadership appointments, *with no intention of honoring them,* as evidenced by their subsequent actions.  *See, e.g.*, Doc. 67 ¶¶ 83, 171(c), 174(e).  The point is not that these facts are *conclusive* proof of the requisite intent, but that they are sufficient facts to warrant proceeding past the pleading stage.  "Circumstantial evidence is equally as probative as direct evidence in proving illegitimate intent."  *Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025)); *accord Tex. Tech Univ. Health Scis. Ctr. - El Paso v. Niehay*, 671 S.W.3d 929, 957 (Tex. 2023).  And because of how particular the representations in question were, the "puffery" label applied to vague generalizations does not apply.  *See* Helm v. Kingston, No. 13-10-00224-CV, 2011 WL 6746064, at *6 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2011, pet. denied) ("These statements are not mere puffery or opinion. While the representation that the unit was "extremely well built" is general and vague, the other representations made by Helm are specific.").

*Damages*. Defendants Garth & Clayton argue that Plaintiffs have not adequately alleged damages resulting from the alleged fraud.  Doc. 70 at 8–9.  But Plaintiffs have detailed specific damages, including the loss of equity, foregone employment opportunities, and uncompensated

labor, resulting from their reliance on Defendants' misrepresentations. *See* Doc. 67 ¶¶ 176(a)–(c), 183. These allegations provide a sufficient basis for damages under a fraud claim.

*Economic loss rule.* Defendants Garth & Clayton next say that the fraud claim is barred by the economic loss rule. Doc. 70 at 9–10. But the economic loss rule does not bar fraud claims where, as here, the fraud claims are independent of a contract. Plaintiffs' fraud claims are based on pre-contractual misrepresentations that induced them to enter into agreements and invest resources, which is distinct from a breach of contract claim. *See* Doc. 67 ¶¶ 66–71, 83, 171. Therefore, the economic loss rule is inapplicable.

### B.    The breach of fiduciary duty claims are proper.

Plaintiffs' Second Amended Complaint pleads the following claims regarding breach of fiduciary duty: Count Six: Breach of Fiduciary Duty by all Plaintiffs against Defendants Garth and Clayton, *see* Doc. 67 ¶¶ 233–239; Count Thirteen: Breach of Fiduciary Duty by Plaintiff Magnolias against Defendant Cooper, Doc. 67 ¶¶ 267–273, and Count Fourteen: Aiding and Abetting Breach of Fiduciary Duty by all Plaintiffs against Defendants Market Street, Starrex Title Florida, and Brewer, Doc. 67 ¶¶ 274–282. The motion's request to have these claims dismissed should be denied for the following reasons.

#### 1.    Sufficiently clear and detailed allegations exist.

A claim for breach of fiduciary duty claim requires (1) the existence of a fiduciary duty, (2) breach, and (3) damages. *See, e.g.*, *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). All elements are shown here, especially given that Rule 9 does *not* require particularity insofar as most of this claim presents non-fraud wrongdoing. *See Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 124 (5th Cir. 2019)

Summarized to their essence, Plaintiffs' claims for fraud and fraudulent inducement show that Garth and Clayton exercised behind-the-scenes control over the Magnolia businesses—dictating financial, strategic, and operational decisions through their influence over Starrex and its agents—despite lacking formal authority.  Doc. 67 ¶¶ 72–75, 234–235. This de facto control and special relationship gave rise to informal fiduciary duties, which they breached through both intentional wrongdoing and a failure to satisfy the high duty of care.  Doc. 67 ¶¶ 77–79, 150–153, 235(a).  Plaintiffs allege a relationship of trust and dominance, not merely shared ownership, and seek damages for the betrayal of that trust, including exemplary damages due to the willful nature of the misconduct.  Doc. 67 ¶¶ 68–70, 236–239.

Here as well, the complaint's more detailed version of events fills in that overture with consistency:

- Garth and Clayton exercised pervasive de facto control over the Magnolia Entities from April 2021 through early 2024. Although they lacked formal officer titles, they directed key financial, legal, and operational decisions with full knowledge of their fiduciary position. Doc. 67 ¶ 72 ("Garth and Clayton maintained comprehensive control over operations while carefully cultivating the appearance of limited formal authority").

