# EXHIBIT D

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document COAST005541.msg**

COAST005541

| | |
|---|---|
| **From:** | TGarth@cheyenneinvest.com[TGarth@cheyenneinvest.com] |
| **Sent:** | Thur 9/1/2022 8:39:10 PM (UTC) |
| **To:** | Matt Wiggins[Matt.Wiggins@historymaker.com]; Adam Fulkerson[afulkerson@deckerjones.com] |
| **Cc:** | John Magness[John.Magness@magnoliatitleteam.com] |
| **Subject:** | Final Documents |
| **Attachment:** | 20220902031638808.pdf |
| **Attachment:** | 20220902031747093.pdf |
| **Attachment:** | 20220902032013867.pdf |
| **Attachment:** | 20220902032204933.pdf |

Per your request, attached are execution copies of the Settlement Agreement and all exhibits. Note that all documents have been duly executed by our side (except for 1 signature on the Dallas Magnolia Assignment of Special Contribution that I am missing from 405 Manhattan Investments LLC, which I will have later today). All outstanding issues have been resolved and I am waiting to hear from the attorneys representing the Blackburns when their signatures will be forthcoming.

Debbie has completed all of the schedules for the other Magnolias and I am told that she has sent them to you along with the other information previously requested. If you have not received this, please contact Debbie directly as I received this information from her earlier today.

In anticipation of final signatures in the next day or two, would you and Adam please send execution drafts of the Contribution Agreement and side letter for signatures by our side.


Tyrrell L. Garth
Cheyenne Capital Corp.
7350 Phelan Blvd.
Beaumont, Tx 77706
(409) 866-5444
(409) 866-3666 / Fax
tgarth@cheyenneinvest.com

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document COAST005542.pdf**

COAST005542

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Confidential Settlement Agreement and Release of All Claims (the "Agreement") is made between and among and entered into by John Magness ("Magness"), Britt Naponic ("Naponic"), and The Peabody Bulldog, LLC ("Peabody") (collectively with Magness and Naponic, the "Magness Parties"), and Bo and Sarah Blackburn (the "Blackburns"), #6 Metz Court ("Metz Court"), Sol City Title Managers, LLC ("Sol City Managers"), Rabbit Food, LLC ("Rabbit Food"), BS Title Team, LLC ("BS Title Team"), Pacific Waters Title, LLC ("1845 Title"), Blue Goose Title, LLC ("Noteworthy Title"), CSP Texas Joint Venture, LLC ("Key Title"), CSP Texas Joint Venture – San Antonio, LLC ("Key Title San Antonio"), Tall City Title, LLC ("Tall City Title"), Amarillo Title, LLC ("Amarillo Title"), Amarillo Title Managers, LLC ("Amarillo Managers"), Joy Title LLC ("Joy Title"), Joy Title Managers LLC ("Joy Managers"), Gateway City Title, LLC ("Gateway City Title"), Gateway City Title Managers, LLC ("Gateway City Managers"), Corpus Christi Title, LLC ("Corpus Christi Title"), and Corpus Christi Title Managers, LLC ("Corpus Christi Managers") (each a "BSpoke Party," and collectively with the Blackburns, the "BSpoke Parties"), and Tyrrell L. Garth ("Garth"), Phillip Clayton ("Clayton"), 405 Manhattan Investments, LLC ("405 Manhattan") and Alphabet Investments, LLC ("Alphabet") (collectively with Garth, Clayton and 405 Manhattan, the "the Alphabet Parties"), and Sol City Title, LLC ("Magnolia Houston"), Coast to Coast Title, LLC ("Magnolia Dallas"), Magnolia Title Florida, LLC ("Magnolia Florida"), and Magnolia Title Arkansas, LLC ("Magnolia Arkansas") (collectively, the "Magnolia Parties"),  and Starrex International Ltd. ("Starrex").  Any of the above may be referred to from time to time as a "Party" and all may be referred to jointly as the "Parties."

**WHEREAS**, on March 23, 2022, BS Title Team filed a petition against the Magness Parties in the 200th Judicial District Court of Travis County, Texas, the resulting action being captioned *BS Title Team, LLC, d/b/a BSpoke Title Holdings v. John Magness and The Peabody Bulldog, LLC*, Cause No. D-1-GN-22-001406 (the "Employment Litigation").

**WHEREAS**, BS Title Team alleged in the Employment Litigation that the Magness Parties breached their fiduciary duty to and their contract with BS Title Team and sought a declaration that the Magness Parties had relinquished their ownership in Key Title, Key Title San Antonio, Corpus Christi Title and Gateway City Title.

**WHEREAS**, on April 5, 2022, the Magness Parties denied the allegations in the Employment Litigation and asserted a counterclaim for breach of contract against BS Title Team.

**WHEREAS**, on April 22, 2022, Gateway City Title, Gateway City Managers, Corpus Christi Title, and Corpus Christi Title Managers filed a petition in intervention in the Employment Litigation requesting a judicial declaration that the Magness Parties had relinquished their interest in these four entities.

**WHEREAS**, on November 24, 2021, Sarah Blackburn signed a letter of intent to sell Key Title, Key Title San Antonio, Corpus Christi Title, Vista Title Venture, LLC, Joy Title, Amarillo Title, Tall City Title, and Gateway City Title to Starrex (the "Proposed Starrex Transaction")

**WHEREAS**, on April 1, 2022, Peabody filed five separate derivative lawsuits against both the Blackburns and BS Title Team on behalf of Key Title, Key Title San Antonio, Tall City Title, Amarillo Title, and Joy Title, the resulting actions being captioned: *The Peabody Bulldog, LLC v. Bo Blackburn, et al.*, Cause No. D-1-GN-22-001546, in the 459th District Court of Travis County, Texas; *The Peabody Bulldog, LLC v. Bo Blackburn, et al.*, Cause No. 2022CI06073, in the 224th District Court of Bexar County, Texas; *The Peabody Bulldog, LLC v. Bo Blackburn, et al.*, Cause No. CV58459, in the 441st District Court of Midland County, Texas; *The Peabody Bulldog, LLC v. Bo Blackburn, et al.*, Cause No. 110900-D-CV, in the 320th District Court of Potter County, Texas; and *The Peabody Bulldog, LLC v. Bo Blackburn, et al.*, Cause No. DC-20220CV00374, in the 99th District Court of Lubbock County, Texas (collectively, the "Derivative Litigation").

**WHEREAS**, Peabody alleged in the Derivative Litigation that the Blackburns breached their fiduciary duty to Key Title, Key Title San Antonio, Tall City Title, Amarillo Title, and Joy Title by, among other things, refusing to consent to the Proposed Starrex Transaction.

**WHEREAS**, the Blackburns, BS Title Team and the various entities have all denied Peabody's allegations in the Derivative Litigation.

**WHEREAS**, Sol City Managers is the current owner of 4,200 Class A-Series I units in Magnolia Houston and has 42% of the voting power of this entity; Rabbit Food and Sarah Blackburn are the current owners of 4,000 Class A-Series I units in Magnolia Dallas and have 40% of the voting power in this entity; and Rabbit Food is the current owner of 3,000 Class A-Series I units in each of Magnolia Florida and Magnolia Arkansas and have 30% of the voting power in each of these entities (the "Blackburns' Magnolia Equity Interest").

**WHEREAS**, Metz Court has made special contributions to Magnolia Dallas, Magnolia Houston and Magnolia Florida as reflected in the most current Company Agreement for each entity, in the total amount of $727,751 (the "Blackburns' Magnolia Special Contribution Interest"), which have not been paid back to Metz Court.

**WHEREAS**, on December 29, 2021, BS Title Team executed a $250,000 promissory note with the Alphabet Parties (the "Promissory Note") with a maturity date of April 28, 2022, which remains unpaid.

**WHEREAS**, the Magnolia Parties have executed various management agreements with BS Title Team as follows: (a) BSpoke Title Holdings Amended Management Agreement, dated as of December 1, 2021 by and between BS Title Team, LLC, as Manager and Sol City Title, LLC, as Title Agent; (b) BSpoke Title Holdings Management Agreement, dated as of December 1, 2021 by and between BS Title Team, LLC, as Manager and Coast To Coast Title, LLC, as Title Agent; (c) BSpoke Title Holdings Management Agreement, dated as of December 1, 2021 by and between BS Title Team, LLC, as Manager and Magnolia Title Florida, LLC, as Title Agent; and (d) BSpoke Title Holdings Management Agreement, dated as of December 1, 2021 by and between BS Title Team, LLC, as Manager and Magnolia Title Arkansas, as Title Agent; and a Memorandum of Understanding between BS Title Team and the Magnolia Parties, dated March 15, 2022 (collectively, the "BSpoke Management Agreements").

2

**WHEREAS,** the Magnolia Parties and BS Title Team have bona fide disputes over their respective rights and obligations under the Bspoke Management Agreements.

**WHEREAS,** Magness owes BS Title Team $75,000.00 in a recoverable draw, pursuant to Magness's employment agreement which remains outstanding and unpaid.

**WHEREAS,** as of August 1, 2022, the Magnolia Parties have not paid BS Title Team outstanding invoices owed pursuant to the Bspoke Management Agreements.

