# EXHIBIT J

| | |
|---|---|
| From: | Debbie Merritt CFA, PhD |
| Sent: | Tuesday, February 15, 2022 4:17 PM CST |
| To: | Matthew D. Hill; John Magness |
| Subject: | Email to Bspoke |
| Attachments: | 2022-02-15 TG_Email to BSpoke.docx |

Matt / John – Terry would like you guys to review and comment on the attached suggested language to Bo.



## Debbie Merritt CFA, PhD
*Chief Financial Officer*

(CNSX: STX) (OTC: STXMF)

14701 Saint Mary's Lane, Suite 150

Houston, Texas 77079

Direct: (281) 406-8621

Cell: (214) 537-2320

| WEBSITE | STOCK |
|---|---|

**Disclaimer**
The information contained in this communication from dmerritt@starrexintl.com is confidential and may be legally privileged. It is intended solely for use by mhill@starrexintl.com;johnmagness1020@gmail.com and others authorized to receive it. If you are not mhill@starrexintl.com;johnmagness1020@gmail.com you are hereby notified that any disclosure, copying, distribution or taking action in reliance of the contents of this information is strictly prohibited and may be unlawful.

# NATIVE DOCUMENT PLACEHOLDER

# Please review the native document COAST008706.docx

COAST008706

I think it is more appropriate for me to respond to Bo's email to Debbie, dated February 14, 2022, at 5:54 pm and in response to my telephone conversation with Sarah earlier today:

1. I am surprised and disappointed that you have decided that the pending transactions between Starrex and the Bspoke agencies are terminated. Even though the Ben Moreland refusal to participate in the transaction at the last hour was a surprising development, I felt that we had a couple of options to explore to determine whether or not we could resolve this issue, which apparently you are unwilling or unable to pursue. I also requested a written term sheet from Moreland outlining the terms of his post-closing buyout which I have never received. Although I am not necessarily in agreement to pursue this option, I would have appreciated the opportunity to review and discuss it and am still willing to do so to salvage the transaction.

2. In my conversation with Sarah, she clearly stated that in her opinion the transaction was dead, and I would like for you for confirm this in writing.

3. In Bo's email he referred to Starrex as a party to settling up the Magnolias and this is not correct. Starrex is not an owner of nor in any business relationship with the Magnolias. These discussions need to be held between the private owners of the Magnolias.

4. Bo's email mentions "all four Magnolias" even though you have not signed and delivered to us the Florida and Arkansas Company Agreements, as previously agreed on several occasions. In good faith, we have advanced $140,000 to Magnolia Florida and Starrex, on our behalf, advanced $110,000 to Bspoke Title Holdings, in repayment of Bspoke Title's funds advanced to Magnolia Florida, for a total of $250,000 advanced by us to Magnolia Florida and Magnolia Arkansas, relying upon Sarah's assurance that the Company Agreement would be signed and delivered. If it is your intention not to sign the Agreement, please advise me of your arrangements to repay these funds. Additionally, I assume that you are making arrangements to pay the ongoing expenses of these entities.

5. With respect to Magnolia Houston and Magnolia North Texas, we intend to continue to fund the ramping up of these entities as needed and when we believe the timing is appropriate, we will begin negotiating a sale of these entities to a third-party purchaser. Starrex has expressed an intention, although not a commitment, to acquire these entities (along with Magnolia Florida and Magnolia Arkansas if the ownership issues are resolved) at some point in the future when it is determined that the timing is appropriate. Although it would be preferable to have a unanimous agreement on the continued operations and perspective sales opportunities of the Magnolias, the sale of these entities can be completed without your approval, pursuant to the drag along provisions in the Company Agreements.

6. I do not represent John Magness with respect to his contractual relationships with the Bspoke entities and I assume that John will have separate discussions with you regarding any issues that he may have.

7. Please explain in detail your comment that Bspoke would be reimbursed for outstanding expenses/invoices and true-ups for fronted expenses to acquire Magness' team that choose to leave Bspoke.

8. You stated that you would expect to receive a return of capital for the Magnolias, but the only capital that I am aware of that has not previously been reimbursed to you are the Special

      Contributions previously agreed to, which will be repaid in the same manner as the Class A-1 contributions are to be repaid at the time of a subsequent sale of the Magnolias.

9. If you are interested in discussing a sale of your interest in the Houston and North Texas Magnolias, please make a proposal for our consideration. Your email makes a reference to the convertible noteholders of Magnolia Houston, but this obligation has been assumed by you and is a part of your equity in Magnolia Houston per the Company Agreement.

Once again, I am of the opinion that Starrex's preference is to continue to work towards completing a transaction for the Bspoke agencies, and the Magnolia owners would continue working together on building the Magnolia agencies pursuant to our prior agreements, but if this is not possible, then I want to encourage everyone to work toward an amicable termination of the negotiation, and agree on the manner in which the Magnolias will continue to be funded and operated efficiently.