IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COAST TO COAST TITLE, LLC, SOL CITY TITLE, LLC, MAGNOLIA TITLE ARKANSAS, LLC, MAGNOLIA TITLE FLORIDA, LLC, THE PEABODY BULLDOG LLC, AND JOHN MAGNESS *Plaintiffs* | § § § § § § § § § | |
| V. | § § | CIVIL ACTION NO.:4:24-cv-2767 |
| TYRRELL L. GARTH, PHILLIP H. CLAYTON, STARREX TITLE FLORIDA, LLC, LAURIE COOPER, MARKETSTREET CAPITAL PARTNERS AR, LLC, MARKETSTREET CAPITAL PARTNERS, LLC, AND BRIAN A. BREWER *Defendants.* | § § § § § § § § § | |

**FORMER COUNSEL'S OBJECTION AND RESPONSE TO DEFENDANTS
TYRRELL L. GARTH AND PHILLIP H. CLAYTON'S MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ................................................................. v

STATEMENT OF ISSUES AND STANDARDS .......................................................... v

SUMMARY OF THE ARGUMENT ........................................................................ vi

I. INTRODUCTION ............................................................................................. 1

II. LEGAL STANDARD ....................................................................................... 3

III. FORMER COUNSEL CONDUCTED A REASONABLE INQUIRY INTO THE
    FACTUAL BASIS FOR THE ALLEGATIONS ................................................ 4

    A. Pre-Filing Investigation and Due Diligence ........................................... 4

    B. Reasonable Reliance on Client Representations ...................................... 5

    C. Limited Access to Critical Financial Information .................................... 5

IV. THE ALLEGATIONS IN THE SAC WERE ADEQUATELY SUPPORTED ............. 7

    A. The Equity Scheme Allegations ............................................................ 7

    B. The HMH Investment Allegations ......................................................... 9

    C. Commercial Construction Services Issue ............................................... 9

    D. Promissory Notes Allegations .............................................................. 10

    E. Starrex's Obligation to Acquire the Magnolia Companies ...................... 10

    F. Control by Garth and Clayton ............................................................... 11

    G. "Additional Misstatements" ................................................................ 12

V. RULE 11 SANCTIONS ARE PARTICULARLY INAPPROPRIATE AT THE
    PRE-DISCOVERY STAGE .......................................................................... 13

VI. CONCLUSION .............................................................................................. 15

# TABLE OF CITATIONS

**Cases**

*Blue v. United States Dep't of the Army* (4th Cir. 1990) 914 F.2d 525, 535, *cert, denied sub nam.*, Chambers v. United States Dep't of the Army (1991) 499 U.S. 959, 111 S. Ct. 1580, 113 L. Ed. 2d 645 .................................................................................................................. 15

*Castro & Co. v. Diamond Offshore Servs. Ltd.*, No. 3:18-cv-574-M, 2018 WL 3361554, at *5 (N.D. Tex. July 10, 2018) ................................................................................................ 14

*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993) ............................ 4

*F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) .................................................... 15

*F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580-81 (5th Cir. 2008) ......................................... vi, 4, 5

*Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-65 (Fed. Cir. 2000) ....................... 6

*Mark's Airboats, Inc. v. Thibodaux*, No. CIV.A. 6:13-0274, 2015 WL 1467097, at *4 (W.D. La. Mar. 27, 2015) ...................................................................................................... 14

*Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) ........................................................... 15

*Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988) ..................... vi, 4

*Sievert v. Howmedica Osteonics Corp.*, No. 3:18-CV-2175-S, 2020 WL 2507678, at *3 (N.D. Tex. May 15, 2020) .................................................................................................. 14

*Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 443-444 (5th Cir. 1992) ................ vi, 5

*SortiumUSA, LLC v. Hunger*, No. 3:11-cv-1656-M, 2014 WL 1080765, at *5-*6 (N.D. Tex. Mar. 18, 2014) ............................................................................................................ 15

*Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 885 (5th Cir. 1988) .................................. 3, 8

**Rules**

Fed. R. Civ. P. 11(c) .............................................................................................. 3

Fed. R. Civ. P. 11(b) .............................................................................................. 4

Fed. R. Civ. P. 11(b)(3) ..........................................................................................v, 4