- They regularly overruled other executives and managers, blocked authorized payments, directed personnel decisions, and used insider positions to embed loyal agents—including Clayton's relatives—within Starrex and the Magnolias. Doc. 67 ¶ 73 ("They installed Clayton's son-in-law Matthew Hill as CEO and son Garrett Clayton as director, ensuring family control of the board").

- They exploited their control for personal gain. In September 2022, they used Merritt and Hill to divert a ~$1 million investment—originally intended as growth capital—to repay

their own Starrex debt. Doc. 67 ¶¶ 77–79 ("These transfers … were deliberately structured to avoid detection and immediately followed receipt of HMHTI's investment").

- Throughout, Garth and Clayton maintained active oversight over all major decisions. Emails and texts show other executives seeking their approval for even routine actions—bypassing the nominal CEO. Doc. 67 ¶ 85(c) ("Merritt bypassed the CEO … and texted Garth directly: 'WHAT DO YOU THINK WE SHOULD DO, TERRY?'").

- These actions breached the fiduciary duties of loyalty, care, good faith, and disclosure that arose from their de facto control and co-ownership. Doc. 67 ¶ 234 ("Garth and Clayton owed fiduciary duties to Plaintiffs arising from their positions of trust and confidence and de facto control").

- Plaintiffs suffered direct harm, including misappropriated investments, distorted corporate governance, and loss of business control. Doc. 67 ¶ 239 ("Plaintiffs are entitled to actual damages … and exemplary damages due to Defendants' willful and malicious conduct").

These allegations, taken as true, plausibly establish a fiduciary breach in compliance with Rule 8. Garth and Clayton's contrary arguments fail for the following reasons.

### 2.    The counterarguments fail.

*Duty existence*.    Defendants Garth & Clayton argue that Plaintiffs fail to allege the existence of a fiduciary duty.  Doc. 70 at 11.  But Plaintiffs allege both formal *and informal* bases for fiduciary duties arising from Garth and Clayton's status as co-owners, control persons, and trusted business partners within the Magnolia enterprise.  Texas law recognizes that informal fiduciary relationships may arise where, as here, one party is justified in expecting the other to act in its best interest, including through dominance, control, and reliance in close business relationships. *See, e.g.*, *Lundy v. Masson*, 260 S.W.3d 482, 501–02 (Tex. App.—Houston [14th

Dist.] 2008, pet. denied).  Plaintiffs allege that Garth and Clayton exercised "comprehensive control over operations while carefully cultivating the appearance of limited formal authority," *see* Doc. 67 ¶ 72; directed major strategic and financial decisions, *see* Doc. 67 ¶¶ 77–79); and embedded close affiliates into corporate roles, bypassing formal chains of command, *see* Doc. 67 ¶ 73; 23–24, ¶ 85). They also ghostwrote board communications, managed disbursements, and approved hires—clear indicia of functional authority giving rise to fiduciary obligations. These allegations more than suffice to plead the existence of a fiduciary relationship under Rule 8.

*Contract relationships*.  Defendants Garth & Clayton next argue that the alleged breaches are too contract-related to give rise to tort liability.  Doc. 70 at 12 ("The conduct alleged falls within the subject matter of contract and cannot support an independent tort claim").  But Plaintiffs' breach of fiduciary duty claims do not depend on any specific contract obligation, but rather on Defendants' misuse of corporate power, concealment of financial activity, and diversion of corporate opportunity.  For example, Plaintiffs allege that Garth and Clayton rerouted an investment to cover their own Starrex-related liabilities without disclosure, *see* Doc. 67 ¶¶ 77–79, 235(a)).  Such allegations go well beyond contractual performance and implicate the core duties of loyalty, candor, and care.  *See PCA Minerals, LLC v. Merit Energy Partners I, L.P.*, 725 F. App'x 239, 244 (5th Cir. 2018).