**WHEREAS,** on or about July 28, 2021, an engagement letter was executed by Naponic on behalf of BS Title Team with Keating Brown PLLC for the provision of legal services to BS Title Team and Patricia Rissanen (the "Keating Brown Agreement").

**WHEREAS,** Keating Brown represents Patricia Rissanen ("Rissanen") and Bette LeMay ("LeMay") under the Keating Brown Agreement in a lawsuit filed by Stewart Title against Rissanen and LeMay in the 127th District Court of Harris County, Texas, the resulting action being captioned *Stewart Title Guaranty Company v. Patricia Rissanen, et al.*, Cause No. 2021-60071 (the "Stewart Litigation").

**WHEREAS,** Naponic and Magness, on behalf of Rissanen and LaMay, agreed to settle the Stewart Litigation.

**WHEREAS,** a portion of the legal fees and expenses incurred in the Stewart Litigation have not been paid.

**WHEREAS,** BS Title Team alleges that the legal fees and expenses incurred and allegedly owed to Keating Brown were not incurred on behalf of BS Title Team.

**WHEREAS,** the Stewart Litigation has been subsequently dismissed.

**WHEREAS,** the Parties, making no admission of liability, but solely to terminate all past, present, and potential controversies between them, hereby agree to, and do, settle and resolve all claims and causes of action between them.

**NOW, THEREFORE,** in consideration of the mutual promises and performance hereinafter described, the Parties hereby agree as follows:

1.      **Actions by the Magness Parties:**  In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against the Magness Parties, and for other good and valuable consideration, the Magness Parties agree to the following:

      a.      **Redemption of Shares and Execution of Related Authorizations:**  The Magness Parties agree to redeem the entirety of their ownership interest in Key Title, Key Title San Antonio, Corpus Christi Title, and Gateway City Title, and to surrender any shares and authorize their further transfer. The Magness Parties hereby disclaim any further interest in these entities or any of their assets. The Magness Parties further agree to execute the four Redemption Agreements collectively attached to this Agreement as Exhibit A, which are expressly incorporated herein.

**b.    The Magness Parties' Release and Covenant Not to Sue:** The Magness Parties, and each of their executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Bspoke Parties, jointly and severally, and each of their respective former, present, and/or future executors, administrators, trustees, employees, successors, assigns, representatives, agents, owners, subsidiaries, affiliates, respective predecessors, heirs, affiliates, shareholders, members, officers, directors, general partners, limited partners, insurers, attorneys, and anyone claiming by, through, or under any of them (collectively, the "Bspoke Released Parties"), with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which the Magness Parties have or which could be asserted on their behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement. The Magness Parties understand and agree that this Release includes, but is not limited to, the following claims and causes of action resulting from or relating to acts or omissions on or before the Effective Date of this Agreement:

(1)    All claims and causes of action arising under contract, tort, or other common law, including, without limitation, breach of contract, quantum meruit, promissory estoppel, detrimental reliance, false imprisonment, assault and battery, intentional infliction of emotional distress, slander, libel, fraud, misrepresentation, and invasion of privacy;

(2)    All claims and causes of action arising under any federal, state, or local law, regulation, or ordinance;

(3)    All claims and causes of action for past or future loss of compensation, benefits, expenses, liquidated damages, punitive/exemplary damages, compensatory damages, attorney's fees, interest, court costs, physical or mental injury, damage to reputation, damage to credit, and any other injury, loss, damage or expense or any other legal or equitable remedy of any kind whatsoever; and

(4)    All claims and causes of action arising out of or in any way connected with, directly or indirectly, Magness's or Naponic's employment with BS Title Team, including, without limitation, the terms and conditions of their employment, the nature of the termination of their employment, or the compensation, benefits or payments received or that should have been received during or subsequent to this employment except any future claims relating to COBRA and/or retirement benefits.

(5)    All claims and causes of action of any kind or character relating to Magness's or Naponic's employment with BS Title Team that have been or could have been alleged in any lawsuit or administrative charge, claim, or proceeding that has been or could have been filed against BS Title Team by Magness or Naponi, on their own behalf or on behalf of any other person.

(6)     All claims and causes of action of any kind or character relating to any and all rights, title, and interest in ownership in any Bspoke Party, including but not limited to Members and Managers thereof.

(7)     All claims that were or could have been brought in the Employment Litigation and Derivative Litigation.

(8)     Notwithstanding anything to the contrary in this Agreement, this release does not constitute a release or waiver of any claim against BS Title Team for any claims which cannot be waived by law.

2.     **Actions by the BSpoke Parties:**  In return for this settlement, compromise, and release of all claims and potential claims the Magness Parties, the Alphabet Parties, the Magnolia Parties, Starrex and Naponic may have against the BSpoke Parties, and for other good and valuable consideration, the BSpoke Parties agree to the following:

a.     **Reduction and Redemption of the Blackburns' Magnolia Equity Interest and Magnolia Special Contribution Interest, and Execution of Related Authorizations**:   The BSpoke Parties agree that the Blackburns' Magnolia Equity Interest will be reduced by partial redemptions from 42% to 5% in Magnolia Houston and from 40% to 5% in Magnolia Dallas, and from 30% to 3.75% in Magnolia Florida and Magnolia Arkansas.  The BSpoke Parties further agree that the Blackburns' Magnolia Special Contribution Interest shall be reduced from $727,751 to $250,000 (the "Metz Residual Contribution Interest"), and the Metz Residual Contribution Interest shall be allocated as follows: (a) $87,000 to Magnolia Houston; (b) $87,000 to Magnolia Dallas; and (c) $76,000 to Magnolia Florida. The BSpoke Parties agree to execute the Partial Redemption Agreements and the Assignments of Special Contribution Interests collectively attached to this Agreement as Exhibit B, which are expressly incorporated herein.

b.     **Resolution of Keating Brown Agreement:** The BSpoke Parties agree to be solely responsible for the satisfactory payment of the outstanding amounts owed to Keating Brown under the Keating Brown Agreement and the Bspoke Parties agree to indemnify and defend the Magness Parties, the Alphabet Parties, the Magnolia Parties, and Starrex for any claims asserted by Keating Brown for the payment of such fees and expenses related to the Stewart Litigation.

c.     **Continuation of BS Title Team's Management Services to the Magnolia Parties After the Effective Date:**   Magnolia will reimburse Bspoke for Title Data charges from August 1, 2022 through August 8, 2022 and will pay BS Title Team $5,600 as reimbursement for policy production from August 1, 2022 through September 30, 2022.  Magnolia will pay, within 14 days of receipt of invoice, $100 per each file examined in house, and $15 per file managed through UW commitment production.BS Title Team will use commercially reasonable efforts to issue all policies created by BS Title Team on behalf of the Magnolia Parties. Any policies not issued by September 30, 2022, will be transferred to the Magnolia Parties.

d.     **Cooperation with Winding Down BS Title Team's Management Services:** Following the expiration of its services to the Magnolia Parties on August 8,

2022, BS Title Team, Magnolia Parties, Magness Parties and the Blackburns will cooperate in effectuating a smooth transition to the Magnolia Parties, including without limitation:

    **(1)**   <u>Qualia access and data migration</u>.  BS Title Team agrees to allow one designated Magnolia Parties employee ("the Designated Magnolia Employee") to have  access to Qualia until November 19, 2022 (the "Transition End Date"), for the purpose of being able to prepare for audits, review bank accounts to ensure all checks have cleared until accounts are closed, provide documents requested by a customer should the need arise, and to migrate Magnolia Parties' data from BS Title Team's Qualia account to Magnolia Parties' Qualia Account.  The Designated Magnolia Employee may allow other Magnolia Parties employees to access BS Title Team's Qualia account only for the purpose of migrating Magnolia Parties' data.  In that instance, the Designated Magnolia Employee will oversee and be responsible for the acts performed by any other Magnolia Parties employees accessing BS Title Team's Qualia account.  Magnolia Parties agree that the Designated Magnolia Employee, and any other employees under her supervision who actually access BS Title Team's Qualia account, will not access, use, download or run reports regarding BS Title Team's files and data.

    **(2)**   <u>Bank accounts and payment methods</u>. No later than 30 days after the receipt of all findings on the TDI audit of Magnolia Houston, which covers the time period when it operated as Southern Plains, Magnolia agrees to close out the following bank accounts: Plains Capital Bank Account #7499777701 ( Magnolia Dallas); Plains Capital Bank Account #7119856301 (Magnolia Houston); Plains Capital Bank Account #7511526301 (Magnolia  Florida); Plains Capital Bank Account #7430351102 (Magnolia  Arkansas); and Plains Capital Bank Account #7887602803 (Peabody).  BS Title Team, Magnolia Parties, Magness Parties and the Blackburns agree to work expeditiously to change any payment methods which incorrectly charge BS Title Team for charges that should be made to Magnolia Parties.

    **e.**   **Cooperation with Audits:**  BS Title Team will cooperate promptly with any reasonable request to provide  information and documents related to the audits performed by the Texas Department of Insurance to the extent the audit covers activities that occurred prior to December 31, 2021 and to the extent that such information and documentation have not already been provided to the Magnolia Parties.