Fed. R. Civ. P. 11, Advisory Committee Notes (1983) .................................................... v

Fed. R. Civ. P. 11, Advisory Committee Notes (1993) ................................................. vi, 4

Rule 11(b)(3)....................................................................................................................... 7

## NATURE AND STAGE OF PROCEEDING

This matter comes before the Court on Defendants Tyrrell L. Garth and Phillip H. Clayton's Motion for Sanctions against Former Counsel Philip D. Racusin and Hendershot Cowart P.C. ("Former Counsel"). Former Counsel represented Plaintiffs Coast to Coast Title, LLC, Sol City Title, LLC, Magnolia Title Florida, LLC, Magnolia Title Arkansas, Ltd., The Peabody Bulldog, LLC, and John Magness until March 25, 2025, when the Court granted their motion to withdraw (Dkt. 74).

Subsequent to Former Counsel's withdrawal, new counsel for Plaintiffs successfully obtained a remand of the underlying case to the 11th Judicial District Court of Harris County, Texas. Despite this remand, Defendants contend this Court retains jurisdiction over their pending Motion for Sanctions as a collateral matter.

Defendants filed their Motion for Sanctions on April 21, 2025 (Dkt. 79), but only provided actual notice of the filing itself to Former Counsel on May 6, 2025—merely six days before the response deadline of May 12, 2025. This compressed timeframe falls short of the "reasonable opportunity to respond" mandated by Fed. R. Civ. P. 11(c), and accordingly, Former Counsel objects to this procedurally deficient notice. Nevertheless, without waiving this objection, Former Counsel submits this response demonstrating that the Second Amended Complaint ("SAC") fully satisfied Rule 11 requirements and sanctions are unwarranted.

## STATEMENT OF ISSUES AND STANDARDS

The issue before the Court is whether Former Counsel's signing and filing of the Second Amended Complaint violates Federal Rule of Civil Procedure 11(b), thereby warranting the extraordinary remedy of sanctions.

Rule 11(b) requires attorneys to certify that pleadings are: (1) not presented for an improper purpose; (2) supported by existing law or nonfrivolous arguments for changing the law; and (3)

have evidentiary support or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The Fifth Circuit employs an objective standard of reasonableness under the circumstances, evaluating whether the signing attorney made a reasonable inquiry into the factual and legal basis for claims at the time of filing. *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580-81 (5th Cir. 2008); *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

Critically, Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11, Advisory Committee Notes (1983). The certification required is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention. Fed. R. Civ. P. 11, Advisory Committee Notes (1993). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

## **SUMMARY OF THE ARGUMENT**

Former Counsel respectfully submits that sanctions are unwarranted because the allegations in the Second Amended Complaint were made after reasonable inquiry and were well-supported based on information available at the time of filing. The Fifth Circuit has repeatedly cautioned against using Rule 11 as an inappropriate substitute for summary judgment, especially at the pre-discovery stage where asymmetrical access to information exists.

First, Former Counsel conducted extensive investigation before filing the SAC, including numerous interviews and communications with Plaintiffs over approximately 14 months, and thorough review of available documentary evidence. The reasonableness of this inquiry must be evaluated in context, considering the complexity of this commercial dispute, the feasibility of pre-filing investigation, and the extent to which factual development required discovery.

Second, Former Counsel reasonably relied on detailed, consistent accounts from John Magness (Manager of the Magnolia Companies) and Britt Naponic (General Counsel), both of whom possessed firsthand knowledge of the events alleged.

Third, key financial information remained in Defendants' exclusive control. Despite requests, Starrex produced no bank statements for June or July 2022—the precise period when the alleged wire transfers from Defendants' entities purportedly occurred, according to Defendants. Where critical evidence remains in a defendant's possession, Rule 11(b)(3) explicitly permits allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Fourth, while Former Counsel acknowledges one unintentional calculation error in the SAC regarding a duplicate $225,000 entry, this minor error was immaterial to the substance of the pleadings and does not warrant sanctions. The remainder of the allegations—including those regarding the equity scheme, HMH investment, promissory notes, acquisition representations, and de facto control—were supported by client accounts and available documentary evidence.