*Operating Agreements*.  Defendants Garth & Clayton next argue that any fiduciary duties are negated by the operating agreements or corporate form.  Doc. 70 at 12–13. But even when formal instruments allocate certain powers, Texas courts routinely hold that fiduciary duties may arise *informally* when one party dominates or controls business decisions, particularly when they exploit that position for personal benefit.  *See, e.g.*, *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995); *Lundy*, 260 S.W.3d at 501–02. Plaintiffs allege exactly that: Garth and Clayton

exercised total control over financial and managerial functions, directed others to act on their behalf, and usurped business opportunities for personal enrichment. *See* Doc. 67 ¶¶ 72–79, 234–235. Whether operating agreements disclaim or limit formal fiduciary obligations is a fact issue that cannot be resolved at the Rule 12 stage.

*Breach*. Defendants Garth & Clayton next argue that Plaintiffs fail to allege specific conduct constituting a breach. Doc. 70 at 13. But Plaintiffs detail multiple acts constituting breaches of fiduciary duty: Diverting outside investment to repay their own Starrex debt, *see* Doc. 67 ¶¶ 77–79; directing subordinates to fabricate backdated notes to conceal the misuse, *see* Doc. 67 ¶¶ 150–153; bypassing formal leadership and acting unilaterally in material decisions, *see* Doc. 67 ¶ 85; and orchestrating and benefiting from a hostile corporate takeover with insiders and competitors, Doc. 67 ¶¶ 160–162, 235–239. These facts, taken as true, present a textbook case of disloyal conduct by persons in positions of control.

For all of these reasons, Plaintiffs have plausibly alleged that Garth and Clayton occupied fiduciary positions and breached their duties through a sustained course of self-dealing and concealment. The motion to dismiss these claims should be denied as to Count Six.

### C.     The conspiracy claims are proper.

Last but not least, Plaintiffs' Second Amended Complaint pleads the following claims for civil conspiracy: Count Twenty-One: Civil Conspiracy by all Plaintiffs against all Defendants. *See* Doc. 67 ¶¶ 284–292. Dismissal of these should be denied for the following reasons.

### 1.     Sufficiently clear and detailed allegations exist.

Civil conspiracy under Texas law requires (1) a combination of two or more persons; (2) an object to be accomplished by unlawful means; (3) a meeting of the minds; (4) one or more unlawful overt acts; and (5) damages. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001).

Summarized to their essence, Plaintiffs' civil conspiracy claims show that Garth and Clayton conspired with Cooper, Brewer, and MarketStreet to execute a coordinated raid of Magnolia's Florida and Arkansas businesses—seizing bank funds, client lists, employees, and offices after a rejected settlement demand. *See* Doc. 67 ¶¶ 2, 91–92, 120–122. The conspiracy was anchored by unlawful acts including fraud, fiduciary breaches, and misappropriation, all furthered by shared planning and control. *See* Doc. 67 ¶¶ 160–162, 124–126. The resulting damage includes the loss of operations, revenue, and goodwill. *See* Doc. 67 ¶¶ 168, 146.

Here once again, the complaint's more detailed version of events fills in that overture with consistency:

- After Plaintiffs rejected Garth and Clayton's December 2023 settlement demand, Defendants initiated a coordinated takeover of those operations. *See* Doc. 67 ¶ 2 ("Defendants executed a coordinated takeover of Magnolia operations through a carefully sequenced series of actions").

- This effort involved internal actors (such as Laurie Cooper) and external partners (Brian Brewer and MarketStreet). Cooper, while still President of Magnolia Florida and Arkansas, secretly transferred proprietary customer data, orchestrated the mass resignation of employees, and directed unauthorized wire transfers from company accounts. *See* Doc. 67 ¶ 91 ("Cooper … downloaded customer lists, coordinated employee exits, and transferred funds"); Doc. 67 ¶ 124 ("Cooper wrongfully accessed Magnolia's escrow account … and transferred $4,585.75").

- MarketStreet Capital Partners and MarketStreet AR, both controlled by Brewer, assumed Magnolia's name, locations, employees, clients, and branding—continuing operations uninterrupted while representing themselves to customers as the same "Magnolia Title."

*See* Doc. 67 ¶ 92 ("Brewer and MarketStreet used stolen assets—locations, staff, customers, Qualia systems, and goodwill—to operate a shadow business").