    **f.**   **The BSpoke Parties' Release and Covenant Not to Sue:** The BSpoke Parties, and each of their executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Magness Parties, the Alphabet Parties, the Magnolia Parties, Starrex and Naponic, jointly and severally, and each of their respective former, present,

and/or future executors, administrators, trustees, employees, successors, assigns, representatives, agents, owners, subsidiaries, affiliates, respective predecessors, heirs, affiliates, shareholders, members, officers, directors, general partners, limited partners, insurers, attorneys, and anyone claiming by, through, or under any of them, with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which the BSpoke Parties have or which could be asserted on their behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement, including without limitation any claims relating to the Management Agreements.

3.     **The Alphabet Parties' Release and Covenant Not to Sue:**  In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against the Alphabet Parties, and in return for the reduction of the Blackburns' Magnolia Equity Interest and Magnolia Special Contribution Interest as described herein, and for other good and valuable consideration, the Alphabet Parties, and each of their executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Bspoke Released Parties with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which the Alphabet Parties have or which could be asserted on their behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement, including without limitation any claims relating to the Promissory Note.

4.     **Actions by the Magnolia Parties:**  In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against the Magnolia Parties, and for other good and valuable consideration, the Magnolia Parties agree to the following:

a.     **Payment for Past Charges Owed Under the BSpoke Management Agreements:**  The Magnolia Parties will pay BS Title Team $87,761.95 in full satisfaction of any and all obligations that may be owed under the BSpoke Management Agreements through July 31, 2022.

b.     **Additional Matters:**

1. The Magnolia Parties will provide prompt and timely cooperation and assistance, as requested by BS Title Team, with the tax returns for Magnolia Houston, including providing accurate financial statements;

2. The Magnolia Parties will assume the Lanier Dealer Lease Agreement entered into by BS Title Team for the Lanier IMC4500 (copier) located at 1786 W. McDermott Road, Allen, TX, and will indemnify BS Title Team for the guaranty by Key Title of that equipment lease;

7

3. The release of or indemnification for the guaranty by BS Title Team of the Commercial Lease entered into by Magnolia Dallas for the office premises located at 1786 W. McDermott Road, Suite 200, Allen, Texas;

4. By September 30, 2022, Magnolia Parties will return to BS Title Team the seven boxed computers and two used computers and related accessories still in its possession that BS Title Team purchased; and

5. By September 30, 2022, Magnolia Houston will repay $57,100 to BS Title Team for the two December 2021 loans to Magnolia Houston.

     **c.    The Magnolia Parties' Release and Covenant Not to Sue:** In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against the Magnolia Parties and for other good and valuable consideration, the Magnolia Parties, and each of their executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Bspoke Released Parties with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which the Magnolia Parties have or which could be asserted on their behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement, including without limitation any claims relating to the Management Agreements.

     **5.    Starrex's Release and Covenant Not to Sue:** In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against Starrex and for other good and valuable consideration, Starrex, and each of its executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Bspoke Released Parties with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which Starrex has or which could be asserted on its behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement.

     **6.    Naponic's Release and Covenant Not to Sue:** In return for this settlement, compromise, and release of all claims and potential claims the BSpoke Parties may have against Naponic, and for other good and valuable consideration, Naponic, and each of her executors, administrators, trustees, employees, attorneys, predecessors, successors, assigns, heirs, representatives, agents, owners, affiliates, insurers, and anyone claiming by, through, or under any of them, hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Bspoke Released Parties with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, asserted and unasserted, at law or in equity, which Naponic has or which could be asserted on her behalf by any person, government authority, or

8

entity, resulting from or relating to any act or omission of any kind occurring on or before the Effective Date of this Agreement.

**7.    No Admission of Liability:** Each Party understands and agrees that this Agreement shall not in any way be construed as an admission by any of the Parties of any unlawful or wrongful acts whatsoever, and each Party specifically disclaims and denies any liability to or wrongful acts against any other Party to this Agreement.

**8.**    Notwithstanding any other provision of this Agreement, the releases herein do not waive or release any claim for breach or enforcement of this Agreement, or any claim based on any alleged act or omission that occurs after the Effective Date.

**9.**    The Parties further represent that no claim or cause of action covered by this Agreement has been assigned or given to anyone else, and that no other person or entity has an interest in any such claim or cause of action, through subrogation or otherwise.  The Parties agree to indemnify, defend, and hold each other harmless from any further claim or suit (including attorney's fees and other expenses incurred in the defense of any such claim or suit) by or on behalf of any other person concerning any claim or potential claim released by this Agreement.

**10.**    The Magness Parties and BSpoke Parties represent and warrant that—other than in the Employment Litigation and Derivative Litigation—such Party has not filed or asserted (or caused to be filed or asserted) any other complaints, claims, defenses, or actions against any other Party with any state, federal, or local governmental agency, any court, any arbitrator or arbitral agency, or any administrative agency. The Parties know of no other pending claims or potential claims against each other aside from those asserted in the Employment Litigation and Derivative Litigation.

**11.**    The Bspoke Parties and the Magness Parties shall file a Joint Motion to Dismiss with Prejudice ("Agreed Dismissal") the Derivative Litigation and Employment Litigation within five (5) business days of the execution of this Agreement by all Parties. The Parties shall bear their own costs and attorneys' fees.

**12.**    The terms and conditions of the settlement and this Agreement, and all negotiations, communications, and correspondence between the Parties, counsel, experts, agents, and/or representatives, in connection with, arising from, or related to this settlement, shall be kept strictly confidential by the Parties and their agents and representatives, and shall not be disclosed to any third parties without the prior written consent of the other Parties (the "Settlement Confidentiality Clause"). All Parties may, however, disclose the terms of this Agreement as necessary to: (a) any governmental authority; (b) their accountants for purposes of preparing income tax returns; (c) their attorneys; (d) comply with any written agreement of the Parties, (e) their lenders, (f) their insurers, (g) certifying bodies that require such disclosure, (h) their partners, former partners, prospective partners, members, former members, prospective members, shareholders, former shareholders, prospective shareholders, trustees, former trustees, or prospective trustees; and (i) comply with any order of any court or regulatory authority having jurisdiction over the subject matter. If any Party makes a disclosure as allowed under this Paragraph, the disclosing Party shall require the recipient of the information to agree to keep it confidential (except with respect to disclosures to governmental authorities). Each Party agrees to provide reasonable advance notice to other Parties if it intends to disclose the terms of this Agreement to a governmental authority or to comply with any order of any court or regulatory authority. The Parties agree they may communicate with third parties without violating this

Agreement by stating that "I/we have resolved my/our differences with the other(s) part(ies)," or that "the [Litigation] has settled" or any substantially similar statement. No further description or explanation shall be provided.

13.     Magness, Naponic, the Blackburns, Clayton and Garth agree that they shall not at any time knowingly make, communicate or publish in any way (whether in writing, orally, or electronically, or in an Internet, website, or blog posting, or by means of any form of social media, including, without limitation, Facebook, LinkedIn, or Twitter, or in any other form of communication of any kind) any statements or comments that disparage any of such persons, or otherwise make any oral or written statements that a reasonable person would expect at the time such statement is made to likely have the effect of diminishing or injuring the reputation of any of such persons; provided, however, nothing herein shall prevent any of such persons from providing any information that may be compelled by law.

14.     This Agreement and the agreements referenced herein and signed as part of the settlement contain the entire understanding and agreement between the Parties, and it supersedes any prior or contemporaneous agreements, promises, statements, understandings, and/or representations, oral or written, relating to the matters set forth herein, which shall be superseded, void and unenforceable. Each Party understands that such Party is precluded from bringing any fraud or similar claim against any other Party based on any such communications, promises, agreements, statements, inducements, understandings, or representations. No oral statements or other prior written material not specifically incorporated into this Agreement, or the agreements signed in connection with this Agreement shall be of any force and effect, and no changes in or additions to this Agreement shall be recognized, unless incorporated into this Agreement by written amendment, such amendment to become effective on the date stipulated in it. Any amendment to this Agreement must be signed by all Parties to this Agreement.

15.     Each of the Parties (only for himself, herself, or itself as the case may be) agrees, promises, warrants and represents that no promise, statement, agreement, representation, inducement, or condition which is not expressly set forth in writing in this Agreement has been made to any of the Parties in executing this Agreement and/or to induce any other Party to enter into this Agreement. To the extent any such statements have been made, each Party expressly disclaims reliance on any such statement not set forth in writing in this Agreement.

16.     The Parties acknowledge that they have been advised to consult with an attorney of their choice about the terms of this Agreement, and each Party represents that it has consulted with such an attorney.

17.     The Parties represent and warrant that this Agreement is entered into without fraud or duress, in good faith, and for sufficient and adequate good and valuable consideration.

18.     The Parties to this Agreement have been represented by counsel in connection with the execution and delivery of this Agreement. Accordingly, for the purpose of contract construction rules, which may require the interpretation of an agreement against its drafter, no party shall be deemed the author of this Agreement.