Finally, Defendants' Motion improperly seeks to short-circuit this complex commercial dispute before discovery has even begun, attempting to weaponize Rule 11 to avoid adjudication on the merits.  The factual disputes raised in Defendants' Motion are precisely the type that should be resolved through discovery, not through sanctions.

For these reasons, Former Counsel respectfully requests that the Court deny Defendants' Motion for Sanctions.

<u>**FORMER COUNSEL'S OBJECTION AND RESPONSE**</u>
<u>**TO DEFENDANTS' MOTION FOR SANCTIONS**</u>

Former Counsel Philip Racusin and Hendershot Cowart P.C. (hereinafter "Former Counsel"), respectfully submit this Objection and Response to Defendants Tyrrell L. Garth and Phillip H. Clayton's Motion for Sanctions.

## I. INTRODUCTION

Rule 11 sanctions are warranted only in exceptional circumstances where no reasonable attorney would have filed the challenged pleading after conducting an appropriate investigation. This is not such a case. The Second Amended Complaint ("SAC") was filed following extensive investigation, reliance on client representations that were objectively reasonable under the circumstances, and analysis of available documentary evidence—much of which remained selectively controlled by Defendants.

From the outset, it is worth noting that Defendants' Motion fails to practice what it preaches. The Motion mischaracterizes one of the most important pieces of evidence in this case—a text message exchange between Debbie Merritt and John Magness. Defendants display a text that ends with Merritt writing "Ok thanks." *See* Motion for Sanctions, p. 3. However, they deliberately omit her subsequent message from the same exchange:



**Produced by Starrex**



**Produced by Starrex**
**(Presumably a screen capture before deletion)**

This text, which Merritt later attempted to delete, explicitly confirms that the notes were characterized as "prepayment for the acquisition" rather than as actual debt—directly supporting key allegations in the SAC. Defendants' selective presentation exemplifies the misleading nature of their Motion.

The Fifth Circuit has repeatedly cautioned against using Rule 11 as an inappropriate substitute for summary judgment, especially at the pre-discovery stage where asymmetrical access to information exists. As the court observed in *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 885 (5th Cir. 1988), sanctions may "chill attorneys' enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories. As a result, all will suffer."

Defendants' Motion seeks to short-circuit this complex commercial dispute before discovery has even begun, attempting to weaponize Rule 11 to avoid adjudication on the merits.

While Former Counsel acknowledges a single, discrete calculation error in the SAC, this minor error was unintentional and immaterial to the substance of the pleadings. The remainder of the allegations were made after reasonable inquiry and were well-supported based on information available at the time of filing.

Former Counsel withdrew as counsel for Plaintiffs on March 25, 2025. (Dkt. 74). Although the underlying case has since been remanded, Defendants contend the Court retains jurisdiction over the pending Motion. Defendants filed their Motion on April 21, 2025 (Dkt. 79), but only provided notice to Former Counsel late on May 6, 2025, of the actual filing of their Motion, affording minimal time to respond to an apparent Motion Docket Date of May 12, 2025.  This is legally insufficient notice of the filing of a motion for sanctions and accordingly, Former Counsel objects.  Fed. R. Civ. P. 11(c) (requiring a reasonable opportunity to response).  Former Counsel has not been involved in the case since March 25, 2025 and was not involved, nor did it receive, any filing or hearing thereafter until the afternoon of May 6, 2025, as stated.  Without waiving the objection and despite this, Former Counsel provides this detailed response demonstrating that the SAC satisfies the requirements of Rule 11 and that sanctions are unwarranted.

## II. LEGAL STANDARD

Rule 11 requires attorneys to certify that pleadings are (1) not presented for an improper purpose, (2) supported by existing law or nonfrivolous arguments for changing the law, and (3) supported by evidence or likely to have evidentiary support after discovery. Fed. R. Civ. P. 11(b). The Fifth Circuit employs an objective standard, evaluating whether the signing attorney made a reasonable inquiry into the factual and legal basis for claims at the time of filing. *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580-81 (5th Cir. 2008). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

Critically, the "certification is that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact." Fed. R. Civ. P. 11, Advisory Committee Notes (1993). The Fifth Circuit has consistently held that "Rule 11 does not require that the legal theory espoused in a filing prevail." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993). Significantly, "Rule 11, therefore does not permit the imposition of sanctions simply for bringing a meritless lawsuit." *Maxxam*, 523 F.3d at 585 (internal quotation marks omitted).