- Garth and Clayton played a central role in this conspiracy. As principal owners of the entities in question, they directed Starrex's internal actors—including Debbie Merritt—to participate in the transfer and seizure of corporate assets. *See* Doc. 67 ¶ 160 (Garth and Clayton exercised "pervasive and joint control over Starrex and Magnolia Companies decisions").

- The result was a seamless transition of customer-facing operations into unauthorized hands, based on a common plan and agreement among multiple parties to commit unlawful acts—including fraud, misappropriation, and interference with contracts. *See* Doc. 67 ¶ 146 ("They have and continue to tortiously interfere with all of Magnolia's contracts").

- These actions caused over $10 million in damages to Plaintiffs and were carried out with actual knowledge of and participation in an unlawful objective. *See* Doc. 67 ¶ 168 ("Plaintiffs suffer over $10 million in damages … and operational collapse").

These allegations, taken as true, plausibly establish an actionable civil conspiracy. Garth and Clayton's contrary arguments fail for the following reasons.

### 2.    The counterarguments fail.

*Unlawful act*. Defendants Garth & Clayton argue that Plaintiffs "have not alleged facts showing that Garth or Clayton agreed with any other Defendant to accomplish an unlawful act." Doc. 70 at 14. But the complaint details that, after Plaintiffs rejected a coercive settlement offer in December 2023—one drafted or directed by Garth and Clayton—those same Defendants coordinated with Laurie Cooper, Brian Brewer, and the MarketStreet entities to execute a rapid takeover of the Magnolia Florida and Arkansas businesses. *See* Doc. 67 ¶¶ 2, 91–92. This included

17

the unauthorized use of Magnolia's physical offices, personnel, phone systems, digital platforms, customer relationships, and branding, carried out seamlessly over January and February 2024. *See* Doc. 67 ¶¶ 120–122, 124, 146. These facts are more than sufficient to allege a "meeting of the minds" on an unlawful course of action.

*Overt act*. Defendants Garth & Clayton next argue that there are no specific allegations that Garth or Clayton committed or directed any overt act in furtherance of the alleged conspiracy. Doc. 70 at 14. But Plaintiffs allege that Garth and Clayton exercised pervasive control over Starrex, directed Cooper and Merritt, and coordinated with Brewer to facilitate the conversion of Magnolia's assets to new entities under their effective control. *See* Doc. 67 ¶¶ 160–162. The complaint specifically alleges that Garth and Clayton ghostwrote communications related to the coercive December 2023 proposal to acquire the Magnolia entities in exchange for releasing fake debt, and then supported the coordinated execution of a hostile corporate takeover when Plaintiffs refused. *See* Doc. 67 ¶¶ 88–89, 91. These are overt acts in furtherance of the alleged conspiracy. *See Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex.*, Inc., 975 S.W.2d 546, 553 (Tex. 1998) (a civil conspiracy requires only a tacit understanding and participation in a common design).

*Underlying tort*. Defendants Garth & Clayton next say that the conspiracy claim fails because there is no viable underlying tort. Doc. 70 at 13. But Plaintiffs have adequately alleged underlying torts of fraud and breach of fiduciary duty, and the conspiracy claim is derivative of those well-pleaded torts. So it survives so long as any one of the others does. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

*Damages*. Defendants Garth & Clayton next say that Plaintiffs fail to tie the alleged damages to any conspiratorial conduct. Doc. 70 at 15. But Plaintiffs allege that the conspiracy

18

resulted in over $10 million in damages, including lost operations, diverted customer revenue, and destroyed goodwill. *See* Doc. 67 ¶¶ 91-92, 168. They also detail the complete operational displacement of the Magnolia Florida, and Arkansas locations and customer base by MarketStreet and Starrex Title Florida, all done under the Defendants' direction. *See* Doc. 67 at 26, 36, 44.

For all of these reasons, Plaintiffs have alleged with specificity that the Defendants knowingly conspired with others to accomplish the unlawful misappropriation of Plaintiffs' operations and assets. The motion to dismiss Count Twenty-One should be denied.