19.     After the execution of this Agreement, the Parties shall execute all further documents, including any necessary court papers, and shall take all further steps as may be reasonably necessary to further the purposes and intent of this Agreement. The Bspoke Parties acknowledge that this includes, without limitation, any documents required by a secretary of state to remove the Blackburns as manager or registered agent of the Magnolia Parties, and any

standard amendments (i.e., the same provisions and terms that apply to any other member) to the Magnolia Parties' company agreements.

    **20.**    The Parties agree that should a court declare or determine that any provision of this Agreement is illegal, unenforceable or invalid, the validity of the remaining parts, terms, or provisions of this Agreement will not be affected, and any illegal or invalid part, term, or provision will not be deemed to be a part of this Agreement and that any illegal, unenforceable or invalid provision will be deemed replaced by a legal, enforceable and valid provision that reflects the intent of the Parties to the maximum extent legally permissible.

    **21.**    The Parties agree that an action to enforce any confidentiality covenants herein shall not be considered a strategic lawsuit against public participation and, as to any such enforcement action, the Parties waive all rights to challenge enforcement of the same under the Texas Citizens Participation Act or comparable state or federal law (*see, e.g.*, Tex. Civ. Prac. & Rem. Code, Chapter 27 (§27.001, *et seq.*).

    **22.**    The substantive and procedural laws of the State of Texas shall apply to any disagreement or dispute relating to or arising out of this Agreement.

    **23.**    This Agreement has been executed in identical counterparts, all of which shall constitute one, and the same, agreement, but in making proof hereof, it shall not be necessary to produce or account for more than one such counterpart.

    **24.**    A signature delivered by fax or email or other form of electronic submission shall be treated as an original and shall be binding as if it were an original signature. Scanned and emailed copies of signatures shall be accepted and deemed original signatures to this Agreement for all purposes.

    **25.**    Each Party is to bear its own costs and attorneys' fees. In any action or proceeding brought to interpret or enforce this Agreement, the prevailing party to such litigation is entitled to recover its costs and reasonable attorneys' fees.

    **26.**    The parties agree that one or more waivers or breaches of any covenant, term, or provision of this Agreement by any party shall not be construed as a waiver of a subsequent breach of the same covenant, term, or provision, or as a waiver or breach of any other covenant, term, or provision.

    **27.**    All Recitals and defined terms are incorporated herein for all purposes and are a part of the Agreement.

    **28.**    Each Party promises and agrees: (a) that each covenant, agreement, representation, and warranty contained in this Agreement is negotiated, bargained for, and contractual—and is not a mere recital; (b) that each covenant, agreement, representation, and warranty contained in this Agreement survives the execution of this Agreement; and (c) that each covenant, agreement, representation, and warranty contained in this Agreement shall be forever binding on, enforceable against, and conclusive as to each Party.

    **29.**    All signatories to this Agreement acknowledge and confirm that they have been and are duly authorized to execute this Agreement on behalf of the respective entity or entities that they represent and that by executing this Agreement each of the entities that they represent shall be fully bound by the agreements and representations contained herein.

    **30.**    All Parties represent and warrant that each has taken all necessary action to authorize their respective corporate representatives to execute this Agreement on each Party's

behalf, and upon execution hereof, each Party and their respective heirs, successors, legal representatives, agents, attorneys, partners, shareholders, members, and assigns shall be fully bound by and receive the benefits of the terms and provisions hereof.

     **31.**     This Agreement shall become effective as of August 28, 2022 (the "Effective Date").

*This space intentionally left blank – signature pages follow.*

Signature Page 1 to Confidential Settlement Agreement and Release of Claims

_____
John Magness

_____
Britt Naponic


The Peabody Bulldog, LLC

BY:_____
        John Magness, Manager


_____
Bo Blackburn


_____
Sarah Blackburn


#6 Metz Court, LLC.

BY:_____
        Sarah Blackburn, Manager


Sol City Title Manager, LLC.

BY:_____
        Sarah Blackburn, Manager


Rabbit Food, LLC

BY:_____
        Sarah Blackburn, Manager


BS Title Team, LLC.

BY:_____
        Sarah Blackburn, Manager


13

Signature Page 2 to Confidiental Settlement Agreement and Release of Claims

Pacific Waters Title, LLC.

By:_____

Blue Goose Title, LLC

By:_____

CSP Texas Joint Venture, LLC.

By:_____

CSP Texas Joint Venture-San Antonio, LLC

By:_____


Tall City Title, LLC

By:_____

Amarillo Title, LLC.

By:_____

Amarillo Title Managers, LLC.

By:_____


Joy Title, LLC.

By:_____

Gateway City Title, LLC.


By:_____


Gateway City Title Mangers, LLC

By:_____

Signature Page 3 to Confidential Settlement Agreement and Release of Claims

Corpus Christi Title, LLC.

By: _____

Corpus Christi Title Managers, LLC.

By: _____

_____
Tyrrell L. Garth

_____
Phillip Clayton

405 Manhattan Investments, LLC.

By: *Alyse Draughon*
    Alyse Draughon, Manager

Alphabet Investments, LLC.

By: _____
    Clayton Hill, Manager

Sol City Title, LLC.

By: _____
    John Magness, Manager

Coast to Coast Title, LLC.

By: _____
    John Magness, Manager

Magnolia Title Florida, LLC.

By: _____
    John Magness, Manager

15

Signature Page 3 to Confidential Settlement Agreement and Release of Claims

Corpus Christi Title, LLC.

By:_____

Corpus Christi Title Managers, LLC.

By:_____

_____
Tyrrell L. Garth

_____
Phillip Clayton

405 Manhattan Investments, LLC.

By:_____
     Alyse Draughon, Manager

Alphabet Investments, LLC.

By:_____
     Clayton Hill, Manager

Sol City Title, LLC.

By:_____
     John Magness, Manager

Coast to Coast Title, LLC.

By:_____
     John Magness, Manager

Magnolia Title Florida, LLC.

By:_____
     John Magness, Manager

15

Signature Page 4 to Confidiental Settlement Agreement and Release of Claims

Magnolia Title Arkansas, LLC

By: _____

John Magness, Manager

Starrex International, Ltd.

By: _____

Matt Hill, CEO

16

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document COAST005543.pdf**

COAST005543

## EXHIBIT B-1

## Partial Membership Interest Redemption Agreements

Magnolia Houston

Magnolia Dallas

Magnolia Florida

Magnolia Arkansas

SOL CITY TITLE, LLC D/B/A MAGNOLIA TITLE
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Sol City Title, LLC d/b/a Magnolia Title, a Texas limited liability company (the "Company"), and Sol City Title Managers, LLC, a Texas limited liability company (the "Partially Redeemed Member").

## RECITALS:

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 4,200 Class A Series I Units (the "Units") of the Company and is a party to the Third Amended and Restated Company Agreement of Sol City Title (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 3,700 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated _August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

1.      **Assignment and Redemption.**  (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member.  The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto.  The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit

holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

**2.     Representations and Warranties.** The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.                    (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.                    (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

(c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

**3.    Miscellaneous.**

c.                    (a)    <u>Assignment and Binding Effect</u>.  All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.                    (b)    <u>Authority</u>.  Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.                    (c)    <u>Survival</u>.    All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

(d)    <u>Expenses; Attorneys' Fees</u>.  Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to a reasonable sum as and for

reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)   <u>Counterparts; Facsimile or Electronic Delivery</u>. This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)   <u>Applicable Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)   <u>Severability</u>. Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)   <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification. There are no oral agreements between or among the parties hereto.

(i)   <u>Construction</u>. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.   (j)   <u>Further Assurances</u>. After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

2.

(k)   <u>Notice</u>. All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return

receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

**EXECUTED** as of the Effective Date.

**COMPANY**

Sol City Title, LLC d/b/a Magnolia Title

By: _____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Sol City Title Managers, LLC

By: _____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email: _____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF
THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY
APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE
AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE
EFFECTIVE DATE:

**MEMBERS**:

SOL CITY TITLE MANAGERS, LLC

BY: _____

SARAH BLACKBURN,
MANAGER

Partial Membership Interest Redemption Agreement
Signature Page

GF INSURANCE INVESTMENTS, LLC.

BY: _____
JESSICA GARTH, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____
MATTHEW CLAYTON HILL,
MANAGER

**SOL CITY TITLE, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE:  DECEMBER 31, 2021**

**MEMBER INFORMATION**

| **Member** | **Units**<br>**(by Class)** |
|---|---|
| **Class A Series I Member**: | |
| Sol City Title Managers, LLC | 500 Units (5%) |
| **Class A Series II Members**: | |
| GF Insurance Investments, LLC | 3,850 Units (38.5%) |
| Alphabet Investments, LLC | 3,850 Units (38.5%) |
| Peabody Bulldog, LLC | <u>1,800 Units (18%   )</u> |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members**:  Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

| | | |
|---|---|---|
| 1. | #6 Metz Court, LLC | $ 87,000 |
| 2. | GF Insurance Investments, LLC | $ 48,000 |
| 3. | Alphabet Investments, LLC | <u>$ 48,000</u> |
| **Total** | | $183,000<br>(subject to<br>Special Contribution<br>Provisions) |

COAST TO COAST TITLE, LLC
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Coast to Coast Title, LLC, a Texas limited liability company (the "Company"), and Rabbit Food, LLC, a Texas limited liability company and Sarah Blackburn (collectively, the "Partially Redeemed Member").