Rule 11 also explicitly permits allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b)(3). This provision recognizes that plaintiffs may lack access to key evidence before discovery, particularly in complex business disputes where evidence is largely in defendants' possession.

## III. FORMER COUNSEL CONDUCTED A REASONABLE INQUIRY INTO THE FACTUAL BASIS FOR THE ALLEGATIONS

### A. Pre-Filing Investigation and Due Diligence

Former Counsel conducted extensive interviews, meetings, and communications with Plaintiffs over the course of approximately 14 months. John Magness, as the Manager of the Magnolia Companies, and Britt Naponic, as General Counsel, provided detailed, consistent accounts of Defendants' actions based on their direct involvement and personal knowledge. Former Counsel also thoroughly reviewed available documents which were highly voluminous, mostly unorganized, produced in a variety of formats, and contained glaring omissions of production.  Former Counsel has hundreds of pages of emails, phone notes, and text messages with Magness and Naponic relating to the allegations and facts of this matter.

The Fifth Circuit recognizes that the reasonableness of an attorney's inquiry depends on factors including the complexity of the factual and legal issues in question, the extent to which pre-signing investigation was feasible, and the extent to which factual development requires

discovery. *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 443-444 (5th Cir. 1992). All these factors support Former Counsel's investigation as reasonable under the circumstances.

**B. Reasonable Reliance on Client Representations**

An attorney may reasonably rely on client representations when the client possesses firsthand knowledge and the attorney has no reason to doubt the client's veracity. As here, specific, detailed information was obtained from a party in a case where a party was not complying with its discovery obligations, the attorneys were entitled to rely on that information. *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-65 (Fed. Cir. 2000). For instance, Starrex refused to produce entire categories of documents that were highly relevant and essential to the matter. Former Counsel communicated with Starrex counsel about these issues but they were never fully corrected.

Magness and Naponic were uniquely positioned to have direct knowledge of the events alleged, including conversations with Defendants and observations of their control over operations. Given their roles as Manager and General Counsel, respectively, Former Counsel had no reason to doubt the reliability of their detailed, consistent accounts.[1]

**C. Limited Access to Critical Financial Information**

Defendants' Motion repeatedly cites to financial documents that were selectively produced during state court litigation, calling them Defendants' own documents. They are not—they are Starrex's documents prepared by a Starrex's CFO and Starrex's Controller, much of which Magness and Naponic consider unreliable. A review of "accounting records" produced reveals numerous problems, inconsistencies, suspiciously round numbers, vague descriptions pertaining to large monetary transfers, nonsensical characterization, and widely varying descriptions of what

---

[1] To the extent necessary, these numerous client communications and representations are available to the Court for *in camera* inspection without waiving the attorney-client privilege. Likewise, Former Counsel is willing to provide testimony.

would seem to be the same repeated expense. Notably, Starrex produced <u>no bank statements</u> for June or July 2022—the precise period when the alleged wire transfers from Defendants' entities purportedly occurred. The first bank records provided were for a single account in August 2022, with comprehensive records only beginning in September 2022.

Starrex was fanatical about not allowing depositions and in the related state case, Starrex took significant actions to prevent any deposition. No witnesses were deposed. Critically, the day before Plaintiffs were scheduled to depose Starrex's head IT employee and receive responses to discovery requests for Starrex bank records and authorization to sign John Magness's signature on numerous checks totaling millions of dollars, Starrex called and along with another counsel who had appeared *only* to represent Debbie Merritt individually, begged to go to mediation so long as all discovery was completely "shut down" at every level, including Magness' threats to bring a derivative lawsuit against Starrex. Starrex likewise never produced many categories of requested documents, including a large number of mysteriously missing emails, Board minutes, Board resolutions, its own bank records, any bank records pertaining to Defendants for June-August 2022 (except one statement for August 2022 for one account) and many other important items. This deliberate evasion of discovery on the most relevant issues speaks volumes.