### D.   Additional procedural issues.

#### 1.   Footnote-only points are waived.

Points raised only in footnotes are usually waived, especially when they entail only one sentence of analysis. *See, e.g.*, *Branch v. CEMEX, Inc.*, No. H-11-1953, 2012 WL 2357280, at *12 (S.D. Tex. June 20, 2012) (Rosenthal, J.), *aff'd*, 517 F. App'x 276 (5th Cir. 2013). Applied here, the rule renders waived each of the following points from Document 70 that are made only in footnotes and nowhere else: Footnotes 9, 14, 18, 19, and 23. Defendants remain free to make these points at later junctures, such as summary judgment, so long as they do so in compliance with the Court's rules regarding argument preservation and brief form.

#### 2.   Outside materials should not be considered.

The motion puts substantial reliance upon materials beyond the pleading in question, such as the "LOI" invoked by footnote 5 and 13, Doc. 70 at 14 n.5; *id.* at 18 n.13, the "Starrexx Promissory Notes" invoked by footnote 7, *id.* at 15 n.7, the "HMH Contribution Agreements" invoked by footnotes 10 and 11, *id.* at 16 n.10 (p.9 n.10); *id.* at 17 n.11 (pp.10 n.11). But the motion's outside materials should not be considered because the motion does not meet the test for their consideration. It is not enough to merely say that a Rule 12 motion can invoke these materials

19

because they are "referred to in the challenged pleading." Wright & Miller § 1366 (approved of by *Gen. Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007), and *Xie v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, No. 20-20622, 2021 WL 5968689, at *4 (5th Cir. Dec. 15, 2021)). A substantially higher and different test controls the consideration of such materials. The utilizing party must establish that the materials are "central" or "integral" to the pleading. *Id.*

This motion does not even mention the correct test anywhere—footnote or otherwise—let alone try to establish it with analysis above the line, as the preservation rules require. To validly use these outside materials, the motion would have to have (1) made the argument for their consideration above the line, as opposed to a footnote, *see, e.g.*, *Branch*, 2012 WL 2357280, at *12 (points raised only in footnotes are waived), and (2) addressed the proper legal test that requires showings of centrality and/or integrity, as opposed to a mere "reference," *see* Wright & Miller § 1366 & n.28; *Gen. Retail Services, Inc*, 255 F. App'x at 785; *Xie*, 2021 WL 5968689, at *4. Since the motion fails on both counts, the cited outside materials should not be considered at all.

### 3. If outside materials are considered, conversion is required.

Alternatively, if the motion's invitation to consider any of these outside materials is accepted, the Court should convert the matter to a Rule 56 motion for summary judgment and order that discovery proceed before re-briefing. Rule 12 motions should concern pleadings alone. Yet this motion invokes (invalidly says the prior point) substantial outside matters to make merits arguments. And it does more than merely cite such outside materials—it invites the Court to draw factual inferences and make credibility determinations based on them. Because this so-called pleadings-based argument actually amounts to an evidentiary submission, the Court should convert this filing to a Rule 56 motion and order that discovery proceed before these matters are re-briefed.

The conversion process is well-established. "Federal Rule 12(d) provides that a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to be converted into a motion for summary judgment whenever matters outside the pleading are presented to and accepted by the court." Wright & Miller § 1366; *see, e.g.*, *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980). Applied here, the rule calls for conversion because Defendants' motion impermissibly relies on and references numerous documents and supposed facts that are not found in—and, in many instances, directly contradict—the Second Amended Complaint.

For these reasons, if the motion's invitation to consider any of these outside materials is accepted, the Court should convert the motion to a Rule 56 motion, deny it without prejudice, and order discovery to proceed before re-briefing the issues on a full evidentiary record.

### E.    The Starrex motion fails for the same reason as Garth & Clayton.

The motion to dismiss filed by Defendants STARREX Title Florida, LLC, Laurie Cooper, Marketstreet Capital Partners AR, LLC, Marketstreet Capital Partners, LLC, and Brian A. Brewer makes only one argument: that the Second Amended Complaint fails to satisfy Rule 8. Doc. 69. This Rule 8 argument parallels the one made by Garth & Clayton in all key respects. The Court should reject this version for the same reason that it should reject Garth & Clayton's.