**RECITALS:**

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 4,000 Class A Series I Units (the "Units") of the Company and is a party to the First Amended and Restated Company Agreement of Coast to Coast Title, LLC (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 3,500 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

**1.        Assignment and Redemption.**  (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member.  The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto. The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from

and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

      **2.**    **Representations and Warranties.**  The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.          (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.          (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

          (c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

      **3.**    **Miscellaneous.**

c.          (a)    <u>Assignment and Binding Effect</u>.  All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.          (b)    <u>Authority</u>. Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.          (c)    <u>Survival</u>.  All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

          (d)    <u>Expenses; Attorneys' Fees</u>. Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be

entitled, in addition to such other relief as may be granted, to a reasonable sum as and for reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)    <u>Counterparts; Facsimile or Electronic Delivery</u>.  This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)    <u>Applicable Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)    <u>Severability</u>.  Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.  There are no oral agreements between or among the parties hereto.

(i)    <u>Construction</u>.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.        (j)    <u>Further Assurances</u>.  After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

(k)    <u>Notice</u>.  All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

**EXECUTED** as of the Effective Date.

### COMPANY

Coast to Coast Title, LLC

By: _____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

### PARTIALLY REDEEMED MEMBER

Rabbit Food, LLC

By:_____

Sarah Blackburn, Manager

_____

Sarah Blackburn

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

### MEMBERS:

405 MANHATTAN INVESTMENTS, LLC

BY:_____

ALYSE DRAUGHON, MANAGER

Partial Membership Interest Redemption Agreement
Signature Page

DocuSign Envelope ID: DD49EB7A-F9F4-44DA-A044-4F722646A36F

**EXECUTED** as of the Effective Date.

**COMPANY**

Coast to Coast Title, LLC

By:_____
     John Magness, Manager

     Address for Notice:

     14701 St Mary's Lane, Suite 150
     Houston, TX 77079
     Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____
     Sarah Blackburn, Manager


_____
     Sarah Blackburn

     Address for notice:

     925 S. Capital Of Texas Highway
     Building A, Suite 175
     Austin, TX 78746
     Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS:**

405 MANHATTAN INVESTMENTS, LLC

BY: *Alyse Draughon*
     DocuSigned by:
     4BADF094A0194F5...
     ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY:

MATTHEW CLAYTON HILL,
MANAGER


PEABODY BULLDOG, LLC

BY:

JOHN MAGNESS, MANAGER

**COAST TO COAST TITLE, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE:  DECEMBER 31, 2021**

**MEMBER INFORMATION**

| <u>**Member**</u> | <u>**Units**</u><br><u>**(by Class)**</u> |
|---|---|
| **Class A Series I Member**: | |
| Rabbit Food, LLC | 500 Units (5%) |
| **Class A Series II Members**: | |
| 405 Manhattan Investments, LLC | 3,875 Units (38.75%) |
| Alphabet Investments, LLC | 3,875 Units (38.75%) |
| Peabody Bulldog, LLC | <u>1,750 Units (17.5%   )</u> |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members**:  Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

| | | |
|---|---|---|
| 1. | #6 Metz Court, LLC | $  87,000 |
| 2. | 405 Manhattan Investments, LLC | $190,875 |
| 3. | Alphabet Investments, LLC | <u>$190,876</u> |
| **Total** | | $468,751<br>(subject to<br>Special Contribution<br>Provisions) |

MAGNOLIA TITLE ARKANSAS, LLC
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Magnolia Title Arkansas, LLC, an Arkansas limited liability company (the "Company"), and Rabbit Food, LLC, a Texas limited liability company (the "Partially Redeemed Member").

## RECITALS:

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 3,000 Class A Series I Units (the "Units") of the Company and is a party to the First Amended and Restated Company Agreement of Magnolia Title Arkansas, LLC (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 2,625 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

1.    **Assignment and Redemption.**  (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member.  The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto.  The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from

and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

2.    **Representations and Warranties.**  The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.            (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.            (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

            (c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

3.    **Miscellaneous.**

c.            (a)    <u>Assignment and Binding Effect</u>.    All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.            (b)    <u>Authority</u>.  Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.            (c)    <u>Survival</u>.    All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

            (d)    <u>Expenses; Attorneys' Fees</u>.  Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be

entitled, in addition to such other relief as may be granted, to a reasonable sum as and for reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)    <u>Counterparts; Facsimile or Electronic Delivery</u>.  This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)    <u>Applicable Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)    <u>Severability</u>.  Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)    <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.   There are no oral agreements between or among the parties hereto.

(i)    <u>Construction</u>.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.              (j)    <u>Further Assurances</u>. After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

(k)    <u>Notice</u>.  All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Arkansas, LLC

By: _____

     John Magness, Manager

     Address for Notice:

     14701 St Mary's Lane, Suite 150
     Houston, TX 77079
     Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By: _____

     Sarah Blackburn, Manager

     Address for notice:

     925 S. Capital Of Texas Highway
     Building A, Suite 175
     Austin, TX 78746
     Email: _____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS**:

405 MANHATTAN INVESTMENTS, LLC

BY: _____

     ALYSE ANGELLE, MANAGER

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Arkansas, LLC

By:_____
    John Magness, Manager

    Address for Notice:

    14701 St Mary's Lane, Suite 150
    Houston, TX 77079
    Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____
    Sarah Blackburn, Manager

    Address for notice:

    925 S. Capital Of Texas Highway
    Building A, Suite 175
    Austin, TX 78746
    Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS**:

405 MANHATTAN INVESTMENTS, LLC

BY: _Alyse Draughon_____
    ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____
MATTHEW CLAYTON HILL,
MANAGER


PEABODY BULLDOG, LLC

BY: _____
JOHN MAGNESS, MANAGER

**MAGNOLIA TITLE ARKANSAS, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE:  DECEMBER 31, 2021**

**MEMBER INFORMATION**

| Member | Units (by Class) |
|---|---|
| **Class A Series I Member**: | |
| Rabbit Food, LLC | 375 Units (3.75%) |
| **Class A Series II Members**: | |
| 405 Manhattan Investments, LLC | 4,162.5 Units (41.625%) |
| Alphabet Investments, LLC | 4,162.5 Units (41.625%) |
| Peabody Bulldog, LLC | 1,300 Units (13%   ) |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members**:  Cancelled effective 12/31/21 and converted to Class A-Series II Units

MAGNOLIA TITLE FLORIDA, LLC
PARTIAL MEMBERSHIP INTEREST REDEMPTION AGREEMENT

**THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into as of the 31st day of December, 2021 (the "Effective Date"), by and among Magnolia Title Florida, LLC, a Florida limited liability company (the "Company"), and Rabbit Food, LLC, a Texas limited liability company (the "Partially Redeemed Member").

## RECITALS:

**WHEREAS,** the Partially Redeemed Member is a Member of the Company holding 3,000 Class A Series I Units (the "Units") of the Company and is a party to the First Amended and Restated Company Agreement of Magnolia Title Florida, LLC (the "Company Agreement"); and

**WHEREAS,** the Company desires to redeem 2,625 Units of the Partially Redeemed Member's membership interest in the Company together with all voting rights and powers conferred upon said Units in Section 3.5 of the Company Agreement (the "Partial Membership Interest") from the Partially Redeemed Member for ten dollars ($10.00) and other good and valuable consideration, including, without limitation, compliance by the parties with the provisions of that certain Confidential Settlement Agreement and Release of All Claims, between the parties and other parties, dated August 28, 2022, receipt of which the Partially Redeemed Member acknowledges (the "Redemption Consideration") and the Partially Redeemed Member desires to assign all of the Partial Membership Interest to the Company in consideration of the receipt of the Redemption Consideration and the parties desire to consummate the transactions contemplated herein upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of foregoing and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and the parties agree as follows:

**1.      Assignment and Redemption.** (a) As of the Effective Date and pursuant to the terms and subject to the conditions set forth in this Agreement, the Partially Redeemed Member hereby assigns, transfers and delivers to the Company all of the Partial Membership Interest, free and clear of all liens, claims, pledges and encumbrances, and the Company hereby redeems, purchases and accepts all of the Partial Membership Interest from the Partially Redeemed Member. The Partially Redeemed Member hereby acknowledges receipt of the Redemption Consideration in full.

(b) Subsequent to the completion of the Partial Membership Interest Redemption described herein, the ownership of Company is described in a Revised Exhibit 3.1 to the Company Agreement, a copy of which is attached hereto. The provisions of this Agreement are intended as an amendment to the Company Agreement and the percentages applicable to the Class A Units (both Series I and II) regarding allocations, distributions and other purposes from

and after the Effective Date of this Agreement are hereby amended as follows: (i) all Unit holders of Class A Units – Series I an aggregate 5%; and all Unit holders of Class A Units – Series II an aggregate 95%.