Merritt's credibility was also highly questionable, given revelations about her completely false academic and professional credentials. She also refused to produce decipherable supporting financial documents while the Magnolias were operating and it only through discovery that Merritt/Starrex ever produced some of the books, records and statements relating to the Magnolias, many of which are contradictory, nonsensical and in the case of accounting records, have numerous vague entries lacking information and suspicious transactions. Both Magness and Naponic considered the books and records she produced for the Magnolia entities unreliable and a product of an attempt to cover up wrongful transfers. Indeed, Nelson Mitchell informed Phil Clayton that he wanted to bring in a forensic auditor, to which Clayton replied that the company would be

"f**ked" if they did so—a clear admission of accounting irregularities *that were within the knowledge of Clayton and Garth* but not Mitchell, a major shareholder of the Magnolia entities.

These circumstances strongly reinforce the reasonableness of Former Counsel's reliance on Plaintiffs' representations regarding transactions for which documentation remained in Defendants' exclusive control. As the Fifth Circuit recognizes, Rule 11 standards must be applied in context, considering the extent to which factual development necessitates discovery. *Thomas*, 836 F.2d at 875-76. Where key evidence remains in the opposing party's possession, Rule 11(b)(3) explicitly allows for allegations that will likely have evidentiary support after discovery.

## IV. THE ALLEGATIONS IN THE SAC WERE ADEQUATELY SUPPORTED

### A. The Equity Scheme Allegations

Defendants characterize the allegations regarding the "equity scheme" as fabricated, but these allegations were reasonably supported by client representations and available evidence.

Magness consistently represented to Former Counsel that Garth and Clayton made a deal regarding Peabody Bulldog giving up equity in exchange for Magnolia equity and eventually a conversion into Starrex stock. No conversion ever occurred. Both Magness and Naponic can recall the places, times and content (per their individual observations or subsequent discussion) of the representations. Former counsel reasonably relied on the representations of Magness and Naponic regarding the many communications and representations made by Garth and Clayton in person or over the phone.

Defendants claim this scheme is disproven by the timing of the August 2022 BSpoke Settlement and the September 2022 HMH investment. Motion, pp. 5-10. This misconstrues the SAC. The SAC alleges the scheme involved representations made in *July 2022*, where Garth/Clayton *promised* a personal $1MM contribution, inducing TPB to accept dilution in the

*forthcoming* Magnolia structure, assuring the dilution would be offset by the promised Starrex acquisition/shares.  *See* SAC ¶ 83. The breach was directing a Starrex advance instead of contributing personally. *See* SAC ¶ 84. This July event is distinct from the June wires, August agreement, or September HMH investment.  Magness and Naponic described these events.

As to any alleged transfers by Garth and Clayton's entities, Starrex did not produce its bank records.  Starrex also did not produce any bank records for June 2022.  Starrex produced bank records from September 2022 onward, but no bank records for June 2022 or July 2022, and bank records for August 2022 for just one of several accounts.  Further, there was no wire information produced whatsoever.

The Motion cites to records produced by Merritt which simply show an AR ledger of each Magnolia, state a date, an memo/description such as "Wire from Alphabet for the Magnolia's [sic]", an amount such as "137,872.45" and a description of "Repayment."  Merritt's June 2022 ledger entries (Motion, Ex. B) are <u>unverifiable</u> without corresponding bank records (which Starrex failed and refused to produce for June/July 2022) and do not disprove the *later* July representation about a *personal* contribution.  There is no information as to what is "Repaid", any account that received the funds (if at all), the wire details (if they exist), or whether this actually occurred.  These questions could only be answered in discovery and were never answered by any of the selective discovery produced by Starrex.

This selective production makes it impossible to verify Defendants' claims about June 2022 transactions. The motion itself acknowledges that discovery would be necessary to resolve many of the factual disputes, stating that Plaintiffs' allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," which is precisely the standard contemplated by Rule 11(b)(3).

The SAC reasonably alleged the scheme based on specific client accounts of the July 2022 events, which are not contradicted by the incomplete evidence Defendants present.

**B. The HMH Investment Allegations**

The SAC alleged that after HMHTI wired $1 million on September 9, 2022, Defendants misappropriated it through specific transfers. These allegations were supported by contemporaneous bank records and client representations.