## III.    Requests for leave to amend.

### A.    Correction amendments are warranted.

With respect to all of the claims that proceed, Plaintiffs request leave to file an amended complaint that merely corrects the existing pleading's ministerial errors—i.e., non-substantive matters such as typographical errors, scrivener's errors, and errant cross-references that were introduced by Plaintiffs' prior counsel. Ordinarily, leave for such minor revisions is neither requested nor required at this juncture. But Defendants have placed outsized emphasis on these

ministerial flaws in their motion, and Plaintiffs are now represented by new counsel who is well-positioned to clarify the pleadings. These amendments will not alter the substance of any surviving claims but will instead streamline future litigation by eliminating potential distractions over inconsequential errors. Permitting this amendment thus serves judicial economy, minimizes the risk of collateral disputes, and enhances the clarity of the record as the case moves forward.

Relatedly, a correction with respect to paragraphs 77-80 of the Second Amendment Complaint is in order. Those paragraphs address investments originally seen as amounting to "$1 million." Doc. 67 at 77–79. But further inspection shows that calculation to have mistakenly accounted for a duplicate $225,000 entry for the Dallas Frost account. The highlighted entry below is an error and should be deleted:

| Acct/Bnk | Date | Memo/Bank Stmt | From STX | To STX | From Third Parties | To Third Parties | Bates | Acct |
|---|---|---|---|---|---|---|---|---|
| BANK | 9/12/2022 | Wire Transfer In | | | HMH WIRE: $700,000 | | STX1091 | DAL Frost |
| BANK | 9/12/2022 | Wire Transfer In | | | HMH WIRE: $50,000 | | STX1185 | FL Frost |
| BANK | 9/12/2022 | Wire Transfer In | | | HMH WIRE: $50,000 | | STX1065 | AR Frost |
| BANK | 9/12/2022 | Wire Transfer In | | | HMH WIRE: $200,000 | | STX1217 | HOU Frost |
| BANK | 9/13/2022 | Frost Connect Transfer | | $ 250,000.00 | | | STX1093 | DAL Frost |
| BANK | 9/20/2022 | Commercial Construction Services (UNKNOWN) | | | | $ 75,561.85 | STX1095 | DAL Frost |
| BANK | 9/21/2022 | Frost Connect Transfer | | $ 72,891.65 | | | STX1093 | DAL Frost |
| BANK | 9/21/2022 | Frost Connect Transfer | | $ 92,531.66 | | | STX1093 | DAL Frost |
| BANK | 9/21/2022 | Frost Connect Transfer | | $ 225,000.00 | | | STX1187 | DAL Frost |
| BANK | 9/21/2022 | Frost Connect Transfer | | $ 225,000.00 | | | STX1187 | FL Frost |
| BANK | 9/21/2022 | Frost Connect Transfer | | $ 49,688.24 | | | STX1217 | HOU Frost |
| BANK | 9/21/2022 | Frost Connect Transfer | | $ 40,000.00 | | | STX1067 | AR Frost |
| BANK | 9/28/2023 | Frost Connect Transfer | | $ 27,721.27 | | | STX1067 | AR Frost |

All corollary calculations should be appropriately adjusted as well.

Plaintiffs also seek leave to remove all references, allegations, and claims (or portions thereof) that discuss or rely upon the allegations that the promissory notes were created for audit purposes only and were never intended to represent actual debt. Defendants Garth & Clayton presumably support this, having called the issue to counsel's attention and invited curative action.

## B.      Conforming amendments are warranted.

With respect to all of the claims that proceed, Plaintiffs also request leave to file an amended complaint that conforms the action's live pleading to its latest procedural posture—specifically by removing the pleadings that pertain only to claims Plaintiffs no longer pursue. Here as well, such leave is not ordinarily requested nor required at this juncture. But the unique procedural posture makes such leave both appropriate and necessary here.

With this request, Plaintiffs seek to eliminate the superseded allegations so that the pleadings more accurately reflect the scope of the dispute going forward. This would serve to reduce unnecessary motion practice and ensure a cleaner procedural record. The amendment would not alter the substance of any remaining claims, nor would it introduce any new theories of liability or factual allegations. Rather, it would eliminate now-irrelevant content and thereby streamline the pleadings in a way that promotes orderly case management and judicial efficiency. Conforming the complaint to reflect only the claims that survive the Rule 12 stage will support more targeted discovery, minimize the risk of collateral disputes over withdrawn allegations, and avoid unnecessary confusion at later stages of litigation. Particularly where Defendants may otherwise contend—whether in discovery, pretrial motions, or even trial—that the prior claims remain somehow relevant, a clarified complaint will head off such disputes and promote a clean and efficient path forward.