    **2.    Representations and Warranties.** The Partially Redeemed Member hereby represents and warrants to the Company as of the Effective Date and thereafter:

a.        (a)    The Partially Redeemed Member (i) is the sole owner of the Partial Membership Interest, (ii) has not transferred or entered into any agreement or understanding to transfer any portion of the Partial Membership Interest, (iii) holds good and marketable title to the Partial Membership Interest free and clear of all liens, claims, pledges and encumbrances, and (iv) has all necessary power and authority to transfer all of the Partial Membership Interest as provided herein;

b.        (b)    Subject to due execution and delivery of the other parties thereto, this Agreement and each other agreement and document to be entered into by the Partially Redeemed Member in connection with this Agreement, constitutes a valid and binding obligation of the Partially Redeemed Member, enforceable in accordance with its terms and all required consents by the Partially Redeemed Member to the consummation of the transactions contemplated herein have been obtained or are hereby duly consented to by the Partially Redeemed Member as may be required by all applicable documentation.

        (c)    The Partially Redeemed Member has been paid by the Company for any and all compensation, member distributions or other amounts due and owing or to be due and owing to the Partially Redeemed Member through the Effective Date.

    3.    **Miscellaneous.**

c.        (a)    <u>Assignment and Binding Effect</u>.    All covenants, agreements, representations and warranties of the parties contained herein shall be binding upon and inure to the benefit of the parties hereto and his respective heirs, representatives, successors and permitted assigns.

d.        (b)    <u>Authority</u>. Each of the parties warrants and represents to the other parties that it has the full power and authority to execute, deliver, enter into and perform this Agreement.

e.        (c)    <u>Survival</u>.    All representations, warranties, covenants and obligations in this Agreement and all other documents or other certificates delivered pursuant to this Agreement will survive the execution and delivery of this Agreement and the consummation of any of the transactions contemplated herein.

        (d)    <u>Expenses; Attorneys' Fees</u>. Except as otherwise expressly set forth herein, each party will bear all of its or his own respective expenses, including, but not limited to, counsel and accountants' fees, in connection with the execution, delivery and performance of this Agreement. Should any litigation be commenced among the parties to this Agreement or the rights and duties of any party in relation hereto, said party prevailing in such litigation shall be

entitled, in addition to such other relief as may be granted, to a reasonable sum as and for reasonable attorney's fees in such litigation which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

(e)     Counterparts; Facsimile or Electronic Delivery.  This Agreement may be executed in one or more counterparts, including counterparts delivered by facsimile or other electronic transmission, each of which shall be deemed an original, but together shall constitute one and the same instrument.

(f)     Applicable Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without reference to its conflict of laws rules.

(g)     Severability.  Any provision of this Agreement or in any document which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

(h)     Entire Agreement.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.  There are no oral agreements between or among the parties hereto.

(i)     Construction.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or questions of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

f.          (j)     Further Assurances.  After the Effective Date of this Agreement, each party, without further consideration (i) shall promptly take such actions and shall promptly execute and deliver such documents, including, without limitation, amendments to the Company Agreement, as may be reasonably requested by another party hereto (or by his or its employees, agents, insurers, or representatives) to effectuate, evidence, authorize, or approve the transactions contemplated in this Agreement.

(k)     Notice.  All notices, requests, demands, waivers, consents, approvals, payments or other communications that are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt of confirmation of transmission by the sender's machine, if sent by facsimile or other electronic transmission, (c) the next day, if sent by overnight delivery service, or (d) on the third (3rd) Business Day following deposit in the United States mail, postage prepaid, certified, return receipt requested to the addresses and numbers set forth on the signature pages hereto (or such other addresses or numbers changed by written notice as provided in this Section).

*Signature pages follow:*

**EXECUTED** as of the Effective Date.

COMPANY

Magnolia Title Florida, LLC

By:_____
        John Magness, Manager

        Address for Notice:

        14701 St Mary's Lane, Suite 150
        Houston, TX 77079
        Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____
        Sarah Blackburn, Manager

        Address for notice:

        925 S. Capital Of Texas Highway
        Building A, Suite 175
        Austin, TX 78746
        Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF
THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY
APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE
AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE
EFFECTIVE DATE:

**MEMBERS**:

405 MANHATTAN INVESTMENTS, LLC

BY:    _____
        ALYSE DRAUGHON, MANAGER

ALPHABET INVESTMENTS, LLC

BY: _____

     MATTHEW CLAYTON HILL,
     MANAGER


PEABODY BULLDOG, LLC

BY: _____

     JOHN MAGNESS, MANAGER

**MAGNOLIA TITLE FLORIDA, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE:  DECEMBER 31, 2021**

**MEMBER INFORMATION**

| <u>Member</u> | <u>Units</u><br><u>(by Class)</u> |
|---|---|
| **Class A Series I Member:** | |
| Rabbit Food, LLC | 375 Units (3.75%) |
| **Class A Series II Members:** | |
| 405 Manhattan Investments, LLC | 4,162.5 Units (41.625%) |
| Alphabet Investments, LLC | 4,162.5 Units (41.625%) |
| Peabody Bulldog, LLC | <u>1,300 Units (13%   )</u> |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members:**  Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

| | | |
|---|---|---|
| 1. | #6 Metz Court, LLC | $ 26,100 |
| 2. | 405 Manhattan Investments, LLC | $ 24,950 |
| 3. | Alphabet Investments, LLC | <u>$ 24,950</u> |
| **Total** | | $  76,000<br>(subject to<br>Special Contribution<br>Provisions) |

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Florida, LLC

By: _____

John Magness, Manager

Address for Notice:

14701 St Mary's Lane, Suite 150
Houston, TX 77079
Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By: _____

Sarah Blackburn, Manager

Address for notice:

925 S. Capital Of Texas Highway
Building A, Suite 175
Austin, TX 78746
Email: _____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

**MEMBERS**:

405 MANHATTAN INVESTMENTS, LLC

BY: _____

ALYSE ANGELLE, MANAGER

DocuSign Envelope ID: 107C0C69-F40F-405D-B5F2-C6542BB5A338

**EXECUTED** as of the Effective Date.

**COMPANY**

Magnolia Title Florida, LLC

By:_____

      John Magness, Manager

      Address for Notice:

      14701 St Mary's Lane, Suite 150
      Houston, TX 77079
      Email: john.magness@magnoliatitleteam.com

**PARTIALLY REDEEMED MEMBER**

Rabbit Food, LLC

By:_____

      Sarah Blackburn, Manager

      Address for notice:

      925 S. Capital Of Texas Highway
      Building A, Suite 175
      Austin, TX  78746
      Email:_____

THE UNDERSIGNED MEMBERS OF THE COMPANY, WHICH CONSTITUTE ALL OF THE MEMBERS OF THE COMPANY NOT A PARTY TO THIS AGREEMENT, HEREBY APPROVE THE TRANSACTION CONTEMPLATED HEREIN AND AGREE TO THE AMENDMENT OF THE COMPANY AGREEMENT AS PROVIDED HEREIN AS OF THE EFFECTIVE DATE:

      **MEMBERS:**

      405 MANHATTAN INVESTMENTS, LLC

            DocuSigned by:

BY: [ *Alyse Draughon* _____
            ALYSE DRAUGHON, MANAGER

Partial Membership Interest Redemption Agreement
Signature Page

ALPHABET INVESTMENTS, LLC

BY: _____
MATTHEW CLAYTON HILL,
MANAGER


PEABODY BULLDOG, LLC

BY:_____
JOHN MAGNESS, MANAGER

**MAGNOLIA TITLE FLORIDA, LLC**
**REVISED**
**EXHIBIT 3.1**
**EFFECTIVE:  DECEMBER 31, 2021**

**MEMBER INFORMATION**

| <u>Member</u> | <u>Units</u><br><u>(by Class)</u> |
|---|---|
| **Class A Series I Member**: | |
| Rabbit Food, LLC | 375 Units (3.75%) |
| **Class A Series II Members**: | |
| 405 Manhattan Investments, LLC | 4,162.5 Units (41.625%) |
| Alphabet Investments, LLC | 4,162.5 Units (41.625%) |
| Peabody Bulldog, LLC | <u>1,300 Units (13%   )</u> |
| Total | 10,000 Units (100%) |

**Newly Admitted Class A-1 Members**:  Cancelled effective 12/31/21 and converted to Class A-Series II Units

**Special Contributions:**

1.    #6 Metz Court, LLC          $ 76,000
                                   (subject to
                                   Special Contribution
                                   Provisions)

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document COAST005544.pdf**

COAST005544

EXHIBIT B-2


**#6 Metz Court Assignment of Special Contributions**

**Magnolia Houston and Magnolia Dallas**

**COAST TO COAST TITLE, LLC D/B/A MAGNOLIA TITLE DALLAS**

**ASSIGNMENT OF SPECIAL CONTRIBUTIONS**

This Assignment of Special Contributions (this "Assignment") is made and entered into to be effective as of the Effective Date (defined below), by and between #6 Metz Court, LLC, a Texas limited liability company, solely owned by Sarah Blackburn ("Assignor") and 405 Manhattan, LLC, a Texas limited liability company and Alphabet Investments, LLC, a Texas limited liability company (collectively "Assignees"), and is being made for the purposes and consideration stated herein.