Magness has confirmed that the Starrex CEO, Matt Hill (the son-in-law of Clayton) and the Starrex CFO, Debbie Merritt, who has been certified by multiple educational institutions and organization to lack her various claimed degrees and certifications, stated (and complained) that Starrex had fronted money to the Magnolias on behalf of Garth and Clayton in 2022 and to wait for Nelson's money to pay back that obligation. "Nelson's money" meant the anticipated investment of HMHTI (ultimately controlled by Nelson Mitchell). Naponic confirmed the same and that they believe the investment went to cover Garth and Clayton's shortfall.

Former Counsel acknowledges one unintentional calculation error in the SAC regarding a duplicate $225,000 entry. This error resulted from a spreadsheet derived entirely from a large, unorganized collection of PDF bank records only produced by Starrex (no compilations of data or even raw, organized data were produced), and carried through multiple documents. However, this minor error does not undermine the substance of the allegations, as bank records still confirmed substantial transfers to Starrex following Nelson's investment.

**C. Commercial Construction Services Issue**

The SAC identified a suspicious payment of $75,561.85 to "Commercial Construction Services, LLC" on September 20, 2022. Magness had never heard of this entity, and Former Counsel verified through corporate registries that no "Commercial Construction Services, LLC" has ever existed in Texas or been registered to do business in Texas. Yet, Magness' signature was forged on this large check. It was also forged on numerous other checks made on the Magnolias' bank accounts, according to Magness. Also per Magness, Magness had never authorized anyone

to sign his signature on any check and he was not shown any of these many checks all containing his forged signature until discovery of the Starrex lawsuit. While Defendants now claim this was for a legitimate construction project by referencing Merritt's own, unreliable ledgers, at the time of filing, these facts provided (as still do provide) reasonable grounds for questioning this large payment.

## D. Promissory Notes Allegations

The SAC did not allege forgery of signatures on the promissory notes, but rather that the notes were created for audit purposes only and were never intended to represent actual debt obligations. As discussed in the Introduction, this allegation was directly supported by Merritt's April 19, 2023, text message that she later deleted.

Further evidence supporting this interpretation came from email exchanges in which Garth inquired to Merritt: "What date should the promissory notes be executed? I suggest a date prior to the first draw and probably a date that is reasonably close to the date that the line of credit was executed." In the same email chain, a revealing comment noted "MH [McGovern Hurley auditors] would prefer to see a fixed rate"—confirming the notes were being prepared to satisfy auditor requirements.

It is also telling that Merritt never circulated the signed notes to the Magnolias shareholders. The first time any note was circulated was a single note (out of four) sent by Ariane Young to Adam Fulkerson when Starrex was attempting to renegotiate in Summer 2023. Despite repeated requests, no one has ever produced the other three electronically signed notes. These circumstances provided ample basis for questioning the notes' legitimacy and purpose.

## E. Starrex's Obligation to Acquire the Magnolia Companies

Defendants mischaracterize Plaintiff's allegations regarding Starrex's acquisition of the Magnolia Companies. Defendants attack a straw man. The SAC alleges *fraudulent inducement*

through *misrepresentations* of acquisition certainty, not breach of a binding contract to acquire. *See, e.g.*, SAC ¶¶ 170-171, 198. As stated by Magness and Naponic, Garth and Clayton repeatedly represented to Plaintiffs that the acquisition was inevitable and certain to occur, while knowing these representations were false or made with reckless disregard for their truth. The SAC details numerous instances where Garth/Clayton falsely represented the acquisition as certain to induce reliance. *See, e.g.*, SAC ¶¶ 67, 69, 75(e), 171, 191, 198. The non-binding nature of the LOI (SAC ¶ 194) is acknowledged; the claim is not breach of the LOI, but fraud. (Any breach of contract cause of action has been dismissed). Further, client accounts, Garth's authorship of communications (*e.g.*, SAC ¶ 75(a)), Garth's drafting of the HMH Term Sheet promising completion (*e.g.*, SAC ¶ 75(e)), and the full context of Magness's Dec. 2022 email (as described herein) support the alleged pattern of misrepresentation.

Magness has confirmed the numerous representations made that the Starrex acquisition was a sure thing in the mind of Garth and Clayton and that they were in control of whether it occurred. He relied on their representations as did others who joined the cause. Frequently heard around the office and in meetings was the storied "Wealth Event" that Garth repeatedly stated would occur and make everyone rich. Naponic confirmed the same.