Accordingly, Plaintiffs respectfully request leave to file a conforming amended complaint following the Court's resolution of the pending motions to dismiss. The amendment would be limited in scope, purely clarifying in effect, and fully consistent with the standards of Rule 15(a)(2), which counsels that leave to amend should be freely given where, as here, justice so requires.

**C.**     **Leave to amend for further Rule 8/9 compliance is warranted.**

Dismissal for pleading deficiencies, if granted, is typically without prejudice, allowing amendment unless futile. Wright & Miller §§ 1281. ("The opportunity to replead under these circumstances appears to be required by the basic policy of the federal rules of having disputes settled on their merits rather than on procedural formalities.").  Should the Court hold that any pleading deficiencies exist here, Plaintiffs respectfully request leave to file an amended complaint that overcomes any identified shortcomings.  Specifically, Plaintiffs request leave to file an amended complaint that (1) advances only the three remaining sets of claims (fraud and/or fraudulent inducement, breach of fiduciary duty, and conspiracy), (2) spans no more than 25 pages, and (3) is filed within fourteen days of the Court's order granting leave.

"Because Rule 15(a) directs the district court to 'freely give leave when justice so requires,' the district court needs a 'substantial reason' to deny leave to amend." *Flores v. Amazing Grace Primary Home Care, L.L.C.*, No. 24-40434, 2025 WL 832795, at *2 (5th Cir. Mar. 17, 2025).  No substantial reason to deny the requested leave exists here.  To be sure, Plaintiffs take quite seriously what transpired at the action's prior hearings.  But under Rule 15(a)'s call for a "substantial reason" to deny leave, it matters that those prior proceedings did *not* result in any actual decision about the prior complaint's sufficiency.  Docket Entry 57 (the only cited evidence of that prior proceeding) delivers no actual holdings or decisions about whether the prior complaint sufficed.

Delay is the movant's strongest possible argument.  But "delay alone is an insufficient basis for denial of leave to amend: the delay must be *undue*, *i.e.*, it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayequx v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).  The delay at issue here is not *undue*, especially given the reasonable circumstance of Plaintiffs' recent retention of new counsel.  And the delay at issue here does not

substantially prejudice the nonmoving parties, who would be under no especially burdensome obligations (e.g., preliminary injunctions) during the requested amendment period.

Futility does not justify denying leave either. "When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint." *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). No such futility exists where, as here, the very problem to be resolved by leave to amend is a valid case's lack of "adequate presentation" in prior filings.

What Plaintiffs propose to do with the requested amendment—advance just the three remaining sets of claims in a complaint no longer than the instant brief, with full Rule 8 and 9 compliance—is a fully tenable proposition, particularly with the good faith and diligent efforts of new counsel. *Cf. Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (letting new counsel "get up to speed" is reasonable); *Pugh v. Golden Rule Ins. Co.*, No. 3:09-CV-0372-D, 2009 WL 10704786, at *1 (N.D. Tex. Oct. 14, 2009) (similar).

## Conclusion

The Court should issue an order denying the motions to dismiss and granting Plaintiffs leave to file an amended complaint that (1) advances only the Plaintiffs' claims regarding claims regarding common law fraud and/or fraudulent inducement, breach of fiduciary duty, and conspiracy, (2) spans no more than 25 pages, and (3) is filed within fourteen days of the Court's order granting leave.

Respectfully submitted,

*/s/ Federico Andino Reynal*
Federico Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
S.D. Tex. Bar No. 1005172
The Reynal Law Firm, P.C.
917 Franklin, Sixth Floor
Houston, Texas 77002
Telephone: (713) 228-5900

*Attorney-in-Charge for Plaintiffs*

Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
S.D. Tex. Bar No. 1060324
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 364-6640
Facsimile: (832) 645-2496
service@chadflores.law

*Of Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to attorneys of record, on April 16, 2025.

_/s/ Chad Flores_