**WITNESSETH:**

Whereas, Assignor has previously made Special Contributions in the amount of $468,751 to Coast to Coast Title, LLC, a Texas limited liability company ("Company"), said contributions being described in Section 3.6 of Company's Third Amended and Restated Company Agreement, dated as of November 4, 2021 (the "Company Agreement") as Special Contributions; and

Whereas, Assignor and Assignees, in addition to other parties, have executed a certain Confidential Settlement Agreement And Release Of All Claims (the "Settlement Agreement"), the terms and provisions of which are incorporated herein by reference, wherein Assignor agreed to transfer and assign to Assignees the following described portion of Assignor's Special Contributions in Company; and

Whereas, Assignor has agreed to assign the following described portion of Assignor's Special Contributions in Company to Assignees, and Assignees desire to accept the assignment and transfer of said Special Contributions, in accordance with the terms and provision as set forth herein below;

NOW, THEREFORE, Assignor and Assignees hereby agree as follows:

1.     For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, assigns and delivers to Assignees, the following amounts of Assignor's Special Contributions, free and clear of all liens and encumbrances:

    (a)     405 Manhattan Investments, LLC:  $190,875; and

    (b)     Alphabet Investments, LLC: $190,876.

    Assignor retains the sum of $87,000 of Special Contributions for its own account.

2.     Assignor hereby represents that the Special Contributions assigned and transferred to Assignees is owned by Assignor in fee simple and has not heretofore been transferred, assigned or encumbered in any manner and that Assignor has full authority to enter into and complete the

Assignment to Assignees in the manner described herein. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent) or any equity interest or right to purchase or receive any equity interest in the Special Contributions assigned herein. There is no litigation pending, or to the best knowledge of Assignor, threatened, which in any manner adversely affects the Special Contributions or the legal capacity of Assignor to consummate the transactions contemplated by this Assignment. Assignor will promptly indemnify the Assignees to the fullest extent by law for any damage, including attorney fees, incurred by Assignees with respect to any claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.      This Assignment shall be governed by and construed and enforced under the laws of the State of Texas. The parties agree the venue for any action filed to enforce this Assignment shall be in the appropriate courts sitting in Harris County, Texas.

4.      The parties represent and warrant that each has taken all necessary action to authorize their respective managers to execute this Assignment on each party's behalf, and upon execution hereof by each party's respective manager, each party and their respective legal representatives, successors and assigns shall be fully bound by the terms and provisions hereof.

5.      This Assignment may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles, photocopies or email copies thereof, may be appended to any other counterpart and when so appended will constitute an original.

6.      This Assignment is made and entered into in furtherance of the Settlement Agreement, and each party agrees to execute and deliver such further consents, affidavits, agreements and other documents, including, without limitation, amendments to the Company Agreement, that may be required or necessary in order to effectuate the provisions of this Assignment.

7.      This Assignment represents the entire agreement between the parties hereto and supersedes all prior negotiations or agreements, either oral or written, between the parties pertaining to the subject matter hereof. This Assignment may be amended only by a written instrument signed by the parties hereto.

8.      The Effective Date of this Assignment shall be December 31, 2021, for all purposes.

*Signature page follows:*

EXECUTED, as of the date of the respective signatures herein below, but to be effective as of the Effective Date.

#6 METZ COURT, LLC

_____            _____
DATED                                       BY:  SARAH BLACKBURN
                                            ITS:  MANAGER


                                            405 MANHATTAN INVESTMENTS, LLC


_____            _____
DATED                                       BY:  ALYSE DRAUGHON
                                            ITS:  MANAGER


                                            ALPHABET INVESTMENTS, LLC

                                            _M. Clayton Hill_____
_____
DATED                                       BY:  MATTHEW CLAYTON HILL
                                            ITS:  MANAGER


THE UNDERSIGNED MEMBERS OF THE COMPANY HEREBY APPROVE OF THE TRANSACTION CONTEMPLATED HEREIN AS OF THE DATE FIRST ABOVE MENTIONED:

                              **MEMBERS**:

                              RABBIT FOOD, LLC

                              BY:  _____
                                    SARAH BLACKBURN,   MANAGER

                              405 MANHATTAN INVESTMENTS, LLC.

                              BY:  _____
                                    ALYSE DRAUGHON, MANAGER


*Assignment of Special Contributions*
*Signature Page*

ALPHABET INVESTMENTS, LLC

BY: _____

MATTHEW CLAYTON HILL, MANAGER

# SOL CITY TITLE, LLC D/B/A MAGNOLIA TITLE

## ASSIGNMENT OF SPECIAL CONTRIBUTIONS

This Assignment of Special Contributions (this "Assignment") is made and entered into to be effective as of the Effective Date (defined below), by and between #6 Metz Court, LLC, a Texas limited liability company, solely owned by Sarah Blackburn ("Assignor") and GF Insurance Investments, LLC, a Texas limited liability company and Alphabet Investments, LLC, a Texas limited liability company (collectively "Assignees"), and is being made for the purposes and consideration stated herein.

## WITNESSETH:

Whereas, Assignor has previously made Special Contributions in the amount of $183,000 to Sol City Title, LLC, a Texas limited liability company ("Company"), said contributions being described in Section 3.6 of Company's Third Amended and Restated Company Agreement, dated as of November 4, 2021 (the "Company Agreement") as Special Contributions; and

Whereas, Assignor and Assignees, in addition to other parties, have executed a certain Confidential Settlement Agreement And Release Of All Claims (the "Settlement Agreement"), the terms and provisions of which are incorporated herein by reference, wherein Assignor agreed to transfer and assign to Assignees the following described portion of Assignor's Special Contributions in Company; and

Whereas, Assignor has agreed to assign the following described portion of Assignor's Special Contributions in Company to Assignees, and Assignees desire to accept the assignment and transfer of said Special Contributions, in accordance with the terms and provision as set forth herein below;

NOW, THEREFORE, Assignor and Assignees hereby agree as follows:

1.      For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, assigns and delivers to Assignees, the following amounts of Assignor's Special Contributions, free and clear of all liens and encumbrances:

    (a)     GF Insurance Investments, LLC:  $48,000; and

    (b)     Alphabet Investments, LLC: $48,000.

    Assignor retains the sum of $87,000 of Special Contributions for its own account.

2.      Assignor hereby represents that the Special Contributions assigned and transferred to Assignees is owned by Assignor in fee simple and has not heretofore been transferred, assigned or encumbered in any manner and that Assignor has full authority to enter into and complete the Assignment to Assignees in the manner described herein.   There is no outstanding amount,

liability, obligation, indebtedness or compensation (fixed or contingent) or any equity interest or right to purchase or receive any equity interest in the Special Contributions assigned herein. There is no litigation pending, or to the best knowledge of Assignor, threatened, which in any manner adversely affects the Special Contributions or the legal capacity of Assignor to consummate the transactions contemplated by this Assignment. Assignor will promptly indemnify the Assignees to the fullest extent by law for any damage, including attorney fees, incurred by Assignees with respect to any claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.      This Assignment shall be governed by and construed and enforced under the laws of the State of Texas. The parties agree the venue for any action filed to enforce this Assignment shall be in the appropriate courts sitting in Harris County, Texas.

4.      The parties represent and warrant that each has taken all necessary action to authorize their respective managers to execute this Assignment on each party's behalf, and upon execution hereof by each party's respective manager, each party and their respective legal representatives, successors and assigns shall be fully bound by the terms and provisions hereof.

5.      This Assignment may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles, photocopies or email copies thereof, may be appended to any other counterpart and when so appended will constitute an original.

6.      This Assignment is made and entered into in furtherance of the Settlement Agreement, and each party agrees to execute and deliver such further consents, affidavits, agreements and other documents, including, without limitation, amendments to the Company Agreement, that may be required or necessary in order to effectuate the provisions of this Assignment.

7.      This Assignment represents the entire agreement between the parties hereto and supersedes all prior negotiations or agreements, either oral or written, between the parties pertaining to the subject matter hereof. This Assignment may be amended only by a written instrument signed by the parties hereto.

8.      The Effective Date of this Assignment shall be December 31, 2021, for all purposes.

*Signature page follows:*

EXECUTED, as of the date of the respective signatures herein below, but to be effective as of the Effective Date.

#6 METZ COURT, LLC

_____          _____
DATED                              BY:  SARAH BLACKBURN
                                   ITS:  MANAGER


GF INSURANCE INVESTMENTS, LLC

_____          _____
DATED                              BY:  JESSICA GARTH
                                   ITS:  MANAGER

ALPHABET INVESTMENTS, LLC

_____          _____
DATED                              BY:  CLAYTON HILL
                                   ITS:  MANAGER


THE UNDERSIGNED MEMBERS OF THE COMPANY HEREBY APPROVE OF THE TRANSACTION CONTEMPLATED HEREIN AS OF THE DATE FIRST ABOVE MENTIONED:

**MEMBERS**:

SOL CITY TITLE MANAGERS, LLC

BY: _____
      SARAH BLACKBURN,  MANAGER

GF INSURANCE INVESTMENTS, LLC.