The SAC properly cites documents like the HMH term sheet not as creating binding obligations themselves, but as evidence of the ongoing pattern of misrepresentations by Garth and Clayton about an acquisition they knew would not occur as promised.

### F. Control by Garth and Clayton

Defendants deny control, citing formal structures. The SAC alleges pervasive *de facto* operational control. The SAC provides numerous examples (*e.g.*, SAC ¶¶ 73-75, 81, 85, 88, 160-163, 188) including directing finances, personnel, strategy, communications (ghostwriting), and controlling key agents like Merritt. Clients consistently affirmed Garth and Clayton's total control.

Furthermore, the initial documented directive to block the KIPP donation (*e.g.*, SAC ¶ 73) evidences attempted control, regardless of the eventual outcome. The SAC details sufficient specific examples supporting the reasonable allegation of pervasive *de facto* control.

## G. "Additional Misstatements"

The cited emails (Motion, Exs. O, P, Q) were reasonably used as *examples* supporting broader allegations of control (Hill, the CEO, seeking Garth's and Clayton's direction on the LOI to acquire a company; Garth input on compliance, asking that the Manager and General Counsel of Magnolia and its executive, review this issue and provide their input to him) and note fabrication (Garth directing backdating, discussing auditor needs),[2] respectively. Additionally, the metadata reveals to us who ultimately authored the communication—Garth. Starrex failed to produce numerous important emails, such as any email from Garth transmitting the draft to Merritt.

Regarding the $10,000 KIPP Academy donation, Defendants claim this donation was made despite Garth and Clayton's objections, proving Magness had ultimate control. However, Magness has confirmed that the Magnolias never paid this donation and that a manager had to personally cover the expense. Documents with the handwritten notation "DO NOT PAY PER TERRY AND PHIL" directly tie Garth and Clayton to this decision, demonstrating their control over financial decisions.

The SAC further documents Clayton's admission in July 2023 that "if anyone does a forensic audit [on the Magnolias], we are f***ed," acknowledging their awareness of financial improprieties. *See, e.g.*, SAC ¶ 82.

Additionally, Defendants are trying to use a single frustrated response from Magness to undermine Defendants' reliance claims, while ignoring that the partial fulfillment of promises (the

---

[2] Notably, for instance, Exhibit Q omits further important emails in the chain, such as what the auditors ("MH") "would prefer to see".

All American Title closing) reinforces the reasonableness of continued reliance. Magness'
response to Hill where he states "If either one becomes a reality we can discuss then" made sense
at a time when Garth had repeatedly pushed back promised timelines, understandably causing
frustration. Yet, only months thereafter, the All American Title deal referenced in this exchange
did subsequently close. This fulfillment of a promised transaction reasonably reinforced Magness'
expectation that the Starrex acquisition of the Magnolias would likewise proceed as consistently
represented by Garth and Clayton. The closing of the All American Title deal strengthened, rather
than undermined, the reasonableness of John's continued reliance on Defendants' representations
regarding the inevitable Starrex acquisition. These are just some of the details that Defendants
misleadingly omit in their effort to obtain an improper summary judgment like decision through
the sanctions mechanism.

## V. RULE 11 SANCTIONS ARE PARTICULARLY INAPPROPRIATE AT THE PRE-DISCOVERY STAGE

The timing of Defendants' Motion—at the motion to dismiss stage before any discovery
has occurred (and additionally, with no discovery to occur in this Court)—renders it particularly
inappropriate. This timing is especially troubling considering Defendants gave Former Counsel
notice of the *filed* Motion just a few days ago, on May 6, 2025, despite the Motion being filed
weeks earlier and the response deadline being May 12, 2025. This compressed timeframe to
respond further illustrates the tactical nature of Defendants' approach.