BY: _____
      JESSICA GARTH, MANAGER

*Assignment of Special Contributions*
*Signature Page*

ALPHABET INVESTMENTS, LLC

BY: _____

MATTHEW CLAYTON HILL, MANAGER

Assignment of Special Contributions
Signature Page

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document COAST005545.pdf**

COAST005545

EXHIBIT A

Magness Parties Redemption Agreements

# REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between CSP Texas Joint Venture, LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

## WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement:

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.     <u>Redemption of Interest</u>. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.     <u>Representations</u>. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation,

1

remuneration or commission for the referral, transfer, designation, disposition or diversion of business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the Interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    Dispute Resolution.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation.  If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation.  No party may unreasonably withhold consent to the selection of a mediator.  The parties will share the cost of the mediation equally.  By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed.  The parties may also agree to replace mediation with some other form of alternative dispute resolution.  Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution.  Nothing in this section will prevent a party from resorting to judicial proceedings if:  (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations.  The use of any alternative dispute resolution procedure will not be construed under the doctrine of latches, waiver or estoppel to affect adversely the rights of either party.

4.    Controlling Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.  The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XJMI47T1\Redemption Agmt59.docx

5.     Binding Effect.     The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

6.     Execution in Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.     Further Assurances.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.     Entire Agreement and Amendment.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.     Effective Date.     The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.


CSP Texas Joint Venture, LLC


By: _____
    _____, its _____



_____
            John Magness

THE PEABODY BULLDOG, LLC

By: _____
    John Magness, its Manager


3

# REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between Corpus Christi Title LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

## WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement:

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.      Redemption of Interest. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.      Representations. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation, remuneration or commission for the referral, transfer, designation, disposition or diversion of

1

business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the Interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

      3.    <u>Dispute Resolution</u>.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation. If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation. No party may unreasonably withhold consent to the selection of a mediator. The parties will share the cost of the mediation equally. By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed. The parties may also agree to replace mediation with some other form of alternative dispute resolution. Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution. Nothing in this section will prevent a party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations. The use of any alternative dispute resolution procedure will not be construed under the doctrine of latches, waiver or estoppel to affect adversely the rights of either party.

      4.    <u>Controlling Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

      5.    <u>Binding Effect</u>.    The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

2

6.      <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.      <u>Further Assurances</u>.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.      <u>Entire Agreement and Amendment</u>.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.      <u>Effective Date</u>.      The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

        SIGNED to be effective on the Effective Date of this Agreement.

Corpus Christi Title LLC

By: _____

        _____, its _____

_____
John Magness

THE PEABODY BULLDOG, LLC

By: _____
John Magness, its Manager

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XJMI47T1\Redemption Agmt69.docx

# REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between CSP Texas Joint Venture -- San Antonio, LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

## WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement:

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.     <u>Redemption of Interest</u>. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.     <u>Representations</u>. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation,

1

remuneration or commission for the referral, transfer, designation, disposition or diversion of business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the Interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    Dispute Resolution.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation. If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation. No party may unreasonably withhold consent to the selection of a mediator. The parties will share the cost of the mediation equally. By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed. The parties may also agree to replace mediation with some other form of alternative dispute resolution. Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution. Nothing in this section will prevent a party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations. The use of any alternative dispute resolution procedure will not be construed under the doctrine of latches, waiver or estoppel to affect adversely the rights of either party.

4.    Controlling Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XJMI47T1\Redemption Agmt39.docx

5.    <u>Binding Effect</u>.        The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

6.    <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.    <u>Further Assurances</u>.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.    <u>Entire Agreement and Amendment</u>.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.    <u>Effective Date</u>.        The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.


CSP Texas Joint Venture - - San Antonio, LLC


By: _____
        _____, its _____



John Magness

THE PEABODY BULLDOG, LLC

By: _____
        John Magness, its _____


3

# REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT ("Agreement") is being made and entered into by and between Gateway City Title, LLC, a Texas limited liability company (the "Company"), and John Magness and The Peabody Bulldog, LLC, a Texas limited liability company (together, "Assignor"), and is being made for the purposes and consideration stated herein.

## WITNESSETH:

WHEREAS, Assignor acquired membership ownership interest of the Company (the "Interest");

WHEREAS, Assignor wishes to assign the Interest to the Company on the terms and conditions set out in this Agreement;

WHEREAS, the Company has agreed to redeem the Interest from Assignor on the terms and conditions set out in this Agreement:

NOW, THEREFORE, for and in consideration of the promises, agreements and payments, if any, set forth herein, the Company and Assignor hereby agree as follows:

1.      <u>Redemption of Interest</u>. Assignor agrees to transfer, assign and convey and does hereby transfer, assign and convey the Interest to the Company, and the Company hereby agrees to redeem and does hereby redeem the Interest from Assignor.

2.      <u>Representations</u>. Assignor hereby represents that the Interest is owned by Assignor as stated in the Recitals above, has not been transferred, assigned or encumbered, in any manner, and that Assignor has full authority to enter into this Agreement and to transfer the Interest to the Company. There is no outstanding amount, liability, obligation, indebtedness or compensation (fixed or contingent), or any equity interest or right to purchase or receive any equity interest in the Company owing to Assignor from the Company or from any member, officer, or manager of the Company. Assignor has not taken any unauthorized action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) which has caused, bound or committed, or would cause, bind or commit, the Company to incur any obligation, liability or agreement (whether pecuniary or otherwise). Assignor has neither taken nor omitted any action (including, without limitation, the negotiation, execution or entering into of any contract, agreement, arrangement, or other commitment) pursuant to which Assignor has received, will receive or could receive any payment, compensation, remuneration or commission of any nature or kind (whether pecuniary or otherwise) from any person, firm or entity, directly or indirectly in exchange for the referral, transfer, designation or other disposition of business opportunities of the Company, or the diversion of business opportunities from the Company (including, without limitation, any action which has resulted, will result or could result, in Assignor receiving any payment, compensation, remuneration or commission for the referral, transfer, designation, disposition or diversion of

1

business opportunities from or of the Company to other persons, firms or entities engaged in whole or in part in the business in which the Company is engaged). Assignor has not placed any unauthorized order for goods or services on behalf of the Company. Assignor has not withdrawn, taken, appropriated or otherwise received, and will not withdraw, take, appropriate or otherwise receive, any funds of the Company other than as permitted under this Agreement or that Executive Employment Agreement dated effective as of April 15, 2021. There is no litigation pending or, to the best knowledge of Assignor, threatened which in any manner adversely affects the Interest or the legal capacity of Assignor to consummate the transactions contemplated by this Agreement. No representation or warranty by Assignor in this Agreement, or any written or oral statement, document, certificate or instrument made or delivered by Assignor in connection with this Agreement or the transactions contemplated by this Agreement, contains any untrue statement of material fact or omits to state a fact necessary in order to make the statements contained herein or therein not misleading. All representations, warranties and covenants of Assignor made in this Agreement shall be true and correct as of the Effective Date and shall survive irrespective of any investigation made by or on behalf of the Company or any officer, manager or member of the Company. Assignor will promptly indemnify the Company to the fullest extent allowed by law for any damage incurred by the Company under any third party claims arising by, through or under Assignor which result from any breach of the foregoing representations and warranties.

3.    <u>Dispute Resolution</u>.    The parties will attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in good faith in a spirit of mutual cooperation. If those attempts fail, then the dispute will be mediated by a mutually accepted mediator to be chosen by the parties within forty-five (45) days after written notice by either party to the other demanding mediation. No party may unreasonably withhold consent to the selection of a mediator. The parties will share the cost of the mediation equally. By mutual agreement, the parties may postpone mediation until some specified but limited discovery about the dispute has been completed. The parties may also agree to replace mediation with some other form of alternative dispute resolution. Any dispute that cannot be resolved by the parties through negotiation, mediation or other form of agreed alternative dispute resolution within sixty (60) days of the date of the initial demand for it by one of the parties may then be submitted to the courts for resolution. Nothing in this section will prevent a party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent serious and irreparable injury to one party or to others; or (iii) litigation is required to be filed prior to the running of the applicable statute of limitations. The use of any alternative dispute resolution procedure will not be construed under the doctrine of latches, waiver or estoppel to affect adversely the rights of either party.

4.    <u>Controlling Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any action filed to enforce this Agreement shall be in the appropriate courts sitting in Travis County, Texas.

5.    <u>Binding Effect</u>.    The terms and provisions of this Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

2

C:\Users\Kelly\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\XJMI47T1\Redemption Agmt68.docx

6.     <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The signature page of any counterpart, and facsimiles and photocopies thereof, may be appended to any other counterpart and when so appended will constitute an original.

7.     <u>Further Assurances</u>.  Each party covenants and agrees to execute and deliver such further consents, certificates, affidavits, agreements, instruments and other documents as another party reasonably requests to effectuate the provisions of this Agreement.

8.     <u>Entire Agreement and Amendment</u>.  This Agreement represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, either oral or written, between the parties pertaining to the subject matter of this Agreement.  This Agreement may be amended only by written instrument signed by the parties hereto.

9.     <u>Effective Date</u>.      The Effective Date of this Agreement shall be the 31st day of December, 2021 for all purposes.

SIGNED to be effective on the Effective Date of this Agreement.

Gateway City Title LLC

By: _____
          _____, its _____


_____
          John Magness

THE PEABODY BULLDOG, LLC

By: _____
          John Magness, its _____

3