Rule 11 should not be used as a substitute for summary judgment or to test the factual
sufficiency of claims. *See Castro & Co. v. Diamond Offshore Servs. Ltd.*, No. 3:18-cv-574-M,
2018 WL 3361554, at *5 (N.D. Tex. July 10, 2018) (holding that "Rule 11 should not be used to
test the legal or factual sufficiency of a party's claims"); *see also Sievert v. Howmedica Osteonics
Corp.*, No. 3:18-CV-2175-S, 2020 WL 2507678, at *3 (N.D. Tex. May 15, 2020) ("[T]he Motion

for Sanctions appears to be based on disputed evidence, speculations about the contents of remaining discovery, and subjective opinions as to counsel's intent, none of which are proper bases for Rule 11 sanctions."); *Mark's Airboats, Inc. v. Thibodaux*, No. CIV.A. 6:13-0274, 2015 WL 1467097, at *4 (W.D. La. Mar. 27, 2015) ("The Court agrees that the motions for sanctions are not the appropriate vehicle for the Court to find that a facially valid claim is without factual or legal support.").

In *SortiumUSA, LLC v. Hunger*, No. 3:11-cv-1656-M, 2014 WL 1080765, at *5-*6 (N.D. Tex. Mar. 18, 2014), the court similarly rejected sanctions where "allegations in this Rule 11 motion are essentially summary judgment arguments about the legal and factual sufficiency of the complaint." Fifth Circuit precedent "does not allow the imposition of Rule 11 sanctions merely for the eventual failure of a claim; rather, sanctions are to be applied only where, at the time of the filing, the position advocated is unwarranted." *Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) (citing *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994)).

The factual disputes raised in Defendants' Motion are precisely the type that should be resolved through discovery, not through sanctions. As the Fourth Circuit noted in a case frequently cited, "[c]laims that are plainly meritless should be disposed of early in the course of litigation through summary judgment or other pretrial motion[s] . . . . As a general matter, dismissal of a frivolous case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort." *Blue v. United States Dep't of the Army* (4th Cir. 1990) 914 F.2d 525, 535, *cert, denied sub nam.*, *Chambers v. United States Dep't of the Army* (1991) 499 U.S. 959, 111 S. Ct. 1580, 113 L. Ed. 2d 645.

Former Counsel provided thorough information to new counsel regarding the case along with the file. New counsel acknowledged the efforts Former Counsel expended to transition extensive information and files. Former Counsel were informed even before Defendants sent a copy of the Motion for Sanctions, that specific new counsel would be substituting in their place.

Defendants continue to claim that various challenged aspects of the SAC should have been withdrawn or corrected and were not. However, Former Counsel did not have any ability to perform any such actions to withdraw or correct anything in the SAC. It appears that in Plaintiffs' Response to the Motions to Dismiss (Dkt. 78), new counsel dismissed a large number of claims and also sought leave to amend to make correction amendments and conforming amendments. Defendants' counsel fails to acknowledge these actions by new counsel or the inability of Former Counsel to make any such amendments.

Moreover, the Court has remanded the case to the 11th Judicial District Court of Harris County for further litigation, where discovery is anticipated to be conducted. Defendants seek to have this Court issue a ruling before discovery has even begun that would potentially affect a case pending before the state court in its earliest stages. This posture alone counsels against any ruling in this Court—especially after it lost subject matter jurisdiction of the case—that would then affect an ongoing matter in state court that will litigate the very same claims and allegations.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Sanctions should be denied. The Second Amended Complaint presented a detailed and coherent narrative of Garth and Clayton's alleged misconduct, supported by client representations and available documentary evidence. While one unintentional calculation error occurred, this minor error does not warrant the extraordinary remedy of Rule 11 sanctions.

The Fifth Circuit has consistently cautioned against using Rule 11 to chill zealous advocacy, particularly in complex commercial disputes where key evidence remains in defendants' possession. This case presents precisely the situation for which Rule 11(b)(3)'s "likely to have evidentiary support after discovery" provision was designed. The factual disputes raised in

Defendants' Motion should be resolved through the normal discovery process, not through sanctions.

Respectfully submitted,

**HENDERSHOT COWART P.C.**

By: */s/ Philip D. Racusin*
      SIMON W. HENDERSHOT, III
      SBN: 09417200
      trey@hchlawyers.com
      PHILIP D. RACUSIN
      SBN: 24054267
      pracusin@hchlawyers.com
      1800 Bering Drive, Suite 600
      Houston, Texas 77057
      Telephone:  (713) 783-3110
      Facsimile:  (713) 783-2809
      ***FORMER COUNSEL* FOR *PLAINTIFFS***

### CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, a copy of the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Philip D. Racusin*
      Philip D. Racusin